DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| NICOLE WOOTEN,<br><br>Plaintiff,<br><br>v.<br><br>LIMETREE BAY TERMINALS d/b/a OCEAN POINT TERMINALS, PORT HAMILTON REFINING & TRANSPORTATION, WEST INDIES PETROLEUM LTD., and LIMETREE BAY REFINERY, LLC, as a nominal Defendant<br><br>Defendants. | Case No.  1:23-cv-00012-WAL-EAH |

**DEFENDANT OCEAN POINT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

Defendant Limetree Bay Terminals d/b/a Ocean Point Terminals ("Ocean Point") files this reply memorandum of law in support of its Motion to Dismiss the First Amended Complaint (the "Motion") [ECF No. 13] for failure to state a claim.

**SUMMARY OF ARGUMENT**

The Court should dismiss Plaintiff's First Amended Complaint ("the Complaint") for failure to state a claim because Plaintiff cannot maintain her claims against Ocean Point under any theory of negligence. Ocean Point maintains that the contractual agreements incorporated by reference in the Complaint definitively prove that Ocean Point did not own nor was responsible for the Refinery and its operations and thus owed no duty to Plaintiff and could not be liable for Plaintiff's alleged injuries that occurred on the Refinery.

Plaintiff attempts to circumvent this reality by asserting a new theory of negligence that is tantamount to a claim for *negligence per se* and notably, absent from the four-corners of the Complaint. In support thereof, Plaintiff cites to a Judge Lewis Memorandum Opinion issued on

1

April 28, 2023, specifically, Judge Lewis' reference to Ocean Point's status as the permit holder of the Title V Operating Permit. This Court should not consider this new theory because Plaintiff's complaint is devoid of any allegations concerning the Title V Operating Permit and the duties and obligations established therein. Notwithstanding, even if this Court were inclined to consider this new theory of negligence, Plaintiff's Complaint still fails on the grounds that: (1) it does not allege any facts establishing compliance with the notice requirements of 42 U.S.C. § 7604(b)(1)(A), and (2) Plaintiff's claims are statutorily barred pursuant to 42 U.S.C. § 7604(b)(1)(B) because the United States is diligently prosecuting the same alleged violations of the Clean Air Act Title V Operating Permit that serves as the basis, and purported duty, of Plaintiff's negligence claims against Ocean Point. Each of these bases are fatal to Plaintiff's claims.

Accordingly, the Court should dismiss Plaintiff's Complaint for failure to state a claim with prejudice.

## **RELEVANT EVENTS PRECEDING THE INSTANT ACTION**

A.  **EPA Emergency Order**

1. The Refinery operates under a number of air permits including the Clean Air Act ("CAA") Title V Operating Permit.

2. The Title V Operating Permit provides that the permittee shall "not cause or permit the discharge from any source whatsoever such quantities of air contaminants or other material which cause injury, detriment, nuisance, annoyance, to persons or to the public or which endanger the comfort, repose, health, or safety of any such persons or the public or which cause or have tendency to cause injury or damage to business property."

3. On May 14, 2021, the United States Environmental Protection Agency ("EPA") issued an Emergency Order ("EPA Order") to Limetree Bay Refining, LLC ("LBR") and Ocean

Point ordering the Refinery to cease operations pursuant to findings that the operation of the Refinery was "causing or contributing" to the emission of "air pollutants" within the meaning of Sections 302(g) and 303 of the CAA, 42 U.S.C. §§ 7602(g) and 7603. *See* EPA Order attached hereto as **Exhibit A** at Doc. #2-1 at pp. 1-45. The court may take judicial notice of the EPA Order it is a matter of public record and is undisputedly authentic. *Buck v. Hampton Tp. School Dist.*, 452 F. 3d 256, 260 (3d Cir. 2006).

4. Pursuant to its investigations, the EPA found that on at least four occasions, the air emissions from the Refinery operations harmed the public health, welfare or environment, and would present imminent and substantial endangerment to the same if the Refinery was allowed to continue operating. The four occasions are as follows:

   a. On February 4, 2021, an oily mist with heavy oil droplets ("Flare Rainout") was emitted as air emissions from Flare #8 at the Refinery and was considered a safety hazard that threatened the public health, welfare, and environment;

   b. Between April 19 and April 25, 2021, Flare #8 emitted high amounts of hydrogen sulfide and sulfur dioxide and was found to be immediately dangerous to life and health;

   c. Between May 5 and May 12, 2021, Flare #8 again emitted high amounts of hydrogen sulfide and sulfur dioxide resulting in over three hundred complaints from citizens who experienced, among many other symptoms, headaches, sore throats, and nausea;

   d. On May 12, 2021, the top of Flare #8 became engulfed in flames for several hours resulting in Flare Rainout, hydrogen sulfide, and sulfur dioxide being emitted into the air, which posed a threat to the public health, welfare, and environment.

*See* Ex. A at Doc. 2-1 ¶¶ 34-90.

5. Through its investigations, the EPA determined that the Refinery exceeded applicable air pollutant permit limitations on more than 70 incidences between February 28, 2021 and May 20, 2021. *See generally* Ex. A at Doc. 2-1.

6. To abate and prevent imminent and substantial endangerment to the public health, welfare, and environment, the EPA Order not only set forth specific requirements to ensure the Refinery's compliance with the statutory, regulatory, and permit requirements, but also provided means for the EPA to seek court intervention in the event of continuing violations, utilizing ongoing monitoring and auditing of the Refinery's emissions, and allowed the EPA and authorized representatives to access and inspect the Refinery's facilities. *See* Ex. A at Doc. 2-1 ¶¶ 105-123. Additionally, the EPA Order provided means for daily monetary penalties for each subsequent violation. *Id.* at ¶ 121.

7. The EPA Order required the audits to be undertaken by an independent third-party of the Refinery's environmental compliance and process units and required the creation of a "Corrective Action Plan" to implement corrective measures in response to the audits' findings to the EPA for review and approval within 56 days, July 9, 2021. *Id*. at ¶¶ 115(l)

8. Under the Section 303 of the CAA, the EPA Emergency Order would expire 60 days after issuance on July 13, 2021, unless the United Stated filed a civil action pursuant to Section 303 of the CAA, 42 U.S.C. § 7603. *Id*. at ¶ 125.

B. <u>The EPA is Diligently Prosecuting Violations of the Emissions Standards</u>

9. On July 12, 2021, given the possibility that the EPA would not complete its review and approval of the Corrective Action Plan by the time the EPA Order was set to expire on July 13, 2021, the Attorney General of the United States, at the request of the Administrator of the EPA, filed a complaint for injunctive relief against Ocean Point in the United States District of the Virgin Islands Division of St. Croix, styled as *United States of America v. Limetree Bay Refining, LLC and Limetree Bay Terminals, LLC*, Civ. A. No. 1:21-CV-264 ("EPA Action"). *See* EPA Action

attached as **Exhibit B.** The court may take judicial notice of the EPA Action as it is a matter of public record. *Buck v. Hampton Tp. School Dist.,* 452 F. 3d 256, 260 (3d Cir. 2006).

10.     The EPA Action seeks injunctive relief under Section 303 of the CAA seeking to not only bring the Refinery in Compliance with the EPA Order, but also to eliminate the imminent and substantial endangerment posed by the Refinery before restarting Refinery operations. This included implementing and complying with measures in the Corrective Action Plan upon its approval by the EPA to demonstrate that the Refinery no longer presents an imminent and substantial endangerment. *See generally* Ex. B.

11.     This action is still pending and diligently being prosecuted in the District Court of the Virgin Islands Division of St. Croix.

C.      <u>Consent Decree between the EPA and Ocean Point</u>

12.     On July 12, 2021, immediately after the EPA Action was filed, the EPA and Ocean Point entered into a Joint Stipulation ("Consent Decree"). The Consent Decree confirmed that the Refinery would (1) cease operations and (2) remain idle until the operations comply with the EPA Order. *See* Consent Decree, attached hereto as Ex. A at Doc. #2 pp 1-8 [EPA Order attached thereto as Exhibit 1]. The court may consider the Consent Decree on the motion to dismiss because the document is a matter of public records and undisputedly authentic. *Grp. Against Smog & Pollution, Inc. v. Shenango Inc.*, 810 F.3d 116, 132 (3d Cir. 2016).

13.     Pursuant to the Consent Decree, the Refinery was required to meet the specific requirements of the EPA Order and to complete all measures necessary to eliminate any imminent and substantial endangerment to the public health or welfare or the environment posed by the Refinery or Refinery Process Unit. *See* Ex. A at Doc. 2 at ¶ 6.

D. <u>Plaintiff's Complaint</u>

14. On or about March 1, 2023, Plaintiff filed the instant five count Complaint asserting various theories of negligence, for injuries while presenting at the Refinery.

15. The catalyst of Plaintiff's alleged injuries was inhalation of "thick black smoke" emitted into the air from the Refinery's dome building. *See* ECF No. 1-1 at pg. 58 at ¶ 20 and pg. 59 at ¶ 27.

16. Thick black smoke being emitted from the Refinery's dome building falls squarely within the parameters of the Title V Operating Permit and is the same violation emission standards that are being prosecuted by the EPA – causing or contributing" to the emission of "air pollutants."

## **ARGUMENT**

I. **Plaintiff's Claims Against Ocean Point Are Statutorily Barred**

According to the "[t]hreshold [i]ssue" of Plaintiff's response in Opposition to Ocean Point's Motion to Dismiss, the crux of Plaintiff's theory of negligence is that Ocean Point owed her a duty regarding her injuries sustained while at the Refinery pursuant to its status as the holder of the CAA Title V Operating Permit. Plaintiff relies on Judge Lewis' Memorandum Opinion issued on April 28, 2023, which quotes the Title V Operating Permit, stating in pertinent part, that a permittee "shall not cause or permit the discharge from any source whatsoever, such quantities of air contaminants or other material which cause injury, detriment, nuisance, annoyance to persons or the public or which endanger the comfort, repose, health, or safety of any such persons or the public or which cause or have a tendency to cause injury or damage to business property." *Boynes et al., v. Limetree Bay Ventures, LLC, et. al*., 2023 WL 3166603 at *6 (D.V.I. April 28, 2023).

Based on the foregoing, it appears Plaintiff is attempting to establish a claim against Ocean Point, that was not raised in the Complaint, under a theory of *negligence per se* pursuant to a purported duty referenced in Judge Lewis' Memorandum Opinion. However, regardless of form and/or theory, Plaintiff cannot maintain a private right of action against Ocean Point pursuant to 42 U.S.C. § 7604.

A. <u>The Complaint Does Not Establish Compliance With 42 U.S.C. § 7604(b)(1)(A)</u>

The CAA provides that citizens may commence a civil action on their own behalf against a person or entity alleged to be in violation of an emission standard or limitation set forth under the CAA 42 U.S.C. § 7604(a)(1). However, this private right of action is subject to the limitations provided in 42 U.S.C. § 7604(b) – Notice, which provides that no action may be commenced under subsection (a)(1) until 60 days after the plaintiff has given notice of the violation (i) to the Administrator, (ii) to the State in which the violation occurs, and (iii) to any alleged violator of the standard limitation, or order. 42 U.S.C. § 7604(b)(1)(A).

Here, the Complaint pleads no facts establishing that Plaintiff provided notice of the alleged violation to the Administrator of the EPA, provided notice of the alleged violation to the Virgin Islands, nor provided notice of the alleged violation to Ocean Point within 60 days preceding the filing of the instant action. Plaintiff's failure to comply with the statutory requirements of 42 U.S.C. § 7604(b)(1)(A) is fatal to her negligence claims against Ocean Point and the Complaint must be dismissed accordingly.

B. <u>Plaintiff's Claims are Barred by the EPA's Civil Action Against Ocean Point</u>

Section 7604(b)(1)(B) provides that no action may be commenced if the Administrator or State has commenced and is diligently prosecuting a civil action in a court of the United States or a State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any person may intervene as a matter of right. 42 U.S.C. §

7

7604(b)(1)(B). "Congress intended citizen suits to both goad the responsible agencies to more vigorous enforcement of the anti-pollution standards and, if the agencies remained inert, to provide an alternate enforcement mechanism." *Baughman v. Bradford Coal Co., Inc.*, 592 F.2d 215, 218 (3d Cir. 1979). However, the premise of such intention was to provide citizens' suits in a manner that would least likely clog already burdened federal courts and most likely to trigger governmental action, which would alleviate the need for judicial relief. *Id*. Thus, the statutory bar on citizen suits when governmental enforcement action is underway suggests that the citizen suit is meant to supplement rather than to supplant governmental action. *Grp. Against Smog & Pollution, Inc. v. Shenango Inc.*, 810 F.3d 116, 132 (3d Cir. 2016).

"When a state or federal agency diligently prosecutes an underlying action in court, the diligent prosecution bar of the [CAA] will prohibit citizen suits during the actual litigation as well as after the litigation has been terminated by a final judgment, consent decree, or consent order and agreement." *Shenango*, 810 F.3d at 128. "[T]he government's prosecution is entitled to great deference" and when "an agency has specifically addressed the concerns of an analogous citizen's suit, deference to the agency's plan of attack should be particularly favored." *Id*. at 130.

In *Shenango*, the EPA, the state department of environmental protection, and a county health department filed suit against Shenango claiming violation of three emission standards at its plant. *Id*. at 120-121. The parties subsequently entered into a consent decree to resolve the violations and the county health department entered into an additional "Consent Order and Agreement" with Shenango. After the consent decrees were entered, Group Against Smog and Pollution, Incorporated filed a citizen suit under the CAA claiming violations of the same three emission standards, to which Shenango moved to dismiss. *Id*. at 121. The court considered the

8

consent decrees on the motion to dismiss because the documents were public records, were undisputedly authentic, and the claims were based on the decree. *Id*. at 127.

The consent decrees considered in *Shenango* provided a means to seek court intervention in the event of continuing violations, which provided speedy and efficient means to enforce an order mandating compliance with the regulations without having to initiate a separate lawsuit. *Id*. at 129. Additionally, both decrees provided that the district court retained jurisdiction from the date of entry through date of termination for the purpose of modifying, construing and/or enforcing the rights and obligations of the parties to the consent decrees. *Id*. Specifically, both decrees made termination contingent on Shenango's ability to demonstrate compliance with the terms of the decrees. *Id*. Finally, both decrees utilized ongoing monitoring and recording of Shenango's emissions, and allowed the government agencies the right to inspect Shenango's facilities. *Id*. The court opined that these circumstances were evidence of ongoing diligent prosecution. *Id*. Accordingly, given that both decrees required compliance with the CAA and were still in effect at the time the citizen suit was filed, the court dismissed the action finding that the diligent prosecution bar of the CAA prohibited plaintiff's claims. *Id*. at 132.

Similar to *Shenango*, the circumstances leading up to the instant action show an ongoing diligent prosecution of the violation of the emission standards that serve as the catalyst for Plaintiff's alleged injuries – inhalation of thick black smoke emitted from the dome building located on the Refinery.

On May 14, 2021, pursuant to findings that the Refinery's operations were "causing or contributing" to the emission of "air pollutants" in violation of the CAA, which not only harmed but also presented imminent and substantial endangerment to the public health, welfare, and environment, the EPA issued the EPA Order requiring the Refinery to cease operations. *See* Ex. A.

9

To abate and prevent imminent and substantial endangerment to the public health, welfare, and environment, the EPA Order not only set forth specific requirements to ensure the Refinery's compliance with the statutory, regulatory, and permit requirements, but also provided means for the EPA to seek court intervention in the event of continuing violations, utilizing ongoing monitoring and auditing of the Refinery's emissions, and allowed the EPA and authorized representatives to access and inspect the Refinery's facilities. Ex. A at Doc. 2-1 at ¶¶ 105-123. The EPA Order also mandated the creation of a Corrective Action Plan to implement corrective measures in response to the audits' findings to the EPA for review and approval within 56 days on or before July 9, 2021. Ex. A at Doc. 2-1 at ¶ 115(l).

On July 12, 2021, given the likelihood that the EPA would not complete its review and approval of the Corrective Action Plan by the time the EPA Order was set to expire on July 13, 2021, the Attorney General of the United States, at the request of the Administrator of the EPA, filed the EPA Action. The EPA Action seeks injunctive relief under Section 303 of the CAA to ensure the Refinery's compliance with the requirements set forth in EPA Order in addition to requiring the Refinery to take all measures necessary to eliminate the imminent and substantial endangerment posed by the Refinery before restarting Refinery operations. This included implementing and complying with measures in the Corrective Action Plan upon its approval by the EPA to demonstrate that the refinery no longer presents an imminent and substantial endangerment. *See generally* Ex. B. Immediately after the EPA Action was filed, the EPA and Ocean Point entered into a Consent Decree wherein the parties agreed that the Refinery will cease operations and remain idle until the Refinery's operations are brought into compliance with the EPA Order, which was attached thereto. *See generally* Ex. A Doc 2. The EPA Action is still pending in the District Court of the Virgin Islands.

Based on the foregoing, it is abundantly clear that the EPA is diligently prosecuting the same emissions standard violations – "causing or contributing" to the emission of air pollutants – alleged in Plaintiff's Complaint – thick black smoke coming out of the dome building – and that the EPA is pursuing the ongoing Consent Decree that not only requires the Refinery's compliance with the CAA and the EPA Order, but also provides for ongoing monitoring of the violations and penalties in the event of violations.

Accordingly, the diligent prosecution bar of the CAA prohibits Plaintiff's claims against Ocean Point, and thus must be dismissed with prejudice.

## CONCLUSION

For the reasons set forth above, Limetree Bay Terminals d/b/a Ocean Point Terminals respectfully requests that this Court enter an order: (i) granting its motion to dismiss for failure to state a claim; (ii) dismissing the Complaint with prejudice; and (iii) granting it such other and further relief as the Court deems just and proper.

DATED: June 12, 2023            **AKERMAN LLP**
201 East Las Olas Boulevard,
Suite 1800
Fort Lauderdale, Florida 33301
Telephone: (954) 463-2700
Facsimile: (954) 463-2224


By: /*s/Donnie M. King*
    Donnie M. King
    Virgin Islands Bar No. 1237
    Primary e-mail: donnie.king@akerman.com
    Secondary e-mail: sharon.luesang@akerman.com
    David J. Awoleke (admitted *pro hac vice*)
    david.awoleke@akerman.com
    *Counsel for Defendant Limetree Bay Terminals, LLC d/b/a Ocean Point Terminals*

**CERTIFICATE OF SERVICE**

    I certify that the foregoing document was filed with the Court's electronic filing system on June 12, 2023 which will send a notice of electronic filing to all counsel of record.

                                                                                                 */s/Donnie M. King*
                                                                                                  Donnie M. King