# Exhibit B

## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
### DIVISION OF ST. CROIX

| | |
|---|---|
| UNITED STATES OF AMERICA )<br><br>Plaintiff, )<br><br>v. )<br><br>LIMETREE BAY REFINING, LLC )<br><br>and )<br><br>LIMETREE BAY TERMINALS, LLC )<br><br>Defendants. )<br>) | Civ. A. No. 1:21-cv-264<br><br>**Complaint** |

## COMPLAINT

The United States of America, by the authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("U.S. EPA"), files this complaint and alleges as follows:

### NATURE OF ACTION

1. This is a civil action brought against defendants Limetree Bay Refining, LLC and Limetree Bay Terminals, LLC (collectively, "Limetree" or "Defendants") concerning emissions of Hydrogen Sulfide ("$H_2S$"), Sulfur Dioxide ("$SO_2$"), uncombusted hydrocarbons, and airborne oil droplets called "Flare Rainout" at and from the Limetree Bay refinery located at 1 Estate Hope in Christiansted, Virgin Islands (the "Refinery"), and the risk of a catastrophic failure of emissions control systems stemming from a substantial fire at the Refinery's only operating flare. The Refinery processes crude oil into various refined petroleum products, which results in the

emission to the air of various pollutants, including $H_2S$ and $SO_2$. When there is a process upset, operator/human error, or a malfunction, the Refinery may emit high levels of $H_2S$ and $SO_2$, uncombusted hydrocarbons, Flare Rainout, and/or other pollutants that alone or in combination pose an imminent and substantial endangerment to public health or welfare or the environment. The Refinery is not operating now but cannot be re-started or operated safely without Defendants first complying with the environmental and safety audit and compliance plan requirements set forth in the administrative order EPA issued on May 14, 2021 under Clean Air Act Section 303, 42 U.S.C. § 7603, an order that will remain in force only if aided by an order of this Court.

2. $H_2S$ is a flammable, colorless gas with the odor of rotten eggs. Inhalation of $H_2S$ can cause various adverse health effects, such as headaches, nausea, difficulty breathing among people with asthma, and irritation of the eyes, nose, and throat. $SO_2$ is a colorless gas with an odor often described as that of a struck match. Breathing high levels of $SO_2$ can cause respiratory distress, burning of the nose and throat, and other respiratory ailments. Flare Rainout may be a mixture of various petroleum hydrocarbons, including fuel oil. Breathing, drinking, or skin contact with Flare Rainout may cause nausea, skin or eye irritation, neurological effects, or other health issues. Exposure to Flare Rainout, via inhalation of volatile components, dermal contact with the residues, or ingestion of or contact with impacted water, have been associated with a variety of adverse health impacts. These impacts can include skin and eye irritation, skin hypersensitivity, liver damage, and possibly carcinogenic effects.

3. From approximately February 4, 2021 to approximately May 12, 2021, on at least four occasions comprising at least eleven days, the Refinery emitted $H_2S$, $SO_2$, uncombusted hydrocarbons, and/or Flare Rainout at levels that had immediate and significant adverse impacts on downwind residents and required multiple public health advisories, the closure of schools and

government offices, and the mobilization of the Virgin Islands National Guard and Fire Service. On May 12, 2021, a large fire engulfed the top of the only operating flare at the Refinery (Flare #8), which may have damaged the flare to the point that it may not be able to operate safely.

4.      On May 13, 2021, Defendants notified EPA that they intended to voluntarily cease all processing activities at the Refinery for an unspecified period of time.

5.      On May 14, 2021, EPA issued a Clean Air Act Emergency Order ("EPA Order," Exhibit 1 hereto) to the Defendants under Section 303 of the Clean Air Act ("CAA"), 42 U.S.C. § 7603, prohibiting them from operating the Refinery for the term of the Order or until EPA determines, in consultation with the Virgin Islands Department of Planning and Natural Resources ("VIDPNR"), that operations can resume before the expiration of the EPA Order, and requiring that they undertake environmental and safety audits of the Refinery and develop a satisfactory plan to address deficiencies. Section 303 requires EPA to file a civil action if the Order needs to stay in effect for more than 60 days.  42 U.S.C. § 7603.  The United States thus files this civil action seeking injunctive relief under Section 303 of the CAA, 42 U.S.C. § 7603, to require compliance with the EPA Order, restrain Defendants from emitting Flare Rainout and/or excessive levels of $H_2S$ or $SO_2$ or uncombusted hydrocarbons, and/or require Defendants to take any necessary additional steps to cease the imminent and substantial endangerment to the public health or welfare or the environment their Refinery presents.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the subject matter of this action pursuant to CAA Section 303, 42 U.S.C. § 7603 (Emergency Powers), and 28 U.S.C. §§ 1331 (Federal Question) and 1345 (United States as Plaintiff).

7.      Venue is proper in this District pursuant to CAA Section 303, 42 U.S.C. § 7603 (Emergency Powers), and 28 U.S.C. § 1391(b) and (c), because Limetree conducts business in this District, the excessive releases of $H_2S$, $SO_2$, uncombusted hydrocarbons, and Flare Rainout occurred in this District, and the Refinery continues to threaten residents of this District.

## NOTICE

8.      Pursuant to CAA Section 303, 42 U.S.C. § 7603, prior to issuing the EPA Order, EPA consulted with representatives of VIDPNR to confirm the accuracy of the information on the basis of which EPA proposed to issue the EPA Order.

## PARTIES

9.      Authority to bring this action is vested in the Attorney General of the United States by Section 305 of the CAA, 42 U.S.C. § 7605 (Representation in litigation); and pursuant to 28 U.S.C. §§ 516 and 519.

10.      Defendant Limetree Bay Terminals, LLC is a limited liability company registered to do business in the U.S. Virgin Islands that owns and/or operates some or all of the Refinery. Limetree Bay Terminals, LLC is the holder of the Refinery's CAA Title V Operating Permit and CAA Prevention of Significant Deterioration ("PSD") permits, which apply to the Refinery's operations.

11.      Defendant Limetree Bay Refining, LLC is a limited liability company registered to do business in the U.S. Virgin Islands that owns and/or operates some or all of the Refinery. Defendant Limetree Bay Refining, LLC has been engaged in a project to refurbish and restart refining equipment at the Refinery including, but not limited to, the fluid catalytic cracking unit ("FCCU"), the delayed coker unit, crude units, vacuum units, par-isom unit, platformer unit, sulfur recovery units, the east side incinerator, hydro-treating units, heaters, boilers, compressor

4

engines, and flares. Limetree Bay Refining, LLC is named as one of the permittees (along with Limetree Bay Terminals, LLC) in the Refinery's Title V Operating Permit renewal application.

## GENERAL ALLEGATIONS

### The Refinery

12.     Defendants own and/or operate the Refinery, which is located on approximately 1,500 acres on the south-central coast of St. Croix, U.S. Virgin Islands. The Refinery, previously owned by HOVENSA, began operation in 1965 and continued to process crude oil until 2012.

13.     Limetree Bay Terminals, LLC and/or its corporate parent or associated business entities acquired the Refinery in January 2016. Limetree Bay Terminals, LLC later transferred certain of the Refinery assets to Limetree Bay Refining, LLC. The Refinery commenced efforts to restart Refinery operations in 2018.

14.     The communities of Clifton Hill, Profit Hills, Kingshill, University of Virgin Islands Campus, Hannah's Rest, Frederiksted, Estate Northside, Smithfield, Upper Bethlehem, Mars Hill, Estate Carlton, Golden Grove, Grove Place, Negro Bay, Williams Delight, Whim, Sandy Point, La Grange, and Prosperity are all located downwind of the Refinery. These communities comprise the subdistricts of Southcentral, Northcentral, Northwest, Southwest and Frederiksted. Approximately 20,980 people live and/or work in these subdistricts.

15.     Defendants began restarting Refinery operations in or about September 2020. One of Limetree's investors announced that production at the Refinery had recommenced on February 1, 2021. On information and belief, as of February 2021, Defendants had restarted the following process units: crude units #5 and #6 (with limited capacity), vacuum unit #3, par-isom unit, platformer unit, two sulfur recovery units, east incinerator, delayed coker unit, and hydro-

treating units (6, 7, and 9).  Defendants also restarted only one of the Refinery's flares (Flare #8, referred to in the Refinery's Title V Permit as "FCC Flare (L.P. Flare – STK 7941").

16.     Flare #8 is a 230-foot tall flare that is used to combust excess gases that contain a mix of $H_2S$, carbon dioxide, and other gases such as hydrocarbons.  Flare #8 collects gases from many areas of the Refinery including the sulfur recovery units (Nos. 3 and 4).  Gas enters Flare #8 and is combusted as it moves up the flare tower through 41 staged burner tips.

17.     Not all of the gases entering Flare #8 are combusted even in normal operations because flaring is not 100% efficient.  Although sulfur compounds entering the flare are generally oxidized into $SO_2$ during combustion, some amount are emitted in their original form. The amount of $H_2S$ that Flare #8 emits depends on the concentration of sulfur in the input gases and the efficiency of combustion.  Likewise, the amount of uncombusted hydrocarbons that Flare #8 emits depends on the composition of the input gases and the combustion efficiency of the flare.

18.     Flare #8 is subject to the $H_2S$ input gas concentration limit specified in 40 C.F.R. § 60.103a(h) and the Refinery's Title V Operating Permit of 162 parts per million volume ("ppmv") determined hourly on a 3 hour rolling average basis, as well as operating limits (40 C.F.R. § 63.670) and total sulfur root-cause analysis and monitoring requirements (40 C.F.R. § 60.103a(c)).[1]

19.     Flare #8 has a maximum vent gas flow rate of 1,500,000 lbs/hr and is equipped with instruments to monitor vent gas volumetric flow, pressure, temperature, steam assist flow,

---

[1] Defendants have reported exceedances of this limitation on several occasions between February 5, 2021 and May 12, 2021.  U.S. EPA has requested additional information under CAA Section 114, 42 U.S.C. § 7414, and if it concludes that these exceedances constitute violations of the Refinery's Title V Operating Permit or other federally enforceable requirements, the United States may seek to amend this Complaint to add one or more claims under CAA Section 113(b), 42 U.S.C. § 7413(b).

and a mass spectrometer to measure $H_2S$ content, total sulfur content of vent gas, net heating value, as well as vent gas composition.

20.     From the restart of Refinery operations until May 26, 2021, Flare #8 was the only flare in service at the Refinery.

21.     At all times relevant to this action, the Defendants did not operate $SO_2$ monitors outside the Refinery, as required by permit, and also had no ambient $H_2S$ monitors installed.

22.     Defendants' Health, Safety and Environmental ("HSE") Department is responsible for both environmental compliance and health and safety compliance at the Refinery and the associated large marine loading terminal. During times relevant to this Complaint, the HSE Department had a total of five non-contractor employees. On information and belief, this is an unusually small environmental and health/safety compliance staff for a refinery of this size.

23.     The residents of the communities surrounding the Refinery are predominantly people of color and low-income populations that are already disproportionately burdened by environmental conditions, especially poor air quality.

24.     The demographics of the surrounding communities are indicative of a vulnerable community. According to the 2010 census, the population comprises more than 90% people of color, with almost 27% living below the poverty line. In 2018, the Federal Emergency Management Agency determined these communities to have high risk vulnerability based on a composite of social and economic factors.

25.     The communities surrounding the Refinery are residential and include several schools and at least one hospital. These communities have suffered from complex environmental challenges for many years, including but not limited to contamination of the island's only

7

drinking water aquifer during the Refinery's operations from 1982 to the early 2000s, and impacts of air emissions from the Refinery's operations prior to 2012.

### Four Incidents Since February 1, 2021 Restart

### *Early February Incident*

26.     On February 4, 2021, just three days after Limetree's investors publicly announced the Refinery's successful resumption of production, Flare #8 emitted Flare Rainout in the form of an oily mist with heavy oil droplets.  This Flare Rainout deposited oil droplets on the community of Clifton Hill, covering hundreds of vehicles and homes (including surrounding soils), and contaminating vegetable gardens (some of which are used for subsistence) and residential rainwater cisterns.  On information and belief, the Flare Rainout was also deposited in other nearby communities.

27.     Many residents in Clifton Hill and other communities in the subdistrict rely on cisterns to collect rainwater for household use and to irrigate their gardens.  At least 70 of these cisterns were contaminated by the February 4 Flare Rainout from Flare #8.

28.     Flare systems are designed with process vessels, known as "knockout drums," whose purpose is to remove liquids from flare gases so as to prevent Flare Rainout.

29.     Flare Rainout is not a common event during startup of refinery operations and is considered a serious safety hazard to be avoided at any time.

30.     Oil contamination of soil and water threatens public health and welfare and/or the environment.

31.     Flare Rainout can result in "flaming rain," when the oil droplets entrained in flare gases ignite as they pass through the flare flame and rain down, while on fire, on the facility and

neighboring communities. Flaming rain constitutes an ignition source for vapors and combustible material both at the facility and in downwind neighborhoods.

### April Incident

32.     In early April, 2021, Limetree ceased operations at the Refinery for some period of time to make what Limetree called "operational adjustments."

33.     From 4:00 pm on April 19 until 4:00 pm on April 22, 2021, Defendants continuously fed gas into Flare #8 with $H_2S$ concentrations well in excess of the 162 ppmv limitation. The peak $H_2S$ concentrations on each of these days, measured on a 3-hour rolling average basis, exceeded the 162 ppmv limitation by one to two orders of magnitude.

34.     From 9:00 pm on April 22, until 11:00 pm on April 23, 2021, Defendants again continuously fed gas into Flare #8 with $H_2S$ concentrations well in excess of the 162 ppmv limitation. The peak concentration on April 23, measured on a 3-hour rolling average basis, was 91,649.0 ppmv $H_2S$, or more than 565 times the limit.

35.     From 3:00 pm to 11:00 pm on April 25, 2021, Defendants again continuously fed gas into Flare #8 with $H_2S$ concentrations well in excess of the 162 ppmv limitation, with a peak of 824 ppmv that day.

36.     Generally, people can smell $H_2S$ in the air when the $H_2S$ concentrations are in the range of from 0.0005 to 0.3 ppm. Exposure to low concentrations of $H_2S$ may cause irritation to the eyes, nose, or throat. It may also cause difficulty in breathing for some asthmatics. Respiratory distress or arrest has been observed in people exposed to very high concentrations of $H_2S$.

37.     On information and belief, Flare #8 emitted high amounts of $H_2S$ at various times between April 19 and April 25, 2021.  The "rotten egg" smell of the gas permeated throughout the Frederiksted area during this time.

38.     On April 23, 2021, the Virgin Islands Department of Education ("VIDOE") closed in-person instruction at three schools due to students and staff reporting nausea from the noxious "rotten egg" smell the day before.  The same day, VIDPNR advised the people with respiratory issues including asthma and allergies to consider taking protective action to avoid serious adverse health events.

39.     On April 24, 2021, the Virgin Islands Department of Health ("VIDOH") issued a press release warning St. Croix residents of potential negative health effects from the Refinery's $H_2S$ emissions.

40.     On information and belief, Flare #8 also emitted high amounts of $SO_2$ at various times between April 19 and April 25, 2021.

41.     Exposure to very high levels of $SO_2$ can be life threatening. Exposure to air with levels of 100 ppm of $SO_2$ is considered immediately dangerous to life and health.  Burning of the nose and throat, breathing difficulties, and severe airway obstructions may occur.

42.     On information and belief, ambient concentrations of sulfur in the air at ground level, in the form of $SO_2$, at a minimum exceeded Acute Exposure Guideline Level-1, putting asthmatics at risk of bronchoconstriction between April 19 and April 25, 2021.

43.     People who live and work in the areas downwind of the Refinery were adversely affected by $SO_2$ and/or $H_2S$ emitted from Flare #8 between April 19 and April 25, 2021.

### *Early May Incident*

44.     From May 5 to May 7, 2021, the Defendants fed $H_2S$ into Flare #8 at concentrations that exceeded the 162 ppmv limitation on multiple occasions.  During this time, emissions of $H_2S$, $SO_2$, and/or uncombusted hydrocarbons from Flare #8 caused significant adverse effects to people who live and work in the areas downwind of the Refinery.

45.     From May 5 to May 7, 2021, the Virgin Islands Territorial Emergency Management Agency ("VITEMA") received more than one hundred complaints from citizens describing foul odors in their communities causing, among other things, headache, sore throat, and nausea.  EPA's National Response Center and Regional Emergency Operations Center received nearly two hundred complaints from citizens complaining of the same noxious smell and similar health effects from May 5 through May 12, 2021.

46.     On May 6, 2021, Defendants publicly acknowledged the release of hydrocarbon odors into areas west of the Refinery.

47.     An EPA On-Scene Coordinator who was driving by the Refinery on May 6, 2021 in the course of investigating the source of recent noxious odors, reported that the strong gasoline smell was overwhelming and nauseating.  He noted that in situations where he would be exposed to something similar, he would be wearing a respirator and other personal protective equipment.

48.     VIDOE closed local schools from May 6 to May 7 as a result of the odor.  The Virgin Islands Bureau of Motor Vehicles closed early on May 6 and remained closed on May 7 because of the effects the hydrocarbon odor was having on its employees.

49.     On May 7, 2021, the VI Governor activated the VI National Guard and the VITEMA in response to community complaints about the continued emissions from the Refinery.  During this time, several members of affected communities sought medical attention

at a local hospital as a result of the noxious odor.  Also on May 7, VIDOH issued a warning urging residents with pre-existing respiratory conditions to avoid going outside or to move to less-affected areas of St. Croix.

### *May 12 Incident*

50.    On May 12, 2021, the top of Flare #8 became engulfed in flame for several hours. During this time, the Defendants emitted high levels of $H_2S$ and/or $SO_2$, exceeded the 162 ppmv input limitation for $H_2S$, and emitted Flare Rainout that fell on downwind communities.

51.    In response to the fire, the Virgin Islands National Guard deployed and the Virgin Islands Fire Service activated to provide support.

52.    Flare Rainout fell on local roads, homes (including associated soils), vehicles, agricultural gardens, and rainwater cisterns.  Defendants urged local residents not to drink water from their cisterns due to the risk of contamination and offered to provide alternative water distribution.

53.    Defendants informed EPA on May 12, 2021 that they had ceased production at the Refinery and informed EPA on May 13, 2021 that they had shut down all process units.  On May 14, 2021, after the issuance of the EPA Order, Defendants informed EPA that they had ceased all crude oil refining operations.  On information and belief, emissions from Flare #8 did not cease until May 25 or May 26, 2021.

### *General Noncompliance with Air Permits*

54.    Between February 28, 2021 and May 20, 2021, Defendants notified EPA and/or VIDPNR more than 70 incidences in which it had exceeded applicable air pollutant permit limitations at the Refinery, including at least 35 separate notifications of $SO_2$ or $H_2S$ exceedances at Flare #8.  From February 1, 2021 through May 31, 2021, the Defendants exceeded the 3-hour

rolling average 162 ppmv H2S permit limit applicable to Flare #8 on more than 660 separate

occasions. In February 2021 alone, the Defendants exceeded this limit for more than half the

total operating time.

55.     After issuing the EPA Order, EPA became aware that in December 2020 and

January 2021, the Refinery had at least two other significant emissions events in addition to

those described above. On December 8, 2020, during what the Defendants publicly called a

"minor refinery upset," the Refinery emitted a large cloud of steam and light hydrocarbons from

Vacuum Tower #3 that resulted in the temporary evacuation of some employees and the

mobilization of the Refinery's fire department. During the January 2021 incident, which

occurred throughout the latter half of the month of January, the Defendants fed H2S into Flare #8

at concentrations that exceeded the 162 ppmv limitation on multiple occasions, and exceeded

5,000 ppmv for a number of hours during that period and 20,000 ppmv for at least 5 hours on

January 25. On information and belief, during some periods in January 2021, H2S and SO2 were

emitted from Flare #8 at levels at least as high as those during the April Incident.

### *Prospects for Continued Operations at the Refinery*

56.     On information and belief, the fire that engulfed the top of Flare #8 on May 12,

2021 damaged critical components of Flare #8 such that Refinery operations cannot be

conducted safely until inspections and repairs are made.

57.     As set forth in Exhibit 1, multiple different failures caused each of the above-

described incidents in February, April and May of 2021, including the overloading of

inadequately-sized equipment or systems meant to prevent such an incident, failure or

inoperability of backup systems, failure of pressure safety valves and process monitoring

devices, operator error, and instrumentation/communications errors. On information and belief,

this breadth of underlying causes and frequency of incidents (including those in December, 2020 and January, 2021) is indicative of systemic operational and management failures.

58.     On information and belief, the Refinery cannot operate safely until the root causes of these problems, including systemic management issues, are identified and addressed.

### *EPA Emergency Order and Need for this Civil Action*

59.     On May 14, 2021, EPA issued an administrative order under Section 303 of the CAA (EPA Order) requiring the Defendants to cease operations at the Refinery until they have addressed the problems that caused the incidents above in order to ensure that the Refinery is no longer presenting an imminent and substantial endangerment to public health, welfare, or the environment.

60.     The EPA Order requires the Defendants to undertake independent third party audits of the Refinery's environmental compliance and process units and, within 56 days of the issuance of the Order, submit a plan (the "Corrective Action Plan") for EPA review and approval to implement corrective measures in response to the audits' findings.  See Exh.1 at ¶¶ 105-117.

61.     Under CAA Section 303, the EPA Order would expire 60 days after its issuance, i.e. on July 13, 2021, absent the filing of this civil action.

62.     EPA's review and approval of the Corrective Action Plan may not be completed between July 9, 2021, when Defendants are required to submit it, and July 13, 2021, when the EPA Order would expire absent this civil action.

63.     The EPA Order does not require the Defendants to implement or comply with the Corrective Action Plan upon its approval by EPA.

64.     Defendants' implementation and compliance with the Corrective Action Plan will likely occur, if at all, only after the expiration of the EPA Order, making any commitment to comply unenforceable absent the relief requested herein.

65.     Absent the relief requested herein, upon the expiration of the EPA Order, the Refinery could restart operations at any time without advance notice to EPA and without being bound by the requirements of the EPA Order.

## CLAIM FOR RELIEF

66.     Paragraphs 1 through 65 are realleged and incorporated herein by reference.

67.     Congress enacted the CAA "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1). Section 303 of the CAA ("Emergency Powers") states:

> Notwithstanding any other provision of this chapter, the Administrator, upon receipt of evidence that a pollution source or combination of sources (including moving sources) is presenting an imminent and substantial endangerment to public health or welfare, or the environment, may bring suit on behalf of the United States in the appropriate United States district court to immediately restrain any person causing or contributing to the alleged pollution to stop the emission of air pollutants causing or contributing to such pollution or to take such other action as may be necessary.

42 U.S.C. § 7603 (emphasis added).

68.     CAA Section 302(g) defines an "air pollutant" as "any air pollution agent or combination of such agents, including any . . . chemical substance or matter which is emitted into or otherwise enters ambient air." 42 U.S.C. § 7602(g).  At all times relevant to the Complaint, $H_2S$, $SO_2$, uncombusted hydrocarbons, and Flare Rainout have each been an "air pollutant" within the meaning of CAA Section 302(g), 42 U.S.C. § 7602(g), because they are each a chemical substance that is emitted to the air from the Refinery.

15

69. The CAA does not define "pollution source." The Refinery is a pollution source or "combination of sources" within the meaning of 42 U.S.C. § 7603, because it is the source of $H_2S$, $SO_2$, uncombusted hydrocarbons, and Flare Rainout into the air.

70. CAA Section 302(e) defines "person" to include individuals, corporations, partnerships and associations. 42 U.S.C. § 7602(e). Defendants are each a person because each is a limited liability company that is either a "corporation" or an "association" within the meaning of CAA Section 302(e).

71. The term "welfare" includes effects on personal comfort and well-being. 42 U.S.C. § 7602(h). $H_2S$, $SO_2$, uncombusted hydrocarbons, and Flare Rainout emitted from the Refinery have had adverse effects on the personal comfort and well-being of thousands of people who live and work downwind of the Refinery.

72. $H_2S$, $SO_2$, uncombusted hydrocarbons, and/or Flare Rainout emitted from the Refinery have had adverse effects on the health of many people who live and work in the communities downwind of the Refinery.

73. $H_2S$, $SO_2$, uncombusted hydrocarbons, and/or Flare Rainout emitted from the Refinery have had adverse effects on the environment in areas downwind of the Refinery.

74. Without the relief requested herein, the Refinery cannot operate without emitting $H_2S$, $SO_2$, uncombusted hydrocarbons, Flare Rainout, and/or other pollutants at levels that have adverse effects on the personal comfort, well-being, and/or health of people who live and work downwind of the Refinery and on the environment.

75. Future emission of Flare Rainout by the Refinery could cause Flaming Rain, posing a risk of combustion, fire, and/or explosion, which would have adverse effects on

16

personal comfort, well-being and/or health of both nearby residents and Refinery workers and/or on the environment.

76.     The Refinery is a pollution source that is presenting an imminent and substantial endangerment to public health or welfare or the environment.

77.     Defendants, by their operation of the Refinery, cause or contribute to the emission of $H_2S$, $SO_2$, uncombusted hydrocarbons, and Flare Rainout from the Refinery.

78.     Defendants, as the owners and/or operators of the Refinery, are liable for injunctive relief to immediately stop excess emissions of $H_2S$, $SO_2$, uncombusted hydrocarbons, and emissions of Flare Rainout, and to take such other action as may be necessary to abate the endangerment.

79.     EPA received evidence that the Refinery is presenting an imminent and substantial endangerment to public health or welfare or the environment.  EPA determined that issuance of the EPA Order was necessary to assure prompt protection of public health or welfare or the environment because it was not practicable to wait for the commencement of a civil action in United States District Court to assure such prompt protection.

80.     The filing of this civil action automatically extends the effective period of the EPA Order by 14 days, and the Court is authorized to order any longer period as may be appropriate, in addition to ordering such other and further relief as it deems proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff the United States of America respectfully requests that the Court provide the following relief:

1.     Order Defendants to continue to comply with the requirements set forth in the EPA Order for an additional period as appropriate to ensure that the Refinery operations will not continue to present an imminent and substantial endangerment.

2.     Order Defendants to take all measures necessary to eliminate the imminent and substantial endangerment posed by the Refinery before restarting Refinery operations, including but not limited to implementing and complying with measures in the Corrective Action Plan upon its approval by EPA and installing and operating ambient air monitoring equipment for $H_2S$ and $SO_2$ in appropriate locations potentially downwind of the Refinery to demonstrate that the Refinery no longer presents an imminent and substantial endangerment.

3.     Award Plaintiff such other and further relief that the Court deems just and proper.

Respectfully submitted,

JEAN E. WILLIAMS
Acting Assistant Attorney General
Environment and Natural Resources Division


Myles S. Flint II, Senior Counsel
Eric D. Albert, Senior Attorney
Sheila McAnaney, Trial Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
P.O. Box 7611
Washington, DC 20044-7611
Phone: 202-307-1859
Email: myles.flint@usdoj.gov

18

GRETCHEN C.F. SHAPPERT
United States Attorney
United States Virgin Islands
Federal Building and U.S. Courthouse
5500 Veterans Drive, Room 260
St. Thomas, USVI 00802

JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| United States of America | Limetree Bay Refining, LLC and Limetree Bay Terminals, LLC |

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

See Attachment

Attorneys *(If Known)*

See Attachment

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

[x] 1 U.S. Government Plaintiff

[ ] 2 U.S. Government Defendant

[ ] 3 Federal Question
*(U.S. Government Not a Party)*

[ ] 4 Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance<br>[ ] 120 Marine<br>[ ] 130 Miller Act<br>[ ] 140 Negotiable Instrument<br>[ ] 150 Recovery of Overpayment & Enforcement of Judgment<br>[ ] 151 Medicare Act<br>[ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>[ ] 153 Recovery of Overpayment of Veteran's Benefits<br>[ ] 160 Stockholders' Suits<br>[ ] 190 Other Contract<br>[ ] 195 Contract Product Liability<br>[ ] 196 Franchise | **PERSONAL INJURY**<br>[ ] 310 Airplane<br>[ ] 315 Airplane Product Liability<br>[ ] 320 Assault, Libel & Slander<br>[ ] 330 Federal Employers' Liability<br>[ ] 340 Marine<br>[ ] 345 Marine Product Liability<br>[ ] 350 Motor Vehicle<br>[ ] 355 Motor Vehicle Product Liability<br>[ ] 360 Other Personal Injury<br>[ ] 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>[ ] 365 Personal Injury - Product Liability<br>[ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>[ ] 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>[ ] 370 Other Fraud<br>[ ] 371 Truth in Lending<br>[ ] 380 Other Personal Property Damage<br>[ ] 385 Property Damage Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881<br>[ ] 690 Other | [ ] 422 Appeal 28 USC 158<br>[ ] 423 Withdrawal 28 USC 157<br><br>**PROPERTY RIGHTS**<br>[ ] 820 Copyrights<br>[ ] 830 Patent<br>[ ] 835 Patent - Abbreviated New Drug Application<br>[ ] 840 Trademark<br>[ ] 880 Defend Trade Secrets Act of 2016 | [ ] 375 False Claims Act<br>[ ] 376 Qui Tam (31 USC 3729(a))<br>[ ] 400 State Reapportionment<br>[ ] 410 Antitrust<br>[ ] 430 Banks and Banking<br>[ ] 450 Commerce<br>[ ] 460 Deportation<br>[ ] 470 Racketeer Influenced and Corrupt Organizations<br>[ ] 480 Consumer Credit (15 USC 1681 or 1692)<br>[ ] 485 Telephone Consumer Protection Act<br>[ ] 490 Cable/Sat TV<br>[ ] 850 Securities/Commodities/ Exchange<br>[ ] 890 Other Statutory Actions<br>[ ] 891 Agricultural Acts<br>[x] 893 Environmental Matters<br>[ ] 895 Freedom of Information Act<br>[ ] 896 Arbitration<br>[ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>[ ] 950 Constitutionality of State Statutes |
| **REAL PROPERTY**<br>[ ] 210 Land Condemnation<br>[ ] 220 Foreclosure<br>[ ] 230 Rent Lease & Ejectment<br>[ ] 240 Torts to Land<br>[ ] 245 Tort Product Liability<br>[ ] 290 All Other Real Property | **CIVIL RIGHTS**<br>[ ] 440 Other Civil Rights<br>[ ] 441 Voting<br>[ ] 442 Employment<br>[ ] 443 Housing/ Accommodations<br>[ ] 445 Amer. w/Disabilities - Employment<br>[ ] 446 Amer. w/Disabilities - Other<br>[ ] 448 Education | **PRISONER PETITIONS**<br>**Habeas Corpus:**<br>[ ] 463 Alien Detainee<br>[ ] 510 Motions to Vacate Sentence<br>[ ] 530 General<br>[ ] 535 Death Penalty<br>**Other:**<br>[ ] 540 Mandamus & Other<br>[ ] 550 Civil Rights<br>[ ] 555 Prison Condition<br>[ ] 560 Civil Detainee - Conditions of Confinement | **LABOR**<br>[ ] 710 Fair Labor Standards Act<br>[ ] 720 Labor/Management Relations<br>[ ] 740 Railway Labor Act<br>[ ] 751 Family and Medical Leave Act<br>[ ] 790 Other Labor Litigation<br>[ ] 791 Employee Retirement Income Security Act<br>**IMMIGRATION**<br>[ ] 462 Naturalization Application<br>[ ] 465 Other Immigration Actions | **SOCIAL SECURITY**<br>[ ] 861 HIA (1395ff)<br>[ ] 862 Black Lung (923)<br>[ ] 863 DIWC/DIWW (405(g))<br>[ ] 864 SSID Title XVI<br>[ ] 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>[ ] 870 Taxes (U.S. Plaintiff or Defendant)<br>[ ] 871 IRS—Third Party 26 USC 7609 | |

## V. ORIGIN *(Place an "X" in One Box Only)*

[x] 1 Original Proceeding

[ ] 2 Removed from State Court

[ ] 3 Remanded from Appellate Court

[ ] 4 Reinstated or Reopened

[ ] 5 Transferred from Another District *(specify)*

[ ] 6 Multidistrict Litigation - Transfer

[ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Section 303 of the Clean Air Act, 42 U.S.C. § 7603

Brief description of cause:
Plaintiff seeks injunctive relief related to imminent and substantial endangerment to public health or welfare or the environment posed by Defendant's

## VII. REQUESTED IN COMPLAINT:

[ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes [x] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE
July 14, 2021

SIGNATURE OF ATTORNEY OF RECORD
/Myles E. Flint, II

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

**CIVIL COVER SHEET ATTACHMENT**
**United States of America v. Limetree Bay Refining, LLC and Limetree Bay Terminals,**
**LLC**
**Civil Action No. 1:21-cv-264**

**For the United States of America:**
Myles E. Flint, II
United States Department of Justice
Environment & Natural Resources Division
Environmental Enforcement Section
P.O Box 7611, Ben Franklin Station
Washington, DC 20044
202-514-3659

Eric D. Albert
United States Department of Justice
Environment & Natural Resources Division
Environmental Enforcement Section
P.O Box 7611, Ben Franklin Station
Washington, DC 20044
(202) 514-2800

Sheila McAnaney
United States Department of Justice
Environment & Natural Resources Division
Environmental Enforcement Section
P.O Box 7611, Ben Franklin Station
Washington, DC 20044
(202) 616-6535

**For Limetree Bay Refining, LLC**
Mark DeLaquil
Matthew Thurlow
Baker & Hostetler LLP
Washington Square, Suite 1100
1050 Connecticut Avenue NW
Washington, D.C. 20036
(202) 861-1500

**For Limetree Bay Terminals, LLC**
Mark Chavez
General Counsel
Limetree Bay Terminals, LLC
One Estate Hope
Christiansted, USVI 00820
(832) 553-1181