**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | |
|---|---|
| NICOLE WOOTEN,<br><br>              Plaintiff,<br><br>      v.<br><br>LIMETREE BAY TERMINALS d/b/a OCEAN POINT TERMINALS, PORT HAMILTON REFINING & TRANSPORTATION, WEST INDIES PETROLEUM LTD., and LIMETREE BAY REFINERY, LLC, as a nominal Defendant<br><br>              Defendants. | Case No. 1:23-cv-00012-WAL-EAH |

**OCEAN POINT'S MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION DISMISS COUNT II OF THE CROSSCLAIM, STRIKE
SPECIFIC PARAGRAPHS OF THE CROSSCLAIM, AND FOR FEES AND COSTS**

Defendant Limetree Bay Terminals, LLC d/b/a Ocean Point Terminals ("Ocean Point"), pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), and 12(f), hereby submits this memorandum of law in support of its Motion to Dismiss Count II of the Crossclaim, to Strike Specific Paragraphs of the Crossclaim, and for Fees and Costs (the "Motion"), filed contemporaneously herewith.  In support the Motion, Ocean Point states as follows:

**PRELIMINARY STATEMENT**

The Crossclaim purports to assert claims against Ocean Point for: (1) contribution to the extent Port Hamilton is found liable to Plaintiff Nicole Wooten ("Wooten") for any injuries she sustained while entering the refinery on August 8, 2022 (Count I); and (2) gross negligence for damages Port Hamilton sustained because of Ocean Point's alleged conduct in response to the emergency (Count II).

Count II should be dismissed for lack of subject matter jurisdiction because, although there is an attenuated relationship between the Second Amended Complaint filed by Wooten [ECF No. 38] (the "Complaint") and Count II of the Crossclaim, there is no **meaningful** overlap between the facts and law underlying the different claims at issue. Here, other than the fact that the Complaint relates to Wooten arriving at the refinery while petroleum coke was smoldering in the North Coke Dome, there is no relation between Wooten's Complaint, which asserts *personal injury* damages allegedly occurring on August 8, 2022, and Count II of the Crossclaim, which seeks gross negligence *property damages* for a fire that **did not start until two weeks later on August 21**. Accordingly, as Count II bears no logical relationship to the Complaint (because the Crossclaim is wholly independent of the Complaint) it fails to meet the test for crossclaims set forth in Rule 13(g) and presents no basis for the Court to invoke supplemental jurisdiction. Even if, however, the Court were to find that it *could* exercise supplemental jurisdiction over the Crossclaim, it should decline to exercise its discretion in the interest of judicial efficiency and to avoid confusion of the issues.

The Court should also strike paragraphs 30-31, 43, and 48-52 and 62-65 of the Crossclaim as impertinent, immaterial, and/or scandalous and award Ocean Point its reasonable attorney's fees and costs in defending Count II. If the Court were to deny Ocean Point's motion to dismiss Count II of the Crossclaim for lack of subject matter jurisdiction, the Court should dismiss Count II for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Particularly when paragraphs 30-31, 43, 48-52, and 62-65 of the Crossclaim are stricken, Port Hamilton does not, and cannot, plead a plausible claim for gross negligence or, consequently, seek punitive damages.

**ARGUMENT**

A. **Count II of the Crossclaim Should be Dismissed Because There is No Meaningful Overlap Between the Facts and Law Underlying the Different Claims at Issue.**

   1. **Legal Standard for Motion to Dismiss for Lack of Subject Matter Jurisdiction**

It is well settled that the Court is responsible for ensuring that it has subject matter jurisdiction before addressing the merits of a matter. *See In re Orthopedic "Bone Screw" Prods. Liab. Litig.*, 132 F.3d 152, 155 (3d Cir. 1997) ("If a court then determines that it lacks subject matter jurisdiction, it cannot decide the case on the merits."). As it relates to subject matter jurisdiction, Fed. R. Civ. P. 13(g) governs "Crossclaim[s] Against a Coparty." It provides, in pertinent part:

> A pleading may state as a crossclaim any claim by one party against a coparty if the claim arises out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim, or if the claim relates to any property that is the subject matter of the original action.

Fed. R. Civ. P. 13(g). "Since 'the same verbal formulation also serves as the basis for defining compulsory counterclaims under Rule 13(a), most courts have held that the standards developed for dealing with compulsory counterclaims also applies to crossclaims under Rule 13(g).'" *The Bank of Nova Scotia v. Ross*, Civ. No. 2010-0118, 2015 WL 8967649, at *3 (D.V.I. Dec. 15, 2015) (quoting Charles Alan Wright, Arthur R. Miller, et al., 6 *Fed. Prac. & Proc.* Civ. §1432 (3d ed.)).

A Rule 13(g) analysis requires the Court to perform a "'logical relationship' test, where the inquiry is whether the counterclaim or crossclaim 'bears a logical relationship to an opposing party's claim." *Id.* at *3 (quoting *M.R. v. Ridley Sch. Dist.*, 744 F.3d 112, 121 (3d Cir. 2014)) (internal quotation marks and citation omitted). "In the Third Circuit, the logical relationship test is satisfied 'where separate trials on each of the[ ] respective claims would involve a substantial

3

duplication of effort and time by the parties and the courts.'" *Id.* (quoting *Ridley Sch. Dist.*, 744 F.3d at 121) (alterations in original) (internal quotation marks and citation omitted). A "'substantial duplication of effort' is, in turn likely, to occur when claims involve (1) the same factual issues, (2) the same factual and legal issues, or (3) are offshoots of the same basic controversy between the parties." *Watkins v. Synchrony Bank*, 2015 WL 5178134, at *3 (M.D. Pa. Sept. 4, 2015) (quoting *Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc.*, 292 F.3d 384, 389 (3d Cir. 2002)).

### 2. The Court Lacks Subject Matter Jurisdiction Because the Crossclaim Fails to Pass Rule 13(g)'s "Logical Relationship" Test.

Here, although there is an attenuated relationship between the Complaint and the Crossclaim – smoldering petroleum coke – there is no meaningful overlap between the facts and law underlying the different claims at issue. The underlying facts and crux of Plaintiff's alleged injuries are that she inhaled "thick black smoke coming out of the dome building" while at the refinery as part of her job for US Customs and Border Protection. *See* [ECF No. 38] Compl. ¶¶ 24, 25, 28. Importantly, the allegations in the Complaint are limited to one day – August 8, 2022. *Id.* Meanwhile, the Crossclaim contains allegations that span at least 24 days – with 20 days of which occurred **after** Wooten was purportedly injured. *See e.g.* Crossclaim ¶¶ 42-52. Notably, Wooten is not mentioned in any of these paragraphs. Moreover, the underlying law for Plaintiff's various theories of negligence based on premises liability are different and not logically related to Port Hamilton's erroneous claim for extortion within the meaning of 14 V.I.C. § 701. *Compare* Compl. ¶¶ 37-51 *with* Crossclaim ¶ 43.

Based on the foregoing, Count II of the Crossclaim does not concern the same factual or legal issues and is not an offshoot of the same basic controversy between the parties. It cannot under any circumstances be considered logically related to Plaintiff's underlying claims. *See Ross*,

4

2015 WL 8967649, *3 (dismissing the crossclaim, finding that the Court lacked jurisdiction or, alternatively, would not exercise jurisdiction over defendant's crossclaim because there was "no meaningful overlap between the facts and law underlying the different claims at issue"); *see also* *Sage Title Groups, LLC v. Kersey*, Civ. No. 2016-03 2016 WL 3762979, at *3 (E.D. Pa. July 11, 2016) (dismissing a crossclaim for improper transfer of jointly owned property because it bore no logical relationship to the underlying complaint which simply sought court intervention in determining the meaning of period in a deed and apportioning the appropriate shares to all parties); *Allstate Life Ins. Co. v. McBrearty*, Civ. No. 2011-1380, 2013 WL 2291888, at *6 (M.D. Pa. May 24, 2013) (dismissing crossclaim alleging an abuse of a fiduciary relationship since it bore no logical relationship to the original interpleader action).

Because there is no meaningful overlap or logical relationship between the facts and law of the Complaint and the Crossclaim, the Court should dismiss Count II for lack of subject matter jurisdiction.

    **B.**    **Paragraphs 30-31, 43, 48-52, and 62-65 of the Crossclaim Should be Stricken Because The Allegations Contained Therein Are Impertinent, Immaterial, and/or Scandalous**

        **1.**  <u>**Legal Standard for Motion to Strike**</u>

Rule 12(f) provides that a district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The court has "considerable discretion" in striking an allegation. *United States v. Southland Gaming of the V.I., Inc.*, 182 F. Supp. 3d 297, 317 (D.V.I. 2016). "Immaterial matter has been defined as 'that which has no essential or important relationship to the claim for relief.'" *Southland Gaming of the V.I., Inc.*, 182 F. Supp. 3d at *317 (quoting *Donnelly v. Commonwealth Fin. Sys.*, 2008 WL 762085, at *4 (M.D. Pa. Mar. 20, 2008). "Impertinent matter consists of statements that do not

5

pertain, and are not necessary, to the issues in question." *Id*. "Scandalous" matters are "[u]nnecessary matter or facts criminatory of a party referred to in a pleading. *DirecTV, Inc. v. Weikel*, Civ. No., 2005 WL 1243378, at *2 (D.N.J. May 25, 2005).

### 2. The Court Should Grant the Motion to Strike Because Port Hamilton Executed a Mutual Release Prohibiting the Crossclaim.

On August 21, 2022, the day Port Hamilton acknowledged the fire that caused its alleged property damage broke out (*See* Crossclaim ¶ 48), Ocean Point and Port Hamilton entered into a certain Mutual Aid Agreement ("Agreement") which prohibits the very relief that the Crossclaim seeks to recover. A true and correct copy of the Agreement is attached hereto as **Exhibit A**.

To be clear, under the Agreement, Port Hamilton requested from Ocean Point, and Ocean Point agreed to provide assets and personnel to respond to the petroleum coke incident at the refinery. *See* Ex. A. The Agreement acknowledges that (1) Ocean Point had no obligation to respond to the petroleum coke fire at the refinery; (2) Ocean Point could withhold any of its resources; and (3) Port Hamilton would remain in ultimate control of, and bear responsibility for, any emergency response to the petroleum coke fire. *Id.* Clearly, the Agreement directly contradicts the allegations of the Crossclaim.

Most importantly, for purposes of this motion, under the Agreement, Port Hamilton released and forever discharged Ocean Point from "any and all obligations, causes of action, losses, damages, charges, expenses, and demands of whatsoever nature, known or unknown, which may ever accrue in connection with the assistance rendered by Ocean Point to Port Hamilton pursuant to th[e] Agreement." *Id.* Port Hamilton also agreed to defend, indemnify, and hold Ocean Point harmless. *Id.*

For clarity, the Mutual Aid Agreement states in pertinent part as follows:

6

### Release of Ocean Point

> **TO THE MAXIMUM EXTENT PERMITTED BY THE LAWS OF THE UNITED STATES VIRGIN ISLANDS, PORT HAMILTON HEREBY RELEASES, ACQUITS, AND FOREVER DISCHARGES OCEAN POINT AND ALL OF ITS CURRENT OR FORMER AFFILIATES, OFFICERS, MANAGERS, DIRECTORS, SHAREHOLDERS, EMPLOYEES, INSURERS, AGENTS, REPRESENTATIVES AND ALL PERSONS ACTING BY, THOUGH, UNDER OR IN CONCERN WITH THEM (COLLECTIVELY, THE "RELEASED PARTIES") OF, FROM, AND WITH RESPECT TO ANY AND ALL LIABILITY ARISING FROM ANY AND ALL OBLIGATIONS, CAUSES OF ACTION, SUITS, PROMISES, AGREEMENTS, LOSSES, DAMAGES, CHARGES, EXPENSES, CHALLENGES, CONTESTS, LIABILITIES, COSTS, CLAIMS, AND DEMANDS OF WHATSOEVER NATURE, KNOWN OR UNKNOWN, WHICH MAY EVER ACCRUE IN CONNECTION WITH THE ASSISTANCE RENDERED BY OCEAN POINT TO PORT HAMILTON PURSUANT TO THIS AGREEMENT.**
>
> **PORT HAMILTON FURTHER AGREES TO DEFEND, INDEMNIFY AND HOLD HARMLESS OCEAN POINT FOR ANY AND ALL OBLIGATIONS, CAUSES OF ACTION, SUITS, PROMISES, AGREEMENTS, LOSSES, DAMAGES, CHARGES, EXPENSES, CHALLENGES, CONTESTS, LIABILITIES, COSTS, CLAIMS, AND DEMAND OF WHATSOEVER NATURE THAT MAY ARISE OR MAY BE INCURRED BY OCEAN POINT AS A RESULT OF THIS AGREEMENT AND ANY ASSISTANCE IT PROVIDES PURSUANT THERETO.**

                                              ***

*See* Ex. A.

Despite this release being executed on August 21, 2022, the *same* day Port Hamilton acknowledges the fire at the refinery started (Crossclaim ¶ 48), Port Hamilton forces Ocean Point to respond to the Crossclaim, which asserts the following:

  a) At 0812 on August 21, 2022, Port Hamilton's Rodriguez texted Ocean Point's Charles to request assistance from Ocean Point in responding to this fire, which was in the vicinity of Ocean Point's docks and posed a threat to Ocean Point's own property. Ocean Point's Charles did not respond to this text and Ocean Point did not respond with any assistance. Instead, Ocean Point's emergency response personnel, including Charles, chose to observe the situation from a safe distance. The cause of the fire was the excessive heat emanating from the [North Coke Dome], which heated and dried out the conveyor belt and caused it to spontaneously combust. (*See* Crossclaim ¶¶ 49-52), and

> b) When the high temperatures migrated to the coke handling conveyor system, it caused the coke handling conveyor belt to dry out and then catch fire, causing further damage to Port Hamilton's equipment. Port Hamilton incurred additional expenses to control the coke smolder/conveyor fire in excess of $2.3 million that it would not have incurred but for Ocean Point's illegal and improper conduct. In addition, the delays in responding to the coke smolder/conveyor fire caused an estimated $2–4 million in damage to Port Hamilton's equipment that would not have occurred but for Ocean Point's illegal and improper conduct.

*See* Crossclaim ¶¶ 62-65.

Because the Mutual Aid Agreement unequivocally releases Ocean Point for these very allegations, they have no essential or important relationship to Plaintiff's claims for relief and do not pertain, and are not necessary, to the issues in question. Therefore, paragraphs 48-52 and 62-65 of the Crossclaim are impertinent and immaterial and should be stricken.

### 3. The Court Should Grant the Motion to Strike Because the Allegations are Scandalous, Impertinent, and Immaterial

The Court should also strike the allegations contained in paragraphs 30-31 and 43 of the Crossclaim, which accuse Ocean Point of criminal conduct, as scandalous, impertinent, and immaterial in pursuant to Rule 12(f). The prototypical example for the grant of a motion to strike is where the allegations "have no real bearing on the case, will likely prejudice the movant, or where they have criminal overtones." *See generally Oram v. SoulCycle LLC*, 979 F. Supp. 2d 498, 511 (S.D.N.Y. 2013). Indeed, courts in this Circuit dating as far back as the 1940s have defined "scandalous," as those facts which are "'[u]nnecessary matter or facts criminatory of a party referred to in the pleading.'" *DirecTV, Inc. v. Weikel*, Civ. No. 03-5300 (JBS), 2005 WL 1243378, at *2 (D.N.J. May 25, 2005) (quoting *Burke v. Mesta Mach. Co.*, 5 F.R.D. 134, 138 (W.D. Pa. 1946)). Federal courts facing such scandalous, impertinent, immaterial, and prejudicial claims of criminality regularly strike such allegations. *E.g. Beckmann v. Synertech P/M, Inc.*, Case No.

8

SACV 11-01421-CJC(RNBx), 2012 WL 13175674, at *4 (C.D. Cal. Apr. 26, 2012) (striking allegations as "immaterial, impertinent and scandalous" because the "potential criminal liability of . . . Defendants . . . [is] not relevant or necessary for determining whether . . . Defendants are subject to civil liability . . . [s]uch claims are not dependent upon a finding of criminal liability, and accusations that Defendants have committed a crime may prejudice them by unduly influencing juror opinion.").

In paragraphs 30-31 and 43 Port Hamilton accuses Ocean Point of criminal acts in violation of 14 V.I.C. § 1508(a) and 14 V.I.C. § 701. As supported by the numerous courts throughout the country, this Court should strike the Counterclaim's allegations of criminality contained in paragraphs 30-31 and 43 as impertinent, immaterial, and scandalous. *E.g. Burke*, 2012 WL 13175674, at *4. Port Hamilton's erroneous claims of criminality, notwithstanding their sheer falsity, are "not relevant or necessary for determining whether [Ocean Point is] subject to civil liability." *Id.* Thus, this Court should strike the allegations. Any finding suggesting otherwise will certainly prejudice Ocean Point by allowing those claims to proceed, forcing the parties to engage in needless discovery regarding those allegations, and improperly "influenc[e] juror opinion." *Id.*

### C. Particularly When Paragraphs 30-31, 43, 48-52, and 62-65 of the Crossclaim Are Stricken, Port Hamilton Does Not, and Cannot, State a Claim for Gross Negligence, or can it Seek Punitive Damages

#### 1. Legal Standard for Motion to Dismiss for Failure to State a Claim

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Stephenson v. Lovonago Holdings, LLP*, Civ. No. 3:23-cv-0001, 2024 WL 416305 (D.V.I. Feb. 2024) (quoting *Mayer v. Belichick*,

9

605 F. 3d 223, 230 (3d Cir. 2010). However, the Court may consider documents attached to a motion to dismiss that are integral to a complaint or crossclaim. *Claxton v. Oriental Bank (formerly Bank of Nova Scotia)*, Civ. No. 19-CV-0069, 2022 WL 3683800, at *3 (D.V.I. Aug. 25, 2022) ("District courts may rely on documents appended to a motion to dismiss that are 'integral to . . . the complaint.' That remains true so long as such documents are part of the public record or are 'undisputedly authentic.'" (internal citations omitted)); *Ainger v. Great Am. Assur. Co.*, Civ. No. 2020-0005, 2022 WL 4379794, at *3 (D.V.I. Sept. 2022) ("a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment."). "[T]he justification for the integral documents exception is that it is not unfair to hold a plaintiff accountable for the contents of documents it must have used in framing its complaint, nor should a plaintiff be able to evade accountability for such documents simply by not attaching them to his complaint." *Id*. at *3 n.2 (quoting *Schmidt v. Skolas*, 770 F.3d 241, 2580 (3d Cir. 2014)). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." *Id*. at *3 n.2 (quoting *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

### 2. **Plaintiff's Claims for Gross Negligence and Punitive Damages Must Be Dismissed**

Particularly without paragraphs 30-31, 43, 48-52, and 62-65 of the Crossclaim, Port Hamilton does not, and cannot, plead a plausible claim for gross negligence or punitive damages. Under Virgin Islands law, gross negligence has a level of culpability distinct from ordinary negligence. *Brathwaite v. Xavier*, 71 V.I. 1089, 1101 (V.I. 2019). Gross negligence "must be more than any mere mistake resulting from inexperience, excitement, or confusion, and more than mere thoughtlessness or inadvertence, or simple inattention." *Id.* at 1110-1111; *Smith v. Virgin*

10

*Islands Housing Authority*, Civ. No. 2009-0011, 2023 WL 2742078 *6 (D.V.I. Mar. 31, 2023) ("Courts have found that a plaintiff alleging gross negligence must assert affirmative facts to show more than mere negligence."). To adequately claim gross negligence against Ocean Point, Port Hamilton is required to plead facts plausibly suggesting that: (1) Ocean Point owed Port Hamilton a legal duty of care; (2) Ocean Point breached that duty in such a way as to demonstrate a wanton, reckless indifference to the risk of injury to Port Hamilton; (3) and Ocean Point's breach constituted the proximate cause of (4) damages to Port Hamilton. *Brathwaite*, 71 V.I at 1111. Here, the Crossclaim fails to plead facts plausibly suggesting the elements of a gross negligence claim are satisfied.

Aside from the fact that the Crossclaim is devoid of any allegations to establish that Ocean Point owed Port Hamilton a legal duty related to the refinery and the North Coke Dome, Port Hamilton fails to cite any facts showing a reckless indifference to the risk of injury to Port Hamilton. Even assuming *arguendo* that Port Hamilton can establish duty or reckless indifference, the Crossclaim still fails for lack of damages. Indeed, the Mutual Aid Agreement releases and forever discharges Ocean Point from <u>any and all</u> liability arising from "<u>any and all</u> obligations, causes of action, losses, damages, liabilities, and expenses in connection with the assistance Rendered by Ocean Point to Port Hamilton." *See* Ex. A. Accordingly, under no circumstances can Port Hamilton plead a claim for gross negligence against Ocean Point, particularly for Ocean Point's acts or inactions that allegedly occurred after August 21, 2022. Consequently, Port Hamilton's request for punitive damages must fail. *Smith*, 2023 WL 2742078 *10 (D.V.I. Mar. 31, 2023) ("It is well settled that punitive damages do not constitute an independent cause of action"); *Livingston v. Louis Berger*, Civil Action No. 2019-0012, 2023 WL 7705035 *2 (D.V.I. Nov. 14, 2023) ("Punitive damages must be based upon conduct that is not just negligent but

shows, at a minimum, reckless indifference to the person injured—conduct that is outrageous and warrants special deterrence.").

Because Port Hamilton cannot plead facts plausibly to maintain a cause of action for gross negligence, the Court should dismiss Count II of the Crossclaim *with prejudice*.

> **D.   Pursuant to the Mutual Aid Agreement, Port Hamilton is Required to Reimburse Ocean Point for the Attorney's Fees and Costs it Incurred in Filing This Motion.**

Pursuant to the Agreement, Port Hamilton released and forever discharged Ocean Point "from any and all obligations, causes of action, losses, damages, charges, expenses, and demands of whatsoever nature, known or unknown, which may ever accrue in connection with the assistance rendered by Ocean Point to Port Hamilton pursuant to the Mutual Aid Agreement." *See* Ex. A. It likewise agreed to defend, indemnify, and hold Ocean Point harmless.

Despite this release being executed on August 21, 2022, the day Port Hamilton acknowledges the fire at the refinery started (Crossclaim ¶ 48), Port Hamilton forces Ocean Point to respond to the Crossclaim, which asserts claims against Ocean Point concerning the released claims. *See* Crossclaim ¶¶ 48-52; 62-65.

The Mutual Aid Agreement unequivocally releases Ocean Point for these obligations and requires Port Hamilton to reimburse Ocean Point's attorney's fees and costs in defending against them, irrespective of the Court's ruling on the alternate forms for relief requested in this Motion.

## CONCLUSION

For the reasons set forth above, Ocean Point respectfully requests that this Court enter an order: (1) dismissing Count II of the Crossclaim for lack of subject matter jurisdiction, or alternatively, for failure to state a claim; (2) striking paragraphs 30-31, 43, 48-52, and 62-65 of the Crossclaim as impertinent, immaterial, and/or scandalous; (3) awarding Ocean Point its reasonable

attorney's fees and costs associated with defending Count II of the Crossclaim; and (4) granting Ocean Point such other and further relief as the Court deems just and proper.

DATED:  February 29, 2024          **AKERMAN LLP**
201 East Las Olas Boulevard,
Suite 1800
Fort Lauderdale, Florida 33301
Telephone: (954) 463-2700
Facsimile: (954) 463-2224


By: /s/*Donnie M. King*
   Donnie M. King
   Virgin Islands Bar No. 1237
   Primary e-mail: donnie.king@akerman.com
   Secondary e-mail: sharon.luesang@akerman.com
   David J. Awoleke (admitted *pro hac vice*)
   david.awoleke@akerman.com
   *Counsel for Limetree Bay Terminals, LLC d/b/a Ocean Point Terminals*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 29, 2024, I filed the foregoing document was filed with the Court's electronic filing system on the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/Donnie M. King*
Donnie M. King