IN THE DISTRICT COURT OF THE VIRGIN ISLANDS

DIVISION OF ST. CROIX

| | |
|---|---|
| NICOLE WOOTEN,<br><br>   PLAINTIFF,<br><br> V.<br><br>LIMETREE BAY TERMINALS, LLC D/B/A OCEAN POINT TERMINALS, PORT HAMILTON REFINING AND TRANSPORTATION, LLLP, AND WEST INDIES PETROLUEM, LTD.,<br><br>   DEFENDANTS. | CASE NO. 1:23-CV-00012 |

**PORT HAMILTON'S RESPONSE IN OPPOSITION TO
OCEAN POINT'S MOTION TO DISMISS COUNT II OF THE CROSSCLAIM, STRIKE
SPECIFIC PARAGRAPHS OF THE CROSSCLAIM, AND FOR FEES AND COSTS**

Port Hamilton Refining and Transportation, LLLP ("Port Hamilton"), opposes Limetree Bay Terminals, LLC's d/b/a Ocean Point Terminals' ("Ocean Point") Motion to Dismiss Count II of the Crossclaim, Strike Specific Paragraphs of the Crossclaim, and For Fees and Costs (Doc. No. 55) because

1. Count II is logically related to the allegations of the underlying complaint;

2. the Mutual Aid Agreement relied upon by Ocean Point was prospective only and did not apply to Ocean Point's willful actions that predated the Agreement and which prevented Port Hamilton from controlling the smoldering coke before it got out of control; and

1

3. the allegations that Ocean Point seeks to strike as "scandalous" are appropriate for purposes of plausibly pleading Port Hamilton's claim that Ocean Point was grossly negligent and to plausibly support Port Hamilton's claim for punitive damages.

## INTRODUCTION

Plaintiff alleges in her Second Amended Complaint that: coke had been smoldering in one of Port Hamilton's coke domes since August 4, 2022; Ocean Point impeded Port Hamilton's ability to address the smoldering coke by denying Port Hamilton access to its own firefighting equipment; and as a result, she was exposed to smoke from the coke dome, causing her personal injury. Doc. No. 38, ¶¶19-28. Port Hamilton similarly alleges in its crossclaim that: on the morning of August 4, 2022, it discovered that coke was smoldering in the North Coke Dome; at 9:00 a.m. that day, Ocean Point's Fire Chief informed Port Hamilton that his management had instructed him not to assist with the response to the fire; on the morning of August 5, 2022, Port Hamilton informed Ocean Point that it needed access to fire equipment owned by Port Hamilton; and Ocean Point did not respond to this request for at least 24 hours, during which time the smoldering grew more intense. Doc. No. 51, ¶¶7-22. Port Hamilton specifically alleges that Ocean Point's actions allowed the smoldering coke areas to spread within the coke dome and the situation to worsen. Doc. No. 51, ¶29. Port Hamilton further alleges that Ocean Point's repeated interference with Port Hamilton's efforts to contain the coke smoldering situation led to a fire breaking out in the coke conveyor system. Doc. No. 51, ¶53.

2

Ocean Point takes issue with material facts that objectively cast the company's conduct in a very poor light. While Ocean Point's embarrassment over its poor conduct is understandable, the allegations of its attempt to leverage a dangerous safety situation for an unfair advantage in its commercial dispute are directly related to Port Hamilton's claims against Ocean Point. Certainly, Ocean Point would like to sweep these inconvenient allegations aside. However, its reliance on Rules 12(f) and 12(b)(6) is misplaced.

Ocean Point's Rule 13(g) arguments in support of its motion under Rule 12(b)(1) are also unavailing. Some of Ocean Point's grossly negligent and willful conduct alleged by Port Hamilton occurred before August 8, 2022 and (a) gave rise to Ms. Wooten's claims of injury sustained on August 8, 2022; (b) caused further damage to Port Hamilton's efforts to keep the coke smolder under control such that Ms. Wooten might have avoided being place in harm's way (and thereby avoided her alleged injuries and eliminated the basis for suing Port Hamilton); and (c) ultimately resulted in a fire breaking out in a nearby conveyor belt, causing even greater damages to Port Hamilton. Thus, the gross negligence and punitive damage claims arise out of the same occurrence that is the subject matter of the original action. Hearing the claims together is an efficient use of judicial resources and avoids substantial duplication of efforts in this matter. Consequently, the Court should exercise its ancillary jurisdiction and hear Port Hamilton's claims with the rest of the case.

Lastly, the agreement referenced in Ocean Point's motion, the Mutual Aid Agreement, was not in effect at the time Ocean Point engaged in wrongful conduct against Port Hamilton and the agreement's provisions do not apply retroactively. Thus, Ocean Point's motion for fees and costs must also be denied.

I. **LEGAL STANDARD FOR RULE 12(b)(1)**

A motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction must include inquiry by the court into its own jurisdiction. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.), *reh'g denied*, 622 F.2d 1043 (5th Cir. 1980), *cert. denied*, 449 U.S. 953 (1980). "[I]t is fundamental that a court may consider jurisdiction on its own. The issue of jurisdiction is always open for determination by the court." *In re Orthopedic "Bone Screw" Prod. Liab. Litig.*, 132 F.3d 152, 155 (3d Cir. 1997), citing *Underwood v. Maloney*, 256 F.2d 334 (3d Cir.), *cert. denied*, 358 U.S. 864, 3 L. Ed. 2d 97, 79 S. Ct. 93 (1958).

Where a defendant moves for dismissal for lack of subject matter jurisdiction, as well as on other grounds, the court should rule first on Rule 12(b)(1) challenge since if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot and do not need to be determined. *Rhulen Agency, Inc. v. Alabama Ins. Guaranty Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990). A party opposing the motion should be given the opportunity to present facts in support of his jurisdictional contention before dismissing the complaint. *Viqueira v. First Bank*, 140 F.3d 12, 17 (1st Cir. 1998). Dismissal pursuant to Fed. R. Civ. P. 12(b)(1) is inappropriate unless it appears beyond doubt that plaintiff can prove no set of facts

4

which would entitle him or her to relief. *Raila v. United States*, 355 F.3d 118, 119 (2d Cir. 2004).

### a. THE ALLEGATIONS IN PORT HAMILTON'S CROSSCLAIMS PASS THE "LOGICAL RELATIONSHIP" TEST UNDER RULE 13(g)

Here, Ocean Point is challenging Port Hamilton's claim for gross negligence under Count II of the Crossclaim for lack of subject matter jurisdiction. Ocean Point argues Count II lacks a "logical relationship" to Ms. Wooten's second amended complaint and therefore the Court should decline to exercise its ancillary jurisdiction to hear the claim.

Ocean Point correctly states the legal standard for Rule 13(g). But it misses the mark when applying the law to the present circumstances. Federal Rule of Civil Procedure 13(g) governs and provides, in pertinent part:

> A pleading may state as a crossclaim any claim by one party against a coparty if the claim arises out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim, or if the claim relates to any property that is the subject matter of the original action.

Fed. R. Civ. P. 13(g).

Ocean Point cites *Bank of Nova Scotia v. Ross,* in which this Court held the standards developed for dealing with compulsory counterclaims also apply to crossclaims under Rule 13(g). *Bank of N.S. v. Ross*, Case No. 2010-0118, 2015 WL 8967649, at *3, 2015 U.S. Dist. LEXIS 167284, at *6-7 (D.V.I. Dec. 15, 2015) (quotation omitted). The standard recognized in the Third Circuit for evaluating compulsory counterclaims and crossclaims is the "logical relationship" test, where the relevant inquiry is whether the counterclaim bears a logical relationship to an

5

opposing party's claim. *Id.* (quotation omitted); *see also Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc.*, 292 F.3d 384, 389-90 (3d Cir. 2002) (quoting *Xerox Corp. v. SCM Corp.*, 576 F.2d 1057, 1059 (3d Cir. 1978)). As further articulated by the Third Circuit in *Transamerica*:

> The concept of a "logical relationship" has been viewed liberally to promote judicial economy. Thus, a logical relationship between claims exists where separate trials on each of the claims would "involve a substantial duplication of effort and time by the parties and the courts." Such a duplication is likely to occur when claims involve the same factual issues, the same factual and legal issues, or are offshoots of the same basic controversy between the parties. In short, the objective of Rule 13(a) is to promote judicial economy, so the term "transaction or occurrence" is construed generously to further this purpose.

*Transamerica*, 292 F.3d at 389-90 (citations and quotations omitted); *see also Progressive Cas. Ins. Co. v Belmont Bancorp*, 199 F.R.D. 219, 223 (S.D. Ohio 2001) (recognizing that Fed. R. Civ. P. 13(g) should be liberally construed).

A crossclaim does not need an independent basis for jurisdiction as long as it satisfies the test for ancillary jurisdiction, which requires that crossclaims arise out of transaction or occurrence that is the subject matter of original action, since judicial economy, convenience, and fairness to litigants provide a satisfactory basis for jurisdiction over such nonfederal claim. *Cam-Ful Industries v. Fidelity & Deposit Co.*, 922 F.2d 156, 160 (2d Cir. 1991) (citations and quotations omitted); *see also Progressive Cas. Ins. Co.*, 199 F.R.D. at 223 (stating that if the crossclaim is brought under the same core of facts as the original complaint, the court needs no further basis for jurisdiction.); *Travelers Ins. Co. v. First Nat'l Bank*, 675 F.2d 633, 638 (5th Cir. 1982) (holding that for

6

a nondiverse claim to be considered ancillary to diverse one, it must not only arise from same "core of operative facts" as the diverse claim, but it must also bear a "logical relationship" to that claim). Here, as shown by the corporate disclosures of Port Hamilton and Ocean Point, there is complete diversity between them. *See* Doc. Nos. 5 and 6.

In *Transamerica*, the Third Circuit upheld the district court's dismissal of the plaintiff's case because the appellant's claims should have been asserted as compulsory counterclaims under Rule 13(a) in a parallel Texas state court action. The defendant in *Transamerica* was the controlling plaintiff in the parallel Texas state court action, making it an "opposing party." Furthermore, the district court action involved the same "transaction or occurrence" as the parallel state court action. Thus, the Third Circuit applied a broad and liberal interpretation to the language of Rule 13(a) to give effect to the policy rationale of judicial economy underlying the rule. *Transamerica*, 292 F.3d at 391. Similarly, this Court too should also apply a liberal interpretation of the "transaction or occurrence" and the "logical relationship" language found in Rule 13(g).

Here, Ms. Wooten is claiming personal injury from inhalation of toxic smoke emanating from the refinery. Second Amended Complaint, ¶¶ 24-29 [Doc. No. 38]. The Complaint further details the source of the smoke as being from smoldering petroleum coke stored at the refinery, which Ms. Wooten alleges was not properly addressed for days due Ocean Point's efforts to

7

leverage a commercial dispute with Port Hamilton. *Id*. at ¶ 16-23. Ms. Wooten specifically alleges both Port Hamilton and Ocean Point had a duty with respect to implementing a risk management plan at the refinery for the storage and handling of the petroleum coke. *Id*. at ¶¶ 13-16. Ms. Wooten also alleges that the petroleum coke smoldered for days because Ocean Point "prevented Defendant Port Hamilton from gaining access to its firehouse on refinery property in order to obtain its firetruck and other firefighting and fire suppression gear to allow Defendant Port Hamilton to attempt to control the smoldering petroleum coke." *Id*. at ¶¶ 20-21.

Ocean Point attempts to limit Ms. Wooten's allegations to only the issue of smoldering petroleum coke on the day Ms. Wooten was allegedly injured, August 8, 2022. *See* Ocean Point's Memorandum of Law in Support of Its Motion Dismiss, pg. 4 [Doc. No. 55-1]. However, Ms. Wooten's allegations cover the period of time before her alleged exposure and that time period is also the subject of Port Hamilton's allegations (asserting that Ocean Point's interference cause the coke smoldering situation to get worse). Port Hamilton's Crossclaims allege additional facts that help illuminate Ms. Wooten's allegations and provide additional depth and context regarding the dispute with Ocean Point. *See* Port Hamilton Crossclaim, Doc. No. 51, ¶¶ 19-24, 29, 32, 42, 46-48, 52-53 ("the Crossclaim"). Even though Count II of the Crossclaim asserts damages from Ocean Point's gross negligence and misconduct persisting for 20 days after Ms. Wooten was purportedly injured, the willful,

8

wanton conduct of Ocean Point *before* Ms. Wooten's alleged exposure was the initiating event for both Ms. Wooten's alleged injuries and Port Hamilton's damages. That Ocean Point persisted with its improper conduct after Ms. Wooten was injured does not change the fact that the alleged injuries to Ms. Wooten and Port Hamilton were initiated by Ocean Point's misconduct prior to Ms. Wooten's injury.

Thus, there is a significant overlap in allegations and legal issues between the Complaint and the Crossclaim. Additionally, Count II of the Crossclaim is an offshoot of the controversy between the parties, a controversy Ms. Wooten alleges in her Complaint. Separating Count II from this matter would lead to a significant duplication of effort and time by the parties and the Court. Thus, Count II of the Crossclaim passes the "logical relationship" test, and this Court should maintain ancillary jurisdiction over the claim. Consequently, Ocean Point's motion under Rule 12(b)(1) should be denied.

## II. LEGAL STANDARD FOR RULE 12(f)

A motion to strike under Rule 12(f) is for the purpose of eliminating redundant, immaterial, impertinent, or scandalous matters from pleadings. *Myers v. Beckman*, 1 F.R.D. 99, 100 (D. Okla. 1940). Immaterial matter has been defined as "that which has no essential or important relationship to the claim for relief." *Donnelly v. Commonwealth Fin. Sys.*, Case No. 3:07-CV-1881, 2008 WL 762085, at *4, 2008 U.S. Dist. LEXIS 28604, at *10 (M.D. Pa. Mar. 20, 2008) (quoting *Delaware Health Care v. MCD Holding Co.*, 893 F. Supp.

9

1279, 1291-92 (D. Del. 1995) (internal quotation marks omitted)). "Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Id.*, 2008 U.S. Dist. LEXIS 28604 at *10. Scandalous matter "improperly casts a derogatory light on someone, most typically on a party to the action." *Id.*, 2008 U.S. Dist. LEXIS 28604 at *11 (quoting *Carone v. Whalen*, 121 F.R.D. 231, 233 (M.D. Pa. 1988) (internal quotation marks omitted)). Critically, a motion to strike on the grounds that the matter is impertinent and immaterial should be denied "unless it can be shown that no evidence in support of the allegation would be admissible. *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976). Consequently, "courts will not strike scandalous statements that offend the sensibilities of the objecting party if the challenged allegations describe acts or events relevant to the action." *In re Food Mgmt. Grp., LLC*, 359 B.R. 543, 558 (Bankr. S.D.N.Y. 2007) (citing 5C Wright & Miller § 1382).

"The standard for striking a complaint or a portion of it is strict, and only allegations that are so unrelated to the plaintiffs' claims as to be unworthy of any consideration should be stricken." *United States ex rel. Nissman v. Southland Gaming of the V.I., Inc.*, 182 F. Supp. 3d 297, 317 (D.V.I. 2016) (internal quotation omitted); *see also The Knit With v. Knitting Fever, Inc.*, Case No. 08-4221, 2009 WL 973492, at *6, 2009 U.S. Dist. LEXIS 30230, *18 (E.D. Pa. Apr. 8, 2009) ("Striking a pleading is a 'drastic remedy' and should be used sparingly by courts, partly because of the difficulty of deciding cases

10

without a factual record.") (citing *North Penn Transfer, Inc. v. Victaulic Co. of Am.*, 859 F. Supp. 154, 158-59 (E.D. Pa. 1994)).

### a. THE MUTUAL AID AGREEMENT DOES NOT BAR PORT HAMILTON'S CLAIMS.

Ocean Point's next challenge to Port Hamilton's Count II for gross negligence, and by extension, Port Hamilton's punitive damages relief, is to strategically strike key allegations in the Crossclaim to undermine the claim such that it can be dismissed under Rule 12(b)(6). Ocean Point relies on an external document for the pleadings, the Mutual Aid Agreement. S*ee* Ocean Point's Memorandum of Law, Doc. No. 55-1, pp. 6-8; and Exh. A thereto [Doc. No. 55-2]. However, even if the Court could consider this document without converting the instant motion to a motion for summary judgment (and giving Port Hamilton notice of an intent to do so and an opportunity to respond), Ocean Point fails to address the Achilles' heel in its argument—that the alleged wrongful conduct occurred *prior* to the Mutual Aid Agreement becoming effective.

Ocean Point claims the Mutual Aid Agreement bars Port Hamilton's Count II for gross negligence. However, the Agreement, which is dated August 21, 2022, *see* Doc. No. 55-2 at 3, expressly states that all liability is waived for "THE ASSISTANCE RENDED BY OCEAN POINT TO PORT HAMILTON *PURSUANT TO THIS AGREEMENT*." (Emphasis added). Port Hamilton's Crossclaim alleges facts that show Ocean Point did not render assistance pursuant to the Agreement. *See* Crossclaims ¶¶ 48-52. To the contrary, the

11

wrongful delay in assistance and the deliberate denial of Port Hamilton's access to its own firefighting equipment began two weeks before the Mutual Aid Agreement was executed. This conduct was the initiating event that adversely affected Port Hamilton's efforts to contain the smoldering petroleum coke pile. *See* Crossclaim ¶¶18-24. Had Ocean Point not impeded firefighting efforts commencing on or about August 5, 2022, Port Hamilton would have been able to control the situation in a much shorter period and at less cost. *Id.* at ¶¶ 32, 62-65. In all likelihood, without Ocean Point's interference, the situation would have been controlled before Ms. Wooten entered Ocean Point's terminal and certainly before the conveyor belt caught fire. All of these events occurred *before* the Mutual Aid Agreement was signed. Thus, Ocean Point's argument is predicated on a fundamentally flawed theory—that the Mutual Aid Agreement waived liability for conduct that did *not* occur "pursuant to this agreement" and which predated the agreement's execution.

As alleged in the Crossclaim, Ocean Point engaged in extortive conduct to force Port Hamilton into the Mutual Aid Agreement. *See* Crossclaim ¶ 42, 46-47. It wasn't until after an actual fire broke out that Port Hamilton capitulated and signed the Mutual Aid Agreement on August 21, 2022. See Doc. No. 55-2. Thus, on its face, the Mutual Aid Agreement does not apply to allegations in the Crossclaim.

Material issues of fact cannot be resolved in deciding a motion to strike, because a motion to strike is directed to the face of the pleading. *South v.*

*United States*, 40 F.R.D. 374, 376 (N.D. Miss. 1966) (citations omitted). A motion to strike is not intended to furnish an opportunity for the determination of disputed and substantial questions of law. *Id*. Consequently, a motion to strike is neither an authorized nor proper way to procure dismissal of all or part of complaint. *Egan v. Pan American World Airways, Inc.*, 62 F.R.D. 710 (D. Fla. 1974) (citing *South v. United States*). Any doubt as to striking of matter in pleading should be resolved in favor of pleading. *Hanley v. Volpe*, 305 F. Supp. 977, 1969 U.S. Dist. LEXIS 10875 (E.D. Wis. 1969).

Ocean Point's motion to strike based upon the Mutual Aid Agreement is misplaced. The allegations in the Crossclaim raise multiple issues of fact and law with respect to the Agreement's applicability and enforceability. Thus, the Mutual Aid Agreement does not provide a basis to strike any part of Port Hamilton's Crossclaim.

### b. THE MUTUAL AID AGREEMENT DOES NOT SUPPORT AN AWARD OF FEES AND COSTS UNDER THE CIRCUMSTANCES.

As stated previously, the Mutual Aid Agreement was not in effect at the time Ocean Point engaged in its grossly negligent conduct against Port Hamilton. Consequently, Port Hamilton cannot be liable for indemnification to Ocean Point for its fees and costs in defending against the Crossclaim (or Ms. Wooten's claims). Furthermore, a motion to strike is not appropriate for determining material issues of fact or for determining disputed and substantial questions of law. *South*, 40 F.R.D. 374. Thus, the Court should deny Ocean Point's motion for fees and costs.

13

### c. PORT HAMILTON'S ALLEGATIONS ESTABLISH THE RELEVANT DUTY AND CONDUCT NECESSARY TO SUPPORT ITS CLAIM FOR GROSS NEGLIGENCE. THUS, IT IS IMPROPER TO STRIKE THE ALLEGATIONS UNDER RULE 12(f).

Ocean Point also takes issue with Port Hamilton's allegations that Ocean Point's conduct rose to the level of criminality expressed in 14 V.I.C. §§ 701 and 1508(a). Unfortunately for Ocean Point, its conduct did, in fact, rise to the level of being criminal. However, the allegations are pled to establish a standard of conduct. As Ocean Point has recognized in its memorandum, gross negligence and punitive damages require a higher form of wrongful conduct than mere negligence. Consequently, Port Hamilton's allegations are necessary for establishing this higher standard of conduct, namely that the conduct was willful, wanton, and done with reckless indifference to foreseeable injury. Violation of a code or regulation is admissible to show a violation of the standard of care. *Antilles School, Inc. v. Lembach*, 64 V.I. 400, 424 (2016) (violation of OSHA regulations). Here, violation of Virgin Islands criminal statutes is admissible to show that Ocean Point's conduct achieved a level of gross negligence and/or willful misconduct.

Paragraph 30 outlines the capacity in which Port Hamilton was acting when attempting to put out the smoldering coke, *i.e.*, "firefighters" and/or "first responders." The paragraph also outlines the duty every resident of the Virgin Islands has under the Virgin Islands Code not to interfere, obstruct, or delay the performance of firefighters and first responders. Paragraphs 29 and 31 allege that Ocean Point prevented, obstructed, and delayed Port Hamilton's personnel in their capacity as firefighters and/or first responders. The allegations of Paragraphs 25-28 describe the

underlying motivation for Ocean Point's conduct, which shows the conduct was improper and intentional. Thus, the inclusion of 14 V.I.C. § 1508(a) in Paragraphs 30-31 is necessary for establishing the capacity in which Port Hamilton was acting and the duty Ocean Point had not to obstruct or delay. These allegations also show that Ocean Point's conduct was not mere negligence but was much more egregious— essential allegations to plausibly allege a claim for gross negligence and punitive damages.

Similarly, the inclusion of 14 V.I.C. § 701 in Paragraph 43 is also alleged to establish a standard of conduct. Under the statute, extortion is defined as "the obtaining of property from another person, with his consent, induced by a wrongful use of force or fear, or under color of official right." 14 V.I.C. § 701. The allegations of Paragraphs 25-28 describe the underlying motivation for Ocean Point's conduct, which aligns with the definition of extortion under Virgin Island law. Thus, the allegation further supports the claim for gross negligence as well as supports Port Hamilton's defense of duress when coerced to enter the Mutual Aid Agreement.

Paragraphs 30-31 and 43 are relevant and necessary for Port Hamilton to establish its claim for gross negligence and punitive damages. Although the burden of proof is higher for the criminal claims, the statutes cited in Port Hamilton's allegations are relevant in establishing the standard of care and the level of conduct that would support a finding for gross negligence. Though Ocean Point might (and should) be embarrassed by its own conduct, the allegations are not intended to

15

prejudice Ocean Point's case; instead, they are merely establishing the egregious nature of the conduct for purposes of plausibly stating Port Hamilton's claims.

## CONCLUSION

Ocean Point's motion to dismiss under Rule 12(b)(6) is dependent upon its Rule 12(b)(1) challenge to jurisdiction for lack of logical relationship under Rule 13(g) and on its motion to strike certain allegations under Rule 12(f). As outlined above, Port Hamilton's allegations and claims arise from and are closely related to the allegations in Plaintiff's Second Amended Complaint. Furthermore, it would promote judicial economy to hear this claim with the rest of the matter. Thus, Claim II of the Crossclaim passes the "logical relationship" test under Rule 13(g), and ancillary jurisdiction over the claim should be maintained by this Court. As a result, Ocean Point's motion to dismiss under Rule 12(b)(1) should be denied.

Ocean Point's reliance on the Mutual Aid Agreement to support part of its motion to strike is misplaced. Port Hamilton's allegations pertain to conduct that occurred prior to the execution of the agreement, and the allegations raise factual issues with respect to the agreement's validity. Rule 12(f) is not the proper means for resolving disputed material facts or for determining disputed and substantial questions of law. Thus, the motion to strike must be denied on this issue, as well as the motion for fees and costs.

With respect to Ocean Point's claim that Port Hamilton's references to two criminal statutes and use of additional supporting allegations are scandalous and should be stricken, Port Hamilton pled these allegations to establish a standard of

16

care and to demonstrate that Ocean Point's conduct rises to the level of being grossly negligent. Thus, the allegations are not improperly pled for prejudicial purposes but instead to establish the necessary elements of Port Hamilton's claim and its requested relief of punitive damages. Consequently, Ocean Point's motion to strike should be denied.

Without its challenge to jurisdiction and striking of allegations, Ocean Point cannot sustain its motion to dismiss or motion for fees and costs. Thus, the Court should deny Ocean Point's motion in total.

Respectfully submitted,

Dated: April 3, 2024,   /s/ Andrew C. Simpson
Andrew C. Simpson, Esq. (VI Bar # 451)
2191 Church Street, Ste. 5,
Christiansted, VI 00820
Telephone: (340) 719-3900
asimpson@coralbrief.com