## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | |
|---|---|
| NICOLE WOOTEN,<br><br>            Plaintiff,<br><br>    v.<br><br>LIMETREE BAY TERMINALS d/b/a OCEAN POINT TERMINALS, PORT HAMILTON REFINING & TRANSPORTATION, WEST INDIES PETROLEUM LTD.,<br><br>            Defendants. | Case No.  1:23-cv-00012-WAL-EAH |

**DEFENDANT OCEAN POINT'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS COUNT II OF THE CROSSCLAIM, STRIKE
SPECIFIC PARAGRAPHS OF THE CROSSCLAIM, AND FOR FEES AND COSTS**

Defendant Limetree Bay Terminals d/b/a Ocean Point Terminals ("Ocean Point") files this reply memorandum of law in support of its Motion to Dismiss Count II of the Crossclaim, to Strike Specific Paragraphs of the Crossclaim, and for Fees and Costs (the "Motion") [ECF No. 55], and in support thereof, states as follows:

### PRELIMINARY STATEMENT

Ocean Point maintains that the Court should dismiss Count II of the Crossclaim filed by Defendant Port Hamilton Refining & Transportation ("Port Hamilton") [ECF No. 51] for lack of subject matter jurisdiction.  Other than the attenuated fact that Wooten's alleged injury and Port Hamilton's alleged damages occurred on the same property – the Refinery – there is no meaningful overlap, or logical relationship, between the facts and law at issue in Wooten's Second Amended Complaint [ECF No. 38] ("SAC") and Count II of the Crossclaim [ECF No. 51].

Indeed, the SAC concerns a *personal injury dispute* arising from her alleged *inhalation of smoke emanating* from the North Coke Dome while at the Refinery on or about August 8, 2022.

1

SAC at ¶¶ 24, 28.  Compare the date and the alleged injuries of the SAC with Count II of the Crossclaim, which concerns purported *property damages* to Port Hamilton's property and equipment that occurred approximately two weeks later on August 21, 2022, and was allegedly caused by a *fire in the coke conveyor system above the North Coke Dome*, resulting in damages in excess of $4.3 million.  *See* Crossclaim at ¶¶ 48, 63, 64.  Moreover, the law necessary to establish Wooten's underlying claims for various theories of negligence (SAC at ¶¶ 37-51), is fundamentally different from the law asserted in support of Count II – alleged violations of criminal statutes (Crossclaim at ¶¶ 30, 31,43).  Accordingly, Port Hamilton does not, and cannot, establish a logical relationship between the claims, sufficient to show that they concern the same core of operative facts, or arise out of the same transaction or occurrence as the SAC.  Because Count II is wholly independent of the SAC, Port Hamilton fails to satisfy the test for crossclaims under Rule 13(g), and Count II must be dismissed as a matter of law.

For the same reasons, Paragraphs 30-31, 43, 48-52, and 62-65 of Port Hamilton's Crossclaim must be stricken as impertinent, immaterial, and scandalous because they do not arise out of the same transaction or occurrence, and are not logically related to the facts and law underlying the claims asserted in the SAC.  Additionally, Paragraphs 48-52 and 62-65 must be stricken as immaterial and impertinent because they are barred by the undisputed Mutual Aid Agreement between the parties that unequivocally releases Ocean Point from any liability as to damages and losses resulting from the fire at the Refinery.  When these claims are stricken, Port Hamilton's claim for gross negligence must be dismissed for failure to state a claim.  Consequently, Port Hamilton cannot seek punitive damages against Ocean Point.

**ARGUMENT**

I. **Count II Must Be Dismissed Because Port Hamilton Cannot Establish that Count II is Logically Related to the SAC**

The crux of Port Hamilton's argument is that Count II passes the logical relationship test under Rule 13(g) because Wooten's alleged injuries, and Port Hamilton's alleged damages, were a result of the same initiating event. *See* Port Hamilton's Opposition to the Motion ("Opposition") [ECF No. 62 at p. 9]. Specifically, Port Hamilton's argument hinges on the remote allegations of the SAC concerning Ocean Point's alleged efforts to prevent Port Hamilton from controlling the smoldering petroleum coke that had been ongoing for days preceding Wooten's exposure to smoke emanating from the Refinery on or about August 8, 2022. *Id*. at pp. 7-9. Interestingly, Port Hamilton's argument lends more support to Wooten's claims against Ocean Point and Port Hamilton than its own claims asserted in Count II; or, as Port Hamilton puts it, does nothing more than "help illuminate Ms. Wooten's allegations and provide additional depth and context regarding the dispute with Ocean Point." *Id*. at p. 9.

Port Hamilton's argument completely misses the mark and should be seen as a red herring attempt to distract the Court from the most relevant and pertinent fact – that Count II of the Crossclaim is wholly distinct and independent of the facts and law serving as the foundation for the SAC.

   A. **Count II does not Arise out of the Same Transaction or Occurrence as the SAC**

A party may bring cross-claims against any co-party "if the claim arises out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim, or if the claim relates to any property that is the subject matter of the original action." Fed. R. Civ. P. 13(g). Rule 13(g), however, limits a party from asserting *every claim* that it might possess against a co-party. Rather, it authorizes the bringing *only* of those claims that are *closely related* to either

other pending claims or the property that is the subject of the underlying action. *See Degree of Honor Protective Ass'n v. Charles T. Bisch & Son, Inc.,* 194 F. Supp. 614, 615 (D. Mass. 1961).

To determine what constitutes "same transaction or occurrence" federal courts look to the following factors:

> 1. Whether the issues of fact and law are generally the same…;
> 2. Whether res judicata or collateral estoppel would bar a subsequent suit on defendant's cross-claim…;
> 3. Whether the same evidence will support or refute both the original claim and the cross-claim…; and
> 4. Whether there is a logical relationship between the claim and cross-claim…

*Balerna v. Gilberti,* 266 F.R.D. 42, 45 (D. Mass. 2010) (citing *AXA Global Risks (U.S.) Ins. Co. v. Roberts*, No. CIV. 99–133–M, 2000 WL 1480690, at *2 (D.N.H. 2000)); *see also John Hancock Life Ins. Co. v. Schmahl*, 2014 WL 3887182, at *3 (M.D. Fla. Aug. 6, 2014) ("A crossclaim has a "logical relationship" to the original claim if: (1) the same aggregate of operative facts serves as the basis of both claims; or (2) the aggregate core of facts upon which the original claim rests activates additional legal rights in a party defendant that would otherwise remain dormant."). Here, other than the attenuated fact that Wooten's alleged injuries and Port Hamilton's purported property damages occurred at the same location, there is virtually no factual commonality between Count II and the SAC.

First, the entirety of Wooten's alleged injuries are limited to just one day – August 8, 2022. *See* SAC at ¶¶ 24, 25, 28. Whereas the allegations concerning the purported damage to Port Hamilton's property (North Coke Dome) and personal equipment occurred on August 21, 2022, long after Wooten's alleged injury. *See e.g.* Crossclaim ¶¶ 42-52. Notably, Wooten's allegation that Ocean Point prevented Port Hamilton from accessing the firehouse to obtain its fire truck and other firefighting gear (SAC at ¶ 20), is not only contradicted by Port Hamilton's concession that

4

Ocean Point granted it access to the firehouse where it obtained a fire truck and thermal camera (Crossclaim at ¶ 24, 28), it is also limited to just one day, August 6, 2022 – 15 days before the purported fire at the Refinery. Further, Wooten is not mentioned in any of the paragraphs of the Crossclaim concerning the events that allegedly took place after her alleged August 8, 2022 incident. *See* generally Crossclaim.

Additionally, while the elements to maintain claims for gross negligence may be the same, a comparison of the underlying facts between the SAC and Count II of the Crossclaim, necessary to support each element are fundamentally distinct, and not logically related. For example, in factual support of her claim for *personal injury* damages, Wooten alleges that on August 8, 2022, petroleum coke was smoldering at the coke dome, and that Ocean Point breached a duty owed to her by (1) failing to escort her across the facility; (2) failing to warn her of the hazardous condition ongoing at the Refinery; and (3) failing to provide her with personal protective equipment. *See* SAC at ¶¶ 18, 25-26. Under no circumstances can this be logically related to the underlying law of Count II for *property related* damages, wherein for factual support, Port Hamilton alleges that on August 21, 2022, a fire erupted in the coke conveyor system above the coke dome, and that Ocean Point breached a duty owed to it by, in part, allegedly, violating two criminal statutes: (1) 14 V.I.C. § 1508 under which Port Hamilton will have to establish, and maintain, that its personnel were firefighters or first responders, and that Ocean Point hampered or impeded their performance of lawful duties; and (2) 14 V.I.C. § 701 under which Port Hamilton will have to establish, and maintain, that Ocean Point's alleged conduct amounted to attempted extortion. *See* Crossclaim at ¶¶ 30, 31, 43, 48,.

Second, a judgment on Wooten's underlying claims would have no impact on Port Hamilton's ability to bring its own lawsuit in a subsequent or independent action, nor will the

5

Court's refusal to take jurisdiction result in prejudice to Port Hamilton.  Third, underscoring the incongruity between the underlying claims is that the merits of Count II of the Crossclaim are in no way dependent upon the resolution of Wooten's SAC.  Specifically, whether Ocean Point owed and breached its duty to Wooten to escort her across the facility, warn her of the hazardous condition ongoing at the Refinery, or provide her with personal protective equipment, will neither support nor refute whether Ocean Point violated either of the two criminal statutes that serve as the foundation for Count II of the Crossclaim.  *Compare* SAC at ¶¶ 26 *with* Crossclaim at ¶¶ 30, 31, 43.  Additionally, given the factual and legal distinctiveness between the SAC and Count II of the Crossclaim, it is abundantly clear that separate trials of the matter would not involve a substantial duplication of effort and time by the parties, and the Court.

Finally, there is no meaningful overlap of facts or law sufficient to support that there is a logical relationship between the SAC and Count II of the Crossclaim.  As stated *supra*, the only commonality shared between the two occurrences is the mere fact that Wooten's alleged personal injuries, and Port Hamilton's alleged property damages, occurred at the Refinery.  Beyond that, the two claims are entirely unrelated and wholly distinct of each other; therefore, Count II of the Crossclaim must be dismissed for lack of subject matter jurisdiction.  *See e.g. The Bank of Nova Scotia v. Ross*, Civ. No. 2010-0118, 2015 WL 8967649, at *5 (D.V.I. Dec. 15, 2015) ("claims that are wholly independent of the main transaction not only fail to meet the test for crossclaims set forth in subdivision [Rule 13](g), but also present no basis on which the court can invoke supplemental jurisdiction."); *John Hancock Life Ins. Co. v. Schmahl*, 2014 WL 3887182, at *5-9 (M.D. Fla. Aug. 6, 2014) (same); *Aetna Ins. Co. v. Pa. Mfrs. Ass'n Ins. Co.,* 456 F. Supp. 627, 635 (E.D. Pa. 1978) (finding that crossclaim did not arise out of transaction or occurrence that was

subject matter of main action; did not meet the test for crossclaims set forth in Rule 13(g); and that there was "no basis on which this Court can invoke ancillary jurisdiction over such claim.").

**II.     Count II Must Be Dismissed Because Specific Paragraphs Of The Crossclaim Must Be Stricken As Immaterial, Impertinent, and/or Scandalous, and, Without Those Paragraphs, Count II Fails To State A Claim For Relief**

Ocean Point maintains that Paragraphs 30-31, 43, 48-52, and 62-65 of Port Hamilton's Crossclaim must be stricken as impertinent, immaterial, and/or scandalous as a matter of law because they do not arise out of the same transaction or occurrence, and are not logically related to the facts and law underlying the claims asserted in the SAC. Accordingly, when these claims are stricken, Port Hamilton's claim for gross negligence must be dismissed for failure to state a claim. Consequently, Port Hamilton cannot seek punitive damages against Ocean Point. *See e.g. Smith v. Virgin Islands Housing Authority*, Civ. No. 2009-0011, 2023 WL 2742078 *10 (D.V.I. Mar. 31, 2023) ("It is well settled that punitive damages do not constitute an independent cause of action"); *Livingston v. Louis Berger*, Civil Action No. 2019-0012, 2023 WL 7705035 *2 (D.V.I. Nov. 14, 2023) (same).

### A. Paragraphs 48-52 and 62-65 must be stricken because they are barred by the Mutual Aid Agreement

Notably, Port Hamilton's Response in Opposition to Ocean Motion ("Response") does not challenge the authenticity of the Mutual Aid Agreement ("Agreement"), and, therefore, the Court may consider it without converting the Motion to one for summary judgment. *See Claxton v. Oriental Bank (formerly Bank of Nova Scotia)*, Civil Action No. 19-CV-0069, 2022 WL 3683800, at *3 (D.V.I. Aug. 25, 2022) ("District courts may rely on documents appended to a motion to dismiss that are 'integral to ... the complaint.'… That remains true so long as such documents are part of the public record or are 'undisputedly authentic.'" (internal citations omitted)); *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) ("[C]ourts generally consider only the allegations

contained in the complaint, exhibits attached to the complaint and matters of public record… However, an exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." (quoting *Pension Benefit Guar. Corp.*, 998 F.2d at 1196 and *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)) (internal quotation marks omitted)).

Indeed, the Agreement is integral to the Count II of the Crossclaim because it specifically concerns the catalyst for Port Hamilton's purported damages – the fire at the Refinery. As to its purpose, the Agreement unequivocally states in pertinent part as follows:

### Purpose

**Port Hamilton is the owner and operator of refining assets located in St Croix, USVI. Port Hamilton has requested from Ocean Point access to assets and personnel for the purpose of responding to an ongoing fire at its facility. ocean point has agreed to provide such assistance, subject to the terms and conditions of this Agreement.**

*See* Motion, Exhibit A. Such provision undoubtedly corresponds to the specific paragraphs of the of the Crossclaim, wherein Port Hamilton asserts that "[a]t 0812 on August 21, 2022, Port Hamilton's Rodriguez texted Ocean Point's Charles to request assistance from Ocean Point in responding to this fire, which was in the vicinity of Ocean Point's docks and posed a threat to Ocean Point's own property." *See* Crossclaim at ¶¶ 49-52. Furthermore, considering the fire commenced on August 21, 2022, it is clear that any resulting damages occurred after the Agreement was entered. *See* Crossclaim at ¶¶ 48, 63, 64. Such allegations as to damages are considered in the Agreement, which releases Ocean Point from any liability as to damages and losses that may accrue in connection with the Agreement to assist with the fire ongoing at the Refinery. Indeed, the Agreement states in pertinent part as follows:

**Release of Ocean Point**

> **TO THE MAXIMUM EXTENT PERMITTED BY THE LAWS OF THE UNITED STATES VIRGIN ISLANDS, PORT HAMILTON HEREBY RELEASES, ACQUITS, AND FOREVER DISCHARGES OCEAN POINT AND ALL OF ITS CURRENT OR FORMER AFFILIATES, OFFICERS, MANAGERS, DIRECTORS, SHAREHOLDERS, EMPLOYEES, INSURERS, AGENTS, REPRESENTATIVES AND ALL PERSONS ACTING BY, THOUGH, UNDER OR IN CONCERN WITH THEM (COLLECTIVELY, THE "RELEASED PARTIES") OF, FROM, AND WITH RESPECT TO ANY AND ALL LIABILITY ARISING FROM ANY AND ALL OBLIGATIONS, CAUSES OF ACTION, SUITS, PROMISES, AGREEMENTS, LOSSES, DAMAGES, CHARGES, EXPENSES, CHALLENGES, CONTESTS, LIABILITIES, COSTS, CLAIMS, AND DEMANDS OF WHATSOEVER NATURE, KNOWN OR UNKNOWN, WHICH MAY EVER ACCRUE IN CONNECTION WITH THE ASSISTANCE RENDERED BY OCEAN POINT TO PORT HAMILTON PURSUANT TO THIS AGREEMENT.**

*See* Motion, Exhibit A. If nothing else, the Agreement is dispositive that Port Hamilton owned the Refinery and the North Coke Dome, and that Ocean Point was under no contractual obligation to render assistance to Port Hamilton for any emergency prior to the Agreement. Port Hamilton's continued attempts to maintain its allegations as to Ocean Point's alleged violations of the erroneous criminal statutes do less to support its claims, and instead speak volumes as to the attenuated nexus between Count II of the Crossclaim and the SAC.

Accordingly, and based on the foregoing reasons, Paragraphs 48-52 and 62-65 of the Crossclaim must not only be stricken because they are barred by the Agreement, they are also impertinent, immaterial, and not logically related to the claims at issue in the SAC.

### B. Paragraphs 30-31 and 43 Must Be Stricken as Scandalous, Impertinent, and Immaterial Because They Are Not Logically Related to the SAC

Port Hamilton's efforts to utilize the criminal statutes as a baseline to support its claims for gross negligence under Count II is not only erroneous, it is also an improper basis to bring its claims within the Court's jurisdiction because it is not logically related to the underlying claims of the SAC. As conceded by Port Hamilton, although a crossclaim does not need an independent basis for jurisdiction, it must still meet the logical relationship test under Rule 13(g). Specifically,

9

Port Hamilton must, by necessity, show that the allegations of the Crossclaim are so closely related to the allegations of the SAC to fall within the court's ancillary jurisdiction. *See Amco Constr. Co. v. Mississippi State Building Comm'n,* 602 F.2d 730, 732 (5th Cir. 1979) (explaining that an action which satisfies the "transaction or occurrence" test of Rule 13(g) must, by necessity, be closely related to the original claim, and would, therefore fall within the court's ancillary jurisdiction).

As explained *supra*, the facts and law underlying Wooten's various theories of negligence are strikingly distinct and not logically related to Port Hamilton's claims for interference with a firefighter's or first responder's lawful duty within the meaning of 14 V.I.C. § 1508, and attempted extortion within the meaning of 14 V.I.C. § 701. *Compare* the SAC at ¶¶ 18, 25-26, 37-51 *with* Crossclaim at ¶¶ 30, 31, 43. Accordingly, Port Hamilton's erroneous claims of criminality, notwithstanding their sheer falsity, are not relevant nor necessary for determining whether Ocean Point is subject to liability for Wooten's underlying claims for negligence.

Given the incongruency between the two claims, Port Hamilton cannot maintain that Count II arises out of the same transaction or occurrence that is the subject matter of the SAC, and thus does not satisfy the logical relationship test under Rule 13(g). Therefore, they must be stricken as a scandalous, impertinent, and immaterial as a matter of law because to allow otherwise would undoubtedly result in prejudice to Ocean Point. *See e.g. Mifflinburg Tel., Inc. v. Criswell*, 80 F. Supp. 3d 566, 573 (M.D. Pa. 2015) (striking pleadings that were not logically related to the underlying claims because pleadings of this nature may prejudice parties who must spend time and resources preparing to respond to claims that have no actual relation to the action litigation); *see also United States v. Krasnov*, 109 F. Supp. 143, 148–149 (E.D. Pa. 1952) (striking the crossclaim because it did not arise out of the same transaction or occurrence that is the subject matter of the

complaint); *Beckmann v. Synertech P/M, Inc.*, Case No. SACV 11-01421-CJC(RNBx), 2012 WL 13175674, at *4 (C.D. Cal. Apr. 26, 2012) (striking allegations as "immaterial, impertinent and scandalous" because the "potential criminal liability of…Defendants…[is] not relevant or necessary for determining whether…Defendants are subject to civil liability…[s]uch claims are not dependent upon a finding of criminal liability, and accusations that Defendants have committed a crime may prejudice them by unduly influencing juror opinion.").

## CONCLUSION

For the reasons set forth above, Ocean Point respectfully requests that this Court enter an order: (1) dismissing Count II of the Crossclaim for lack of subject matter jurisdiction, or alternatively, for failure to state a claim; (2) striking paragraphs 30-31, 43, 48-52, and 62-65 of the Crossclaim as impertinent, immaterial, and/or scandalous; (3) awarding Ocean Point its reasonable attorney's fees and costs associated with defending Count II of the Crossclaim; and (4) granting Ocean Point such other and further relief as the Court deems just and proper.

DATED:  April 29, 2024                              **AKERMAN LLP**
                                                    201 East Las Olas Boulevard,
                                                    Suite 1800
                                                    Fort Lauderdale, Florida 33301
                                                    Telephone: (954) 463-2700
                                                    Facsimile: (954) 463-2224


                                                    By: /*s/Donnie M. King*
                                                        Donnie M. King
                                                        Virgin Islands Bar No. 1237
                                                        Primary e-mail: donnie.king@akerman.com
                                                        Secondary e-mail: sharon.luesang@akerman.com
                                                        David J. Awoleke (admitted *pro hac vice*)
                                                        david.awoleke@akerman.com
                                                        *Counsel for Defendant Limetree Bay Terminals, LLC d/b/a Ocean Point Terminals*

11

**CERTIFICATE OF SERVICE**

I certify that the foregoing document was filed with the Court's electronic filing system on April 29, 2024 which will send a notice of electronic filing to all counsel of record.

/s/Donnie M. King
Donnie M. King