IN THE DISTRICT COURT OF THE VIRGIN ISLANDS

DIVISION OF ST. CROIX

| | |
|---|---|
| NICOLE WOOTEN,<br><br>　　　　　PLAINTIFF,<br><br>　VS.<br><br>LIMETREE BAY TERMINALS, LLC, ET AL.<br><br>　　　　　DEFENDANTS. | CASE NO. 1:23-CV-00012 |

**DEFENDANTS' JOINT OPPOSITION TO PLAINTIFF'S MOTION
FOR LEAVE TO SUBSTITUTE EXPERT WITNESS**

Port Hamilton Refining and Transportation, LLLP ("Port Hamilton") and Limetree Bay Terminals, LLC d/b/a Ocean Point Terminals ("Ocean Point") jointly oppose Plaintiff's Motion for Leave to Substitute Expert Witness Cassandra K. Moody for Daniel Mahr (Doc. 218). The motion should be denied because:

1.　No good cause exists for substitution;

2.　the motion was not made in good faith and lacked candor with the Court and Defendants;

3.　Moody's report introduces substantive new opinions; and

4.　granting the motion would substantially prejudice Defendants.

BACKGROUND

By order dated April 8, 2025, the Court set August 8, 2025 as the deadline for Plaintiff to produce her Rule 26(a)(2) expert reports. Doc. No. 126. On August 8, 2025

1

at 9:01 p.m.,[1] Plaintiff filed a motion to extend the deadline for her to file a report from Daniel Mahr, the liability expert she was relying upon to support her claims that the Defendants were liable for her alleged injuries,

> because her counsel is currently located in in [sic] an area with limited service and that has also been impacted by wildfires. Exhibits 1-2. Due to the limited service and threat of evacuation, Plaintiff's counsel was unable to access her email until Friday afternoon."

Doc. No. 181 at 1. Plaintiff's counsel represented that she did not receive Mahr's expert report until August 7, 2025. *Id.* at 3. The Court granted an extension until August 12, 2025. Doc. No. 182. On August 12, 2025 at 16:30:39, Mahr signed "his" expert report. Exhibit A at 3.

The Defendants produced the expert report of toxicologist William R. Sawyer (Exhibit B) by their October 6, 2025 deadline for submitting expert reports. Sawyer systematically responded to, and refuted, Mahr's opinion. For example,

- Mahr asserts that all personnel at the site of the smoldering coke were wearing protective equipment such as face masks or respirators, the photographs in Mahr's own report demonstrated that personnel were not wearing such equipment (because conditions did not warrant it) (*id.* at 5, 7-9);

- Mahr rendered opinions on exposure to petroleum coke smoke and gases but provided no toxicological information, contaminant levels, or corroborating evidence (*id.* at 10);

- Mahr discussed what exposure to high concentrations to SO2 can do to lung

---

[1] *See* Doc. No. 182 (text entry only).

function but offered no supporting data to show Plaintiff's exposure or dose, making a dose-response assessment impossible (*id.* at 11)—especially when all 11,107 data points monitored for SO2 or H2S yielded readings of 0.00 with no positive findings (*id.* at 10-11).

It was only after Defendants produced Sawyers report on October 6, 2025 that Plaintiff began scrambling to find a new expert. Although Plaintiff claims in the instant motion that the reason for seeking substitution was because of Mahr's lack of cooperation in deposition scheduling (rather than due to the fact that Sawyer had effectively nullified Mahr and his opinion), she has offered no evidence to support the claim.[2] Statements by counsel in a memorandum are not evidence. *See, e.g., Radich v. Goode*, 886 F.2d 1391, 1394–95 (3d Cir. 1989) (holding that the adversary system "does not recognize argument as a surrogate for either evidence or fact"); *Hill Int'l, Inc. v. Virgin Islands Pub. Fin. Auth., Off. of Disaster Recovery*, Case No. 3:24-CV-00049, 2024 WL 5300232, at *4 n.8 (D.V.I. Dec. 18, 2024), report and recommendation adopted *sub nom. Hill Int'l, Inc. v. Virgin Islands Pub. Fin. Auth.*, 2025 WL 48546 (D.V.I. Jan. 8, 2025) ("concluding that [u]nsupported statements by counsel as to a

---

[2] Plaintiff tries to tie the timing of the difficulties with Mahr to the effort to begin scheduling depositions. But as Plaintiff acknowledges, "the Parties immediately began attempting to schedule expert depositions" *after the Defendants produced their expert reports on October 6, 2025*. The purported issue with Mahr occurred shortly after Plaintiff received the Sawyer fisking of Mahr. Thus, the timing of looking for a new expert dovetails perfectly with both receipt of Sawyer's report and the attempt to schedule depositions, making it impossible to infer from the timing that the breakdown occurred because of the edits to Mahr's report that had been done more than two months earlier rather than because of the severe deficiencies in Mahr's report.

3

defendant's citizenship are not enough to establish principal place of business") (cleaned up); *Prentice v. OfficeMax N. Am.*, 2012 WL 898323, at *2 n.2 (D.V.I. Mar. 15, 2012) ("counsel's unsupported parentheticals—such as the one purporting to explain the common usage of the word 'local'—are not facts properly considered on summary judgment").

Although counsel's factual claims are not evidence, they can serve as admissions against interest. Thus, the statement that during "the week of October 25, 2025, the company that found Mr. Mahr as an expert, began looking for a substitute expert" and that by October 28, 2025, Plaintiff had agreed to hire Woody as a substitute expert, Doc. No. 218 at 2, is admissible to establish that a decision to substitute an expert had been made as of October 28, 2025. This is important because when the parties jointly moved on November 14, 2025 to extend the expert deposition deadline, Plaintiff failed to disclose to either the Court or Defendants that she was in the progress of replacing Mahr. Nor did Plaintiff inform the Court or Defendants that Plaintiff had retained a substitute expert more than two weeks earlier. Nor did she disclose to the Court or Defendants that Moody *had already completed her report* (dated November 13, 2025). *See* Doc. No. 218-1 at 1 (proposed substitute expert report of Moody).

Counsel for Plaintiff drafted the proposed Joint Motion for Extension of Deadlines (ultimately filed as Doc. No. 214) and did not disclose the true problem involving Mahr in the proposed Joint Motion. Consequently, when the Joint Motion was submitted, it failed to alert the Court to the true difficulty she was encountering with

Mahr. The Joint Motion represented that, "several experts have been traveling out of the country, have scheduled medical procedures, or simply have been unresponsive to requests for deposition dates." Doc. No. 214 at 1. We now know, thanks to Plaintiff's Motion to Quash the deposition of Mahr (Doc. No. 221), that with respect to Mahr, this was a falsehood. It was not that Mahr was "unresponsive"; it was that he was upset that Plaintiff's counsel had modified his expert report without his permission or knowledge and *had* responded—telling Plaintiff's counsel that he would not give her dates after discovering that Plaintiff's counsel had deleted a paragraph from his report without his permission or authority. *See* Doc. No. 221 at 2.

The Court granted the Joint Motion to extend the scheduling order on November 18, 2025, still uninformed as to the true nature of the "problem" with Mahr. On November 21, 2025, Plaintiff finally notified Defendants that she wished to replace Mahr with Moody and sought Defendants' consent to the substitution. Doc. 218-2 at 2. Counsel for Ocean Point responded, "Can you please explain what issue you had working with Mr. Mahr? We had no prior indication that you were retaining a new expert." *Id.* at 1. Plaintiff maintained the charade, responding, "Mr. Mahr refused to give dates for the deposition." *Id.*

On December 9, 2025, Plaintiff filed the instant motion to substitute expert. This motion gave Plaintiff another opportunity to show candor to the Court and explain the nature of the reason for the substitution. Instead, Plaintiff represented:

> Good cause exists for substituting Mr. Mahr because he has been unresponsive to requests for dates for deposition, and then he refused to provide any dates to be deposed. *The company that found Mr. Mahr as an expert has apologized*

5

and agreed to secure a replacement report.

Doc. No. 218 at 1–2 (emphasis added).

The reference to the apology from the expert referral company is deceptive, as it adds to the implication that Mahr simply abandoned Plaintiff and her case; whereas Plaintiff has now revealed that Mahr had a legitimate reason to be upset with Plaintiff—Mahr placed his signature and professional engineer's stamp (*i.e.*, his reputation) on the report and then Plaintiff changed the report without his permission.

### A. NO GOOD CAUSE EXISTS BECAUSE THE BREAKDOWN WITH MAHR WAS SELF-INFLICTED AND FORESEEABLE

Federal Rule of Civil Procedure 26(a)(2) requires timely disclosure of expert testimony. Modifications to scheduling orders require good cause under Rule 16(b)(4). The focus of the good cause inquiry is on the moving party's diligence. *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d Cir. 2010).

Plaintiff claims good cause based solely on Mahr's alleged unresponsiveness to deposition scheduling. However, in her subsequent Motion to Quash, Plaintiff admits that she unilaterally deleted a paragraph from Mahr's draft report containing "incorrect facts," that Mahr "became incensed," demanded an explanation, attempted to bill for the conversation, and that Plaintiff refused to pay. (Doc. 221, at 2-3.) Only then did Mahr become unresponsive and ultimately refuse to provide dates.

This sequence shows that the breakdown was caused by Plaintiff's own actions—editing the experts report—which was not just foreseeable, it was directly controlled by Plaintiff. Good cause is not shown when the expert's unavailability results from

the party's conduct or lack of diligence. *See, e.g., Leibel v. NCL (Bahamas) Ltd.*, 185 F. Supp. 3d 1354, 1357 (S.D. Fla. 2016) (denying motion to substitute after expert refused to testify because the "refusal to testify was entirely preventable" by the Plaintiff).

This case is similar to *Crandall v. Hartford Cas. Ins. Co.*, No. 10–00127, 2012 U.S. Dist. LEXIS 173995, at *3, 2012 WL 6086598 (D. Idaho Dec. 6, 2012). There, the plaintiff's expert was late in providing a report to plaintiff's counsel and, in the view of plaintiff's counsel, the report had deficiencies. Rather than promptly moving to extend the deadline to produce the report so that it could be corrected, the plaintiff's counsel planned to wait until after receiving the defense expert report and use a rebuttal report to correct deficiencies in the original report. The strategy backfired because the defendant used the plaintiff's expert's original report to support a motion for summary judgment before a rebuttal report could be submitted. The *Crandall* court observed,

> from the Court's perspective, it was the threat imposed by a motion for summary judgment that prompted Plaintiff to pursue the relief he now seeks; until then, Plaintiff was arguably content with having Mr. Dawson serve as his expert as evidenced by the lack of any effort to replace Mr. Dawson and/or remedy his opinions.

*Id.* The court continued,

> Under such circumstances, it cannot be said that Plaintiff was diligent in his efforts to resolve whatever issues existed with [the expert] leading up to this point. Accordingly, good cause does not exist to amend the scheduling order to allow Plaintiff to designate a substitute [] expert.

*Id.*

7

The *Crandall* court's ultimate conclusion is particularly *apropos*: "If a party's relationship with an expert becomes difficult, and leads to some regret that someone else had not been hired instead, that is a problem of the party's own making, and not a proper basis to further delay the case." *Id.* So too, here. Whether the attempt to replace Mahr is due to the fisking given to his indefensible opinion or due to his anger over the unauthorized editing of his opinion, the reason for substitution lies with Plaintiff's dissatisfaction with the expert and nothing else.

The cases cited by Plaintiff do not support substitution. They all deal with events that are beyond the control of the party retaining the expert. For example, in *Morel v. Daimler-Chrysler Corp.*, 259 F.R.D. 17 (D.P.R. 2009), the expert had died. In *Lincoln Nat'l Life Ins. Co. v. Transamerica Fin. Life Ins. Co.*, Case No. 1:04–CV–396, 2010 WL 3892860 at *1 (N.D. Ind. Sept. 30, 2010) after the expert produced a report, he was incarcerated. And in *Jung v. Neschis*, Case No. 01 Civ. 6993, 2007 WL 5256966 at *7 (S.D.N.Y. Oct. 23, 2007) the expert had developed Alzheimer's Disease.

### B. THE MOTION REFLECTS A LACK OF CANDOR AND WAS UNTIMELY

Plaintiff began seeking a substitute the week of October 20, 2025, and hired Moody by October 28, 2025 (Doc. 218 at 1-2). Moody had completed her report by November 13, 2025. Yet, in the parties' Joint Motion to Extend Deadlines filed November 14, 2025 (Doc. 214), Plaintiff represented only that Mahr had provided "no dates" despite follow-ups, with no disclosure of the ongoing substitution effort or the editing dispute (Doc. 214 at 3-4). Defendants relied on these representations in jointly seeking the extension to February 20, 2026. Plaintiff should have informed the Court

and Defendants of the issue with Mahr (whatever that issue was) during the week of October 20, 2025 and certainly before submitting the joint motion on November 14, 2025.

There are also serious reasons to question Plaintiff's claim that Mahr was not responsive to requests for deposition dates. When confronted with Plaintiff's email request to stipulate to the substitution of experts and the explanation as to why substitution was necessary, Defendants did not believe that a mere refusal to give dates for deposition would suffice as good cause to substitute an expert (as compared to a refusal to appear for a deposition). Thus, they decided to subpoena Mahr for his deposition to see if he would refuse to appear. Accordingly, Mahr was served with a subpoena on December 8, 2025 for a deposition on December 29, 2025. Mahr responded promptly, indicating that he was not available on December 29, but offering to be deposed in January. *See* Exhibit C. Mahr did not give any indication that he would refuse to testify at a deposition.

### C. MOODY'S REPORT INTRODUCES SUBSTANTIVE NEW OPINIONS, NOT MERE ADOPTION OF MAHR'S OPINIONS

Plaintiff asserts Moody "adopts all of Mr. Mahr's opinions" with no prejudice (Doc. No. 218 at 2). But Moody's opinion goes well beyond Mahr's report. Whereas Mahr's report mentions Ocean Point Terminals only once and provides weak, conclusory, opinions relating to Port Hamilton, Moody adds detailed opinions on OPT's alleged control and security duties, and asserts negligence claims against both entities, directly responding to gaps in Mahr's report. Importantly, whereas Mahr used a conclusory and speculative methodology, Moody at least attempts to use engineering

9

methodologies such as a root cause analysis. Moody's additions go beyond "adoption" and instead describes new liability theories. Moreover, since Mahr's report was edited by Plaintiff's counsel without authorization, Moody's adoption of Mahr's report is an adoption of the stealth-edited report—effectively an adoption of Plaintiff's counsel's opinion rather than Mahr's opinion.

### D. DEFENDANTS WILL BE SUBSTANTIALLY PREJUDICED BY SUBSTITUTION

If the Court allows Moody to substitute for Mahr, Defendants will need to retain a rebuttal liability expert(s) to assess Moody's opinions. This after already having paid expert fees to Sawyer to review and opine on Mahr's report. Mahr will still need to be deposed, since it was his report that was "adopted" ["adapted" might be more accurate]; and then Moody will need to be deposed, thereby doubling the deposition expenses related to the liability opinion(s). All of this will require further extensions beyond February 20, 2026 which is contrary to the Court's statement when it granted the February 20, 2026 extension that no additional extensions would be granted.

### CONCLUSION

Even if Plaintiff had supported her motion to substitute Moody for Mahr with evidence, she still would not have established good cause for substitution. This kerfuffle is entirely due to Plaintiff's dissatisfaction with Mahr and her unilateral and unauthorized modification of his report. The motion is untimely and displays a lack of candor to the Court and Defendants. Further, Moody's opinion goes well-beyond adopting (parroting) Mahr's opinion and offers new theories of liability not disclosed by Mahr. If substitution is granted, Defendants will be prejudiced by having

to retain a new expert(s) and take additional depositions under a further-extended revised scheduling order. For the foregoing reasons, the Motion should be denied.

Respectfully submitted,

| | |
|---|---|
| **ANDREW C. SIMPSON, P.C.,**<br>Counsel for Port Hamilton Refining and Transportation, LLLP | **AKERMAN LLP**<br>Counsel for Limetree Bay Terminals, LLC d/b/a Ocean Point Terminals |
| /s/ Andrew C. Simpson<br>Andrew C. Simpson (VI Bar # 451)<br>2191 Church Street, Ste. 5,<br>Christiansted, VI 00820<br>Telephone: (340) 719-3900<br>asimpson@coralbrief.com | /s/ Donnie King<br>Donnie King (VI Bar # 1237)<br>Reginald Janvier<br>201 East Las Olas Boulevard, Suite 1800<br>Fort Lauderdale, FL 33301<br>donnie.king@akerman.com |

December 23, 2025