---

### DISTRICT COURT OF THE VIRGIN ISLANDS

### DIVISION OF ST. CROIX

---

NICOLE WOOTEN,

               **Plaintiff,**

    **v.**

LIMETREE BAY TERMINALS d/b/a
OCEAN POINT TERMINALS,
PORT HAMILTON REFINING &
& TRANSPORTATION,
WEST INDIES PETROLEUM LTD.,

               **Defendants.**

    **1:23-cv-00012-RAM-EAH**

---

Attorneys:    **Lee J. Rohn, Esq.**
                   **Jennifer Sue Koockogey, Esq.**
                   **Robin P. Seila, Esq.**
                   **Eric Coleman, Esq.**
                   **Reginald E. Janvier, Esq.**
                   **David Awoleke, Esq.**
                   **Donnie Marcel King, Esq.**
                   **Andrew C. Simpson, Esq.**
                   **Ryan C. Stutzman, Esq.**
                   **Charles E. Lockwood, Esq.**

### <u>ORDER</u>

**THIS MATTER** comes before the Court on Plaintiff's Motion for Leave to Substitute Expert Witness filed on December 9, 2025. Dkt. No. 218. On December 23, 2025, Defendants Port Hamilton Refining and Transportation, LLLP ("Port Hamilton") and Limetree Bay Terminals, LLC d/b/a Ocean Point Terminals ("Ocean Point") filed a Joint Opposition to Plaintiff's Motion for Leave to Substitute Expert Witness. Dkt. No. 223. On February 11, 2026,

*Wooten v. Limetree Bay Terminals*
1:23-cv-00012-RAM-EAH
Order
Page 2

the Court held a hearing on the motion. For the reasons that follow, Plaintiff's motion is

denied.

## BACKGROUND

### I.    The Scheduling Orders and Expert Deadlines

On April 8, 2025, the Court issued a Scheduling Order that set August 8, 2025 as the

deadline for Plaintiff to serve her Rule 26(a)(2) expert disclosures. Dkt. No. 126. Defendants'

expert disclosures were due September 22, 2025. *Id.* Expert depositions were required to be

completed by November 20, 2025, and dispositive and Daubert motions were due January 5,

2026. *Id.*

On August 8, 2025, Plaintiff moved for an extension of the expert disclosure deadline,

representing that internet access issues prevented timely service and requested an

extension to August 15, 2025. Dkt. No. 181. The Court granted the motion in part and denied

in part, extending the deadline for service of Plaintiff's expert report to August 12, 2025, Dkt.

No. 182, rather than August 15, 2025. On August 12, 2025, Plaintiff timely served her expert

disclosures pursuant to Rule 26, attaching the signed expert report of Daniel Mahr, P.E.,

dated August 12, 2025. Dkt. No. 223-1 (Mahr's Report). Thereafter, on September 12, 2025,

Defendants filed a Joint Motion for Extension of Time to File and Serve Expert Reports. Dkt.

No. 194. Following briefing, the Court granted that motion on September 22, 2025, extending

the Defendants' expert disclosure deadline to October 6, 2025. Dkt. No. 202. Pursuant to the

Court's Order, Defendants timely served their expert disclosures pursuant to Rule 26 and the

rebuttal report of Dr. William R. Sawyer. Dkt. No. 206.

*Wooten v. Limetree Bay Terminals*
1:23-cv-00012-RAM-EAH
Order
Page 3

On November 14, 2025, the parties filed a Joint Motion for Extension of deadlines. Dkt. No. 214. By Order dated November 18, 2025, the Court extended the deadline for completion of expert depositions to February 20, 2026, and the deadline for dispositive and Daubert motions to April 7, 2026. Dkt. No. 215. The Court stated that it would not be amenable to further extensions of the remaining deadlines. *Id.*

## II.    Motion to Substitute

On December 9, 2025, Plaintiff filed a Motion for Leave to Substitute Expert Witness and to Submit a Replacement Expert Disclosure and Report. Dkt. No. 218. When Plaintiff filed this motion, the expert disclosure deadline had expired, and expert depositions were proceeding pursuant to the amended schedule. In the Motion, Plaintiff seeks leave to substitute Cassandra K. Moody in place of Daniel Mahr, P.E., as her liability expert. *Id.* at 1. Plaintiff represents that Mr. Mahr was originally identified as her expert on August 8, 2025, and that his report was disclosed on August 12, 2025. *Id.*

Plaintiff asserts that good cause exists for substitution because Mr. Mahr became unavailable. *Id.* Specifically, Plaintiff states that Mr. Mahr was unresponsive to requests for deposition dates and ultimately refused to provide dates for his deposition. *Id.* Plaintiff represents that the company that retained Mr. Mahr as an expert apologized and agreed to secure a replacement expert. *Id.* at 1–2.

According to the motion during the week of October 20, 2025, Plaintiff began exploring retention of a substitute expert. *Id.* at 2. Plaintiff states that she met with Cassandra Moody on October 28, 2025, and retained her as a replacement expert. *Id.* Plaintiff further

represents that Ms. Moody prepared a report in which she adopts all of Mr. Mahr's opinions.
*Id.*; *see also* Dkt. No. 223-1 (Mahr's Report). The record reflects that Ms. Moody completed
her report by November 13, 2025. Dkt. No. 218-1 at 1.

Plaintiff contends that Defendants will not be prejudiced by the substitution because
Ms. Moody has adopted Mr. Mahr's opinions and has assured Plaintiff that she can provide
deposition dates in a timely manner and comply with the February 20, 2026 expert
deposition deadline. Dkt. No. 218 at 2. Plaintiff also represents that she attempted to meet
and confer prior to filing the motion, but Defendants did not respond to the request. *Id.*

In support of the request, Plaintiff cites Federal Rule of Civil Procedure 26(a)(2) and
case law recognizing that courts may permit substitution of expert witnesses under
appropriate circumstances. *Id.* at 2–4. Plaintiff therefore asks the Court to permit
substitution of Ms. Moody as her liability expert and to allow service of Ms. Moody's report
in place of Mr. Mahr's disclosure. *Id.* at 4.

## III.    The Opposition

On December 23, 2025, Defendants Port Hamilton and Ocean Point (collectively,
"Defendants") filed a Joint Opposition to Plaintiff's Motion for Leave to Substitute Expert
Witness. Dkt. No. 223. Defendants argue that Plaintiff's motion should be denied for the
following reasons: (1) no good cause exists; (2) the motion to substitute was not made in
good faith and lacked candor with opposing party and with the Court; (3) Moody's report
introduces substantive new opinions; and (4) granting substitution would substantially
prejudice Defendants. *Id.* at 1.

*Wooten v. Limetree Bay Terminals*
1:23-cv-00012-RAM-EAH
Order
Page 5

Defendants dispute that Mr. Mahr was unavailable. They argue that he did not withdraw or refuse to testify, and that any alleged "unresponsiveness" was precipitated by Plaintiff's unilateral modification of his expert report without his permission. *Id.* at 2–3. They contend that the breakdown in the relationship was self-inflicted and foreseeable, not a circumstance beyond Plaintiff's control. *Id.* at 6–7.

Defendants further assert that it was only after they served the rebuttal report of Dr. William R. Sawyer that Plaintiff began seeking a substitute expert. *Id.* at 2–4; *see also* Dkt. No. 223-2. Relying on Plaintiff's own representations, Defendants note that during "the week of October 25, 2025," the company that retained Mr. Mahr began looking for a substitute expert, and that by October 28, 2025, Plaintiff had agreed to retain Cassandra Moody. *Id.* at 4 (citing Dkt. No. 218 at 2). Defendants argue that this sequence demonstrates that the decision to substitute had been made by October 28, 2025, and that the timing "dovetails" with receipt of Dr. Sawyer's report rather than with any genuine unavailability of Mr. Mahr. *Id.* at 3–4.

Defendants also emphasize that when the parties filed the Joint Motion for Extension of Deadlines on November 14, 2025, Plaintiff did not disclose that Ms. Moody had been retained as a substitute expert or that her expert report had been completed on November 13, 2025. *Id.* at 4–5; *see* Dkt. No. 218-1 (Moody's Report) at 1. Defendants contend that the Joint Motion's reference to experts being "unresponsive" did not accurately describe the circumstances involving Mr. Mahr. Dkt. No. 223 at 4–5 (citing Dkt. No. 214 at 1).

With respect to deposition scheduling, Defendants argue that Plaintiff's assertion that Mr. Mahr refused to provide deposition dates, is contradicted by the record. *Id.* at 9. They

represent that Mr. Mahr was served with a subpoena on December 8, 2025 for a December 29, 2025 deposition and that he "responded promptly," indicating he was unavailable on December 29 but offering to be deposed in January. *Id.*; *see also* Dkt. No. 223-3. According to Defendants, Mr. Mahr "did not give any indication that he would refuse to testify at a deposition." Dkt. No. 223 at 9. Defendants further contend that Plaintiff's subsequent Motion to Quash or for Protective Order, Dkt. No. 221, demonstrates that it was Plaintiff, rather than Mr. Mahr, who sought to prevent the deposition. Dkt. No. 223 at 5–6.

Finally, Defendants argue that substitution would substantially prejudice them. *Id.* at 1. They contend that Moody's report introduces new substantive opinions, including opinions regarding Ocean Point's alleged duties and control, which would require Defendants to retain and prepare additional rebuttal expert testimony beyond that already provided in Dr. Sawyer's October 6, 2025 report. Id. at 1, 8–9. Defendants further assert that, if substitution were permitted, they would need to depose both Mr. Mahr and Ms. Moody, resulting in duplicative expert discovery and additional expense, and that further extensions of expert deadlines would likely be required notwithstanding the Court's prior scheduling directives. *Id.* at 8–10.

## IV.    The Emergency Informal Conference

On January 21, 2026, Defendants served a second Notice of Deposition for Mr. Mahr, scheduling the deposition for February 3, 2026. Dkt. No. 230. Plaintiff again moved to quash the deposition and for a protective order. Dkt. No. 231. On February 3, 2026, Mr. Mahr appeared for the noticed deposition. As the deposition was about to proceed, Plaintiff's

*Wooten v. Limetree Bay Terminals*
1:23-cv-00012-RAM-EAH
Order
Page 7

counsel would not allow it to go forward and warned Mr. Mahr that there would be legal consequences if he proceeded.[1] The parties then contacted the Court for an emergency informal conference.

During that conference, Plaintiff's counsel represented that Mr. Mahr was being withdrawn as a testifying expert at that time and that Plaintiff intended to rely instead on a substitute expert who had reviewed and adopted his report. However, Plaintiff was still awaiting a ruling on the motion to substitute. Plaintiff's counsel also explained that issues had arisen concerning edits made to Mr. Mahr's report and billing, and stated that certain factual corrections had been made, including corrections to the location and the name of an entity. Counsel further represented that the expert referral organization had agreed to secure a replacement expert, and that Cassandra Moody had reviewed the same materials provided to Mr. Mahr. Plaintiff's counsel argued that because Mr. Mahr was now a consulting expert, he was not subject to deposition.

Defendants opposed halting the deposition and objected to the withdrawal of Mr. Mahr as a testifying expert on the day of the noticed deposition. They argued that once Mr. Mahr had been disclosed as a testifying expert, Plaintiff could not convert him to a consulting expert to avoid deposition. Defendants further contended that substitution should not be permitted because it was sought after service of Dr. Sawyer's rebuttal report and outside the time frame contemplated by the scheduling order.

_____

[1] Th is warning is corroborated by Exhibit 13, in which Plaintiff's counsel wrote to Mr. Mahr that he had been removed as an expert and that "if you speak to anyone besides josh cahn (sic) about this case there will be legal repercussions."

Defendants also asserted that Moody's report did not merely adopt Mr. Mahr's opinions but went beyond them, including the addition of a root cause analysis not contained in Mr. Mahr's report. They argued that Moody's report functioned as a rebuttal rather than a true substitution and pointed to Appendix A of Moody's report, which cited Dr. Sawyer's report, as evidence that her opinions incorporated materials that were not available to Mr. Mahr when he prepared his report.

The Court noted during the conference that substitution must occur within the framework of the scheduling order and thereafter granted Plaintiff's motion for protection from the deposition holding the deposition in abeyance while the Court considered and ruled on Plaintiff's motion to substitute. Dkt. No. 239. As a result of the issues raised during the informal conference, the Court set a hearing to create a clear record and allow the parties to formally articulate on the record their positions regarding substitution before the Court ruled on the motion.

## V.    The Hearing

On February 5, 2026, the Court entered an Emergency Order scheduling a hearing for February 11, 2026 on Plaintiff's Motion to Substitute after concluding that the parties' submissions and their assertions during the informal conference revealed material factual disputes regarding whether Mr. Mahr was unavailable and whether good cause existed under Rule 16(b)(4). Dkt. No. 241 at 2–3. On February 10, 2026, Plaintiff filed an Emergency Motion to Continue the hearing and thereafter submitted two supplemental filings in support

of that motion. Dkt. Nos. 242, 243, 245. The Court denied the motion and proceeded with the hearing as scheduled. *See* Dkt. Nos. 246, 254.

Lee J. Rohn, Esq., and Robin P. Seila, Esq., appeared on behalf of Plaintiff. Andrew C. Simpson, Esq., appeared for Defendant Port Hamilton. Reginald E. Janvier, Esq., appeared on behalf of Defendant Ocean Point, via video conference.[2] Mr. Daniel Mahr, P.E., appeared pursuant to the Court's directive and testified under oath.

Plaintiff's proposed substitute expert witness Cassandra Moody did not appear. In filings submitted the evening before the hearing, Plaintiff's counsel represented that she had been unable to reach Ms. Moody despite repeated attempts beginning February 6, 2026. Dkt. No. 245; Dkt. No. 245-1 (Attorney Seila's Declaration) ¶¶ 3–5. At the hearing, Plaintiff's counsel represented that she reached Ms. Moody approximately two hours before the hearing and that Ms. Moody was engaged in another deposition and therefore unavailable to testify.

### A. The August 12 Report

Plaintiff disclosed Daniel Mahr, P.E., as her testifying engineering expert and served his Rule 26(a)(2) expert report dated August 12, 2025 (the "August 12 Report"). The August 12 Report was the operative expert disclosure served pursuant to the scheduling order

---

[2] The Court notes that Ryan C. Stutzman, Esq., appeared on behalf of West Indies Petroleum, Ltd. ("WIPL") However, the parties had filed a Joint Motion for Dismissal With Prejudice of WIPL. Accordingly, the Court excused WIPL and its counsel from the hearing. Subsequently, by Order dated February 20, 2026, the District Judge granted Plaintiff Nicole Wooten and WIPL's Joint Motion for Dismissal with Prejudice, Dkt. No. 193, and dismissed WIPL from this action with prejudice. Dkt. No. 261.

deadline. Exhibit 4 admitted at the hearing, reflects an August 12, 2025 email from Mr. Mahr to Plaintiff's counsel at 8:19 a.m., in which he inquired about the report deadline. He thereafter submitted the signed August 12 report that same day.

Plaintiff's counsel also moved to admit Exhibit 1. Exhibit 1 was admitted and provides the unedited conclusion section of the August 12 report as originally transmitted by Mr. Mahr. Two paragraphs from that original version were removed before Plaintiff served the operative August 12, 2025 report. At the hearing, Plaintiff's counsel represented that after Mr. Mahr submitted his report, he could not be reached, which purportedly led counsel to remove the paragraphs before service. Mr. Mahr testified that he did not review the altered version prior to filing and that the version served bore his signature. The record further reflects that, after the August 12 Report was served, communications occurred regarding those edits. As reflected in the admitted exhibits, Mr. Mahr thereafter prepared a revised version of his report dated August 14.

### B.  Revisions and the Billing Dispute

Plaintiff's counsel also moved to admit Exhibit 6, which was admitted. Exhibit 6 consists of email correspondence concerning revisions to the August 12 report. Plaintiff's counsel also moved to admit Exhibit 7, which was admitted. Exhibit 7 is the billing statement issued by Mr. Mahr to Cahn Litigation Services, Inc. ("Cahn Litigation").[3] The billing

---

[3] Cahn Litigation Services, Inc. ("Cahn Litigation") is a litigation support entity that facilitated the retention and administrative coordination of Mr. Mahr's expert services. The testimony elicited at the hearing reflects that Mr. Mahr's contractual relationship for billing purposes was with Cahn Litigation rather than directly with Plaintiff's counsel.

*Wooten v. Limetree Bay Terminals*
1:23-cv-00012-RAM-EAH
Order
Page 11

statement reflects charges dated August 12 and August 14, 2025 for "Review[ing] client advice about document alteration and agree[ing] with changes," and "Revis[ing] and resubmit[ing] report per agreed updates."

The admitted exhibits and testimony established the following chronology. After submission of the August 12 report, Plaintiff's counsel advised Mr. Mahr that two paragraphs had been removed. A discussion occurred regarding the August 12 Report, after which Mr. Mahr prepared and transmitted the August 14 revised report. The August 14 revision was not served as a formal amended expert disclosure under Rule 26(a)(2).[4] Mr. Mahr thereafter invoiced Cahn Litigation, the entity with whom he had a contractual relationship, for time associated with post-submission communications and revisions.

Plaintiff's counsel represented at the hearing that they declined to pay the invoice associated with post-submission revisions and related communications because those changes were made after the expert disclosure deadline had passed and the August 12 report had already been submitted to the Court. Counsel further represented that Cahn Litigation advised them that payment was not required. Plaintiff later identified this unresolved invoice dispute as the basis for Mr. Mahr's alleged unavailability.

### C. Plaintiff's Theory of Unavailability

In support of her contention that Mr. Mahr became unavailable, Plaintiff relied principally on Exhibit 10, which was admitted into evidence without objection. Exhibit 10 is

---

[4] Although, the August 14, 2025 revised version was not properly served it was provided to the proffered substitute expert Cassandra Moody. *See* Dkt. No. 218-1 at 2.

an October 7–8, 2025 email chain between Mr. Mahr and Joshua Cahn of Cahn Litigation, with Plaintiff's counsel copied.

Exhibit 10 reflects that after the August 12 report was altered, the August 14 revised version was transmitted, and the related invoice remained outstanding. Discussions thereafter arose concerning the scope of additional work and resolution of that invoice. In the October 7-8, 2025 email correspondence, Mr. Mahr outlined what he believed was required before undertaking rebuttal review and deposition preparation, stating:

"What is need[ed] before I prepare anything are:

1.  Settlement of the dispute and payment from Cahn.

2.  Indication from Lee J. Rohn and Associates that Energy Associates' proposal is acceptable."

He further stated, "[a]t this point, there is nothing for me to do until I hear further from Cahn Litigation." The same correspondence reflects that Mr. Mahr provided deposition availability for November, identifying November 13 as the only date he was unavailable.

Plaintiff's counsel argued that these statements demonstrated that Mr. Mahr conditioned further participation on payment and therefore rendered himself unavailable. Plaintiff's counsel also asserted that dissatisfaction with Mr. Mahr existed as early as August 2025 and that the relationship had broken down following submission of the August 12 report. At the same time, counsel stated at the hearing that they did not have a substantive objection to the contents of Mr. Mahr's report.

*Wooten v. Limetree Bay Terminals*
1:23-cv-00012-RAM-EAH
Order
Page 13

### D.  Mr. Mahr's Testimony

At the hearing, Mr. Mahr testified under oath regarding his communications, the origin of the billing dispute, his availability, and his willingness to continue serving as an expert in this matter.

Mr. Mahr testified that his contractual relationship was with Cahn Litigation Services, Inc., not with Plaintiff. He explained that all communications concerning billing were directed to Cahn Litigation because that entity retained him and managed the contractual terms of his engagement. He stated unequivocally that any billing issue was between himself and Cahn Litigation and never with Plaintiff or Plaintiff's counsel.

With respect to Exhibit 10, the October 7–8, 2025 email chain, Mr. Mahr testified that the correspondence reflected his understanding that, under his agreement with Cahn Litigation, additional scope of work—including review of Defendants' rebuttal report and deposition preparation—required authorization and confirmation of payment. He explained that his contract required a retainer before undertaking work. He further testified, however, that despite that contractual requirement, he had already performed substantial work in this matter without first receiving a retainer, including the preparation and submission of his expert reports. In his view, the October 7–8 communication was not a refusal to proceed but a request for clarification of scope and resolution of an outstanding invoice with Cahn Litigation. Mr. Mahr's testimony further established that the invoice associated with the August 12 and August 14 revisions was ultimately paid in January 2026.

*Wooten v. Limetree Bay Terminals*
1:23-cv-00012-RAM-EAH
Order
Page 14

Mr. Mahr expressly disagreed with Plaintiff's counsel's characterization that his October 7–8 email constituted a refusal to testify or rendered him unavailable. He testified that the communication reflected a request for clarification of scope and resolution of the outstanding invoice from Cahn Litigation, not a refusal to testify. He further testified that he never conditioned his testimony on payment of the outstanding invoice and never refused to sit for a deposition. He further testified that he provided deposition availability for November 2025 and was available on all dates except November 13, 2025, as reflected in Exhibit 10.

Mr. Mahr additionally testified regarding Exhibit 13, which was admitted into evidence. Exhibit 13 reflects that on November 10, 2025, he contacted Plaintiff's counsel to advise that he had located a published article concerning respirable petroleum coke dust that he believed would "support my thoughts in my report" and "agree with points in my report." Later that same day, Plaintiff's counsel responded: "You have been removed as an expert in this case. Please do not contact me again." Mr. Mahr testified that, aside from receiving a Christmas card thereafter, this was the only communication he received from Plaintiff's counsel following that exchange. He further testified that he was never informed that he would remain involved as a consulting expert.

Finally, Mr. Mahr testified that he stands by his August 12, 2025 report, that he has not reviewed Ms. Moody's report, and that he harbors no animosity toward Plaintiff or Plaintiff's counsel. He stated that nothing in the billing communications would impair his

ability to perform his duties objectively and without bias and that he remains willing to serve as a testifying expert in this matter.

### E.   The Expert Reports

Plaintiff originally disclosed Daniel Mahr, P.E., as her engineering expert and produced his Expert Witness Report dated August 12, 2025.[5] Dkt. No. 223-1 (Mahr's Report). The report spans thirty-one pages of substantive analysis, exclusive of appendices, and is structured as a technical engineering evaluation. Dkt. No. 223-1 at 4. Mr. Mahr defines the scope of his assignment as a technical analysis concerning petroleum coke stockpiles and the August 2022 smoldering incident at the north petroleum coke dome. *Id.* at 5–6. His report addresses combustion mechanics, stockpile management practices, ventilation, dust suppression, and air monitoring data, culminating in nine enumerated engineering opinions. *Id.* at 5–8.

Plaintiff later retained Cassandra K. Moody, P.E., who issued a Preliminary Engineering Report dated November 13, 2025. Dkt. No. 218-1 at 1. Ms. Moody's November 13, 2025 report is 128 pages in length. *Id.* It expressly incorporates, in Appendix F, the August 14 revision of Mr. Mahr's report, rather than the operative August 12 report that has been served pursuant to Rule 26(a)(2). *Id.* at 2 (Table of Contents reflecting "Preliminary report of Mr. Daniel Mahr dated August 14, 2025"). In her Executive Summary, Ms. Moody states that she reviewed Mr. Mahr's report and adopted all nine of his opinions. *Id.* at 5. She further

---

[5] Mr. Mahr's August 12, 2025 expert report is titled "Preliminary Expert Witness Report." Plaintiff submitted that report as her Rule 26(a)(2) expert disclosure.

represents that her opinions are rendered within a reasonable degree of engineering

certainty. *Id.*

However, Ms. Moody's report extends beyond the technical combustion and stockpile

analysis reflected in Mr. Mahr's disclosure. *Compare* Dkt. No. 218-1 at 2–5 (Moody's Report),

*with* Dkt. No. 223-1 at 4–8 (Mahr's August 12 Report). In addition to adopting Mr. Mahr's

engineering conclusions, Ms. Moody expressly characterizes Defendants' conduct as "grossly

negligent," "negligent," constituting a failure to warn, an abnormally dangerous condition,

and a nuisance. Dkt. No. 218-1 at 5. These legal characterizations do not appear in Mr. Mahr's

August 12 report. Ms. Moody's report also incorporates a broader management systems

analysis and root cause framework, including PDCA and RCA methodologies, OSHA hierarchy

analysis, and expanded causal factor worksheets. *See generally*, Dkt. No. 218-1. This

management-systems and root-cause framework does not appear in Mr. Mahr's August 12

technical disclosure, which is limited to engineering practices concerning stockpile

management and combustion conditions.

At the hearing, the Court examined whether Ms. Moody's proposed report remained

within the scope of Mr. Mahr's original disclosure. Testimony established that Ms. Moody

was provided materials by Plaintiff's counsel in preparation for her report. Plaintiff's counsel

acknowledged that Ms. Moody was provided with Defendants' expert Sawyer's report.

Plaintiff's counsel represented that Ms. Moody did not recall seeing Sawyer's report, but

addressed the materials provided to her.

*Wooten v. Limetree Bay Terminals*
1:23-cv-00012-RAM-EAH
Order
Page 17

### F.   Subsequent Supplemental Filings

On February 19, 2026, Plaintiff filed a Notice of Supplemental Affirmation and Withdrawal of Cassandra Moody's Proposed Expert Report. Dkt. No. 258. Attached to that filing is Ms. Moody's sworn Affirmation. Dkt. No. 258-1.

In her Affirmation, Ms. Moody states that she was contacted by Cahn Litigation concerning replacing Daniel Mahr in this matter. *Id.* ¶ 3. She further affirms that she began reviewing documents and Mr. Mahr's expert report on or about October 2025. *Id.* ¶ 4. Ms. Moody states that she never communicated with Mr. Mahr. *Id.* ¶ 5. She affirms that she reviewed Mr. Mahr's report and adopted his opinions independently, and that she did not collaborate with him in any way. *Id.* ¶¶ 6–7. Finally, she states that, after conducting her own research, she agreed to withdraw her November 13, 2025 report and instead proceed with Plaintiff's reliance on Mr. Mahr's report. *Id.* ¶ 8.

### DISCUSSION

At the outset, the Court notes that the withdrawal of Ms. Moody's report does not alter the Court's Rule 16 analysis. The substitution request was made after expiration of the expert disclosure deadline, and the good-cause inquiry turns on Plaintiff's diligence at the time substitution was sought. The Court believes that the evidentiary hearing resolved the material concerns it had regarding Mr. Mahr's alleged unavailability and Plaintiff's diligence in seeking leave from the Court for a substitute expert.

With the record now developed, the Court turns to the governing legal standard. Because the expert disclosure deadline had expired when Plaintiff sought substitution,

*Wooten v. Limetree Bay Terminals*
1:23-cv-00012-RAM-EAH
Order
Page 18

Plaintiff's request must be treated as a modification of the scheduling order and would only be permitted upon a showing of good cause under Federal Rule of Civil Procedure 16(b)(4).[6] Because this is a good cause analysis on the modification of a scheduling order, the primary focus of that inquiry is Plaintiff's diligence. *See Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d Cir. 2010).

## I. Rule 16(b)(4) Standard

Courts within the Third Circuit construe a motion to substitute an expert after the expiration of expert disclosure deadlines as a motion to modify the scheduling order under Federal Rule of Civil Procedure 16(b)(4). *Pers. Audio, LLC v. Google LLC*, No. 17-1751, 2023 WL 3582681, at *3 (D. Del. May 22, 2023) (citing *Eichorn v. AT&T Corp.*, 484 F.3d 644, 650–51 (3d Cir. 2007)). Once entered, a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).

The burden rests with the moving party to demonstrate good cause. *Race Tires*, 614 F.3d at 84. Good cause under Rule 16(b)(4) focuses primarily on the diligence of the party seeking modification. *Pers. Audio*, 2023 WL 3582681, at *3*; Synygy, Inc. v. ZS Assocs., Inc.*, No. 07-3536, 2015 WL 4578807, at *2 (E.D. Pa. July 30, 2015).

---

[6] Once a scheduling order sets deadlines, any request made after those deadlines expire requires modification of that order and is governed by Rule 16(b)(4). *See Eichorn*, 484 F.3d at 650–51. Courts within this Circuit treat post-deadline expert substitutions as Rule 16(b)(4) motions because they seek to alter an expired scheduling deadline. *See Nike Inc. v. E. Ports Custom Brokers, Inc.*, No. 11-4390, 2024 U.S. Dist. LEXIS 6589, at *2 (D.N.J. Jan. 12, 2024); *Pers. Audio*, 2023 WL 3582681, at *1–3. Had substitution been sought before the expiration of the expert disclosure deadline, Rule 16(b)(4) would not have been implicated. *See Eichorn*, 484 F.3d at 650–51. Because Plaintiff moved after the deadline had passed, Rule 16(b)(4)'s good-cause standard controls.

In the expert substitution context, the movant must demonstrate that the asserted need for substitution stems from circumstances genuinely affecting the expert's ability to participate, rather than from preventable or strategic litigation decisions, and that it acted diligently upon learning of those circumstances. *See Pers. Audio*, 2023 WL 3582681, at *3; *Synygy*, 2015 WL 4578807, at *2; *Leibel v. NCL (Bahamas) Ltd.*, 185 F. Supp. 3d at 1356–57 (S.D. Fla. 2016); *Fid. Nat'l Fin., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 308 F.R.D. 649, 653 (S.D. Cal. 2015). To that end, Courts consider (1) when the party learned of the alleged unavailability, (2) whether the circumstances were foreseeable or within the party's control, (3) how promptly the party acted, and (4) whether the party was candid with the Court and opposing counsel. *See Nike*, 2024 WL 150088, at *2 (emphasizing that Rule 16(b) good cause "primarily considers the diligence of the party seeking the amendment" and evaluating timing of disclosure after learning of expert's health concerns); *see also Pers. Audio*, 2023 WL 3582681, at *1–3 (finding lack of diligence where counsel delayed notifying the Court after learning of expert's death and failed to raise unavailability during scheduling discussions); *Synygy*, 2015 WL 4578807, at *2 (same); *Fid. Nat'l Fin.*, 308 F.R.D. at 653 (denying substitution where delay and litigation management decisions were attributable to the movant); *Morales v. Palomar Health*, No. 14-cv-0164, 2016 WL 3763070, at *1–2 (S.D. Cal. July 14, 2016) (rejecting substitution where asserted unavailability lacked evidentiary support).

## II. Application

As set forth above, under Rule 16(b)(4), diligence is not one factor among many. It is the threshold requirement. Where the moving party was not diligent, courts may deny relief without reaching prejudice or other considerations. *See Pers. Audio*, 2023 WL 3582681, at *3. The Court therefore begins its analysis with the diligence consideration.[7]

### A. Mahr's Alleged Unavailability

The evidence reflects that Mr. Mahr provided deposition availability in November 2025, confirmed that he stood by his report, and testified that he never refused to sit for a deposition. At the hearing, Mr. Mahr further stated that he would have appeared if subpoenaed and that he was still willing to appear.

On December 10, 2025, Defendants formally noticed Mr. Mahr's deposition for December 29, 2025. Dkt. No. 219. Two days later, Plaintiff moved to quash that deposition or, in the alternative, for a protective order. Dkt. No. 221. On January 21, 2026, Defendants once again noticed Mahr's deposition for February 3, 2026, after learning that Mr. Mahr was

---

[7] Although diligence is the primary focus, courts in this district have also considered the importance of the evidence, potential prejudice to the opposing party, disruption to the schedule, and indicia of gamesmanship. *See Fraunhofer-Gesellschaft Zur Forderung Der Angewandten Forschung e.V. v. Sirius XM Radio Inc.*, No. 17-184, 2022 WL 608143, at *2 (D. Del. Jan. 27, 2022). Courts routinely deny substitution where the asserted withdrawal was preventable, strategic, or within the movant's control. *See, e.g., Leibel*, 185 F. Supp. 3d at 1356–57 (finding no good cause where expert's withdrawal was "entirely preventable"); *Morales*, 2016 WL 3763070, at *1–2 (questioning circumstances surrounding purported withdrawal and timing of request); *Fid. Nat'l Fin.*, 308 F.R.D. at 650, 653–54 (denying substitution where the movant "waited more than nine months after learning of expert's unavailability before raising the issue"). If the moving "party was not diligent, the inquiry should end" and relief is denied. *Synygy*, 2015 WL 4578807, at *2.

unavailable on December 29, 2025. Dkt. No. 230. That same day, Plaintiff once again moved for a protective order and to quash the deposition. Dkt. No. 231. On February 3, 2026, Defendants attempted to proceed with Mr. Mahr's deposition. Mr. Mahr was present for the deposition; however, Plaintiff's counsel refused to let the deposition go forward. This resulted in the parties contacting this Court for an emergency informal conference. After the conference, the Court granted the protective order and placed Mr. Mahr's deposition on hold while it considered the instant motion. The record is clear that Mr. Mahr's deposition did not occur because Plaintiff sought to quash the deposition, even though Mr. Mahr was available and willing to testify.

The record further reflects that when served with a subpoena for a December 29, 2025 deposition, Mr. Mahr responded promptly, indicated that he was unavailable on that date, and provided availability beginning in early January. Dkt. No. 223-3. A single scheduling conflict, coupled with the offer of alternative dates, does not constitute withdrawal. Moreover, the record reflects that Mr. Mahr appeared on February 3, 2026 for the re-noticed deposition, and when Defendants attempted to depose Mr. Mahr, Plaintiff intervened to preclude it from going forward, necessitating an informal conference with the Court. Additionally, at the hearing, Mr. Mahr appeared and testified. These facts do not reflect the type of genuine and unavoidable expert unavailability that justifies modification of a scheduling order. *See Tann v. Service Distributors, Inc.*, 56 F.R.D. 593 (E.D. Pa. 1972) (permitting substitution where expert became gravely ill rendering him unable to testify); *see also Leibel*, 185 F. Supp. 3d at 1356–57 (discussing cases). Considering these established

facts, the circumstances presented here do not reflect the type of extraordinary event that warrants modification of a scheduling order. Accordingly, the record does not establish that Mr. Mahr was or is genuinely unavailable.

### B.  Whether Circumstances Were Beyond Plaintiff's Control

Plaintiff represented that she had no substantive disagreement with Mr. Mahr's report or opinions. Accordingly, the request for substitution was not based on any deficiency in the substance or quality of the expert's work. Rather, Plaintiff contends that substitution was necessitated by circumstances beyond her control, specifically that the professional relationship deteriorated to the point that Mr. Mahr became unavailable for deposition.

The evidentiary record developed at the hearing does not support that characterization. Mr. Mahr testified under oath that he never refused to sit for a deposition. He stated that he informed Plaintiff's counsel he was available throughout November except for one date. He further testified that he would appear if subpoenaed and that he remained willing to serve as Plaintiff's expert and could do so without bias or reservation. The record also reflects that Mr. Mahr appeared for the February 3, 2026 deposition. That deposition did not proceed because Plaintiff sought protection from the deposition, not because Mr. Mahr refused to appear. Those facts do not establish genuine unavailability.

Plaintiff also relies on a billing dispute arising from revisions to the August 12 report. The invoice at issue reflects work performed on August 12 and August 14, 2025, and was issued in late August 2025. However, the dispute regarding payment, is reflected in the October 7–8, 2025 email correspondence between Mr. Mahr and Cahn Litigation, the entity

that retained him. In that exchange, Mr. Mahr indicated that settlement of the disputed invoice and clarification of the scope of any additional assignment were necessary before he would undertake further work. Viewed in context, that communication reflects a request for resolution of an outstanding invoice and confirmation of the terms of a new engagement. Moreover, the same correspondence reflects that Mr. Mahr provided deposition availability for November, identifying only one date on which he was unavailable. Collectively, these circumstances do not constitute a withdrawal from the case or a refusal to testify.

Courts permitting substitution typically confront circumstances such as death, serious illness, medical incapacity, or retirement—events that render continued participation impossible. *See, e.g.*, *Pers. Audio,* 2023 WL 3582681, at *1–3 (expert death); *Newborn Bros. Co. v. Albion Eng'g Co.*, 299 F.R.D. 90, 93–94 (D.N.J. 2014) (expert retirement and medically unable to continue). No comparable circumstance is present here.

The record instead demonstrates that: (1) the billing dispute was between Mr. Mahr and Cahn Litigation and not with Plaintiff; (2) the dispute arose in early October; (3) the invoice was ultimately paid by Cahn Litigation in January 2026; and (4) Mr. Mahr consistently maintained his willingness to testify. Even accepting that the professional relationship had become strained, strain does not equal unavailability. Courts routinely deny substitution where the asserted breakdown or withdrawal is preventable or otherwise within the movant's control rather than the product of genuine incapacity. *See Leibel*, 185 F. Supp. 3d at 1356–57; *see also Fid. Nat'l Fin.*, 308 F.R.D. at 653 (denying substitution where

delay and circumstances were attributable to the movant's own litigation and management

decisions).

The record further reflects that by October 28, 2025, Plaintiff had already retained

Cassandra Moody as a substitute expert. On November 10, 2025, after that retention, Mr.

Mahr independently contacted Plaintiff's counsel to share additional research he believed

supported his opinions. It was at that time he was informed he had been removed as an

expert. This sequence reflects that Plaintiff made the decision to replace Mr. Mahr while he

remained willing to participate. In assessing diligence under Rule 16(b)(4), courts examine

whether the asserted need for modification is attributable to circumstances genuinely

affecting the expert's ability to participate, as opposed to litigation management decisions or

preventable breakdowns within the movant's control. *See Leibel*, 185 F. Supp. 3d at 1356–57

(denying substitution because withdrawal was "entirely preventable"); *Fid. Nat'l Fin.*, 308

F.R.D. at 653 (rejecting good cause where the asserted need for substitution was attributable

to the movant's own litigation management decisions); *see also Synygy,* 2015 WL 4578807,

at *2 (good cause focuses on diligence). Here, no sudden incapacity, retirement, ethical

conflict, or external barrier prevented Mr. Mahr from continuing. The October billing dispute

was known at that time, was capable of resolution, and in fact was resolved. Such

circumstances were not beyond Plaintiff's control.

Rule 16(b)(4) accommodates genuine loss of an expert. It does not permit

modification where the need for substitution arises from litigation management decisions or

a deteriorating working relationship. *See Nike*, 2024 WL 150088, at *2–3 (expert medically

unable to testify due to health concerns and prompt action taken); *Pers. Audio*, 2023 WL 3582681, at *3 (expert death). *But see Leibel*, 185 F. Supp. 3d at 1356–57 (discussing cases where courts deny modification because asserted breakdown stems from circumstances within the movant's control); *Fid. Nat'l Fin.*, 308 F.R.D. at 653 (denying substitution where circumstances were attributable to the movant's own litigation management decisions). On this record, Plaintiff has not demonstrated that circumstances beyond her control necessitated substitution.

### C. Whether Plaintiff was Prompt in Seeking Substitution

Even if Plaintiff had shown that some tension existed in the expert relationship, Rule 16(b)(4) requires that the movant act diligently once it becomes aware of circumstances necessitating modification of a scheduling order. *See Pers. Audio*, 2023 WL 3582681, at *3; *Synygy*, 2015 WL 4578807, at *2. The Court therefore turns to whether Plaintiff acted promptly in seeking substitution.

At the hearing, Plaintiff's counsel represented that dissatisfaction with Mr. Mahr began as early as August 7, 2025, prior to the August 12 report deadline. Counsel stated that Mr. Mahr was difficult to work with, hard to reach, and unavailable to make edits to the report before filing, which purportedly led counsel to remove two paragraphs from the version that was served. After those edits were made, Mr. Mahr prepared a revised August 14 report and submitted an invoice for time associated with the post-submission communications and revisions. That invoice later became part of the asserted breakdown in the relationship.

These concerns were therefore known to Plaintiff in August, and the record reflects a dispute regarding payment in the October 7-8 email correspondence. Yet, Plaintiff did not seek court intervention at that time. Plaintiff could have sought clarification of the expert's availability, requested a brief extension before the August 12 filing deadline, addressed the dispute promptly with Cahn Litigation, or brought the matter to the Court's attention once the October 7–8 email exchange occurred. Instead, Plaintiff began exploring retention of a substitute expert during the week of October 20, 2025. By October 28, 2025, Plaintiff had met with and retained Cassandra Moody. The record further reflects that Ms. Moody completed her report by November 13, 2025. And on November 10, 2025, Plaintiff's counsel informed Mr. Mahr that he had been removed as an expert. Yet, Plaintiff did not file the Motion to Substitute until December 9, 2025.

This chronology indicates that Plaintiff decided to substitute experts and retained a replacement expert well in advance of seeking relief from the Court, raising concerns about Plaintiff's diligence in seeking the substitution promptly. The timing is significant because even accepting Plaintiff's characterization that this correspondence reflected a dispute affecting Mr. Mahr's participation, Plaintiff did not seek immediate court intervention and did not file a motion shortly after the dispute arose. This is not the type of prompt action required to establish diligence under Rule 16(b)(4). *See Nike*, 2024 WL 150088, at *2–3 (evaluating diligence by reference to when the movant learned of the issue and how promptly it acted); *Pers. Audio*, 2023 WL 3582681, at *3 (finding lack of diligence where counsel delayed after learning of the circumstances requiring substitution).

Plaintiff's delay is further underscored by the posture of expert discovery. When Plaintiff filed the motion on December 9, expert depositions were proceeding under the amended schedule. Dkt. Nos. 214, 215, 218. Plaintiff therefore sought substitution after the disclosure deadline had passed and while expert discovery was underway, notwithstanding her earlier decision to retain a replacement expert. Under Rule 16(b)(4), diligence is measured from the time the movant becomes aware of the issue necessitating modification and this sequence weighs against a finding of diligence and supports the conclusion that Plaintiff was not prompt in seeking substitution. *Id.*

### D.  Whether Plaintiff was Candid with the Court and Opposing Parties

Candor and transparency bear directly on the Rule 16(b)(4) diligence inquiry, particularly where a party has determined that it intends to replace an expert but continues to litigate under an existing scheduling order without disclosing that posture. *See Pers. Audio*, 2023 WL 3582681, at *3; *Fid. Nat'l Fin.*, 308 F.R.D. 649, 653.

The record reflects that Plaintiff retained Ms. Moody by October 28, 2025. On November 10, 2025, after Mr. Mahr contacted Plaintiff's counsel about an article that could further help support his findings, Plaintiff's counsel informed him that he had been removed from the case. And by November 13, 2025, Ms. Moody had completed her expert report. Despite having made the decision to substitute and having secured a completed replacement report, Plaintiff joined in filing a Joint Motion for Extension of Deadlines on November 14, 2025 that referenced ongoing scheduling issues concerning expert depositions but did not disclose Mr. Mahr had already been replaced.

In *Fidelity National*, the court denied substitution where the movant had "numerous opportunities" to inform the Court and opposing counsel of the circumstances underlying its request but failed to do so, concluding that the delay undermined any showing of diligence under Rule 16(b)(4). 308 F.R.D. at 653. The court emphasized that Rule 16(b)(4) does not permit a party to continue litigating under existing deadlines while delaying disclosure of circumstances it later invokes as grounds for modification. *Id.* Similarly, in *Personal Audio*, the court found a lack of diligence where counsel was aware of circumstances affecting the expert yet continued litigating under the scheduling order before seeking substitution. 2023 WL 3582681, at *1–3. These decisions reflect that the Rule 16(b)(4) inquiry turns not only on when the movant became aware of the asserted issue, but also on whether it promptly and transparently sought relief once that issue arose.

Here, Plaintiff had determined by late October that a new expert would be retained and had secured a completed replacement report by November 13, 2025. Nevertheless, Plaintiff proceeded with a joint scheduling motion that did not disclose the decision to substitute experts and did not seek leave of Court until December 9, 2025. In assessing diligence under Rule 16(b)(4), courts consider when the need for modification became apparent and how promptly the movant sought relief. Therefore, the timeline reflected here bears directly on whether Plaintiff acted diligently.

Additionally, Plaintiff's motion characterizes Mr. Mahr as unavailable and unresponsive. However, the record reflects that Mr. Mahr provided deposition availability, appeared for his scheduled deposition, and remains willing to testify. Courts have declined

to find good cause where the evidentiary record does not support the asserted basis for substitution. *See Morales*, 2016 WL 3763070, at *1–2 (declining substitution where the asserted unavailability was not supported by the record and the circumstances did not reflect genuine withdrawal). This inconsistency between the asserted basis for substitution and the evidentiary record informs the Court's diligence analysis under Rule 16(b)(4). If the claimed unavailability is not supported by the record, then the movant has not demonstrated that modification was necessitated by circumstances beyond its control. *See Leibel*, 185 F. Supp. 3d at 1356–57 (denying substitution because withdrawal was within the party's control); *Fid. Nat'l Fin., Inc. v. Nat'l Union Fire Ins. Co.*, 308 F.R.D. 649, 653 (S.D. Cal. 2015) (rejecting good cause where the asserted justification was attributable to the movant's own litigation management decisions); *cf. Tann v. Serv. Distribs., Inc.*, 56 F.R.D. 593 (E.D. Pa. 1972) (permitting substitution where the expert became gravely ill and unable to testify).

The Court also notes that courts in this district consider evidence of gamesmanship in evaluating good cause. *See Fraunhofer-Gesellschaft*, 2022 WL 608143, at *2. Here, Plaintiff began exploring substitution shortly after receipt of Defendants' rebuttal report, retained a replacement expert, and proceeded toward substitution before notifying the Court or opposing counsel that substitution would be sought. The record further reflects that Ms. Moody had access to Mr. Mahr's August 14 revised report, which was not the version disclosed as the operative Rule 26(a)(2) disclosure under the scheduling order. In addition,

*Wooten v. Limetree Bay Terminals*
1:23-cv-00012-RAM-EAH
Order
Page 30

Ms. Moody prepared her opinions after reviewing Defendants' rebuttal expert report.[8] The record also underscores that the resulting Moody report goes beyond the scope of Mr. Mahr's August 12 report and addresses matters raised in Defendants' rebuttal, thereby altering the posture of expert discovery rather than merely substituting like-for-like opinions. Where a proposed substitute expert's opinions materially expand upon or respond to rebuttal positions after deadlines have passed, courts have treated such conduct as indicative of strategic litigation choices rather than unavoidable circumstances. *See Fraunhofer*, 2022 WL 608143, at *2.

Here, it is not any single fact in isolation, but the combination of these circumstances—the timing of the retention shortly after receipt of Defendants' rebuttal report, the completion of a replacement report before seeking leave of Court, the failure to disclose that posture during scheduling discussions, the substitute expert's review of Defendants' rebuttal report, and the expansion beyond the scope of the August 12 expert report—that bears on the Court's diligence analysis. Considered collectively, these facts weigh against a finding of diligence and support the conclusion that the request does not arise from circumstances beyond Plaintiff's control.

## CONCLUSION

Plaintiff has not carried her burden to demonstrate good cause under Rule 16(b)(4). The record does not establish that Mr. Mahr was genuinely and uncontrollably unavailable.

---

[8] Ms. Moody's report identifies Defendants' rebuttal expert report among the materials she reviewed in preparing her opinions. See Dkt. No. 218-1 at 164.

*Wooten v. Limetree Bay Terminals*
1:23-cv-00012-RAM-EAH
Order
Page 31

Instead, the asserted circumstances were foreseeable and within Plaintiff's control. The record further shows that Plaintiff did not act promptly once substitution was contemplated, and did not inform opposing counsel nor the Court of the substitution decision during intervening scheduling proceedings. That omission, together with the timing and scope of the proposed substitute report, supports the inference that the request stems from strategic litigation choices rather than unavoidable circumstances. Because Plaintiff has failed to demonstrate diligence—the primary and dispositive consideration under Rule 16(b)(4)—she has also failed to establish good cause, the inquiry ends, and the Court need not reach the issue of prejudice. *See Synygy*, 2015 WL 4578807, at *2.

Accordingly, it is hereby **ORDERED** that Plaintiff's Motion to Substitute Expert, Dkt. No. 218, is **DENIED**.

ENTER:

Dated: February 24, 2026

/s/ Emile A. Henderson III
EMILE A. HENDERSON III
U.S. MAGISTRATE JUDGE