DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

NICOLE WOOTEN,

            Plaintiff,

            v.

LIMETREE BAY TERMINALS d/b/a
OCEAN POINT TERMINALS, PORT
HAMILTON REFINING &
TRANSPORTATION, WEST INDIES
PETROLEUM LTD., and LIMETREE BAY
REFINERY, LLC, as a nominal Defendant,

            Defendants.

Case No. 1:23-CV-00012

**ACTION FOR DAMAGES**

JURY TRIAL DEMANDED

**DEFENDANTS LIMETREE BAY TERMINALS d/b/a OCEAN POINT TERMINALS'**
**MEMORANDUM OF LAW IN SUPPORT OF ITS**
**MOTION FOR SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1 of the Local Rules of Civil Procedure of the District Court of the Virgin Islands, Defendant Limetree Bay Terminals, LLC d/b/a Ocean Point Terminals ("Ocean Point"), by and through undersigned counsel, respectfully moves this Court for an order granting summary judgment in its favor and against Plaintiff Nicole Wooten on all five claims asserted in the Second Amended Complaint.

As detailed in the Argument below, there is no genuine dispute as to any material fact on the controlling issue of specific causation, and Ocean Point is entitled to judgment as a matter of law.

## **TABLE OF CONTENTS**

Page

I. INTRODUCTION ...................................................................................................................1

II. FACTUAL BACKGROUND ................................................................................................2

III. LEGAL STANDARD ..........................................................................................................4

IV. ARGUMENT .......................................................................................................................5

A. Plaintiff Cannot Establish Causation Because No Expert Identified the Substance, Calculated the Dose, or Ruled Out Documented Alternative Causes......................................6

   1. Dr. Wilkenfeld Assumed Causation by Using Plaintiff's Symptoms to Prove the Very Exposure He Was Supposed to Measure. ......................................................................6

   2. No One Calculated the Dose—And Without That Number, There Is No Causation. ........7

   3. Dr. Wilkenfeld Admits the Objective Evidence Required for a RADS Diagnosis Does Not Exist in this Case.....................................................................................................8

   4. Dr. Wilkenfeld Concedes His Research Does Not Support Injury from a One-Minute Exposure—and Cannot Separate His Theory from Plaintiff's Pre-Existing Disease .........8

   5. No One Investigated the Two Documented Alternative Causes—Saharan Dust Confirmed Present by Plaintiff's Own Doctor, and an Uncharacterized Landfill Exposure Two Days Later..................................................................................................9

B. Each Of Plaintiff's Five Claims Fails On Independent Grounds As Well. .............................10

   1. Gross Negligence Is Not a Separate Claim Under V.I. Law and Nothing in the Record Supports a Finding of Reckless Indifference. ....................................................................10

   2. The Negligence Claim Independently Fails Because Plaintiff Cannot Establish the Essential Element of Specific Causation. .............................................................................11

   3. The Failure-to-Warn Claim Fails as a Non-Standalone Theory and Because a Warning Would Not Have Altered Plaintiff's Conduct. ....................................................................11

   4. Strict Liability Is Foreclosed by Controlling Precedent and Still Requires the Proof of Causation Plaintiff Cannot Provide. ..................................................................................12

   5. The Private Nuisance Claim Fails Because Plaintiff Held No Possessory Interest in the Refinery and Cannot Prove Causation. ..............................................................................12

V. CONCLUSION .....................................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)............................................................................................4

*Antilles Sch., Inc. v. Lembach*,
64 V.I. 400 (2016)............................................................................................11

*Brathwaite v. Xavier*,
71 V.I. 1089 (2019)..........................................................................................10

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986).........................................................................................4

*Cifre v. Daas Enters., Inc.*,
62 V.I. 338 (V.I. Super. 2015) ........................................................................12

*Comm'r of DPNR v. Century Aluminum Co.*,
2014 WL 184445 (D.V.I. Jan. 16, 2014) .......................................................12

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997)........................................................................................6, 7

*Gov't of the V.I. v. Connor*,
60 V.I. 597 (V.I. 2014) ...................................................................................10

*Heller v. Shaw Indus., Inc.*,
167 F.3d 146 (3d Cir. 1999)..............................................................................1

*Henry v. St. Croix Alumina, LLC*,
572 F. App'x 114 (3d Cir. 2014) ..............................................................1, 5, 6

*In re Paoli R.R. Yard PCB Litig.*,
35 F.3d 717 (3d Cir. 1994)............................................................................1, 6

*Kannankeril v. Terminix International, Inc.*,
128 F.3d 802 (3d Cir. 1997).............................................................................6

*Machado v. Yacht Haven U.S.V.I., LLC*,
61 V.I. 373 (V.I. 2014) ....................................................................................5

*McMunn v. Babcock & Wilcox Power Generation Group, Inc.*,
896 F. Supp. 2d 347 (W.D. Pa. 2012)...............................................................6

*Richards v. Marshall*,
    2013 WL 1901637 (D.V.I. May 8, 2013), aff'd, 605 F. App'x 134 (3d Cir. 2015) ...................5

*Smith v. Katz*,
    2013 WL 1182074 (D.V.I. Mar. 22, 2013).......................................................................1, 6, 7

**Rules**

Fed. R. Civ. P. 56(a) ............................................................................................................4

**Other Authorities**

Restatement (Second) of Torts § 388 (1965)....................................................................11

Restatement (Second) of Torts § 432 (1965)................................................................9, 10

Restatement (Second) of Torts §§ 519–520.....................................................................12

Restatement (Second) of Torts § 821D (1979).................................................................12

## I. INTRODUCTION

Plaintiff Nicole Wooten alleges she sustained a permanent and disabling pulmonary injury from rolling down her car window for less than a minute at the refinery's tugboat dock on August 8, 2022. Plaintiff offers no competent evidence of what she was exposed to at her location, at what concentration, or at what dose. No air sampling was performed at Plaintiff's location. No personal air monitoring device measured the concentration of any substance at Plaintiff's breathing zone. No dose was calculated or reconstructed for her specific position. No atmospheric dispersion modeling was conducted to estimate what substances, if any, reached Plaintiff's vehicle at the time of her visit.

To prove this case, Plaintiff needs an expert who can identify what she was exposed to, at what dose, and why that dose was enough to cause permanent lung disease—and who actually ruled out other explanations. Under Virgin Islands and Third Circuit law, that standard has a name: specific causation. It requires an expert to identify the substance, calculate or estimate the dose, compare it to known toxicological thresholds, and conduct a differential diagnosis that rules out other causes. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742–44 (3d Cir. 1994); *Heller v. Shaw Indus., Inc.,* 167 F.3d 146, 153 (3d Cir. 1999). Plaintiff's experts have none of that. They have no air measurements, no dose calculation, and no analysis ruling out other causes. They have a guess: that the emissions were "typically" harmful, without a single measurement from August 8, 2022.

This evidentiary void is fatal. Courts require incident-specific proof of what a plaintiff was exposed to and how much—not assumptions about what is typically present at an industrial site. *Smith v. Katz*, 2013 WL 1182074, at *9–10 (D.V.I. Mar. 22, 2013); *Henry v. St. Croix Alumina, LLC*, 572 F. App'x 114, 116 (3d Cir. 2014). Plaintiff cannot bridge this gap with speculation or temporal proximity alone. The fact that she felt sick after visiting the refinery is not proof that the refinery caused it, as detailed in Section IV.A below.

1

Plaintiff had two documented alternative causes of respiratory symptoms that her experts did not rule out. First, less than one month before the incident, her treating physician documented that her asthma was actively worsening, that she was using her rescue inhaler up to four times per day, and that the worsening was attributed specifically to Saharan dust and local Virgin Islands air quality—the well-known summer phenomenon that peaks in the Caribbean from late June through mid-August. Second, Her physician prescribed four new medications at that visit. On August 10, 2022, two days after the refinery visit, a landfill located directly across from the airport where Plaintiff worked was burning and sent fumes through her car's air conditioning while she was driving to work. She told her treating physician that something was burning at the landfill, she did not know what, and still does not know. She developed similar symptoms (shortness of breath, chest tightness), required identical urgent care treatment including a second steroid injection, and the chemical composition of the landfill fumes was never identified. Dr. Wilkenfeld's (Plaintiff's occupational medicine expert) report never mentions the August 10 exposure, and he performed no analysis to distinguish its effects from those of August 8. Without incident-specific exposure and causation evidence, Plaintiff's claims fail as a matter of law.

## II.  FACTUAL BACKGROUND

On August 8, 2022, Plaintiff Nicole Wooten, a U.S. Customs and Border Protection officer, entered the Limetree Bay refinery in St. Croix to conduct a vessel inspection. Upon arrival, Plaintiff observed thick black smoke. As she approached the tugboat parking area, she briefly rolled down her vehicle window to speak with two individuals. During this short exchange, estimated by Plaintiff to have lasted less than one minute, possibly just seconds, she did not observe any reaction from the individuals and reported that "nothing happened" during the conversation. After rolling the window back up, Plaintiff began coughing.

2

Plaintiff had a documented history of asthma prior to the incident. On July 15, 2022, Dr. Thomas Chacko noted that Plaintiff's spirometry was normal but recorded her report that her asthma had worsened since relocating to the Virgin Islands, attributing this to poor air quality and Saharan dust. Plaintiff also experienced a respiratory flare-up in April 2021 on St. Croix, which she attributed to Saharan dust, resulting in missed work.

There is no data quantifying Plaintiff's exposure dose to any substance on August 8, 2022. No atmospheric dispersion modeling or contaminant-level reconstruction was performed to estimate the nature or concentration of any substances that may have reached Plaintiff's location. Plaintiff's experts, Dr. Marc Wilkenfeld and Daniel Mahr, did not provide incident-specific exposure data, dose calculations, or differential diagnoses to establish specific causation.

On August 9, 2022, Plaintiff underwent a physical examination at the JFL Hospital emergency room, which revealed clear lungs bilaterally and no acute respiratory distress.

On August 10, 2022, Plaintiff was exposed to smoke from a separate landfill fire adjacent to her workplace at the airport. She reported smelling fumes through her car's air conditioning system and experienced chest tightness upon arrival at work. She sought urgent medical care and was treated with nebulized bronchodilators and an intramuscular steroid injection, which alleviated her symptoms. Neither Dr. Wilkenfeld nor Mr. Mahr distinguished the effects of the August 8 refinery incident from the August 10 landfill exposure.

Dr. Wilkenfeld admitted that he had no air sampling data from August 8, performed no dose calculation, and could not quantify Plaintiff's exposure to any toxic agent. His causation opinion was based on what is "typically" present in petroleum coke emissions, without reference to any incident-specific data. He did not identify a specific chemical, quantify exposure concentration, or apply a

3

scientific methodology. He also did not assess whether Plaintiff's symptoms were due to the natural progression of her preexisting asthma or a new injury from the alleged exposure.

Post-incident diagnostic testing, including bronchoscopy, chest X-rays, and CT scans, produced normal results. Plaintiff was unable to complete pulmonary function testing despite multiple attempts over nearly two years.

Mr. Mahr similarly did not calculate Plaintiff's exposure dose or perform air dispersion modeling. He acknowledged that the nearest air monitors were located far from Plaintiff's position and were not downwind of the coke dome. The monitoring data from August 8, 2022, showed zero readings for hydrogen sulfide and sulfur dioxide, which could not confirm what, if anything, reached Plaintiff's location.

Defendant's Statement of Undisputed Material Facts is incorporated by reference. (SUMF ¶¶ 1–24.)

### III.  LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Once that burden is met, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Id*. at 324. The non-movant "may not rest upon mere allegations or denials" but must instead produce sufficient evidence for a jury to find in her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

4

## IV.  ARGUMENT

This motion turns on causation. To prevail on any of her five claims (gross negligence, negligence, failure to warn, strict liability, and nuisance), Plaintiff must prove that something Ocean Point did or failed to do actually caused her injuries. *See Machado v. Yacht Haven U.S.V.I., LLC*, 61 V.I. 373, 380 (V.I. 2014). She cannot. For purposes of this motion only, Ocean Point assumes duty and general causation. This motion is decided entirely on specific causation, and Plaintiff's expert testimony on causation is legally insufficient to create a genuine dispute of material fact on whether specific causation exists. The experts had no incident-specific data, performed no dose calculation, applied no formal causation framework, and conducted no differential diagnosis. *See* SUMF ¶¶ 15-24. Plaintiff has no evidence of exposure to chemicals capable of causing permanent lung injury. Plaintiff's engineering expert, Daniel Mahr, did not perform atmospheric dispersion modeling; calculate contaminant concentration at the tugboat dock; quantify sulfur dioxide, carbon monoxide, VOCs, particulate matter, or dioxin levels at Plaintiff's location; conduct a dose reconstruction; compare exposure levels to toxicological thresholds. In short, he does not establish dose. *See* SUMF ¶¶ 22-24. An expert causation opinion that rests on no analytical bridge between the evidence and the conclusion fails as a matter of law.

The applicable legal framework is settled. In a toxic tort case under Virgin Islands law, a plaintiff must prove specific causation through competent expert testimony. *Henry v. St. Croix Alumina, LLC*, 572 F. App'x 114, 120 (3d Cir. 2014) (holding that expert testimony is required on causation in a toxic tort case); ; *Richards v. Marshall*, 2013 WL 1901637, at *3 (D.V.I. May 8, 2013), aff'd, 605 F. App'x 134 (3d Cir. 2015). Specific causation requires an expert to establish (1) the identity of the substance; (2) its concentration at the plaintiff's location; (3) the duration of exposure; (4) the toxicological threshold for the alleged injury; and (5) a scientifically reliable link between that exposure

5

level and the claimed condition, confirmed through a differential diagnosis ruling out alternative causes. *Smith*, 2013 WL 1182074, at *11; *In re Paoli R.R. Yard PCB Litig.,* 35 F.3d 717, 742–44 (3d Cir. 1994); *Henry v. St. Croix Alumina*, LLC, 572 F. App'x 114, 116–17 (3d Cir. 2014). An opinion built on no incident-specific data, no dose analysis, and no differential diagnosis cannot carry Plaintiff's burden. *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997). Plaintiff may argue that compiling incident specific data and performing a dose analysis is not required under *Kannankeril v. Terminix International, Inc.*, 128 F.3d 802 (3d Cir. 1997), or *McMunn v. Babcock & Wilcox Power Generation Group, Inc.*, 896 F. Supp. 2d 347 (W.D. Pa. 2012) and their progeny. However, unlike in those cases, in this case, Plaintiff's experts failed to complete a differential diagnosis, which renders *Kannankeril* and *McMunn* inapposite.

**A. Plaintiff Cannot Establish Causation Because No Expert Identified the Substance, Calculated the Dose, or Ruled Out Documented Alternative Causes.**

1. Dr. Wilkenfeld Assumed Causation by Using Plaintiff's Symptoms to Prove the Very Exposure He Was Supposed to Measure.

No expert testimony can bridge the evidentiary void in Plaintiffs' case. Plaintiff's experts admit that they have no incident-specific data and performed no dose calculation. *See* SUMF ¶¶ 15-24. Instead, Dr. Wilkenfeld, Plaintiff's occupational medicine expert, assumed that because Plaintiff experienced symptoms, she must have inhaled "levels many times higher than those that are toxic to the respiratory system," but he reached that conclusion from her symptoms alone. *See* SUMF ¶ 18. This is precisely the circular bootstrapping methodology condemned by the Third Circuit in *In re Paoli R.R. Yard PCB Litig.*, where the court stated an expert is required to "make a demonstrated attempt to consider and rule out alternative causes" and that the expert not unreasonably extrapolate from an accepted premise to an unfounded conclusion. 35 F.3d 717, 759 (3d Cir. 1994). Dr. Wilkenfeld's methodology fails this standard. He accepted that petroleum coke can cause respiratory injury (a premise), observed that Plaintiff had symptoms (an observation), and concluded she was exposed to

toxic levels (an unfounded conclusion with no analytical bridge). That is not science—it is working backwards from the answer. An expert cannot use a plaintiff's injury as proof of the exposure that caused it, because doing so simply assumes what needs to be proven. Courts have consistently rejected this kind of bare assertion as legally insufficient. *Smith*, 2013 WL 1182074, at *9–10. Moreover, Dr. Wilkenfeld's opinion that "typical" coke emissions caused Plaintiff's injury—without tying that opinion to any data from the specific incident—reflects "too great an analytical gap between the data and the opinion proffered" to support a finding of causation as a matter of law. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). An expert opinion built on such an analytical gap cannot create a genuine dispute of material fact regardless of admissibility. *Id*. at 142–46.

2.    No One Calculated the Dose—And Without That Number, There Is No Causation.

The fundamental principle that "the dose makes the poison" is not merely an aphorism, it is also the legal standard in toxic tort cases. There is no data quantifying any exposure dose to any substance at Plaintiff's location on August 8, 2022. *See* SUMF ¶ 7. Even if Plaintiff could prove the presence of some chemical, she has no reliable evidence that the dose was sufficient to cause her injuries. Dr. Wilkenfeld conceded that he did not calculate the concentration or dose of any particular chemical that Plaintiff breathed. *See* SUMF ¶ 17. He did not compare any estimated exposure level to known dose-response relationships or toxicological thresholds. Instead, he inferred that the dose must have been high based solely on Plaintiff's transient symptoms, an inference that sounds in guess work, not science . *See Smith*, 2013 WL 1182074, at *9 (expert's failure to conduct dose-response analysis or provide any quantitative estimate of exposure rendered opinion unreliable). Mahr's own Opinion 6 states that smoke and "combustion gases escaped through the opened north petroleum coke dome's rollup access/vehicle door" and were "carried by the prevailing trade-winds to the tugboat dock's parking lot", but this directional observation does not establish what chemical compounds were present

7

at Wooten's location, at what concentration, or at what dose. Without quantifying the dose of any chemical Plaintiff was allegedly exposed to, her claims fail as a matter of law.

3.  Dr. Wilkenfeld Admits the Objective Evidence Required for a RADS Diagnosis Does Not Exist in this Case.

Plaintiff's diagnosis of Reactive Airway Dysfunction Syndrome ("RADS") does not cure the deficient nature of Dr. Wilkenfeld's opinions. RADS is a specific medical diagnosis requiring documentation that a single, high-concentration toxic inhalation event caused immediate-onset respiratory symptoms followed by persistent, objectively measurable airway obstruction. RADS is not a generic label for breathing problems after any chemical exposure. First, Dr. Wilkenfeld does not demonstrate that Plaintiff's exposure met the required high-concentration threshold because he never calculated the concentration. Second, he does not document objective persistent airway obstruction because as Wilkenfeld himself testified, "There are no objective test results." Third, he performed no dose calculation that RADS causation requires. He invoked the diagnosis, then conceded away every piece of evidence it depends on. That is not a RADS case, it is a label without a foundation.

4.  Dr. Wilkenfeld Concedes His Research Does Not Support Injury from a One-Minute Exposure—and Cannot Separate His Theory from Plaintiff's Pre-Existing Disease

Dr. Wilkenfeld's own testimony independently defeats both causation and aggravation theories. *See* SUMF ¶¶ 15-21. He acknowledged that offering a causation opinion would require a dose response analysis tying Plaintiff's actual exposure to a level capable of producing injury. He performed no such analysis. *See* SUMF ¶¶ 18-19. Without a dose determination, his opinion lacks the foundational element required to link any alleged exposure to any injury. His deposition further confirms that he made no effort to distinguish between the natural progression of Plaintiff's preexisting asthma and any alleged injury from the August 8 incident. *See* SUMF ¶ 19. He conceded that he performed no analysis to determine whether Plaintiff's post incident symptoms reflected disease progression rather than new injury, and admitted that he cannot quantify or apportion the contribution

8

of each. *See* SUMF ¶ 19. That concession alone forecloses any reliable causation opinion. The omissions in his report underscore the problem. He did not disclose that Plaintiff's asthma was worsening in the months before August 8, including a July 15, 2022 visit at which she was prescribed a maintenance inhaler and three additional medications for worsening asthma. *See* SUMF ¶ 1. He likewise omitted that on August 9, 2022, the day after the incident, Plaintiff had clear lungs bilaterally and no acute respiratory distress. *See* SUMF ¶ 1. These facts are directly relevant to causation, yet were excluded without explanation. Plaintiff cannot avoid these defects by recasting her claim as aggravation rather than new injury. Under Virgin Islands law, an aggravation theory still requires proof that the defendant's conduct was a but for cause or, at minimum, a substantial factor in producing the aggravation. *See* Restatement (Second) of Torts § 432 (1965). That showing necessarily requires evidence of what Plaintiff was exposed to, at what concentration, and at a dose sufficient to worsen her condition. Dr. Wilkenfeld supplied none of that. The same evidentiary void that defeats a primary causation theory also defeats aggravation. Without exposure data, without a dose calculation, and without an analysis separating progression from injury, Plaintiff cannot meet her burden as a matter of law.

5.  No One Investigated the Two Documented Alternative Causes—Saharan Dust Confirmed Present by Plaintiff's Own Doctor, and an Uncharacterized Landfill Exposure Two Days Later.

Plaintiff's experts ignored two alternative causes of her symptoms.  Dr. Wilkenfeld never investigated Plaintiff's exposure to Saharan dust, a documented alternative cause in Plaintiff's own medical records. On July 15, 2022, 24 days before August 8, Plaintiff's treating physician, Dr. Thomas Chacko, attributed her worsening asthma since moving to the Virgin Islands specifically to Saharan dust and local Virgin Islands air quality. That attribution was not speculative, and it was not the first time. In April 2021, more than a year before the alleged incident, Plaintiff had a documented respiratory episode on St. Croix, where she experienced a respiratory flare-up that she attributes to Saharan dust .

9

*See* SUMF ¶ 2. She missed time from work. *Id*. The July 2022 Chacko note did not identify a new hazard. Instead, it confirmed a pattern that had existed for years. Dr. Wilkenfeld's report does not mention Saharan dust once. Moreover, on August 10, 2022, Plaintiff was exposed to "fumes" near her workplace, developed symptoms (faintness, shaking, chest tightness) similar to those she attributes to the refinery, and again required nebulizer treatment and a steroid injection. *See* SUMF ¶¶ 10-14. Neither Mr. Mahr nor Dr. Wilkenfeld offered a reliable basis to differentiate the effects of the August 8 refinery fire from Plaintiff's pre-existing asthma or the August 10 fume exposure. No air sampling was performed at the landfill. No chemical composition was analyzed. No dose was calculated. Dr. Wilkenfeld's acknowledgment of the August 10 exposure and his failure to rule it out (SUMF ¶ 20) is a fatal deficiency that prevents his opinion from carrying Plaintiff's burden of proof on specific causation. Because Plaintiff has no evidence of exposure level, dose, or causation analysis, the Court need not resolve any factual dispute about what occurred on August 8, 2022. Therefore, each of Plaintiff's claims fail as a matter of law.

   **B. Each Of Plaintiff's Five Claims Fails On Independent Grounds As Well.**

   1. <u>Gross Negligence Is Not a Separate Claim Under V.I. Law and Nothing in the Record Supports a Finding of Reckless Indifference.</u>

Gross negligence is not a separate cause of action under Virgin Islands law. It is negligence with a higher bar and requires proof of wanton or reckless indifference to risk. *See Gov't of the V.I. v. Connor*, 60 V.I. 597, 607 (V.I. 2014); *Brathwaite v. Xavier*, 71 V.I. 1089, 1110–11 (2019) (gross negligence "must be more than any mere mistake resulting from inexperience, excitement, or confusion, and more than mere thoughtlessness or inadvertence, or simple inattention"). Count I rises and falls with Count II because judgment on the latter compels judgment on the former. Independently, the undisputed record affirmatively negates wanton or reckless conduct. The dome was smoldering before Plaintiff's visit, fire suppression efforts were underway days earlier, and Jeffrey Charles, Ocean

Point's Chief Operating Officer, testified that in the early days of the event he observed only light vapor and steam. *See* SUMF ¶ 3. Moreover, Plaintiff was a transient visitor who spent only a few minutes on site before departing. These facts alone foreclose any reasonable inference of the extreme indifference to safety required to sustain a gross negligence verdict. Plaintiff's punitive damages claim predicated on gross negligence fails for the same reasons.

2.  The Negligence Claim Independently Fails Because Plaintiff Cannot Establish the Essential Element of Specific Causation.

Specific causation is the essential element of every negligence claim. Because Plaintiff cannot establish it, for all the reasons set forth in Section IV.A above, Count II fails.

3.  The Failure-to-Warn Claim Fails as a Non-Standalone Theory and Because a Warning Would Not Have Altered Plaintiff's Conduct.

Plaintiffs' failure to warn claim fails on two independent grounds. First, failure to warn is not a separate cause of action under Virgin Islands law. It is a negligence theory with the same four elements—duty, breach, causation, and damages—as Count II. *See* Restatement (Second) of Torts § 388 (1965); *Antilles Sch., Inc. v. Lembach,* 64 V.I. 400, 413 (2016) (premises liability "is a theory of negligence, where the basis of the duty of care is the possession or control of the premises where [an] injury occurred"). Count III adds nothing Count II does not already cover and should be dismissed as duplicative.

As a U.S. Customs and Border Protection officer executing mandatory statutory inspection authority, Plaintiff had no discretion to decline entry onto the property. Therefore, a warning would not have changed her presence at the tugboat dock. Moreover, she has no evidence of what she was actually exposed to, at what concentration, or whether any protective equipment would have prevented the alleged injury. Therefore, this Court should grant summary judgment on this claim.

11

4. <u>Strict Liability Is Foreclosed by Controlling Precedent and Still Requires the Proof of Causation Plaintiff Cannot Provide.</u>

Plaintiff contends that the refinery's operations were "abnormally dangerous" warranting strict liability, but this theory is foreclosed by controlling precedent and fails on the merits. The District Court of the Virgin Islands, applying the Restatement (Second) of Torts §§ 519–520 to the operation of this very refinery, has expressly held that petroleum refining and coke storage are not abnormally dangerous activities for strict liability purposes. *See Comm'r of DPNR v. Century Aluminum Co.,* 2014 WL 184445, at *10–11 (D.V.I. Jan. 16, 2014). *Century Aluminum* involved this refinery, similar operations, and the same legal framework. That decision forecloses relitigating the strict liability question here. Furthermore, even if strict liability applied (and it does not) Plaintiff would still be required to prove specific causation by showing that Ocean Point's abnormally dangerous activity caused her injury. Strict liability relieves the plaintiff of proving negligence; it does not relieve her of proving causation. For all the reasons detailed in Section IV.A, Plaintiff cannot make that showing, and summary judgment is appropriate on the strict liability count as well.

5. <u>The Private Nuisance Claim Fails Because Plaintiff Held No Possessory Interest in the Refinery and Cannot Prove Causation.</u>

Plaintiff's private nuisance claim fails on multiple independent grounds. First, private nuisance protects those with a possessory interest in land from substantial and unreasonable interference with their use and enjoyment of that land. Under Virgin Islands law, only those whose "property is affected by a private nuisance, or whose personal enjoyment of that property is likewise affected" may maintain a nuisance action. 28 V.I.C. § 331; *see also Cifre v. Daas Enters., Inc.*, 62 V.I. 338, 360–61 (V.I. Super. 2015) (private nuisance is a "substantial and unreasonable nontrespassory interference with another's interest in the private use and enjoyment of land"); Restatement (Second) of Torts § 821D (1979). Plaintiff had no possessory interest in the refinery premises; she was a transient federal officer exercising statutory inspection authority, not an adjacent landowner or lessee. *See* SUMF ¶ 3. She

12

therefore cannot satisfy the threshold ownership element of a private nuisance claim. Second, even if that threshold were met, Plaintiff, a federal law enforcement officer executing a lawful inspection authority that Ocean Point had no legal right to restrict or terminate, voluntarily rolled down her window in the presence of visible industrial emissions without requesting respiratory protection, conduct that precludes a finding of "unreasonable" interference from the perspective of a reasonable person in her position. Finally, the private nuisance claim independently fails for lack of causation for all the reasons stated in Section IV.A above.

## V. CONCLUSION

The Court should grant summary judgment on all five counts.  Consider what three years of litigation has produced on the question of causation. No air sampling. No dose calculation. No dispersion modeling. No differential diagnosis that accounts for a worsening asthma condition documented weeks before the incident, or for an identical reaction two days later to unidentified fumes from an adjacent landfill. Those are two documented, uninvestigated alternative causes for the very symptoms Plaintiff attributes to Ocean Point. And not one objective test result—not a bronchoscopy, not a chest X-ray, not a CT scan, not a spirometry reading—that shows anything inconsistent with the pre-existing asthma Plaintiff had before she ever set foot on the refinery. That is the record on which Plaintiff asks a jury to award permanent disability damages.

Plaintiff's own expert said it plainly: "There are no objective test results, correct." Without that foundation, there is no case. Summary judgment should be granted on all five counts.

WHEREFORE, Ocean Point respectfully requests that the Court grant this Motion for Summary Judgment in its entirety, enter judgment in favor of Ocean Point and against Plaintiff on all five counts of the Second Amended Complaint, and award such other and further relief as the Court deems just and proper.

13

Date:  April 7, 2026

**AKERMAN LLP**
201 East Las Olas Boulevard,
Suite 1800
Fort Lauderdale, Florida 33301
Telephone: (954) 463-2700
Facsimile: (954) 463-2224


By: */s/*Donnie M. King
**Donnie M. King**
Virgin Islands No. 1237
donnie.king@akerman.com
tyresa.thompson@akerman.com
**Eric D. Coleman** (admitted *pro hac vice*)
eric.coleman@akerman.com
lauren.change-williams@akerman.com
**Reginald E. Janvier** (admitted *pro hac vice*)
reginald.janvier@akerman.com
sharon.luesang@akerman.com
*Counsel for Defendant Limetree Bay*
*Terminals, LLC d/b/a Ocean Point Terminals*

14

## <u>CERTIFICATE OF SERVICE</u>

I certify that the foregoing document was filed with the Court's electronic filing system on

April 7, 2026 which will send a notice of electronic filing to all counsel of record.

/s/Donnie M. King
Donnie M. King

15