DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

NICOLE WOOTEN,

          Plaintiff,

    v.

LIMETREE BAY TERMINALS d/b/a
OCEAN POINT TERMINALS, PORT
HAMILTON REFINING &
TRANSPORTATION, WEST INDIES
PETROLEUM LTD., and LIMETREE
BAY REFINERY, LLC, as a nominal
Defendant,

          Defendants.

Case No. 1:23-CV-00012

**ACTION FOR DAMAGES**

<u>JURY TRIAL DEMANDED</u>

**<u>DEFENDANT OCEAN POINT'S STATEMENT OF UNDISPUTED MATERIAL FACTS</u>**

Pursuant to Federal Rule of Civil Procedure 56 and LRCi 56.1, Defendant Limetree Bay Terminals, LLC d/b/a Ocean Point Terminals ("Ocean Point"), through undersigned counsel, submits this Statement of Undisputed Material Facts in support of its Motion for Summary Judgment. The following undisputed facts establish the absence of any competent evidence that Plaintiff was exposed to a harmful dose of any identifiable substance on August 8, 2022, and the failure of Plaintiff's experts to provide the incident-specific exposure data, dose calculation, or differential diagnosis required to establish specific causation under controlling law:

**I.     PRE-INCIDENT MEDICAL CONDITION**

1.     On July 15, 2022, Dr. Thomas Chacko found Plaintiff Nicole Wooten's spirometry normal on testing but documented Plaintiff's statement that her asthma has been worse since she relocated to the Virgin Islands. *See* July 15, 2022 Medical Record of Dr. Thomas Chacko ("Chacko Record"), attached hereto as **Exhibit 1**, at p.2. Dr. Chacko further documented that the air quality in the Virgin Islands is not good with more pollutants and Saharan dust. *Id.* At her visit with Dr.

1

Chacko, Plaintiff was prescribed a maintenance inhaler and three additional medications for worsening asthma. *Id*.

2.      In April 2021, Plaintiff experienced a respiratory flare-up on St. Croix that she attributes to Saharan dust conditions, and missed time from work. *See* excerpts from the May 19, 2025 Deposition Transcript of Nicole Wooten, attached hereto as **Exhibit 2** ("Wooten Depo."), at 27:4 – 28:20; 230:24 – 231:4.

## II.     CIRCUMSTANCES OF PLAINTIFF'S EXPOSURE ON AUGUST 8, 2022

3.      On August 8, 2022, Plaintiff, as a U.S. Customs and Border Protection officer, drove onto the Limetree Bay refinery in St. Croix to conduct a vessel inspection. *See* Exh. 2, Wooten Depo., at 39:8–40:25. The coke dome at the refinery was smoldering during Plaintiff's visit, and Jeffrey Charles, Ocean Point's Chief Operating Officer, testified that in the early days of the event he observed only light vapor and steam. *See* excerpts from the April 14, 2025 Deposition Transcript of Jeffrey Charles, attached hereto as **Exhibit 3,** at 31:19–33:7.

4.      During Plaintiff's visit, she alleges that she as soon as she arrived she noticed thick black smoke. *See* Plaintiff's Response to WIPL's Interrogatories, attached hereto as **Exhibit 4**, at Response to Interrogatory. No. 2.

5.      Plaintiff testified that as she approached the tugboats she rolled her window down, spoke with two individuals at the entrance to the tugboat parking area, and had a conversation during which "nothing happened." *See* Exh. 2, Wooten Depo., at 46:6–47:18; 54:8–55:18.

6.      She then rolled her window back up, at which point she began coughing. *Id*.  She estimated the window-down period at less than one minute — "probably just seconds" — and acknowledged it may have been less than 30 seconds. *Id.*, at 55:10–18. She testified she did not

know or remember whether either worker coughed or had any reaction during the conversation. *Id*., at 60:10–18.

### III.    ABSENCE OF EXPOSURE DATA

7.    There is no data quantifying Plaintiff's exposure dose to any substance on August 8, 2022. *See* excerpts from the November 10, 2025 Deposition Transcript of Marc Wilkenfeld, attached hereto as **Exhibit 5** ("Wilkenfeld Depo."), at 13:14–25.

8.    No one performed atmospheric dispersion modeling or contaminant-level reconstruction for the August 8, 2022 incident to estimate what substances or concentrations, if any, reached Plaintiff's vicinity. *See* Exh. 5, Wilkenfeld Depo., at 34:1–7; 43:6–18; *See* excerpts from the February 26, 2026 Deposition Transcript of Daniel Mahr, attached hereto as **Exhibit 6**; at 14:1–8.

### V.    POST-INCIDENT MEDICAL FINDINGS

9.    On August 9, 2022, the day after the alleged exposure, Plaintiff's physical examination showed clear lungs bilaterally and no acute respiratory distress. *See* August 9, 2022, JFL Hospital ER Records, attached hereto as **Exhibit 7**, at  NW000232- 236.

### VI.    THE AUGUST 10, 2022 ALTERNATIVE EXPOSURE

10.    Plaintiff confirmed in her deposition that on August 10, 2022, she was exposed to smoke from a separate landfill fire adjacent to her workplace at the airport, and she sought medical evaluation for respiratory symptoms after that exposure. *See* Exh. 2, Wooten Depo., at 236:23–239:19.

11.    Plaintiff could smell fumes coming through the air conditioning unit in the car while she was still driving to work. *Id.*  By the time she arrived at the airport, she could still smell the fumes and her chest began to tighten. *Id*. Plaintiff told her treating physician something was

burning at the landfill. *Id*. Plaintiff did not know what was burning at the landfill, and to this day she does not know. *Id*.

12.     Due to her symptoms, Plaintiff again sought urgent medical care; she was treated with an intramuscular steroid injection, resulting in relief of her symptoms. *See* August 10, 2022 Acute Alternative Medical. Group Records, attached hereto as **Exhibit 8**, at NW000355.

13.     Dr. Wilkenfeld did not perform a differential diagnosis or distinguish the effects of the August 8 refinery incident from those of the August 10, 2022 fume exposure. *See* Exh. 5, Wilkenfeld Depo., 111:16 – 113:6.

14.     Meanwhile, Mr. Mahr also did not distinguish the effects of the August 8 refinery incident from those of the August 10 landfill incident, as he stated the scope of his "work was to provide information on the handling of petroleum coke, the design, the operation, .and the fire….I mean, that was the scope; to provide the combustion, not the exposure to Wooten." *See* Exh. 6, Mahr Depo. 19:7–18.

## VII.    DR. WILKENFELD'S METHODOLOGY AND ADMISSIONS

15.     Dr. Wilkenfeld admitted he had no air sampling data from August 8, 2022, performed no dose calculation for any chemical Plaintiff might have inhaled, and had no way to quantify what amount of any toxic agent she was exposed to. *See* Exh. 5, Wilkenfeld Depo. at 13:14–25; 19:5–18; 34:8–37:4; 43:19–45:20.

16.     Dr. Wilkenfeld based his causation opinion on what is "typically" present in petroleum coke emissions. He did not base his opinion on any air sampling data, personal air monitoring data, or atmospheric measurements from the August 8, 2022 incident. *See id*., at 34:14–25; 35:8–10.

17.     Dr. Wilkenfeld testified that he could not identify a specific chemical to which Plaintiff was exposed and did not quantify any exposure concentration or dose. He acknowledged that his opinion was not based on any air measurements or dose calculations. *See id.*, at 34:8–39:13.

18.     Dr. Wilkenfeld testified that he did not apply any specific scientific methodology in this case. *See id.*, at 25:13–25. He testified that his analysis rested on the fact that Plaintiff had symptoms after visiting the refinery. *See id.*, at 24:21–25:8. Based on the symptoms, he concluded that she must have inhaled "levels many times higher than those that are toxic." *See id.*, at 34:24–35:1.

19.     Dr. Wilkenfeld performed no analysis to determine whether Plaintiff's post-incident symptoms represented natural progression of her preexisting disease versus new injury from the alleged exposure. He testified that he could not determine what percentage of her current condition is attributable to natural progression versus the alleged exposure. *See id.*, at 69:4–71:9.

20.     Dr. Wilkenfeld performed no investigation or analysis of Plaintiff's August 10, 2022 exposure to the August 10 landfill fumes and he made no effort to determine the composition of the landfill fumes. *See id.*, at 61:21–62:16. He testified he could not rule out that the August 10 event was the sole or primary cause of her ongoing complaints, and he acknowledged that his sole basis for attributing all ongoing symptoms to the August 8 event — rather than to the August 10 landfill fumes event — is the severity of her August 8 presentation and need for medication, not any objective data or differential analysis. *See id.*, at  57:6–65:15; 111:14–15.

21.     Dr. Wilkenfeld testified that post-incident diagnostic testing, including bronchoscopy, chest X-rays, and CT scans produced normal results and Plaintiff never successfully

5

completed pulmonary function testing despite at least five to six attempts over nearly two years. *Id*. at 22:15–23:6; 80:7–16.

## VIII.   MR. MAHR'S ADMISSIONS

22.    Plaintiff's engineering expert, Daniel Mahr, P.E., admitted his report contained no calculation of Ms. Wooten's exposure dose to any substance and that he performed no air dispersion modeling for the incident; he offered no opinion on what, if anything, she was exposed to. *See* Exh. 5, Mahr Depo,. at 13:22–14:15)

23.    Mr. Mahr testified that the data needed to determine actual exposure levels at Plaintiff's location was not available. *See id*. at 14:1–8. The air monitors nearest to the refinery were, in Mr. Mahr's words, "very far" from Ms. Wooten's location and were not positioned downwind of the coke dome. *See id,* at 18:16–25. The monitoring data from August 8, 2022 showed readings of 0.00 for both hydrogen sulfide and sulfur dioxide throughout the period of Ms. Wooten's visit, but those readings could not establish what, if anything, reached her location at her level of exposure. *See id.,* at 13:22–14:15. *See also*, Daniel Mahr Expert Report, attached hereto as **Exhibit 9**, Section 3.7, at 20–22; Section 6.2, at 25.

24.    Daniel Mahr, did not perform atmospheric dispersion modeling, calculate contaminant concentrations at the tugboat dock, quantify sulfur dioxide, carbon monoxide, volatile organic compounds, particulate matter, or dioxin levels at Plaintiff's location, conduct a dose reconstruction, or compare any exposure level to toxicological thresholds. *Id*.

Date:  April 7, 2026

**AKERMAN LLP**
201 East Las Olas Boulevard,
Suite 1800
Fort Lauderdale, Florida 33301
Telephone: (954) 463-2700
Facsimile: (954) 463-2224


By: /*s/Donnie M. King*
**Donnie M. King**
Virgin Islands No. 1237
donnie.king@akerman.com
tyresa.thompson@akerman.com
**Eric D. Coleman** (admitted *pro hac vice*)
eric.coleman@akerman.com
lauren.chang-williams@akerman.com
**Reginald E. Janvier** (admitted *pro hac vice*)
reginald.janvier@akerman.com
sharon.luesang@akerman.com
*Counsel for Defendant Limetree Bay Terminals,
LLC d/b/a Ocean Point Terminals*

7

## <u>CERTIFICATE OF SERVICE</u>

I certify that the foregoing document was filed with the Court's electronic filing system on

April 7, 2026 which will send a notice of electronic filing to all counsel of record.

*/s/Donnie M. King*⎯⎯⎯⎯⎯⎯
Donnie M. King
