# Exhibit 3

**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**

**DIVISION OF ST. CROIX**

NICOLE WOOTEN,                        )
                                      )
              Plaintiff,              )
                                      )
       vs.                            ) Case No. 1:23-CV-00012
                                      )
LIMETREE BAY TERMINALS d/b/a          )
OCEAN POINT TERMINALS, PORT           )
HAMILTON REFINING and                 )
TRANSPORTATION, and WEST INDIES       )
PETROLEUM, LTD.,                      )
                                      )
              Defendants.             )
_____)

**THE ORAL DEPOSITION OF**

**LIMETREE BAY TERMINALS, d/b/a OCEAN POINT TERMINALS**

**as a 30(b)(6) witness through its representative, JEFFREY**

**ARHMAD CHARLES, also personally,** was taken on the 14th day

of April, 2025, at the Law Offices of Andrew C. Simpson,

2191 Church Street, Suite 5, Christiansted, St. Croix, U.S.

Virgin Islands, and via Zoom teleconference, between the

hours of 9:29 a.m. and 12:03 p.m. AST, pursuant to Notice

and Federal Rules of Civil Procedure.

_____

Reported by:

Susan C. Nissman RPR-RMR
Registered Merit Reporter
Caribbean Scribes, Inc.
1244 Queen Cross Street, Suite 1A
Christiansted, St. Croix
U.S. Virgin Islands  00820
(340) 773-8161

LBT, LLC/OPT/J. CHARLES -- DIRECT

Q.   What sorts of services or items were you expecting payment for that were not received?

A.   Yeah, all the services listed in the appendices.

Q.   Okay.  And do you recall approximately how much was outstanding?

A.   I do not.

Q.   Okay.  How is the shared service agreement, how is that different from the ICP?

A.   They are completely different.  Shared services agreement between the two companies, specifically to this location, the ICP is a industry practice that companies employ.  They're -- they're completely different.

Q.   Okay.  When did you first become aware of the smoldering coke in August of 2022?

A.   I can't remember the date, exactly.

Q.   Okay.  Can you describe for me step-by-step what you recall when you found out about the smoldering coke?

A.   Can you be more specific?

Q.   In other words, when you think back to when you became aware of the smoldering coke, where were you?  What were you doing?  What were you told?  Who told you?

MR. KING:  For clarification, are you asking him in his individual capacity, or are you asking him in his corporate representative capacity what he actually knew, or are you saying what the company knew?  'Cause obviously he's

LBT, LLC/OPT/J. CHARLES -- DIRECT

reviewed incidents reports.

Q.   (Ms. Seila) Right.  Let's start with what you personally knew.  Thank you.

A.   So, again, I don't have the actual date, but at some point, I was made aware that there was something going on with the coker.  There was some level of smoldering.  We had the fire chief at the time visit the site.  Provided guidance on how to respond to the event.  And also how not to respond to the event.  And also there was requests for some equipment that we released to PHRT.

Q.   Were you on island during August of 2022?

A.   Yes.

Q.   Okay.  Did you go out to that area of the facility?  Did you see the -- could you see anything related to the smoldering coke?

A.   Yes, I was out there on various days.

Q.   Okay.  Can you describe for me what you saw?

A.   On which day?

Q.   So let's say, let's take the first instance that you, personally, went out to the coker area.

What did you see?

A.   Is there a date?

Q.   Do you remember whether or not you went out there on the first day, on August 4th?

A.   August 4th?  So August 4th, or earlier in August,

LBT, LLC/OPT/J. CHARLES -- DIRECT

you can tell that the -- there was some temperature in the coke pit.  You could see light vapor, that I could see.

Q.    Can you describe what that light vapor looked like?

A.    Just light -- light steam.

Q.    And how far up or out did that extend?

A.    Not far at all.

Q.    Okay.  What was your reaction to seeing that light vapor?

A.    No real reaction to it.  It's light vapor.

Q.    Did you go out to the coker on the following day, on August 5th, 2022?

A.    No, no.

Q.    Okay.  What about on August 6th, 2022?

A.    Yeah, so I didn't go to the coker.  I have no reason to be at the coker.  It has nothing to do with my company or my terminal, so I would have gone to the extent of the docks and looked that direction.  But I would be out there on various days.  We do have our tugboats that are adjacent to the coker.  We have personnel that live on those tugboats, so as long as there is no impact to those tugboats, then the response itself is on PHRT.

Q.    Okay.  So when was the next time that you saw vapor or anything emanating from the -- from the coker?

A.    Throughout the month, they were responding to it,

**LBT, LLC/OPT/J. CHARLES -- DIRECT**

A.    So we discussed, as you can see here on August 6th, that we would assist with one -- based off the nature of this, with one pumper truck and -- and fuel on board.  And so also the fuel for the operations of the seawater intake pumps.  Not for utilization of the fire truck, but the fuel on board.

Q.    Okay.  And can you explain what a pumper truck is?

A.    A fire truck.

Q.    Okay.  And I understand the incident began on August 4th, 2022.

Why did it take two days to come to this agreement?

A.    The request came in.  We went through the process, as you can see here, and equipment was issued.

Q.    Okay.  And why did PHRT have to agree to provide the driver?

A.    So they can drive.  So they can drive the truck.

Q.    Why didn't OPT provide the driver?

A.    They had their own response personnel.  And also at this point, there is no obligation between the two companies, as far as shared services, who's going to do what, who's going to offer what, who's going to pay for what, how it all works, insurance and indemnities and the lack of that means you have to go through that process realtime.  So what you're seeing right now is us going

## C-E-R-T-I-F-I-C-A-T-E

I, SUSAN C. NISSMAN, a Registered Merit Reporter and Notary Public for the U.S. Virgin Islands, Christiansted, St. Croix, do hereby certify that the above named witness, **LIMETREE BAY TERMINALS, LLC, d/b/a OCEAN POINT TERMINALS through its representative, JEFFREY ARHMAD CHARLES, also personally**, was first duly sworn to testify the truth; that said witness did thereupon testify as is set forth; that the answers of said witness to the oral interrogatories propounded by counsel were taken by me in stenotype and thereafter reduced to typewriting under my personal direction and supervision.

I further certify that the facts stated in the caption hereto are true; and that all of the proceedings in the course of the hearing of said deposition are correctly and accurately set forth herein.

I further certify that I am not counsel, attorney or relative of either party, nor financially or otherwise interested in the event of this suit.

IN WITNESS WHEREOF, I have hereunto set my hand as such Registered Merit Reporter on this the 17th day of April, 2025, at Christiansted, St. Croix, U.S. Virgin Islands.

_____

My Commission Expires:    Susan C. Nissman, RPR-RMR
June 28, 2027                 NP-644-23