**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**

**DIVISION OF ST. CROIX**

NICOLE WOOTEN,

PLAINTIFF,

VS.

LIMETREE BAY TERMINALS, LLC, ET AL.

DEFENDANTS.

CASE NO. 1:23-CV-00012

**PORT HAMILTON REFINING AND TRANSPORTATION, LLLP'S
MOTION FOR SUMMARY JUDGMENT ON CAUSE IN FACT**

Port Hamilton Refining and Transportation, LLLP moves for summary judgment dismissing the plaintiff's claims against it because plaintiff lacks sufficient admissible evidence to create a jury question on the issue of cause in fact (a/k/a medical causation).

**BACKGROUND**

Plaintiff Nicole Wooten was diagnosed with asthma at age five and had a documented history of lifelong asthma prior to August 8, 2022. SUMF ¶1. Wooten attributed an April 2021 flare-up on St. Croix to Saharan Dust. SUMF ¶2. On July 15, 2022, Wooten underwent a pulmonary-function test because "I was concerned that my asthma may have been getting worse, I thought, because of the air quality there [referring to St. Croix]. SUMF ¶3.

1

On August 8, 2022, less than three weeks after having the pulmonary function test due to her complaints of worsening asthma, Wooten drove a Customs and Border Protection vehicle toward the tugboat dock at Ocean Point Terminals to perform a passport inspection. SUMF ¶4. At the time, the North Coke Dome at Port Hamilton's refinery was the scene of an ongoing smoldering incident that had begun four days earlier. SUMF ¶5. While approaching the coke domes, Wooten noticed fire trucks in the vicinity and thick black smoke. SUMF ¶6. Wooten rolled down her window for less than one minute—"probably just seconds"—to ask two workers if it was safe to proceed. SUMF ¶7. Wooten did not exit the vehicle, did not enter any visible smoke plume, and rolled the window back up immediately SUMF ¶8. Wooten never reached the tugboat because she turned around and left the refinery due to her coughing. SUMF ¶9.

Wooten drove from the refinery to her work location at the Henry E. Rohlsen Airport where she used her inhaler. SUMF ¶10. She then went inside where she vomited in the bathroom and proceeded to the CBP break room. SUMF ¶11. CBP Officer Henry checked Wooten's vitals and one of her coworkers drove her to urgent care. SUMF ¶12. At urgent care, Wooten was placed on a nebulizer machine and given a steroid shot. SUMF ¶13.

On August 9, 2022, Wooten went to the emergency room at the J.F. Luis Hospital because she "still has a headache" and had a "shake in her hands." SUMF ¶14. She stated to the emergency room personnel that her shortness of breath had resolved and she no longer felt nauseous. SUMF ¶15. The exam conducted at the emergency room found that Wooten was negative for respiratory distress and that her lungs were clear,

2

bilaterally. SUMF ¶16. The clinical impression during this emergency room visit was "Headache" and Wooten was released to home for self-care. SUMF ¶17. Wooten's pulse oxygen levels were measured at 4:17 p.m. and 8:27 p.m. during the August 9, 2022 emergency room visit and were 99 and 100%, respectively. SUMF ¶18. Normal oxygen levels range from 95 to 100%. SUMF ¶19. On August 10, 2022, Wooten experienced an "extreme breathing crisis," which she attributed to fumes from a nearby landfill fire that she smelled through her vehicle's air-conditioning unit. SUMF ¶20.

## LEGAL STANDARD

Summary judgment is appropriate only when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it will "affect the outcome of the suit under the governing law." *Id.*

The non-movant "may not rest upon mere allegations, general denials, or . . . vague statements" to create a triable issue. *Richards v. Marshall*, 2013 WL 1907637, *2 (D.V.I. 2013) (quoting *Quiroga v. Hasbro, Inc.*, 934 F. 2d 497, 500 (3d Cir. 1991). Alternatively, the moving party may satisfy its initial burden by demonstrating that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

3

### ARGUMENT

### I. ELEMENTS OF NEGLIGENCE IN THE VIRGIN ISLANDS

The "foundational elements" of negligence in the Virgin Islands are (1) a legal duty of care to the plaintiff, (2) a breach of that duty of care by the defendant (3) constituting the factual and legal cause of (4) damages to the plaintiff. *Machado v. Yacht Haven U.S.V.I., LLC*, 61 V.I. 373, 380 (2014). "Establishing a claim of negligence requires the plaintiff to demonstrate that the defendant owed the plaintiff a legal duty, that the defendant breached that duty, and that the defendant's negligence caused the plaintiffs injury." *Brady v. Cintron*, 55 V.I. 802, 823 (2011). "'Causation includes cause in fact and legal causation, which is often referred to as proximate cause.'" *Id.,* quoting *Fedorczyk v. Caribbean Cruise Lines, Ltd.*, 82 F.3d 69, 73 (3d Cir.1996). "In order for the negligent act to be regarded as the cause in fact of the injury, it must be shown that the injury would not have occurred but for the act." *Brady*, 55 V.I. at 823–24.

### II. PROOF OF NEGLIGENCE IN TOXIC TORT CASES

In toxic tort cases, a plaintiff's *prima facie* case of negligence must include proof of: (1) the defendant's release of specific chemicals into the environment; (2) plaintiff's exposure to the specific chemicals; (3) plaintiff's injury; and (4) causation of plaintiff's injury or damages by the exposure. *In Re Paoli R.R. Yard PCB Litig.*, 35 F. 3d 717, 736 (3d Cir. 1994))."[T] o prevail in a toxic tort case, a plaintiff must adduce proof of both 'general' causation and 'specific' or 'individual' causation. 'General causation has

4

typically been understood to mean the capacity of a toxic agent ... to cause the illness complained of by plaintiffs. If such capacity is established, 'individual causation' answers whether that toxic agent actually caused a particular plaintiff's illness.'" *Smith v. Katz*, Case No. 3:10-cv-39, 2013 WL 1182074, at \*10 (D.V.I. Mar. 22, 2013), aff'd, 696 F. App'x 582 (3d Cir. 2017) (quoting *In re Hanford Nuclear Reservation Litig.*, 292 F.3d 1124, 1129 (9th Cir. 2002)).

### III. WOOTEN NEEDS EXPERT MEDICAL TESTIMONY TO ESTABLISH CAUSE IN FACT

Expert testimony on causation is required in a complex, toxic tort, case. *Henry v. St. Croix Alumina, LLC*, 572 Fed. App'x 114, 120 (3d Cir. 2014) (rejecting argument that plaintiffs could prove personal injury claims in a toxic exposure case without expert testimony). *See also Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 165 (3d Cir. 1999) (holding that after excluding experts' testimony on specific causation and exposure levels, district court correctly granted summary judgment because remaining evidence of record was insufficient to create a material issue of fact on causation)

Wooten does not have sufficient evidence to meet her burden of showing that she sustained a compensable injury caused by any action by Port Hamilton. As described in Port Hamilton's motion to exclude Dr. Wilkenfeld's testimony and opinion, (Doc. No. 272), Dr. Wilkenfeld

- did not do anything to determine the level of exposure to petroleum coke smoke that is needed to cause the harm Wooten alleges;
- did not do a differential diagnosis;
- did not rule out plausible alternative causes;

5

and consequently should be excluded. Without Dr. Wilkenfeld's testimony, Wooten cannot prove cause in fact and summary judgment must be granted.

Wooten relies upon general assertions that harm followed the defendants' conduct, but (a) temporal proximity is not causation, (b) generalized risk does not establish that a particular defendant's conduct caused her injury, and (c) correlation, without scientifically grounded linkage, is not causation and cannot satisfy cause in fact. If Wooten had

- no prior history of asthma;
- no prior asthma outbreak caused by Saharan dust over St. Croix;
- no worsening of her asthma on St. Croix in the month before the August 8, 2022 incident;
- no normal pulmonary function test when tested in Georgia three weeks before the August 8, 2022 incident when she was away from the atmospheric conditions of St. Croix;
- not had a rapid recovery within a day of the August 8, 2022 incident;
- not had a new "extreme breathing incident" due to a new potential environmental cause (the landfill fire) two days after the August 8, 2022 incident;

she probably would still need expert testimony, although it might be a closer call. But those are not Wooten's facts. There is no way a jury can sift through the history and events and determine whether Wooten's initial complaints were due to St. Croix's air quality conditions; anxiety; or the brief exposure to petroleum coke smoke, among

many possibilities. And with a subsequent event two days later that caused an "extreme breathing crisis," (along with ongoing anxiety issues) there is no way a jury can determine, without the assistance of expert testimony, the cause of any of Wooten's complaints that have continued or manifested themselves after the August 8, 2022 event.

A differential diagnosis is "the basic method of internal medicine" and may be objectively tested and reproduced. *Heller v. Shaw Indus., Inc.* 167 F. 3d 146, 156 (3d Cir. 1999). Medical professionals, not lay people, make diagnoses. In *Heller*, the Third Circuit evaluated the sufficiency of a plaintiff's medical evidence in a chemical exposure claim and held that an expert must employ "'sufficient diagnostic techniques to have good grounds for his or her conclusion.'" *Heller*, 167 F. 3d at 156 (quoting *In re Paoli*, 35 F.3d at 761).

### A. WOOTEN CANNOT ESTABLISH GENERAL CAUSATION

"The 'most widely-used' method of demonstrating causation in toxic tort cases 'is to present scientifically-accepted information about the dose-response curve for the toxin which confirms that the toxin can cause the health effects experienced by the plaintiff at the dosage the plaintiff was exposed to.'"*Smith v. Katz*, 2013 WL 1182074 at *11 (quoting *Young v. Burton*, 567 F. Supp. 2d 121, 128 (D.D.C. 2008), aff'd, 354 F. App'x 432 (D.C. Cir. 2009) and citing *Bonner v. ISP Techs. Inc.*, 259 F.3d 924, 928 (8th Cir. 2001)). "'Scientific knowledge of the harmful level of exposure to a chemical plus knowledge that plaintiff was exposed to such quantities are minimal facts necessary

to sustain the plaintiff's burden in a toxic tort case.'" *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999). A temporal connection between the alleged exposure and an onset of symptoms, "without more, is generally insufficient to establish causation." *Smith*, 2013 WL 1182074 (citing *Moore v. Ashland Chem.*, 151 F.3d 269, 278 (5th Cir. 1998).

Wooten has no evidence that the dose of petroleum coke smoke she received in the less-than-one minute her window was rolled down was sufficient to cause the injuries she claims. Information on the level of exposure required to cause the injury is critical to the proof of general causation. In *Moore v. Ashland Chemical Inc.*, 151 F.3d 269, 278 (5th Cir.1998) (*en banc*) the plaintiff alleged exposure to a chemical solution and relied upon (1) general statements in a Material Data Safety Sheet ("MSDS") as to the types of harm exposure to the chemical could occur and (2) the temporal proximity between the time of exposure and the onset of symptoms. The Fifth Circuit affirmed the exclusion of the expert because "[the expert] had no information on the level of exposure necessary for a person to sustain the injuries about which the MSDS warned about." *Id*. The court also rejected the expert's reliance upon the temporal connection between the exposure and symptom onset, noting, "although 'there may be instances where the temporal connection between exposure to a given chemical and subsequent injury is so compelling as to dispense with the need for reliance on standard methods of toxicology,' this was not such a case." *Id.* (quoting *Cavallo v. Star Enter.*, 892 F.Supp. 756, 773–74 (E.D.Va.1995), aff'd. in part, 100 F.3d 1150 (4th Cir.1996) The court

concluded, "[the expert] could cite no scientific support for his conclusion that exposure to any irritant at unknown levels triggers this [health] condition. Under the *Daubert* regime, trial courts are encouraged to exclude such speculative testimony as lacking any scientific validity." *Id.* at 279.

In *Young v. Burton*, 354 Fed. App'x 432 (D.D.C. 2009). after affirming the trial court's exclusion of the plaintiffs' toxicological expert, the appellate court affirmed the defendant's summary judgment on causation. The *Young* plaintiff claimed an exposure while living in an apartment owned by the defendant led to various health problems. *Id.* The appellate court held absent expert testimony, plaintiff could not prove causation because "the link between a potentially toxic building environment and symptoms experienced by tenants is beyond the ken of laypersons." *Id.* Summary judgment was proper as "jurors would have no rational basis for evaluating whether the [toxin] caused any medical conditions." *Id.*

Here, Wooten has no evidence of the dose of petroleum coke smoke that is necessary to cause any of her complained of conditions and thus cannot prove general causation.

### B.    WOOTEN CANNOT ESTABLISH SPECIFIC CAUSATION

Wooten's physical injury damages claims also fail because there is no admissible expert evidence that would allow a jury to conclude that Wooten's brief exposure to petroleum coke smoke *specifically* caused her to suffer severe asthma or RADS such that she is functionally disabled for the rest of her life. *See Paoli*, 35 F. 3d at 736 (3d

Cir. 1994).

In toxic-tort cases, specific causation demands a reliable differential diagnosis that rules out other plausible causes and establishes that the plaintiff's particular exposure was a substantial contributing factor. *Paoli*, 35 F.3d at 733 (concluding that expert's opinion is unreliable "[i]n the absence of employment of the standard techniques of differential diagnosis, and in the absence of any good explanation justifying her conclusion in the light of possible alternative causes of plaintiffs' injuries").

The differential diagnosis process requires that the expert rule out possible alternative causes of the plaintiff's injuries. An expert's opinion is unreliable "[i]n the absence of employment of the standard techniques of differential diagnosis, and in the absence of any good explanation justifying her conclusion in the light of possible alternative causes of plaintiffs' injuries." *Paoli*, 35 F.3d at 733. The Eleventh Circuit agrees, holding that "the likelihood that the chemical caused the disease or illness in an individual should be considered *in the context of other known causes*." *McClain*, 401 F.3d at 1243 (emphasis added). In the context of cases involving asthma, the same rule applies. *See Bland v. Verizon Wireless, (VAW) L.L.C.*, 538 F.3d 893, 897 (8th Cir. 2008) (affirming exclusion of plaintiff's expert who failed to eliminate scientifically other possible causes of asthma as part of her differential diagnosis).

In this case, there are a number of plausible alternative explanations (all described in greater detail in Port Hamilton's motion to exclude Dr. Wilkenfeld (Doc. No. 272)), including Wooten's subsequent exposure to fumes from the burning St. Croix Landfill two days after the petroleum coke incident; Wooten's pre-existing anxiety condition;

10

and air quality conditions on St. Croix, which had previously caused aggravation of Wooten's asthma and which were bothering her three weeks before the incident,

A plaintiff cannot avoid summary judgment with speculation; the plaintiff "must provide competent evidence from which a rational trier of fact can find in his or her favor." *Roberts v. Kmart Corp.*, 2011 WL 2975886, *1 (D.V.I. July 21, 2011). Without expert medical testimony on specific causation, Wooten's claim fails. *Baker v. Chevron USA, Inc.*, 680 F. Supp. 2d 865, 874 (S.D. Ohio, 2010).

## CONCLUSION

Because Plaintiff lacks any admissible evidence of cause in fact—an essential element of every claim—there is no genuine dispute of material fact, and Port Hamilton is entitled to judgment as a matter of law. Consequently, the Court should dismiss Port Hamilton from this action.

Respectfully submitted,

**ANDREW C. SIMPSON, P.C.,**
Counsel for Port Hamilton Refining and Transportation, LLLP

Dated: April 7, 2026

/s/ Andrew C. Simpson
By: Andrew C. Simpson, Esq.
VI Bar No. 451
ANDREW C. SIMPSON, P.C.
2191 Church Street, Suite 5
Christiansted, VI 00820
Tel: 340.719.3900
asimpson@coralbrief.com