**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

NICOLE WOOTEN,

Plaintiff,

v.

LIMETREE BAY TERMINALS d/b/a
OCEAN POINT TERMINALS, PORT
HAMILTON REFINING AND
TRANSPORTATION, and WEST INDIES
PETROLEUM, LTD.,

Defendants.

Case No. 1:23-CV-00012

**ACTION FOR DAMAGES**

<u>JURY TRIAL DEMANDED</u>

<u>**PLAINTIFF'S RESPONSE TO LIMETREE BAY TERMINALS D/B/A OCEAN POINT**</u>
<u>**TERMINALS STATEMENT OF UNDISPUTED MATERIAL FACTS**</u>

**I. PRE-INCIDENT MEDICAL CONDITION**

1. On July 15, 2022, Dr. Thomas Chacko found Plaintiff Nicole Wooten's spirometry normal on testing but documented Plaintiff's statement that her asthma has been worse since she relocated to the Virgin Islands. See July 15, 2022 Medical Record of Dr. Thomas Chacko ("Chacko Record"), attached hereto as Exhibit 1, at p.2. Dr. Chacko further documented that the air quality in the Virgin Islands is not good with more pollutants and Saharan dust. Id. At her visit with Dr. Chacko, Plaintiff was prescribed a maintenance inhaler and three additional medications for worsening asthma. Id.

**RESPONSE**: **Undisputed.**

2. In April 2021, Plaintiff experienced a respiratory flare-up on St. Croix that she attributes to Saharan dust conditions, and missed time from work. See excerpts from the May 19,



Wooten, Nicole v. Limetree Bay Terminals, et. al., Case No. 1:23-CV-00012
**PLAINTIFF'S RESPONSE TO LIMETREE BAY TERMINALS D/B/A OCEAN POINT TERMINALS
STATEMENT OF UNDISPUTED MATERIAL FACTS**
Page 2

2025 Deposition Transcript of Nicole Wooten, attached hereto as Exhibit 2 ("Wooten Depo."), at

27:4 - 28:20; 230:24 - 231:4.

**RESPONSE**:  **Undisputed in part; disputed in part**.

Plaintiff admits she experienced a respiratory flare-up in April 2021 and that she personally attributed

it to Saharan dust. However, "it wasn't that a doctor told me specifically this happened because of this

dust." (**Exhibit 1**, Wooten Depo. at 28). Plaintiff recovered fully from that episode and continued

working without restriction. Her July 2022 pulmonary function test was normal, over 90 percent.

(**Exhibit 1**, Wooten Depo. at 33; *see also* CSOF ¶5). She was exercising three to five times per week.

(**Exhibit 4**, Wooten Hardship Request Memorandum, NW001710 ["I have always exercised,

averaging 3-5 times a week, including cardio and weight training"]; **Exhibit 15**, Dr. Garfield Records

["hobbies: basketball and exercise (which she has been unable to do since exposure)"]; *see also* CSOF

¶6). She was performing her full CBP duties on August 8, 2022. CSOF ¶13. The April 2021 episode

did not require emergency treatment, nebulizer use, steroid injections, or hospitalization. (**Exhibit 1**,

Wooten Depo. at 24, 27; *see also* **Exhibit 4**, Wooten Hardship Request Memorandum, NW001710;

**Exhibit 15**, Dr. Garfield, Temple University Hospital Records, Apr. 26, 2023 ["asthma well controlled

for many years with Albuterol PRN only"].)

**II. CIRCUMSTANCES OF PLAINTIFF'S EXPOSURE ON AUGUST 8, 2022**

3. On August 8, 2022, Plaintiff, as a U.S. Customs and Border Protection officer, drove onto the

Limetree Bay refinery in St. Croix to conduct a vessel inspection. See Exh. 2, Wooten Depo., at 39:8-

40:25. The coke dome at the refinery was smoldering during Plaintiff's visit, and Jeffrey Charles, Ocean

Point's Chief Operating Officer, testified that in the early days of the event he observed only light

vapor and steam. See excerpts from the April 14, 2025 Deposition Transcript of Jeffrey Charles,

Wooten, Nicole v. Limetree Bay Terminals, et. al., Case No. 1:23-CV-00012
**PLAINTIFF'S RESPONSE TO LIMETREE BAY TERMINALS D/B/A OCEAN POINT TERMINALS STATEMENT OF UNDISPUTED MATERIAL FACTS**
Page 3

attached hereto as Exhibit 3, at 31:19-33:7.

**RESPONSE: Undisputed in part; disputed in part.**

Plaintiff admits she drove onto the facility to conduct a vessel inspection as part of her mandatory CBP duties. She had no discretion to decline the assignment. CSOF ¶13. However, Plaintiff denies that conditions on August 8 consisted of merely "light vapor and steam." Limetree's 30(b)(6) representative, Jeffrey Charles's testimony about "light vapor" described his observations in the "early days" of the smoldering, which began on August 4. (**Exhibit 12**, Charles (LBT 30(b)(6)) Depo. at 33–34). By August 8, conditions had materially changed. Plaintiff testified she observed "[t]hick -- this black smoke that's thick. In some areas it looked black. In some areas it looked gray." (**Exhibit 1**, Wooten Depo. at 49; *see also* CSOF ¶14). PHRT's Incident Report confirms that by August 8, the dome's exterior wall was exhibiting charring and blistering. PHRT's press release dated August 12, 2022 confirmed that petroleum coke had been "found smoldering" on August 4, 2022, and that water had been "applied 24 hours a day" since that date. The smoldering continued for approximately twenty-three days after the initial alarm. (**Exhibit 11**, PHRT Press Release, Aug. 12, 2022, PHRT-Wooten 000026; **Exhibit 7**, PHRT Incident Report, PHRT-Wooten 000001–000009.) A Job Safety Analysis prepared that very day identified hazards at the site. (**Exhibit 11**, PHRT Internal Incident Timeline, PHRT-Wooten 000036; see also CSOF ¶8).

4. During Plaintiff's visit, she alleges that she as soon as she arrived she noticed thick black smoke. See Plaintiff's Response to WIPL's Interrogatories, attached hereto as Exhibit 4, at Response to Interrogatory. No. 2.

**RESPONSE: Undisputed in part and disputed in part.**

Wooten, Nicole v. Limetree Bay Terminals, et. al., Case No. 1:23-CV-00012
**PLAINTIFF'S RESPONSE TO LIMETREE BAY TERMINALS D/B/A OCEAN POINT TERMINALS STATEMENT OF UNDISPUTED MATERIAL FACTS**
Page 4

Admit she saw smoke. But deny the presence of smoke indicated she was warned to stay away from the facility. Neither Ocean Point nor Port Hamilton warned Plaintiff of any dangerous conditions before she entered the facility. There were no warnings of any dangerous conditions, no signs posted, and she was allowed to enter. (**Exhibit 1**, Wooten Depo. at 39, 42, 44–45; **Exhibit 4**, Wooten Hardship Request Memorandum, NW001710.) Ocean Point controlled security and access at the facility yet did not notify CBP of the ongoing emergency. (**Exhibit 12**, Charles (LBT 30(b)(6)) Depo. at 36).

5. Plaintiff testified that as she approached the tugboats she rolled her window down, spoke with two individuals at the entrance to the tugboat parking area, and had a conversation during which "nothing happened." See Exh. 2, Wooten Depo., at 46:6-47:18; 54:8-55:18.

**RESPONSE**: **Undisputed in part; disputed in part.**

Admit that when Ms. Wooten arrived at the concrete road between the docks and the coke domes, she noticed thick black smoke coming from the dome building. She approached two workers wearing coveralls near the entrance to the parking area and rolled down her vehicle window to ask whether it was safe to proceed. Harmful smoke and gases entered her vehicle. When she rolled the window back up, she immediately began coughing and experiencing shortness of breath. (**Exhibit 1**, Wooten Depo. at 46–49, 53–55).

However, Plaintiff denies the implication that "nothing happened." Plaintiff's testimony was that nothing happened during the conversation itself. She did not realize the smoke had entered her vehicle until she rolled the window back up. "I didn't realize that the smoke had actually entered the vehicle until I rolled the windows back up." (**Exhibit 1**, Wooten Depo. at 54). The smoke came to her. The

Wooten, Nicole v. Limetree Bay Terminals, et. al., Case No. 1:23-CV-00012
**PLAINTIFF'S RESPONSE TO LIMETREE BAY TERMINALS D/B/A OCEAN POINT TERMINALS STATEMENT OF UNDISPUTED MATERIAL FACTS**
Page 5

fact that Plaintiff did not notice symptoms during a brief conversation does not mean she was not being exposed to harmful substances during that time.

6. She then rolled her window back up, at which point she began coughing. Id. She estimated the window-down period at less than one minute - "probably just seconds" – and acknowledged it may have been less than 30 seconds. Id., at 55:10-18. She testified she did not know or remember whether either worker coughed or had any reaction during the conversation. Id., at 60:10-18.

**RESPONSE**: **Undisputed**.

## III. ABSENCE OF EXPOSURE DATA

7. There is no data quantifying Plaintiff's exposure dose to any substance on August 8, 2022. See excerpts from the November 10, 2025 Deposition Transcript of Marc Wilkenfeld, attached hereto as Exhibit 5 ("Wilkenfeld Depo."), at 13:14-25.

**RESPONSE**: **Disputed.**

Plaintiff admits that no personal air monitoring was performed on her on August 8, 2022. However, she denies that any air monitoring was her responsibility. This is because Port Hamilton and Ocean Point failed to perform any personal air monitoring on individuals entering the facility during an active smoldering emergency. The absence of dose data is a consequence of Defendants' own failures, not a deficiency in Plaintiff's case. Moreover, dose-response evidence is not required for an acute-exposure case where the temporal connection between exposure and injury is compelling. "[T]here may be instances where the temporal connection between exposure to a given chemical and subsequent injury is so compelling as to dispense with the need for reliance on standard methods of toxicology." *Cavallo*

Wooten, Nicole v. Limetree Bay Terminals, et. al., Case No. 1:23-CV-00012
**PLAINTIFF'S RESPONSE TO LIMETREE BAY TERMINALS D/B/A OCEAN POINT TERMINALS STATEMENT OF UNDISPUTED MATERIAL FACTS**
Page 6

*v. Star Enter.*, 892 F. Supp. 756, 773–74 (E.D. Va. 1995), *aff'd in part*, 100 F.3d 1150 (4th Cir. 1996).

Dr. Wilkenfeld testified that dose-response analysis is not relevant for an acute exposure case where the patient had an immediate symptomatic reaction. (**Exhibit 2**, Wilkenfeld Expert Report; **Exhibit 5**, Wilkenfeld Depo. at 26–29, 61, 110; *see also* CSOF ¶49-50).

8. No one performed atmospheric dispersion modeling or contaminant-level reconstruction for the August 8, 2022 incident to estimate what substances or concentrations, if any, reached Plaintiff's vicinity. See Exh. 5, Wilkenfeld Depo., at 34:1-7; 43:6-18; See excerpts from the February 26, 2026, Deposition Transcript of Daniel Mahr, attached hereto as Exhibit 6; at 14:1-8.

**RESPONSE**: **Disputed.**

Atmospheric dispersion modeling was not performed because the data needed to perform such modeling was in the exclusive possession and control of the Defendants, who failed to collect it. Ocean Point's air monitors between the coker and the tugboats all showed "nil" readings. (**Exhibit 12**, Charles (LBT 30(b)(6)) Depo. at 41–42). However, Charles testified those monitors were positioned between the coker and the tugboats, not at Plaintiff's location. The monitors' "nil" readings do not establish what Plaintiff was exposed to when she drove into thick, visible smoke. The smoke was visible to the naked eye. The absence of modeling does not negate the smoke's existence or that her exposure caused the immediate onset of severe respiratory symptoms. Dr. Wilkenfeld explained that the petroleum coke combustion products, including sulfur dioxide, carbon monoxide, carbon dioxide, and particulate matter, are well-documented respiratory irritants. (**Exhibit 2**, Wilkenfeld Expert Report.)

**V. POST-INCIDENT MEDICAL FINDINGS**

Wooten, Nicole v. Limetree Bay Terminals, et. al., Case No. 1:23-CV-00012
**PLAINTIFF'S RESPONSE TO LIMETREE BAY TERMINALS D/B/A OCEAN POINT TERMINALS
STATEMENT OF UNDISPUTED MATERIAL FACTS**
Page 7

9. On August 9, 2022, the day after the alleged exposure, Plaintiff's physical examination showed clear lungs bilaterally and no acute respiratory distress. See August 9, 2022, JFL Hospital ER Records, attached hereto as Exhibit 7, at NW000232-236.

**RESPONSE**: Undisputed.

**VI. THE AUGUST 10, 2022 ALTERNATIVE EXPOSURE**

10. Plaintiff confirmed in her deposition that on August 10, 2022, she was exposed to smoke from a separate landfill fire adjacent to her workplace at the airport, and she sought medical evaluation for respiratory symptoms after that exposure. See Exh. 2, Wooten Depo., at 236:23-239:19.

**RESPONSE**: **Disputed.** Dr. Wilkenfeld testified that the likelihood of Plaintiff having fully recovered from the August 8 exposure and then being independently injured solely by the landfill fumes was "so, so, so, so unlikely." (**Exhibit 5**, Wilkenfeld Depo. at 56). The August 10 medical record documents "SOB that she has had x2 days," confirming continuous symptoms from August 8, demonstrating that Ms. Wooten's shortness of breath was continuous from August 8 through August 10. It was not a new or intervening event. Ms. Wooten's symptoms on August 10 were a continuation of the respiratory distress that began with the petroleum coke exposure on August 8, 2022. (**Exhibit 17**, Dr. Campbell treatment notes, Aug. 10, 2022, NW004269). The treating physician noted that Plaintiff "was exposed to chemical fire/smoke on monday 8/8/22." (**Exhibit 17**, Dr. Campbell treatment notes, Aug. 10, 2022, NW004269–NW004271).

11. Plaintiff could smell fumes coming through the air conditioning unit in the car while she was still driving to work. Id. By the time she arrived at the airport, she could still smell the fumes and her chest began to tighten. Id. Plaintiff told her treating physician something was burning at the

Wooten, Nicole v. Limetree Bay Terminals, et. al., Case No. 1:23-CV-00012
**PLAINTIFF'S RESPONSE TO LIMETREE BAY TERMINALS D/B/A OCEAN POINT TERMINALS STATEMENT OF UNDISPUTED MATERIAL FACTS**
Page 8

landfill. Id. Plaintiff did not know what was burning at the landfill, and to this day she does not know. Id.

**RESPONSE**: **Undisputed.**

12. Due to her symptoms, Plaintiff again sought urgent medical care; she was treated with an intramuscular steroid injection, resulting in relief of her symptoms. See August 10, 2022 Acute Alternative Medical. Group Records, attached hereto as Exhibit 8, at NW000355.

**RESPONSE**: **Undisputed in part; disputed in part**.

Plaintiff admits she sought urgent care on August 10 and received a steroid injection. However, deny that this "result[ed] in relief of her symptoms." Any temporary relief was attributable to the steroid treatment, not to recovery. *See* CSOF ¶ 20. Dr. Muraina confirmed: "The symptoms however returned, and she went back to the Urgent Care Center on 8/10." (**Exhibit 3**, Muraina IME Report at 1 (NW001738). On August 15, 2022, Ms. Wooten returned to Dr. Campbell, who attempted a pulmonary function test. Ms. Wooten was unable to complete the test due to shortness of breath and chest tightness. (**Exhibit 4**, Wooten Hardship Request Memorandum, NW001711.) On August 16, 2022, Ms. Wooten purchased a last-minute plane ticket and returned to Georgia to obtain treatment from pulmonary specialists. (**Exhibit 4**, Wooten Hardship Request Memorandum, NW001711– NW001712; **Exhibit 35**, CBP Step II Grievance Decision, NW001524.) She has been disabled ever since.

13. Dr. Wilkenfeld did not perform a differential diagnosis or distinguish the effects of the August 8 refinery incident from those of the August 10, 2022 fume exposure. See Exh. 5,

Wilkenfeld Depo., 111:16-113:6.

**RESPONSE**: **Disputed.**

Dr. Wilkenfeld did address and distinguish the August 8 and August 10 exposures. He testified that the likelihood of the landfill fire being the sole cause was "so so so so unlikely." (**Exhibit 5**, Wilkenfeld Depo. at 56; *see also* CSOF ¶20). He explained his reasoning: the steroids administered on August 8 remain active for 24–48 hours, and when they wore off, symptom recurrence was expected "particularly with an additional insult to the lungs." (**Exhibit 5**, Wilkenfeld Depo. at 58–59; *see also* CSOF ¶20). He characterized the August 10 episode as a "cumulative effect" of the two exposures. *Id.* Moreover, multiple treating physicians independently attributed Plaintiff's injuries to the August 8 exposure, including Dr. Campbell, who treated Plaintiff on both August 8 and August 10 and documented on August 10 that Plaintiff "was exposed to chemical fire/smoke on monday 8/8/22." (**Exhibit 17**, Dr. Campbell treatment notes, Aug. 10, 2022, NW004269–NW004271; *see also* CSOF ¶18).

14. Meanwhile, Mr. Mahr also did not distinguish the effects of the August 8 refinery incident from those of the August 10 landfill incident, as he stated the scope of his "work was to provide information on the handling of petroleum coke, the design, the operation, and the fire…. I mean, that was the scope; to provide the combustion, not the exposure to Wooten." See Exh. 6, Mahr Depo. 19:7-18.

**RESPONSE**: **Undisputed in part; disputed in part**.

Plaintiff admits that Mr. Mahr's scope was limited to the petroleum coke handling, design, operation, and combustion. Disputed that he was retained to opine on Plaintiff's individual exposure or medical

Wooten, Nicole v. Limetree Bay Terminals, et. al., Case No. 1:23-CV-00012
**PLAINTIFF'S RESPONSE TO LIMETREE BAY TERMINALS D/B/A OCEAN POINT TERMINALS STATEMENT OF UNDISPUTED MATERIAL FACTS**
Page 10

causation. That is Dr. Wilkenfeld's role. Mr. Mahr's scope is not a deficiency as it reflects the appropriate division of expert disciplines. Dr. Wilkenfeld, the medical expert, addressed causation, including the August 10 exposure. (**Exhibit 5**, Wilkenfeld Depo. at 54–56; *see also* CSOF ¶20).

## VII. DR. WILKENFELD'S METHODOLOGY AND ADMISSIONS

15. Dr. Wilkenfeld Undisputed he had no air sampling data from August 8, 2022, performed no dose calculation for any chemical Plaintiff might have inhaled, and had no way to quantify what amount of any toxic agent she was exposed to. See Exh. 5, Wilkenfeld Depo. At 13:14-25; 19:5-18; 34:8-37:4; 43:19-45:20.

**RESPONSE**: **Disputed.**

No personal air monitoring was performed on Plaintiff because Defendants failed to conduct any. The absence of dose data is attributable to Defendants' own failures during the emergency, not to any deficiency in Dr. Wilkenfeld's methodology. Dr. Wilkenfeld testified that dose-response analysis is not relevant for an acute exposure case where the patient had an immediate symptomatic reaction. (**Exhibit 2**, Wilkenfeld Expert Report; **Exhibit 5**, Wilkenfeld Depo. at 26–29, 61, 110; *see also* CSOF ¶49). His opinion is grounded in the temporal relationship between exposure, immediate onset of symptoms, and the clinical course that followed. This methodology is recognized by federal courts as Plaintiff's brief will address.

16. Dr. Wilkenfeld based his causation opinion on what is "typically" present in petroleum coke emissions. He did not base his opinion on any air sampling data, personal air monitoring data, or atmospheric measurements from the August 8, 2022 incident. See id., at 34:14-25; 35:8-10.

Wooten, Nicole v. Limetree Bay Terminals, et. al., Case No. 1:23-CV-00012
**PLAINTIFF'S RESPONSE TO LIMETREE BAY TERMINALS D/B/A OCEAN POINT TERMINALS STATEMENT OF UNDISPUTED MATERIAL FACTS**
Page 11

**RESPONSE**: **Disputed**

Dr. Wilkenfeld's reliance on the known composition of petroleum coke combustion products is a scientifically sound methodology. Petroleum coke combustion products, including sulfur dioxide, carbon monoxide, volatile organic compounds, and formaldehyde, are well-documented respiratory irritants. (**Exhibit 2**, Wilkenfeld Expert Report; *see also* CSOF ¶50). Port Hamilton's Incident Report confirms that petroleum coke inside the coke dome began smoldering on August 4, 2022 and was not extinguished for approximately twenty-three days. The report identifies the combustion products released, including sulfur dioxide and particulate matter, the very substances identified by Ms. Wooten's treating physicians as the cause of her injuries. (**Exhibit 7**, PHRT Incident Report, PHRT-Wooten 000001–000009; *see also* CSOF ¶60). Dr. Garfield independently identified the same substances. (**Exhibit 15**, Dr. Garfield, Temple University Hospital Records, Apr. 26, 2023; *see also* CSOF ¶35). It is not necessary to have air sampling data from the specific incident when the substance being burned and its known combustion products are established. The admissibility and weight of Dr. Wilkenfeld's methodology are addressed in Plaintiff's Daubert opposition.

17. Dr. Wilkenfeld testified that he could not identify a specific chemical to which Plaintiff was exposed and did not quantify any exposure concentration or dose. He acknowledged

that his opinion was not based on any air measurements or dose calculations. See id., at 34:8-39:13.

**RESPONSE**: **Disputed.**

This paragraph repeats the substance of ¶¶15–16 above. *See* RSOF 15-16. Dr. Wilkenfeld's testimony that Plaintiff must have been exposed to "levels many times higher than those that are toxic" is based on the severity and immediacy of her clinical response, a recognized methodology for acute toxic

Wooten, Nicole v. Limetree Bay Terminals, et. al., Case No. 1:23-CV-00012
**PLAINTIFF'S RESPONSE TO LIMETREE BAY TERMINALS D/B/A OCEAN POINT TERMINALS
STATEMENT OF UNDISPUTED MATERIAL FACTS**
Page 12

exposure cases. Moreover, Dr. Wilkenfeld is not Plaintiff's only causation witness. Six treating physicians independently reached the same conclusion.

18. Dr. Wilkenfeld testified that he did not apply any specific scientific methodology in this case. See id., at 25:13-25. He testified that his analysis rested on the fact that Plaintiff had symptoms after visiting the refinery. See id., at 24:21-25:8. Based on the symptoms, he concluded that she must have inhaled "levels many times higher than those that are toxic." See id., at 34:24-35:1.

**RESPONSE**: **Disputed.**

Plaintiff's expert, Dr. Jeffrey Wilkenfeld, a board-certified occupational and environmental medicine physician, reviewed the totality of Ms. Wooten's medical records, the PHRT Incident Report, and the EPA Inspection Report, and opined to a reasonable degree of medical certainty that Ms. Wooten's exposure to petroleum coke smoke on August 8, 2022 caused her injuries. Dr. Wilkenfeld's methodology included review of Ms. Wooten's medical history, test results, and the substances to which she was exposed, and his opinion is grounded in the temporal relationship between exposure, immediate onset of symptoms, and the clinical course that followed. (**Exhibit 2**, Wilkenfeld Expert Report; **Exhibit 5**, Wilkenfeld Depo. at 26–29, 61, 110.) He reviewed the totality of the medical records, the PHRT Incident Report, and the EPA Inspection Report.. Dr. Wilkenfeld's causation opinion is grounded in the established medical literature on irritant-induced asthma and RADS (Reactive Airway Dysfunction Syndrome), which recognizes that a single high-level exposure to respiratory irritants can cause persistent airway dysfunction in individuals with pre-existing mild asthma. Dr. Wilkenfeld explained that the petroleum coke combustion products, including sulfur dioxide, carbon monoxide, carbon dioxide, and particulate matter, are well-documented respiratory

irritants. (**Exhibit 2**, Wilkenfeld Expert Report.) The characterization that his analysis merely "rested on the fact that Plaintiff had symptoms after visiting the refinery" is a reduced distortion of his actual testimony. The admissibility and reliability of his methodology are fully addressed in Plaintiff's Daubert opposition.

19. Dr. Wilkenfeld performed no analysis to determine whether Plaintiff's post-incident symptoms represented natural progression of her preexisting disease versus new injury from the alleged exposure. He testified that he could not determine what percentage of her current condition is attributable to natural progression versus the alleged exposure. See id., at 69:4-71:9.

**RESPONSE**: **Disputed.**

Dr. Wilkenfeld did address the pre-existing asthma. His opinion accounts for Plaintiff's history of mild, well-controlled asthma and concludes that the August 8 exposure caused a severe aggravation far beyond anything in her prior medical history. Dr. Muraina, the employer's retained pulmonologist, reached the same conclusion. Dr. Muraina diagnosed five conditions causally connected to the work injury: (1) severe persistent asthma (J45.50); (2) chronic respiratory failure with hypoxia (J96.11); (3) airway disease due to other specific organic dusts (J66.8); (4) contact with and suspected exposure to hazardous chemicals (Z77.098); and (5) shortness of breath (R06.02). He opined: "There is direct causal relationship between the diagnoses above and the work-related injury of exposure to Petroleum 'coke' burn smoke necessitating prolonged debility with aggravation of the pre-existing asthma and respiratory failure with hypoxia." (**Exhibit 3**, Dr. Muraina Report, NW001740;). Dr. Garfield's allergy panel was essentially all negative, ruling out allergic causes. (**Exhibit 15**, Dr. Garfield, Temple University Hospital Records;). The inability to assign a precise percentage does not preclude a

Wooten, Nicole v. Limetree Bay Terminals, et. al., Case No. 1:23-CV-00012
**PLAINTIFF'S RESPONSE TO LIMETREE BAY TERMINALS D/B/A OCEAN POINT TERMINALS STATEMENT OF UNDISPUTED MATERIAL FACTS**
Page 14

causation opinion under Virgin Islands law.

20. Dr. Wilkenfeld performed no investigation or analysis of Plaintiff's August 10, 2022 exposure to the August 10 landfill fumes and he made no effort to determine the composition of the landfill fumes. See id., at 61:21-62:16. He testified he could not rule out that the August 10 event was the sole or primary cause of her ongoing complaints, and he acknowledged that his sole basis for attributing all ongoing symptoms to the August 8 event - rather than to the August 10 landfill fumes event - is the severity of her August 8 presentation and need for medication, not any objective data or differential analysis. See id., at 57:6-65:15; 111:14-15.

**RESPONSE**: **Disputed.**

Dr. Wilkenfeld testified that the likelihood that the landfill exposure was the sole cause of Plaintiff's symptoms was "so so so so unlikely." (**Exhibit 5**, Wilkenfeld Depo. at 56;). He explained that steroids from August 8 would have worn off within 24–48 hours, making symptom recurrence expected. (**Exhibit 5**, Wilkenfeld Depo. at 58–59;). He characterized the August 10 episode as a "cumulative effect." *Id.* The severity of Plaintiff's August 8 presentation, requiring emergency nebulizer treatments and steroid injections for the first time in her life, is clinical evidence of the magnitude of the toxic aggravation. The August 10 medical record documents "SOB that she has had x2 days," confirming continuous symptoms from August 8. (**Exhibit 17**, Dr. Campbell treatment notes, Aug. 10, 2022, NW004269;). The characterization of the August 10 exposure as the "sole or primary cause" is a factual dispute for the jury, not a basis for summary judgment.

21. Dr. Wilkenfeld testified that post-incident diagnostic testing, including bronchoscopy, chest X-

Wooten, Nicole v. Limetree Bay Terminals, et. al., Case No. 1:23-CV-00012
**PLAINTIFF'S RESPONSE TO LIMETREE BAY TERMINALS D/B/A OCEAN POINT TERMINALS
STATEMENT OF UNDISPUTED MATERIAL FACTS**
Page 15

rays, and CT scans produced normal results and Plaintiff never successfully completed pulmonary function testing despite at least five to six attempts over nearly two years. Id. at 22:15-23:6; 80:7-16.

**RESPONSE**: **Undisputed in part**; **disputed in part**.

Plaintiff admits that chest imaging was normal and that she had difficulty completing PFTs. However, Dr. Wilkenfeld explained that objective findings on chest imaging are "usually not" present in asthma exacerbation from toxic exposure. (**Exhibit 5**, Wilkenfeld Depo. at 23–24). The absence of findings on imaging is consistent with, not contradictory to, the diagnosis. As for the PFTs, Plaintiff's inability to complete them is itself evidence of the severity of her condition. She could not perform the required maneuvers because of shortness of breath and chest tightness. On August 14, 2022, Ms. Wooten returned to the Juan F. Luis Hospital emergency room with continued shortness of breath, chest pain, and anxiety. Dr. Menkinsmith ordered a chest x-ray and labs. (**Exhibit 24**, Juan F. Luis Hospital ER Records, Aug. 14, 2022, NW004265–NW004266.) On August 15, 2022, Ms. Wooten returned to Dr. Campbell, who attempted a pulmonary function test. Ms. Wooten was unable to complete the test due to shortness of breath and chest tightness. (**Exhibit 4**, Wooten Hardship Request Memorandum, NW001711.) Successive pulmonary function tests document persistent objective pulmonary impairment. On December 6, 2023, spirometry showed FEV1 at 66% of predicted and FEV1/FVC ratio of 57.08%, a "moderate obstructive ventilatory defect." On April 18, 2024, a PFT at Emory showed FEV1 at 73% of predicted (2.40L) and FEV1/FVC of 76%, with physician interpretation of a "nonspecific ventilatory defect which may be due to underlying obstruction." The study was limited by the patient's chest discomfort, and she was unable to perform FENO testing. (**Exhibit 19**, Dr. Graham Records; **Exhibit 26**, PFT Results, various dates.) Dr. Muraina's examination found oxygen saturation of 89% at rest and a six-minute walk test discontinued at two minutes due to desaturation

Wooten, Nicole v. Limetree Bay Terminals, et. al., Case No. 1:23-CV-00012
**PLAINTIFF'S RESPONSE TO LIMETREE BAY TERMINALS D/B/A OCEAN POINT TERMINALS STATEMENT OF UNDISPUTED MATERIAL FACTS**
Page 16

to 82%. (**Exhibit 3**, Dr. Muraina Report, NW001739–NW001740.) These objective findings by multiple doctors confirm the severity of Plaintiff's injury.

## VIII. MR. MAHR'S ADMISSIONS

22. Plaintiff's engineering expert, Daniel Mahr, P.E., admitted his report contained no calculation of Ms. Wooten's exposure dose to any substance and that he performed no air dispersion modeling for the incident; he offered no opinion on what, if anything, she was exposed to. See Exh. 5, Mahr Depo,. at 13:22-14:15)

**RESPONSE**: **Disputed.**

Mr. Mahr is an engineering expert retained to opine on the handling of petroleum coke, the design and operation of the coke storage domes, and the combustion event. He was not retained to opine on Plaintiff's individual exposure dose or medical causation. His scope is appropriate for an engineering expert. Medical causation is addressed by Dr. Wilkenfeld and by Plaintiff's six treating physicians. *See* RSOFs ¶ 14-21.

23. Mr. Mahr testified that the data needed to determine actual exposure levels at Plaintiff's location was not available. See id. at 14:1-8. The air monitors nearest to the refinery were, in Mr. Mahr's words, "very far" from Ms. Wooten's location and were not positioned downwind of the coke dome. See id, at 18:16-25. The monitoring data from August 8, 2022 showed readings of 0.00 for both hydrogen sulfide and sulfur dioxide throughout the period of Ms. Wooten's visit, but those readings could not establish what, if anything, reached her location at her level of exposure. See id., at 13:22-14:15. See also, Daniel Mahr Expert Report, attached hereto as Exhibit 9, Section 3.7, at 20-22; Section 6.2, at 25.

Wooten, Nicole v. Limetree Bay Terminals, et. al., Case No. 1:23-CV-00012
**PLAINTIFF'S RESPONSE TO LIMETREE BAY TERMINALS D/B/A OCEAN POINT TERMINALS STATEMENT OF UNDISPUTED MATERIAL FACTS**
Page 17

**RESPONSE**: **Disputed.**

The monitors were inadequately placed and cannot establish what Plaintiff was exposed to when she drove into thick, visible smoke near the dome. Ocean Point's COO, Jeffrey Charles, testified that the monitors were located "adjacent or in between the coker and the tugboats" and measured "air quality." (**Exhibit 12**, Charles (LBT 30(b)(6)) Depo. at 41–42). But Plaintiff did not remain stationary between the coker and the tugboats. She drove toward the dome area where thick smoke was visible. *See* RSOF ¶¶ 3 - 5. The monitors' zero readings do not disprove exposure; they demonstrate inadequate monitoring during an active emergency. Plaintiff saw the smoke, drove into it, and immediately became ill. Defendants do not contest those facts.

24. Daniel Mahr, did not perform atmospheric dispersion modeling, calculate contaminant concentrations at the tugboat dock, quantify sulfur dioxide, carbon monoxide, volatile

organic compounds, particulate matter, or dioxin levels at Plaintiff's location, conduct a dose reconstruction, or compare any exposure level to toxicological thresholds. Id.

**RESPONSE**: **Disputed.**

This paragraph repeats the substance of ¶¶22–23. Mr. Mahr was not retained to perform exposure modeling or dose reconstruction. He was retained as an engineering expert on coke handling and dome design. Medical causation, including the relationship between Plaintiff's exposure and her injuries, is addressed by Dr. Wilkenfeld and by the six treating physicians who independently concluded that the August 8 petroleum coke exposure caused Plaintiff's injuries. The absence of atmospheric dispersion modeling does not preclude a finding of causation where, as here, the Plaintiff drove into visible, thick smoke and immediately suffered severe respiratory distress requiring emergency medical treatment, which Defendants do not deny.

Wooten, Nicole v. Limetree Bay Terminals, et. al., Case No. 1:23-CV-00012
**PLAINTIFF'S RESPONSE TO LIMETREE BAY TERMINALS D/B/A OCEAN POINT TERMINALS STATEMENT OF UNDISPUTED MATERIAL FACTS**
Page 18

RESPECTFULLY SUBMITTED
LEE J. ROHN AND ASSOCIATES, LLC
Attorneys for Plaintiff

DATED: May 28, 2026                BY:    /s/ Lee J. Rohn
                                            Lee J. Rohn, Esq.
                                            VI Bar No. 52
                                            1108 King Street, Suite 3 (mailing)
                                            56 King Street, Third Floor (physical)
                                            Christiansted, St. Croix
                                            U.S. Virgin Islands 00820
                                            Telephone: (340) 778-8855
                                            lee@rohnlaw.com

## CERTIFICATE OF SERVICE

**THIS IS TO CERTIFY** that on May 28, 2026, I electronically filed the foregoing with the Clerk of the Court using the electronic filing system, which will send a notification of such filing to the following:

To All Counsel of Records

BY:    /s/ Lee J. Rohn        (dvn)