**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

NICOLE WOOTEN,

               Plaintiff,

    v.

LIMETREE BAY TERMINALS d/b/a
OCEAN POINT TERMINALS, PORT
HAMILTON REFINING AND
TRANSPORTATION, and WEST INDIES
PETROLEUM, LTD.,

               Defendants.

Case No. 1:23-CV-00012

**ACTION FOR DAMAGES**

<u>JURY TRIAL DEMANDED</u>

**OPPOSITION TO PORT HAMILTON 'S MOTION FOR SUMMARY JUDGMENT ON CAUSE IN FACT**

Port Hamilton Refining and Transportation, LLLP's ("Port Hamilton" or "PHRT") Motion for Summary Judgment on Cause in Fact (Doc. No. 276) should be denied because the record is replete with admissible evidence[1] of causation, including the opinions of six independent treating physicians, a second-opinion pulmonary examination by the employer's retained physician, the formal acceptance of the claim by the United States Department of Labor, and the expert opinion of Dr. Marc Wilkenfeld, all of which conclude that Ms. Wooten's August 8, 2022 exposure to petroleum coke smoke caused her severe and permanent respiratory injuries.

Port Hamilton's motion rests on a false premise: that Dr. Wilkenfeld is Plaintiff's sole causation evidence, and that without him, the case collapses. That is wrong. Even if Dr. Wilkenfeld's testimony were excluded, which Plaintiff vigorously opposes in her separate Daubert opposition, the record still contains overwhelming evidence of causation from multiple independent medical sources. Summary judgment is a "drastic remedy" that should be granted only when there is no genuine issue

---

[1] Plaintiff incorporates by reference her Response to Port Hamilton's Statement of Uncontested Material Facts (RSOF) and her Counter-Statement of Disputed Material Facts (CSOF), filed concurrently herewith, as if fully set forth herein.

*Wooten, Nicole v. Limetree Bay Terminals, et. al.*, Case No. 1:23-CV-00012
**OPPOSITION TO PORT HAMILTON REFINING AND TRANSPORTATION, LLLP'S MOTION FOR SUMMARY JUDGMENT ON CAUSE IN FACT**
Page 2

of material fact. *Machado v. Yacht Haven U.S.V.I., LLC*, 61 V.I. 373, 379 (V.I. 2014). This is not such a case.

## LEGAL ARGUMENT

### I.    STANDARD OF REVIEW

To prevail on a motion for summary judgment, a movant must show that there is "no genuine dispute as to any material fact," and that, based on the uncontroverted facts, it is "entitled to judgment as a matter of law." *Honore v. Virgin Islands Housing Finance Authority*, 2024 WL 4186762, at *4 (D.V.I. 2024) (citing Fed. R. Civ. P. 56(a)); *see also Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

The moving party bears the initial burden in showing the nonexistence of a genuine issue of material fact. *Cornett v. Hovensa, LLC*, No. 1:07-CV-00025, 2012 WL 2865887, at *1 (D.V.I. July 12, 2012). The movant may meet this burden by "pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial." *Id.* "[A] party who moves for summary judgment on the ground that the nonmoving party has no evidence must affirmatively show the absence of evidence in the record." *Butts v. Sw. Energy Prod. Co.*, No. 3:12-CV-1330, 2014 WL 3953155, at *1–2 (M.D. Pa. Aug. 12, 2014) (quoting *Celotex Corp.*, 477 U.S. at 331–32 (Brennan, J., dissenting)).

The court must view all facts "in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor." *Honore*, 2024 WL 4186762, at *5 (citing *Curto v. A Country Place Condominium Ass'n., Inc.*, 921 F.3d 405, 409 (3d Cir. 2019)). The non-moving party cannot "rely merely upon bare assertions, conclusory allegations, or suspicions" to avoid summary judgment. *See Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). However, "[i]t is well settled that a single, nonconclusory affidavit or witness's testimony, when based on personal knowledge and

*Wooten, Nicole v. Limetree Bay Terminals, et. al.*, Case No. 1:23-CV-00012
**OPPOSITION TO PORT HAMILTON REFINING AND TRANSPORTATION, LLLP'S MOTION FOR SUMMARY JUDGMENT ON CAUSE IN FACT**
Page 3

directed at a material issue, is sufficient to defeat summary judgment or judgment as a matter of law."

*Burd v. Antilles Yachting Servs., Inc.*, 57 V.I. 354, 360 (V.I. 2012).

## II. PORT HAMILTON CONCEDES DUTY, BREACH, AND DAMAGES; ONLY CAUSATION IS AT ISSUE

In the Virgin Islands, the "foundational elements" of negligence are (1) a legal duty of care to the plaintiff, (2) a breach of that duty of care by the defendant, (3) constituting the factual and legal cause of (4) damages to the plaintiff. *Antilles School, Inc. v. Lembach*, 64 V.I. 400, 409 (V.I. 2016); *see also Machado v. Yacht Haven U.S.V.I., LLC*, 61 V.I. 373, 380 (2014). "Causation includes cause in fact and legal causation, which is often referred to as proximate cause." *Brady v. Cintron*, 55 V.I. 802, 823 (2011) (quoting *Fedorczyk v. Caribbean Cruise Lines, Ltd.*, 82 F.3d 69, 73 (3d Cir. 1996)).

Port Hamilton does not contend that it lacked a duty of care to Ms. Wooten, that it breached no duty, or that she suffered no damages. Its motion is limited to a single element: whether the record contains sufficient admissible evidence of cause in fact. (Mot. at 1, 5.) As demonstrated below, it does. Port Hamilton owned and operated the petroleum refinery, owned the petroleum coke stored in the dome, and was managing an ongoing smoldering emergency that produced thick, visible smoke. CSOF ¶¶7, 59–60. Ms. Wooten, performing mandatory duties as a federal law enforcement officer with no warning of the hazard, no signs, no guards to prevent her entry, drove into that smoke and immediately suffered severe respiratory distress from which she has never recovered. CSOF ¶¶13–15. Six treating physicians, the employer's own retained examiner, and the U.S. Department of Labor have all concluded that the petroleum coke exposure caused her injuries. CSOF ¶¶51–52. The fact-finder can draw the reasonable inference from this evidence that Port Hamilton's breach of duty was the cause in fact of Ms. Wooten's injuries.

### III.    PLAINTIFF'S TREATING PHYSICIANS MAY TESTIFY AS TO CAUSATION

#### A.  Treating Physicians Are Competent Causation Witnesses Under Federal and Virgin Islands Law.

As Plaintiff's treating physicians, Drs. Campbell, Morton-Acker, Otusanya, Garfield, Graham, and Muraina will provide expert testimony as non-retained experts. Treating physicians are well-established as competent witnesses on causation under federal law. "A treating physician's opinions regarding causation, degree of permanent disability, and need for future medical care 'are a necessary part of the treatment of the patient.'" *Bharucha v. Holmes*, 2010 U.S. Dist. LEXIS 46333, at *4–5 (D.S.D. May 11, 2010). Courts draw a distinction between "hired guns" who examine a patient for purposes of litigation, and treating physicians whose opinion testimony "is based upon their personal knowledge of the treatment of the patient and not information acquired from outside sources for the purpose of giving an opinion in anticipation of trial." *Id.* Further, "merely because a treating physician is paid for his or her time to testify does not make the physician a retained expert subject to Rule 26(a)(2)(B) disclosures." *Bharucha*, 2010 WL 1878416, at *2.

In *Pease v. Lycoming Engines*, 2012 WL 162551, at *12 (M.D. Pa. 2012), the court determined that testimony regarding a patient's diagnoses, prognosis, and causation inherently involved specialized knowledge within the scope of Rule 702, thus classifying it as expert testimony. However, the court concluded that the treating physicians were not required to prepare written expert reports under Rule 26(a)(2)(B) since their opinions on causation or prognosis were formed as part of routine patient care rather than being specially retained or employed for expert testimony. *See also Schweikert v. Eagle*, No. CV 20-4310, 2022 WL 394751, at *4 (E.D. Pa. Feb. 9, 2022) ("Where treating physicians form their opinion on causation or prognosis as part of the ordinary care of a patient, they are not required to provide Rule 26(a)(2)(B) expert reports. This principle is premised on the notion that it is commonplace for a treating physician to consider things such as the cause of the medical condition,

the diagnosis, the prognosis, and the extent of disability caused by the condition, if any."); *Fielden v. CSX Transp. Inc.*, 482 F.3d 866, 870–71 (6th Cir. 2007) (holding that a formal report by a treating physician is not required when determining causation is an integral part of treating a patient); *Garcia v. City of Springfield Police Dep't*, 230 F.R.D. 247, 248–49 (D. Mass. 2005) ("so long as the expert care-provider's testimony about causation and prognosis is based on personal knowledge and on observations obtained during the course of care and treatment, and he or she was not specially retained in connection with the litigation or for trial, a Rule 26 expert report is not necessary").

The Virgin Islands Superior Court reached the same conclusion in *Gerald v. R.J. Reynolds Tobacco Co.*, 2018 WL 4062154, at *3, holding that "a treating physician's determination of the cause of the diseases of those under his care is the *sine qua non* of the doctor-patient relationship." The court further held that even where "an explicit diagnosis of the cause" is not found in a physician's records, a referral for treatment and the ultimate confirmation of a diagnosis constitute "significant circumstantial evidence" that the course of treatment was appropriate and based on adequate data. *Id.* The court concluded: "Finally, because medical causation is a core issue in this case, [the treating physician's] opinion as [the patient's] treating physician will be of assistance to the jury as trier of fact." *Id.*

In this case, each of Ms. Wooten's treating physicians formed their causation opinions as a necessary part of treating her, not in anticipation of litigation. Dr. Campbell diagnosed reactive airway disease from smoke inhalation on the day of the exposure. CSOF ¶16. Dr. Morton-Acker attributed the asthma exacerbation to the petroleum coke exposure ten days later. CSOF ¶28. Dr. Graham, Dr. Otusanya, and Dr. Garfield each independently reached the same conclusion based on their clinical evaluations and treatment of Ms. Wooten over the ensuing months. CSOF ¶¶32, 35, 38. Dr. Muraina conducted a comprehensive independent medical examination for workers' compensation, including spirometry, lung volume measurements, and a six-minute walk test, and found a "direct causal

relationship." CSOF ¶42. Their testimony is admissible and independently sufficient to create triable

issues on causation.

### B. Treating Physician Opinions Based on Patient History Are Reliable Under Virgin Islands Law.

In *Brathwaite v. Xavier*, 71 V.I. 1089, 1098–99 (V.I. 2019), the Virgin Islands Supreme Court

addressed what constitutes a reliable basis for a medical expert's opinion on the cause of an injury.

The Court held: "[W]e have previously recognized 'a patient's medical history, including subjective

complaints, to be a sound basis for a medical expert's diagnosis in some instances.'" *Id.* (citing *Suarez*

*v. Gov't of the V.I.*, 56 V.I. 754, 761 (V.I. 2012)). In *Brathwaite*, the treating physician's differential

diagnosis was based on the plaintiff's subjective, self-reported symptoms and had not been

independently verified by objective imaging. *Id.* at 1096. The Supreme Court held that even where

negative test results conflicted with the physician's opinion, "the existence of conflicting evidence

does not render the opinions inadmissible." *Id.* at 1098–99. The Court ruled: "Brathwaite was entitled

to have the jury weigh for itself the apparently conflicting evidence and reach its own determination

as to the credibility of [the treating physician's] conclusions." *Id.* at 1099.

The *Brathwaite* Court emphasized that "we have repeatedly emphasized, '[t]he law irrefutably

declares that the jury, and not the court, determines the credibility of witnesses in a jury trial.'" *Id.* at

1098 (citing *Alexander v. People*, 60 V.I. 486, 498 (V.I. 2014)). "Moreover, it is the jury's special province

to weigh conflicting testimony, determine credibility and draw factual inferences." *Id.* (quoting *United*

*States v. Montoya*, 827 F.2d 143, 155 (7th Cir. 1987)). The Superior Courts have consistently applied

this principle. *See Kirkland v. Feddersen*, 2023 VI SUPER 26U, ¶ 5, 2023 WL 3733845, at *2 (V.I. Super.

2023) (denying motion to exclude expert under Daubert as it would run afoul of *Brathwaite*); *Joseph v.*

*Legislature of Virgin Islands*, 2022 VI SUPER 83U, ¶ 25, 2022 WL 4721234, at *6 (V.I. Super. 2022) (per

*Wooten, Nicole v. Limetree Bay Terminals, et. al.*, Case No. 1:23-CV-00012
**OPPOSITION TO PORT HAMILTON REFINING AND TRANSPORTATION, LLLP'S MOTION FOR SUMMARY JUDGMENT ON CAUSE IN FACT**
Page 7

*Brathwaite*, "[t]his lack of evidence should be left for trial examination, and squarely within the jury's determination").

As the Virgin Islands Superior Court recently confirmed: "The grounds for the expert's opinion merely have to be good, they do not have to be perfect." *In re Bauxite Containing Silica Halliday Litigation Series*, 2024 WL 1638585, at *3 (V.I. Super. 2024) (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir. 1994)). "[P]roposed [expert] testimony must be supported by appropriate validation—i.e., 'good grounds' based on what is known." *Id.* (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 (1993)).

Here, Ms. Wooten's treating physicians relied on their physical examinations, her medical history, her self-reported account of the exposure, diagnostic testing including pulmonary function tests, imaging, and walk tests, and the temporal relationship between the exposure and the onset of symptoms. "Performing physical examinations, taking medical histories, and utilizing laboratory tests all provide significant evidence of a reliable differential diagnosis." *Turbe v. Robert A. Lynch Trucking, Inc.*, 41 V.I. 146, 154–55 (Terr. V.I. 1999) (quoting *In re Paoli R.R. Yard*, 35 F.3d at 758). Port Hamilton has not alleged nor demonstrated that any treating physician's opinion is based on unsupported speculation. The jury is entitled to hear and weigh this evidence.

## IV. PLAINTIFF HAS OVERWHELMING ADMISSIBLE EVIDENCE OF CAUSATION

Port Hamilton's entire motion is premised on the assertion that "[t]here is no admissible evidence" of causation. (Mot. at 5; SUMF ¶¶21–23.) That assertion is demonstrably false. The record contains a wealth of independent medical opinions from treating physicians who never conferred with one another, from the employer's retained expert, from the federal government, and from Plaintiff's retained expert, all reaching the identical conclusion: Ms. Wooten's exposure to petroleum coke smoke on August 8, 2022 caused her injuries.

*Wooten, Nicole v. Limetree Bay Terminals, et. al.*, Case No. 1:23-CV-00012
**OPPOSITION TO PORT HAMILTON REFINING AND TRANSPORTATION, LLLP'S MOTION FOR SUMMARY JUDGMENT ON CAUSE IN FACT**
Page 8

1. **Dr. Lyn Campbell** diagnosed reactive airway disease from smoke inhalation on August 8, 2022, the very day of the exposure, after examining Ms. Wooten at Acute Alternative Medical Group. CSOF ¶16.

2. **Dr. Terrie Morton-Acker** opined on October 18, 2022 that "Ms. Wooten's exacerbation of her asthma stemmed from the exposure of the chemicals found burning at the oil refinery on the Virgin Island." CSOF ¶28.

3. **Dr. Olufisayo Otusanya** opined on February 9, 2023 that Ms. Wooten's "symptomatology and PFT [are] suggestive of reactive airway dysfunction syndrome" caused by sulfur dioxide exposure. CSOF ¶32.

4. **Dr. Jamie Garfield** of Temple University Lung Center independently concluded on April 26, 2023 that Ms. Wooten has "severe persistent asthma triggered by exposure to biomass fuel (carbon monoxide, carbon dioxide, sulfur dioxide, and particulate matter)." CSOF ¶35.

5. **Dr. Carlette Graham** opined on September 20, 2023 that the August 8, 2022 work injury "caused a permanent aggravation to the patient's pre-existing Asthma" and that Ms. Wooten is "unable to return to work in a Law Enforcement Capacity." CSOF ¶38.

6. **Dr. Oyekunle Muraina**, a board-certified pulmonologist and Fellow of the American College of Chest Physicians retained not by Plaintiff but by Plaintiff's employer and insurer, examined Ms. Wooten on April 19, 2024 and concluded: "There is direct causal relationship between the diagnoses above and the work-related injury of exposure to Petroleum 'coke' burn smoke necessitating prolonged debility with aggravation of the pre-existing asthma and respiratory failure with hypoxia." CSOF ¶¶40–43.

In addition, the U.S. Department of Labor formally determined that the weight of the medical evidence supported Dr. Muraina's causation opinion, listed the Date of Injury as August 8, 2022, and

*Wooten, Nicole v. Limetree Bay Terminals, et. al.*, Case No. 1:23-CV-00012
**OPPOSITION TO PORT HAMILTON REFINING AND TRANSPORTATION, LLLP'S MOTION FOR SUMMARY JUDGMENT ON CAUSE IN FACT**
Page 9

accepted anxiety disorder, major depressive disorder, and unspecified asthma with acute exacerbation as caused by the work-related exposure. CSOF ¶39.

Finally, Plaintiff's retained expert, Dr. Marc Wilkenfeld, a board-certified occupational and environmental medicine physician, opined to a reasonable degree of medical certainty that the August 8, 2022, petroleum coke exposure caused Ms. Wooten's injuries. CSOF ¶¶49–50. Dr. Wilkenfeld is not the Plaintiff's only causation witness; he is the seventh independent medical professional to reach the same conclusion.

## V. PORT HAMILTON'S MOTION RESTS ON THE FALSE PREMISE THAT DR. WILKENFELD IS PLAINTIFF'S ONLY CAUSATION EVIDENCE

Port Hamilton's brief devotes its entire argument to the proposition that "[w]ithout Dr. Wilkenfeld's testimony, Wooten cannot prove cause in fact and summary judgment must be granted." (Mot. at 5.) This argument fails because even if Dr. Wilkenfeld's testimony were excluded, the record still contains the causation opinions of six treating physicians and the DOL's formal acceptance of the claim. Port Hamilton's motion does not address, let alone rebut, any of these opinions. Its entire argument assumes that excluding one expert eliminates all evidence of causation. That assumption is wrong.

Port Hamilton cites *Henry v. St. Croix Alumina, LLC*, 572 F. App'x 114, 120 (3d Cir. 2014), for the proposition that expert testimony on causation is required in a toxic tort case. (Mot. at 5.) But *Henry* involved claims for long-term, latent injuries from chronic exposure to bauxite dust, not the acute respiratory injury from a single, identifiable exposure event at issue here. And more importantly, *Henry* did not hold that treating physicians cannot provide causation testimony. Even under PHRT's cited authority, the question is whether the plaintiff has "sufficient evidence to meet her burden of showing that she sustained a compensable injury" (Mot. at 5). The six treating physician opinions, the Muraina IME, and the DOL acceptance more than satisfy that burden.

*Wooten, Nicole v. Limetree Bay Terminals, et. al.*, Case No. 1:23-CV-00012
**OPPOSITION TO PORT HAMILTON REFINING AND TRANSPORTATION, LLLP'S MOTION FOR SUMMARY JUDGMENT ON CAUSE IN FACT**
Page 10

Port Hamilton also relies on *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 165 (3d Cir. 1999), for the proposition that after excluding an expert, summary judgment is appropriate. But *Heller* addressed a situation where the "remaining evidence of record was insufficient to create a material issue of fact on causation." *Id.* Here, the "remaining evidence" without Dr. Wilkenfeld includes the opinions of six treating physicians who each independently linked Ms. Wooten's injuries to the petroleum coke exposure, which is precisely the type of evidence *Heller* contemplated as sufficient.

## VI. UNDER PORT HAMILTON'S CAUSATION FRAMEWORK, PLAINTIFF'S EVIDENCE IS SUFFICIENT

### A. General Causation Is Established.

Port Hamilton argues that Plaintiff "has no evidence that the dose of petroleum coke smoke she received … was sufficient to cause the injuries she claims." (Mot. at 7.) This argument ignores the record. Port Hamilton's Incident Report identifies the combustion products released from the smoldering petroleum coke, including sulfur dioxide and particulate matter, substances that are universally recognized respiratory irritants. CSOF ¶60. The EPA's September 2022 inspection documented the ongoing emissions and found a "systemic lack of maintenance" at the facility. CSOF ¶61. Dr. Wilkenfeld identified the specific combustion products of petroleum coke, including sulfur dioxide, carbon monoxide, volatile organic compounds, and formaldehyde, and explained that these are well-documented causes of respiratory injury. CSOF ¶50. Dr. Garfield independently identified the same substances. CSOF ¶35. Multiple treating physicians diagnosed Ms. Wooten with conditions known to result from toxic inhalation, including reactive airway disease and moderate persistent asthma with acute exacerbation. CSOF ¶¶16, 25.

Port Hamilton's demand for dose-response evidence is misplaced in the context of an acute-exposure case. (Mot. p. 8). This is not a case of chronic, low-level exposure over months or years where dose-response data might be necessary. This is a case of acute exposure to visible, thick smoke

from a burning industrial substance, followed by immediate respiratory distress. "[T]here may be instances where the temporal connection between exposure to a given chemical and subsequent injury is so compelling as to dispense with the need for reliance on standard methods of toxicology." *Cavallo v. Star Enter.*, 892 F. Supp. 756, 773–74 (E.D. Va. 1995), *aff'd in part*, 100 F.3d 1150 (4th Cir. 1996); *see also Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 931 (8th Cir. 2001) (affirming jury award where "the immediacy of [plaintiff's] acute symptoms to her exposure" was sufficient to establish causation). Dr. Wilkenfeld specifically addressed the dose-response issue at his deposition, testifying that dose-response analysis is not relevant for an acute exposure case where the patient had an immediate symptomatic reaction. CSOF ¶49.

### B. Specific Causation Is Established.

Port Hamilton argues that Plaintiff cannot establish specific causation because Dr. Wilkenfeld did not perform a differential diagnosis or rule out alternative causes. (Mot. at 9–10.) This argument fails for several reasons. First, Dr. Wilkenfeld did address and rule out the alternative causes Port Hamilton identifies. He testified that the likelihood of the landfill fire being the sole cause of Ms. Wooten's symptoms was "so so so so unlikely." RSOF ¶20. He explained that the steroids administered on August 8 remain active for 24–48 hours and that when they wore off, symptom recurrence was expected, "particularly with an additional insult to the lungs." RSOF ¶20. He characterized the August 10 episode as a "cumulative effect" of the two exposures, not an independent cause. *Id.*

Second, multiple treating physicians effectively performed differential diagnoses during their clinical evaluations. Dr. Garfield's allergy panel results were "essentially all negative except for dust mite sensitization," ruling out allergic causes and confirming that the August 8 chemical exposure was the causative event. CSOF ¶36. Dr. Muraina diagnosed "airway disease due to other specific organic

*Wooten, Nicole v. Limetree Bay Terminals, et. al.*, Case No. 1:23-CV-00012
**OPPOSITION TO PORT HAMILTON REFINING AND TRANSPORTATION, LLLP'S MOTION FOR SUMMARY JUDGMENT ON CAUSE IN FACT**
Page 12

dusts" (ICD-10 J66.8) and stated that Ms. Wooten's "hypoxemia cannot be explained solely by obstructive airway disease due to bronchial asthma," thereby ruling out pre-existing asthma as the explanation. RSOF ¶19.

Third, Port Hamilton's alternative explanations are factual disputes for the jury, not grounds for summary judgment. *See Brathwaite v. Xavier*, 71 V.I. 1089, 1098–99 (V.I. 2019). Plaintiff is "entitled to have the jury weigh for itself the apparently conflicting evidence and reach its own determination." *Id.* at 1099. *See also Rymer v. Kmart Corp.*, 68 V.I. 571, 579 (V.I. 2018) (reversing grant of summary judgment where court improperly weighed evidence against non-moving plaintiff).

## VII.    PORT HAMILTON'S ALTERNATIVE CAUSATION THEORIES ARE JURY QUESTIONS

Port Hamilton identifies several purported alternative explanations for Ms. Wooten's injuries: (1) pre-existing asthma, (2) St. Croix air quality, (3) "rapid recovery" on August 9, and (4) the August 10 landfill fire. (Mot. at 6.) Each is contradicted by the evidence. Ms. Wooten's childhood asthma was "well managed, under control," and she "thought it was a thing that you can grow out of asthma at one point because that's how well managed it was." RSOF ¶1. She was never hospitalized for asthma prior to the incident. RSOF ¶1. Her 2018 pre-employment evaluation found "normal flow volumes as well as normal diffusing capacity" and cleared her for vigorous law enforcement duty. CSOF ¶4. Her July 2022 PFT was normal, over 90 percent. RSOF ¶3. She was exercising three to five times per week. CSOF ¶6. After the August 8 exposure, she was diagnosed with severe persistent asthma, chronic respiratory failure with hypoxia, oxygen saturation of 89% at rest, and a prognosis of "poor." CSOF ¶¶41–43. Dr. Muraina specifically attributed this deterioration to the petroleum coke exposure and stated the "hypoxemia cannot be explained solely by obstructive airway disease due to bronchial asthma." CSOF ¶43.

*Wooten, Nicole v. Limetree Bay Terminals, et. al.*, Case No. 1:23-CV-00012
**OPPOSITION TO PORT HAMILTON REFINING AND TRANSPORTATION, LLLP'S MOTION FOR SUMMARY JUDGMENT ON CAUSE IN FACT**
Page 13

As for St. Croix's air quality, while Ms. Wooten did experience a flare-up in April 2021 that she attributed to Saharan dust, she recovered fully. RSOF ¶2. Her July 2022 PFT, twenty-four days before the exposure, was normal. CSOF ¶5. There is no evidence that air quality on St. Croix was responsible for the dramatic pulmonary deterioration that began on August 8, 2022 and persists to this day.

Port Hamilton characterizes the August 9 ER findings as evidence of "rapid recovery." (Mot. at 6.) This is misleading. Dr. Wilkenfeld explained that Ms. Wooten was "very, very heavily medicated the day before" with emergency steroid injections and multiple nebulizer treatments, and that steroids remain active for 24–48 hours. RSOF ¶¶14–15. Temporary symptom suppression while heavily medicated is not recovery. When the medications wore off, the symptoms returned: on August 10, Dr. Campbell documented an "extreme breathing crisis." CSOF ¶18. Ms. Wooten has never recovered. A reasonable fact-finder can draw the inference from the medical evidence that the August 9 ER presentation reflects medication masking, not resolution of injury.

Dr. Wilkenfeld testified that the likelihood that the landfill exposure was the sole cause of Ms. Wooten's symptoms was "so so so so unlikely." RSOF ¶20. The August 10 medical record itself documents "SOB that she has had x2 days," demonstrating continuous symptoms from August 8. CSOF ¶19. The treating physician noted that Ms. Wooten "was exposed to chemical fire/smoke on monday 8/8/22." CSOF ¶18. The August 10 episode was a continuation of the injury that began on August 8, not an independent event. The fact-finder can draw the reasonable inference that the August 10 landfill did not independently cause Ms. Wooten's injuries.

At most, these alternative theories create factual disputes for the jury. Summary judgment is not the appropriate vehicle for resolving competing medical opinions.

*Wooten, Nicole v. Limetree Bay Terminals, et. al.*, Case No. 1:23-CV-00012
**OPPOSITION TO PORT HAMILTON REFINING AND TRANSPORTATION, LLLP'S MOTION FOR SUMMARY JUDGMENT ON CAUSE IN FACT**
Page 14

**VIII.   EVEN WITHOUT EXPERT TESTIMONY, THE IMMEDIATE ONSET OF MS. WOOTEN'S SYMPTOMS IS WITHIN THE COMMON KNOWLEDGE OF A JURY**

Plaintiff submits that this argument is unnecessary because she has abundant expert and medical evidence. But to the extent the Court considers it, under the Federal Rules of Evidence, expert testimony is not always required to establish causation in toxic exposure cases. Under Rule 701, a lay witness may testify to opinions "rationally based on the witness's perception" and "helpful to clearly understanding the witness's testimony or to determining a fact in issue." Fed. R. Evid. 701. Expert testimony under Rule 702 is required only when the subject matter is beyond the understanding of the average layperson. Where the causal connection between a toxic exposure and an injury is apparent to a layperson, expert testimony is not required.

The Sixth Circuit squarely addressed this issue in *Gass v. Marriott Hotel Servs., Inc.*, 558 F.3d 419, 430 (6th Cir. 2009), holding that "[e]xpert testimony is not necessary to allow a reasonable jury to conclude" that filling a space "with airborne poison" constitutes negligence causing injury. The court reasoned that "an ordinary person understands that it is unacceptable to enter a place where another is residing and fill that place with airborne poison." *Id.* Similarly, in *Wade v. Plantation Pipe Line Co.*, No. 2:05-CV-697, 2007 WL 1668815, at *3 (M.D. Ala. 2007), the court held that where "several individuals simultaneously [became] ill immediately upon exposure to strong noxious fumes, suffering dizziness, nausea, breathing difficulty, irritated eyes, and diarrhea," expert testimony was unnecessary because "the immediacy of the reaction that these plaintiffs experienced and the fact that they all had similar reactions is sufficient to show causation." The Eighth Circuit reached the same result in *Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 931 (8th Cir. 2001), affirming a jury award in a toxic tort case where "the immediacy of [plaintiff's] acute symptoms to her exposure" was sufficient to establish causation without dose-response evidence.

*Wooten, Nicole v. Limetree Bay Terminals, et. al.*, Case No. 1:23-CV-00012
**OPPOSITION TO PORT HAMILTON REFINING AND TRANSPORTATION, LLLP'S MOTION FOR SUMMARY JUDGMENT ON CAUSE IN FACT**
Page 15

In *Arias v. DynCorp*, 928 F. Supp. 2d 1, 7 (D.D.C. 2013), the court held that "a plaintiff may also meet his burden to prove specific causation in a toxic tort case by offering lay witness testimony showing 'a temporal relationship between exposure to a toxin and subsequent adverse health effects.'" *Id.* (quoting *Young v. Burton*, 567 F. Supp. 2d 121, 128 (D.D.C. 2008)). A temporal relationship is sufficient to establish causation where "the circumstances of the exposure and the timing of the illness [are] so compelling as to render further evidence of causation unnecessary." *Id. See also Cavallo v. Star Enter.*, 892 F. Supp. 756, 773–74 (E.D. Va. 1995), *aff'd in part*, 100 F.3d 1150 (4th Cir. 1996) ("there may be instances where the temporal connection between exposure to a given chemical and subsequent injury is so compelling as to dispense with the need for reliance on standard methods of toxicology," for example, "if one were exposed to a substantial amount of 'chemical X and immediately thereafter developed symptom Y'"). *See also G.C. ex rel. Johnson v. Wyndham Hotels & Resorts, LLC*, 829 F. Supp. 2d 609, 612–13 (M.D. Tenn. 2011) (plaintiff's lay testimony that her child experienced breathing difficulties, stomach pain, and a rash soon after ingesting a toxic substance was sufficient evidence of causation to avoid summary judgment without expert testimony).

Here, the causal connection is straightforward and compelling: Ms. Wooten drove into thick black smoke from burning petroleum coke, immediately developed severe respiratory distress that her rescue inhaler, which had always worked before, could not relieve, was rushed to urgent care where she required emergency nebulizer treatments and steroid injections, and has been disabled ever since. The temporal connection between the exposure and the onset of symptoms is exactly the type of case the federal courts in *Gass*, *Wade*, *Bonner*, and *Cavallo* recognized as not requiring expert testimony. A juror does not need specialized medical training to understand that driving into thick toxic smoke and immediately experiencing severe respiratory distress means the smoke caused the distress. And even if the Court concludes that the permanence and severity of Ms. Wooten's injuries require expert

*Wooten, Nicole v. Limetree Bay Terminals, et. al.*, Case No. 1:23-CV-00012
**OPPOSITION TO PORT HAMILTON REFINING AND TRANSPORTATION, LLLP'S MOTION FOR SUMMARY JUDGMENT ON CAUSE IN FACT**
Page 16

testimony, she has it in abundance from six treating physicians, the employer's retained pulmonologist, and her retained expert.

### IX.    PORT HAMILTON HAS NOT MET ITS BURDEN AS THE MOVING PARTY

Port Hamilton has not addressed, let alone rebutted, the opinions of six treating physicians, the Muraina IME, or the DOL's formal acceptance of causation. Its entire argument is that without Dr. Wilkenfeld, there is no evidence. That is factually wrong. Moreover, Port Hamilton has cited no contrary medical evidence. It has identified no expert who examined Ms. Wooten and concluded that the petroleum coke exposure did not cause her injuries. It has proffered no medical opinion that her severe persistent asthma, chronic respiratory failure with hypoxia, and oxygen desaturation to 82% within minutes of walking are attributable to some cause other than the exposure. Its motion is based entirely on the premise that Plaintiff's evidence should be excluded, not that it is outweighed by contrary evidence. That is not the summary judgment standard. "'[T]he Rules of Evidence embody a strong preference for admitting any evidence that may assist the trier of fact.'" *United States v. Felix*, 2022 WL 17250458, at *9 (D.V.I. 2022) (quoting *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997)).

### CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court **deny** Port Hamilton's Motion for Summary Judgment. The record contains overwhelming evidence of causation. Six treating physicians, the employer's retained examiner, the United States Department of Labor, and Plaintiff's retained expert have all concluded that the August 8, 2022 petroleum coke exposure caused Ms. Wooten's injuries. These genuine disputes of material fact must be resolved by a jury, not by the Court on summary judgment.

*Wooten, Nicole v. Limetree Bay Terminals, et. al.*, Case No. 1:23-CV-00012
**OPPOSITION TO PORT HAMILTON REFINING AND TRANSPORTATION, LLLP'S MOTION FOR SUMMARY JUDGMENT ON CAUSE IN FACT**
Page 17

RESPECTFULLY SUBMITTED
LEE J. ROHN AND ASSOCIATES, LLC
Attorneys for Plaintiff

DATED: May 28, 2026                    BY:  ___/s/ Lee J. Rohn_____
                                             Lee J. Rohn, Esq.
                                             VI Bar No. 52
                                             1108 King Street, Suite 3 (mailing)
                                             56 King Street, Third Floor (physical)
                                             Christiansted, St. Croix
                                             U.S. Virgin Islands 00820
                                             Telephone: (340) 778-8855
                                             lee@rohnlaw.com

## CERTIFICATE OF SERVICE

**THIS IS TO CERTIFY** that on May 28, 2026, I electronically filed the foregoing with the Clerk of the Court using the electronic filing system, which will send a notification of such filing to the following:

To All Counsel of Record

BY:  ___/s/ Lee J. Rohn_____(dvn)