**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX**

NICOLE WOOTEN,

        Plaintiff,

      v.

LIMETREE BAY TERMINALS d/b/a
OCEAN POINT TERMINALS, PORT
HAMILTON REFINING AND
TRANSPORTATION, and WEST INDIES
PETROLEUM, LTD.,

        Defendants.

Case No. 1:23-CV-00012

**ACTION FOR DAMAGES**

<u>JURY TRIAL DEMANDED</u>

**<u>PLAINTIFF'S RESPONSE TO PORT HAMILTON REFINING AND
TRANSPORTATION, LLLP'S STATEMENT OF UNCONTESTED MATERIAL FACTS</u>**

1. Plaintiff Nicole Wooten was diagnosed with asthma at age five and had a documented history of lifelong asthma prior to August 8, 2022. (Exh. 1, Wooten Depo. at 19:10-20:5; Exh. 2, Wilkenfeld Report at 2.)

**RESPONSE**: *Undisputed in part; Disputed in part.*

Plaintiff admits she was diagnosed with asthma at approximately age five. (**Exhibit 1**, Wooten Depo. at 22). However, Plaintiff denies that characterizing her history as "lifelong asthma" accurately reflects her medical condition. Plaintiff's childhood asthma was "well managed, under control," and she "thought it was a thing that you can grow out of asthma at one point because that's how well managed it was." (**Exhibit 1**, Wooten Depo. at 26). She was never hospitalized for asthma prior to the incident. (*Id.* at 26-27). Her 2018 pre-employment medical evaluation documented that she was "asymptomatic without treatment" and "doing exceptionally well," with her only medication being "use of a ProAir pump twice a year." (**Exhibit 2**, Wilkenfeld Expert Report at 2). The physician stated: "patient has



*Wooten, Nicole v. Limetree Bay Terminals, et. al.*, Case No. 1:23-CV-00012
**RESPONSE TO PORT HAMILTON REFINING AND TRANSPORTATION, LLLP'S STATEMENT OF UNCONTESTED MATERIAL FACTS**
Page 2

normal flow volumes as well as normal diffusing capacity. There is no reason to think that her history of asthma should at this time have any bearing on future employment." *Id.* Dr. Muraina, the board-certified pulmonologist retained by Plaintiff's employer/insurer, characterized Plaintiff's pre-incident condition as a "history of bronchial asthma" for which she "used her Albuterol inhaler," and it was not identified as a serious or disabling condition. (**Exhibit 3**, Muraina IME Report at 1 (NW001738).

2. Wooten attributed an April 2021 flare-up on St. Croix to Saharan Dust. Exh. 1, Wooten Depo. at 28:2-20.

**RESPONSE**: *Undisputed in part; Disputed in part.*

Plaintiff admits she experienced a respiratory flare-up in April 2021 on St. Croix and that she personally attributed it to Saharan dust after the fact. (**Exhibit 1**, Wooten Depo. at 28). However, "it wasn't that a doctor told me specifically this happened because of this dust." (*Id.*). Plaintiff recovered fully from that episode and continued working without restriction. For instance, her July 2022 pulmonary function test was normal, over 90 percent (**Exhibit 1**, Wooten Depo. at 33), she was exercising 3-5 times per week (**Exhibit 1**, Hardship Memorandum, August 31, 2022, NW001710), and she was performing her full CBP duties on August 8, 2022 (**Exhibit 1**, Wooten Depo. at 39). The April 2021 episode did not require emergency treatment, nebulizer use (**Exhibit 1**, Wooten Depo. at 24), steroid injections, or hospitalization (**Exhibit 1**, Wooten Depo. at 27).

*Wooten, Nicole v. Limetree Bay Terminals, et. al.*, Case No. 1:23-CV-00012
**RESPONSE TO PORT HAMILTON REFINING AND TRANSPORTATION, LLLP'S STATEMENT OF UNCONTESTED MATERIAL FACTS**
Page 3

3. On July 15, 2022, Wooten underwent a pulmonary-function test because "I was concerned that my asthma may have been getting worse, I thought, because of the air quality there [referring to St. Croix]. Id. at 29:10-12.

**RESPONSE**: *Undisputed.*

4. On August 8, 2022, less than three weeks after having the pulmonary function test due to her complaints of worsening asthma, Wooten drove a Customs and Border Protection vehicle toward the tugboat dock at Ocean Point Terminals to perform a passport inspection. Exh. 1, Deposition of Wooten at 41:1 - 41:23; Doc. No. 38, Second Amended Complaint ("SCA"), 24.

**RESPONSE**: *Undisputed.*

5. At the time, the North Coke Dome at Port Hamilton's refinery was the scene of an ongoing smoldering incident that had begun four days earlier. Doc. No. Second Amended Complaint, 119, 24-5.

**RESPONSE**: *Undisputed.*

6. While approaching the coke domes, Wooten noticed fire trucks in the vicinity and thick black smoke. Exh. 1, Wooten Depo. at 46:15-25; 46:18-21; 49:18-20.

**RESPONSE**: *Undisputed.*

*Wooten, Nicole v. Limetree Bay Terminals, et. al.*, Case No. 1:23-CV-00012
**RESPONSE TO PORT HAMILTON REFINING AND TRANSPORTATION, LLLP'S STATEMENT OF UNCONTESTED MATERIAL FACTS**
Page 4

7. Wooten rolled down her window for less than one minute-"probably just seconds"-to ask two workers if it was safe to proceed. Exh. 1 at 54:14-55:5.

**RESPONSE**: *Undisputed.*

8. Wooten did not exit the vehicle, did not enter any visible smoke plume, and rolled the window back up immediately. Exh. 1 at 54:14-55:5.

**RESPONSE**: *Undisputed in part; Disputed in part.*

Plaintiff admits she did not exit the vehicle and rolled the window back up. (**Exhibit 1**, Wooten Depo. at 54-55). However, Plaintiff disputes that she "did not enter any visible smoke plume." She testified: "I didn't realize that the smoke had actually entered the vehicle until I rolled the windows back up." (**Exhibit 1**, Wooten Depo. at 54). The PHRT Incident Report documents that the dome's main door was open to allow equipment access, and smoke was flowing outward. (**Exhibit 7**, PHRT Incident Report at 3 (PHRT-Wooten 000003)).

9. Wooten never reached the tugboat because she turned around and left the refinery due to her coughing. Exh. 1 at 54:22-23.

**RESPONSE**: *Undisputed.*

10. Wooten drove from the refinery to her work location at the Henry E. Rohlsen Airport where she used her inhaler. Exh. 1 at 56:23 - 57:5.

**RESPONSE**: *Undisputed in part; Disputed in part.*

Her coworkers had her bookbag and inhaler ready when she arrived and told her to pull up to the front. (**Exhibit 1**, Wooten Depo. at 56-57). Her rescue inhaler **did not provide relief**. (**Exhibit 1**, Wooten Depo. at 57). This is significant because prior to August 8, 2022, her rescue inhaler had always been sufficient to manage her mild asthma symptoms. She had never required a nebulizer machine before this incident. (**Exhibit 1**, Wooten Depo. at 24 ("prior to all of this, I never had a nebulizer machine").

11. She then went inside where she vomited in the bathroom and proceed to the CBP break room. Exh. 1 at 57:10-12.

**RESPONSE**: *Undisputed.*

12. CBP Officer Henry checked Wooten's vitals and one of her coworkers drove her to urgent care. Exh. 1 at 57:12-20.

**RESPONSE**: *Undisputed*.

13. At urgent care, Wooten was placed on a nebulizer machine and given a steroid shot. Exh. 1 at 58:4 - 58:14.

**RESPONSE**: *Undisputed in part; Disputed in part.*

The medical team took her back immediately upon noticing her distress. (**Exhibit 1**, Wooten Depo. at 57). She received approximately four vials of inhalation solution and a steroid injection. (**Exhibit 1**, Wooten Depo. at 58). As Dr. Wilkenfeld noted, "[t]he administration of intravenous steroids is medically indicated in cases involving significant respiratory compromise." (**Exhibit 2**, Wilkenfeld

*Wooten, Nicole v. Limetree Bay Terminals, et. al.*, Case No. 1:23-CV-00012
**RESPONSE TO PORT HAMILTON REFINING AND TRANSPORTATION, LLLP'S STATEMENT OF UNCONTESTED MATERIAL FACTS**
Page 6

Expert Report at 3). Dr. Muraina confirmed this clinical course: "She went to an urgent care center . . . where evaluation revealed evidence of bronchospasm. She was treated with inhaled bronchodilators via nebulizer and given steroid injection with some improvement." (**Exhibit 3**, Muraina IME Report at 1 (NW001738). Plaintiff had never required a nebulizer machine prior to August 8, 2022. (**Exhibit 1**, Wooten Depo. at 24).

14. On August 9, 2022, Wooten went to the emergency room at the J.F. Luis Hospital because she "still has a headache" and had a "shake in her hands." Exh. 3.

**RESPONSE**: *Disputed.*

Plaintiff went to the emergency room the day after the incident. She had received emergency steroid treatment and approximately four vials of nebulized medication the prior day. Dr. Wilkenfeld explained that she was "very, very heavily medicated the day before" and "I don't think you can make a judgment about permanent -- permanent changes based on the day after following the medication." (**Exhibit 5**, Wilkenfeld Depo. at 52).

15. She stated to the emergency room personnel that her shortness of breath had resolved and she no longer felt nauseous. Exh. 3.

**RESPONSE**: *Disputed.*

Any temporary resolution of shortness of breath on August 9 was attributable to the emergency steroid treatment administered on August 8, which remains active for approximately 24-48 hours. (**Exhibit**

**5**, Wilkenfeld Depo. at 59). Symptoms returned on August 10 when the steroids wore off. (**Exhibit 3**, Muraina IME Report at 1 (NW001738)).

16. The exam conducted at the emergency room found that Wooten was negative for respiratory distress and that her lungs were clear, bilaterally. Exh. 3.

**RESPONSE**: *Disputed*.

Clear lungs on August 9, while still under the effect of emergency steroid treatment, do not negate permanent injury. Dr. Muraina's examination on April 19, 2024 found oxygen saturation of 89% at rest, desaturation to 82% within two minutes of walking, and chronic respiratory failure with hypoxia. (**Exhibit 3**, Muraina IME Report at 3-4 (NW001740-41)). Dr. Muraina found "chronic respiratory failure with hypoxia" and noted the "hypoxemia cannot be explained solely by obstructive airway disease due to bronchial asthma." (**Exhibit 3**, Muraina IME Report at 4 (NW001741).

17. The clinical impression during this emergency room visit was "Headache" and Wooten was released to home for self-care. Exh. 3.

**RESPONSE**: **Disputed.**

The ER's clinical impression of "Headache" reflects only the presenting complaint on that visit, while Plaintiff was still medicated with steroids from the prior day. It does not constitute a medical determination that the August 8 exposure caused no injury. Within 48 hours, Plaintiff was back in urgent care with an "extreme breathing crisis" requiring another round of nebulizer treatment and steroid injections. (**Exhibit 1**, Wooten Depo. at 237-238). Within ten days, Dr. Acker diagnosed

*Wooten, Nicole v. Limetree Bay Terminals, et. al.*, Case No. 1:23-CV-00012
**RESPONSE TO PORT HAMILTON REFINING AND TRANSPORTATION, LLLP'S STATEMENT OF UNCONTESTED MATERIAL FACTS**
Page 8

"Moderate persistent asthma with (acute) exacerbation" and "Contact with and (suspected) exposure to other hazardous, chiefly nonmedicinal, chemicals." (**Exhibit __,** Dr. Acker Visit Summary, August 18, 2022).

18. Wooten's pulse oxygen levels were measured at 4:17 p.m. and 8:27 p.m. during the August 9, 2022 emergency room visit and were 99 and 100%, respectively. Exh. 3.

**RESPONSE**: *Undisputed.*

19. Normal oxygen levels range from 95 to 100%. https://my.clevelandclinic.org/health/ diagnostics/pulse-oximetry.

**RESPONSE**: Objection. This hyperlink to an internet discussion of normal oxygen levels is not part of the summary judgment record. *See* LRCi 5.4(m)(3) and 56.1(a).

20. On August 10, 2022, Wooten experienced an "extreme breathing crisis," which she attributed to fumes from a nearby landfill fire that she smelled through her vehicle's air-conditioning unit. Exh. 1 at 53:1-25, 237:15-239:10.

**RESPONSE**: *Disputed.*

There is no mention of landfill fire on page 53 of Plaintiff's deposition. When Plaintiff went to see Dr. Campbell on August 10, 2022, he confirmed that she was having a continued exacerbation of her asthma because of the smoke inhalation on August 8, 2022. (**Exhibit 17**, Dr. Campbell treatment notes, Aug. 10, 2022, NW004269–NW004271.) The implication that this was an

*Wooten, Nicole v. Limetree Bay Terminals, et. al.*, Case No. 1:23-CV-00012
**RESPONSE TO PORT HAMILTON REFINING AND TRANSPORTATION, LLLP'S STATEMENT OF UNCONTESTED MATERIAL FACTS**
Page 9

independent cause of her condition is Disputed. Dr. Wilkenfeld testified that the likelihood of Plaintiff having fully recovered from the August 8 exposure and then being independently injured solely by the landfill fumes was "so, so, so, so unlikely." (**Exhibit 5**, Wilkenfeld Depo. at 56). Steroids from August 8 would have worn off within 24-48 hours, making symptom recurrence expected "particularly with an additional insult to the lungs." (**Exhibit 5**, Wilkenfeld Depo. at 58-59). He characterized the August 10 episode as most likely "a cumulative effect" of the two exposures. (**Exhibit 5**, Wilkenfeld Depo. at 54). Dr. Muraina attributed the entire clinical course to the petroleum coke exposure: "There is direct causal relationship between the diagnoses above and the work-related injury of exposure to Petroleum 'coke' burn smoke." (**Exhibit 3**, Muraina IME Report at 3 (NW001740)).

21. There is no admissible evidence to establish that plaintiff developed severe asthma caused by the alleged exposure on August 8, 2022. Port Hamilton relies upon the absence of such evidence in support of its motion for summary judgment.

**RESPONSE**: *Disputed.*

This is a legal conclusion, not a statement of fact. The record contains extensive admissible causation evidence: (a) Dr. Muraina, a board-certified pulmonologist retained by Plaintiff's *employer and insurer*, diagnosed severe persistent asthma, chronic respiratory failure with hypoxia, and airway disease due to organic dusts, and concluded there is a "direct causal relationship" to the petroleum coke exposure. (Exhibit 3, Muraina IME Report at 3 (NW001740)). (b) The U.S. Department of Labor adopted Dr. Muraina's opinion. (Exhibit 10, DOL Letter (NW001733)). (c) Dr. Acker diagnosed moderate persistent asthma with acute exacerbation and chemical exposure on August 18, 2022. (Exhibit 9, Dr. Acker Visit Summary). (d) Dr. Graham deemed Plaintiff permanently disabled. (Exhibit 2, Wilkenfeld

Expert Report at 6). (e) Dr. Wilkenfeld concluded "to a reasonable degree of medical certainty" that Plaintiff's severe asthma was caused by the August 8 exposure. (Exhibit 2, Wilkenfeld Expert Report at 9).

22. There is no admissible evidence that Wooten developed Reactive Airways Dysfunction Syndrome ("RADS") as a result of the alleged exposure on August 8, 2022. Port Hamilton relies upon the absence of such evidence in support of its motion for summary judgment.

**RESPONSE**: *Disputed.*

Plaintiff was diagnosed with RADS after the August 8, 2022 exposure. (Exhibit 1, Wooten Depo. at 36). Psychotherapy records document "RADS due to chemical smoke exposure." (Exhibit 2, Wilkenfeld Expert Report at 5). Dr. Muraina diagnosed "Airway disease due to other specific organic dusts" (ICD-10 J66.8)—encompassing the same pathology—and attributed it directly to the petroleum coke exposure. (Exhibit 3, Muraina IME Report at 3 (NW001740)). The admissibility and weight of this evidence are questions for the jury. *Brathwaite v. Xavier*, 71 V.I. 1089, 1098-99 (V.I. 2019).

23. There is no admissible evidence that Wooten is functionally disabled to any degree as a result of the alleged exposure on August 8, 2022. Port Hamilton relies upon the absence of such evidence in support of its motion for summary judgment.

**RESPONSE**: *Disputed.*

Dr. Muraina's objective findings include oxygen saturation of 89% at rest, desaturation to 82% within two minutes of walking (test discontinued), and mixed obstructive and restrictive defect. He opined

*Wooten, Nicole v. Limetree Bay Terminals, et. al.*, Case No. 1:23-CV-00012
**RESPONSE TO PORT HAMILTON REFINING AND TRANSPORTATION, LLLP'S STATEMENT OF
UNCONTESTED MATERIAL FACTS**
Page 11

Plaintiff can perform only sedentary duties and that her prognosis is "poor." (Exhibit 3, Muraina IME

Report at 3-4 (NW001740-41)). The DOL adopted these findings. (Exhibit 10, DOL Letter

(NW001733)). Dr. Graham deemed Plaintiff permanently disabled. (Exhibit 2, Wilkenfeld Expert

Report at 6). Plaintiff retired from CBP in July 2024 as "unfit for duty because of my lung injury."

(Exhibit 1, Wooten Depo. at 18).


                                        RESPECTFULLY SUBMITTED
                                        LEE J. ROHN AND ASSOCIATES, LLC
                                        Attorneys for Plaintiff



DATED: May 28, 2026                     BY:   __/s/ Lee J. Rohn_____
                                              Lee J. Rohn, Esq.
                                              VI Bar No. 52
                                              1108 King Street, Suite 3 (mailing)
                                              56 King Street, Third Floor (physical)
                                              Christiansted, St. Croix
                                              U.S. Virgin Islands 00820
                                              Telephone: (340) 778-8855
                                              lee@rohnlaw.com

*Wooten, Nicole v. Limetree Bay Terminals, et. al.,* Case No. 1:23-CV-00012
**RESPONSE TO PORT HAMILTON REFINING AND TRANSPORTATION, LLLP'S STATEMENT OF UNCONTESTED MATERIAL FACTS**
Page 12

## CERTIFICATE OF SERVICE

**THIS IS TO CERTIFY** that on May 28, 2026, I electronically filed the foregoing with the Clerk of the Court using the electronic filing system, which will send a notification of such filing to the following:

All Counsel of Record

BY: ___/s/ Lee J. Rohn_____ (dvn)