Page 1

DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

CASE NO.: 1:23-cv-00012

NICOLE WOOTEN,

    Plaintiff,

vs.

LIMETREE BAY TERMINALS d/b/a
OCEAN POINT TERMINALS, PORT
HAMILTON REFINING AND
TRANSPORTATION, and WEST INDIES
PETROLEUM LTD.,

    Defendants.

*****************************************************

| | |
|---|---|
| VIDEOTAPED DEPOSITION OF: | DANIEL MAHR, P.E. |
| DATE TAKEN: | Thursday, February 26, 2026 |
| TIME: | 11:03 a.m. - 11:34 a.m. |
| PLACE: | By Videoconference |
| TAKEN BY: | Defendant Limetree Bay Terminals d/b/a Ocean Point Terminals |
| REPORTED BY: | SARAH J. EKERN, FPR Court Reporter and Notary Public |

EXHIBIT
23

Page 2

APPEARANCES:

LEE J. ROHN, ESQUIRE
OF:  Lee J. Rohn & Associates
1108 King Street
Suite 3
Christiansted, VI 00820
(340) 778-8855
lee@rohnlaw.com
APPEARING VIA VIDEOCONFERENCE ON BEHALF OF THE PLAINTIFF

REGINALD JANVIER, ESQUIRE
OF:  Akerman, LLP
201 East Las Olas Boulevard
Suite 1800
Fort Lauderdale, FL 33301
(954) 468-2450
reginald.janvier@akerman.com
APPEARING VIA VIDEOCONFERENCE ON BEHALF OF THE DEFENDANT LIMETREE BAY TERMINALS d/b/a OCEAN POINT TERMINALS

ANDREW C. SIMPSON, ESQUIRE
OF:  Andrew C. Simpson Law Office
2191 Church Street
Suite 5
Christiansted, VI 00820
(340) 719-3900
asimpson@coralbrief.com

APPEARING ON BEHALF OF THE DEFENDANT PORT HAMILTON REFINING AND TRANSPORTATION

ALSO PRESENT: (VIA VIDEOCONFERENCE)
NICOLE WOOTEN, PLAINTIFF
MICHAEL ABARCA, VIDEO SPECIALIST

Page 3

CONTENTS

TESTIMONY OF DANIEL MAHR, P.E.
Direct Examination by Mr. Janvier...............7
Direct Examination by Mr. Simpson..............13
Cross-Examination by Mr. Rohn..................14

CERTIFICATE OF OATH..............................21

CERTIFICATE OF REPORTER..........................22

ERRATA SHEET.....................................23

NOTIFICATION LETTER..............................24

EXHIBITS
Defendant's Exhibit No. 1.........................8
  (Report)

- - - - -

STIPULATIONS

It is hereby stipulated by and between counsel for the respective parties that the reading and signing of the deposition be reserved.

Page 4

PROCEEDINGS

**********

THE VIDEOGRAPHER: Okay. We're now on the record. The time is 11:03 a.m. on February 26, 2026. Please note that this deposition is being conducted virtually. Quality of recording depends on the quality of camera and Internet connection of participants.

What is seen from the witness and heard on screen is what will be recorded. Audio and video recording will continue to take place unless all parties agree to go off the record.

This is Media Unit 1 of the video-recorded deposition of Daniel Mahr, taken by Counsel for the defendant in the matter of Wooten versus Limetree Bay Terminals, et al., filed in the District Court of the Virgin Islands, Division of St. Croix.

This deposition is being conducted remotely using virtual technology. Counsel attending will now state their appearances and affiliations for the record.

MR. JANVIER: Yes. Reggie Janvier on behalf of Limetree Bay Terminals, doing business as Ocean Point Terminals, LLC.

MR. SIMPSON: Andrew Simpson on behalf of

Page 5

Port Hamilton Refining and Transportation, triple-LP.

MS. ROHN: Lee Rohn on behalf of the plaintiff in this matter.

And I'd put on the record as follows: After getting the order of the Court, we attempted to call Mr. Mahr after 5:00 last night. I wasn't able to reach him. We again, when I got out of deposition, attempted to contact Mr. Mahr -- or, actually, had Robin try to contact Mr. Mahr so I could have a conversation with him.

He indicated that he was not going to do so and that we would have any conversation on Zoom. I have not had -- not had an opportunity to discuss this deposition with my expert, who -- who I don't want as an expert but who -- who the Court has assigned as my expert.

We intend to appeal the decision of the Court -- of the magistrate. We have previously informed Mr. Mahr that he is not my expert -- not the plaintiff's expert. We've had no opportunity at this point to prepare Mr. Mahr for his deposition and to discuss with him the manner of which depositions should be handled as an expert.

And we object to this deposition going

2 (Pages 2 - 5)

Page 6

forward. I am supposed to be in a continuation of a deposition that has already been scheduled at 1:00 this afternoon. And so I ask that we agree to adjourn this deposition in order for me to be able to move for a stay of the deposition and to appeal the decision or at least to be able to prepare my witness or the expert for deposition.

MR. JANVIER: Okay. Yeah. Lee, your -- your objection is noted for the record. But pursuant to the Court's order on the motion for substitution that was issued on Tuesday, February 24th, and the order mandating that Mr. Mahr's deposition go forward today -- that's -- that's the standing order from the Court at this point. Understanding that you're planning to appeal. But that appeal has not been filed yet, and there's no basis to stay the deposition.

To your point about having another conflict at -- or a deposition at 1:00, I fully anticipate that you'll be able to attend that deposition without issue. I don't think that this deposition is going to go very long, but we are going to proceed today.

MS. ROHN: Okay. It's 12:07 here.

MR. JANVIER: I understand.

Page 7

MS. ROHN: Okay.

MR. JANVIER: With that said, Mr. Mahr, are you ready to proceed?

THE WITNESS: Yes.

MR. JANVIER: Okay. Can you please state your name for the record?

THE WITNESS: Daniel Mahr.

THE REPORTER: I didn't swear him in yet. I apologize.

MR. JANVIER: I jumped ahead. I apologize. Go ahead.

THE REPORTER: Would you raise your right hand for me, please, sir.

Do you swear or affirm that the testimony you are about to give will be the truth, the whole truth, and nothing but the truth?

THE WITNESS: I do.

THE REPORTER: Thank you.

DANIEL MAHR, P.E., having first been duly sworn or affirmed, testified as follows:

DIRECT EXAMINATION
BY MR. JANVIER:

Q. All right. Good morning, Mr. Mahr. How are you?

Page 8

A. Good morning. Yes. Fine. Thank you.

Q. Can you please state your name for the record?

A. Daniel Mahr.

Q. Okay. Now, I'm sharing a document -- a document on my screen with you. Are you able -- are you able to see this document?

A. Yes.

MS. ROHN: Have you exchanged exhibits with my office?

MR. JANVIER: No. The only exhibit we have is the report. You have a copy of that. We only have one exhibit, his expert report.

(Defendant's Exhibit No. 1 was marked for identification.)

BY MR. JANVIER:

Q. All right. And, Mr. -- Mr. Mahr, you recognize this document, correct?

A. Yes. That is the 12th -- August 12th report.

Q. Okay. This is your expert report?

A. Slow down here. I --

Q. I apologize.

A. That's the first page. August 12th. Yes. I can see August 12th now.

Q. Okay. Mr. Mahr, are the eight opinions

Page 9

listed in Section 4.0 of this report all of your opinions in this report? I'll scroll down to Section 4.0 for you.

A. Okay. Yes. Yeah. Those are my opinions based upon the information that was provided and that I was able to review.

Q. And are there any other opinions that you have in this report other than what's here in Section 4.0?

A. Not at this time.

Q. Okay. You stated your expertise is in the design, supply, installation, and operation of conveying, stacking, reclaiming, and processing dry bulk commodities; is that fair?

MS. ROHN: I'm sorry. I can't understand you. You're breaking up.

MR. JANVIER: Sure.

BY MR. JANVIER:

Q. Mr. Mahr, I'm going to repeat the question. Okay? You stated --

A. Okay.

Q. -- that your expertise is in the design, supply, installation, and operation of conveying, stacking, reclaiming and processing dry bulk commodities; is that right?

A. Yes.

3 (Pages 6 - 9)

Page 10

Q. You hold a bachelor of science and a Master's of Science in Mechanical Engineering, correct?

A. I have a Bachelor of Science in Mechanical Engineering. And the master's is in engineering management.

Q. Engineering management?

A. Yes.

Q. Do you hold any degrees in industrial security or law enforcement?

A. No, I do not.

Q. Have you ever been employed as a director of security for an industrial port or terminal?

A. No, I have not.

Q. Have you ever drafted a security access protocol for a facility regulated by Homeland Security?

A. I have not.

Q. Have you ever published any peer-reviewed articles on the topic of premises liability or emergency gate warnings?

A. No, I have not.

Q. So while -- while you are highly experienced in how conveyor belts and coal stockpiles --

MS. ROHN: I'm sorry. You're breaking up again. Every -- when you put your head down, something happens with the sound.

Page 11

MR. JANVIER: Yeah. I'm not sure -- I'm not sure what's going on. Can you hear me now?

MS. ROHN: Yeah.

BY MR. JANVIER:

Q. Okay. So, Mr. Mahr, while you are highly experienced in how conveyer belts and coal stockpiles work, you're not holding yourself out as an expert in industrial security protocols; is that fair?

A. I am not an expert --

MS. ROHN: Objection to the form of the question.

BY MR. JANVIER:

Q. You can -- you can answer. Mr. Mahr, you can answer the question.

A. I can -- there was an objection to --

Q. Yes. Her objection is noted for the record. But you can --

A. Okay. I am -- I am not an expert, but I certainly have been subject to security at all kinds of facilities for decades.

Q. I'm not sure I understand your response. You --

A. I believe --

Q. Can you repeat that? I'm not sure I heard you correctly.

Page 12

A. I believe the question was am I an expert as in having a degree in security as opposed to being someone who has been subject to security protocols and practices while being admitted to numerous, numerous facilities.

Q. Okay. While -- so you're saying that your experience with security protocols has been through the process of you being admitted into numerous facilities? Is that -- am I understanding that correctly?

A. Absolutely.

Q. Okay.

A. I've taken -- I -- I've taken, in some cases, training in order to be admitted.

Q. Can you -- can you please elaborate on that?

A. Normally when you go to a facility, you are escorted if you are to be admitted. If you are not a worker there and have not been -- gone through train -- proper training and vetting and issued an ID, then somebody has to escort you.

If you want to be able to be independently able to walk around the facility and examine the facility, then -- and in one particular case for sure I went through a training session and had to pass a test.

Q. Okay. Can you please identify in your report where this information is outlined?

Page 13

A. The report is not about my security training. My report and the scope of my work was an expert in the design, construction, operation, and so forth of dry bulk material handling systems, in particular solid fuels.

Q. Okay. So, in other words, there's no information about your -- your security training that you just outlined in your report; is that fair?

A. That -- that was -- that's fair. That was not the scope of work.

MR. JANVIER: Okay. I'm going to object under Rule 26 for failure to disclose information regarding Mr. Mahr's training as he described it in industrial security protocols.

With that objection noted for the record, I don't have any additional questions.

DIRECT EXAMINATION

BY MR. SIMPSON:

Q. Good morning where you are, Mr. Mahr. Good afternoon where I am. I have a few questions. I'm Andrew Simpson, and I represent Port Hamilton in this case.

Your report does not include a calculation of Ms. Wooten's specific exposure dose to any substance, correct?

A. That's right.

4 (Pages 10 - 13)

Page 14

Q. And you don't -- you -- you're not offering an opinion about that, correct?

A. Correct.

Q. And your report contains no air modeling or dispersion calculations for any of the substances that were coming from the coke dome, correct?

A. Correct. Because I don't -- it could not be done with the information that was available.

Q. Okay. In your report you don't mention the Bradford Hill criteria because you did not apply them, correct?

A. Correct.

Q. And you did not apply any similar causation methodology in your report, correct?

A. Correct.

MR. SIMPSON: I have no further questions. Thank you.

CROSS-EXAMINATION

BY MS. ROHN:

Q. Attorney -- Mr. Mahr, what facilities have you been in, in which you have witnessed security in those facilities?

A. If you look at my résumé, they are listed in my résumé.

Q. Sir, if you could testify, please.

Page 15

A. Can I -- can I take a look?

Q. Sure.

A. I've been -- now, most of these are being -- I was escorted. So that is -- what, you want the year?

Q. I didn't ask for the year, sir. I just asked for what facilities that you were -- you observed security in and being escorted.

A. Okay. The Brunner Island. It's a 1,483-megawatt power plant, a PPL --

Q. Do you remember the approximate date?

A. Now I would have to go and take a look at the other information that's not in the report.

Q. Do you remember approximately when it was?

A. A decade ago.

Q. Okay. Anything else?

A. I was at the Sulcis Power Plant in Sardinia, Italy.

Q. Approximately when?

A. Again, this is -- everything is going to be more than a decade old, going back to two or three decades. Okay?

Q. Okay. What else?

A. I've been to the Drax Power Plant in England. I've been to Longview Power Plant in West Virginia. I've been to Wisconsin Electric's Elm Road Plant in Wisconsin.

Page 16

I've been to the Weadock & Karn plants in Wisconsin of Consumers Energy.

I've been to the Tracy Power Plant in California operated by GWF. I've been to the Meramec plant of Ameren Services in Missouri. I've been to Ameren's Coffeen plant. I think that's Illinois. I've been to the Nucla Power Station in Nucla, Colorado, operated by Tri-State Generation & Transmission.

I've been to Ameren's Sioux Plant in Missouri. I've been to the Labadie Plant. At that time it was Union Electric. Now it's Ameren. I've been to the Mt. Carmel Plant in Pennsylvania operated by Foster Wheeler. I've been to Mae Moh lignite power plant for EGAT. That's the Electricity Generating Authority of Thailand.

I've been to -- to the Sanford Plant of Florida Power & Light, Florida. I've been to the Mecca Plant. That's a biomass plant in California. I've been to the Hsinta Plant -- that's H-s-i-n-t-a -- Power Plant of Taiwan Power in Taiwan.

I've been to the Talin Power Plant of Taiwan Power. I've been to the Lin Kou, L-i-n, K-o-u, Plant of Taiwan Power. I've been to the Erickson Station of Lansing Board of Water & Light in Michigan.

I've been to the Ravenswood Station of

Page 17

Consolidated Edison in New York. That was operating and is operating as an -- as an oil fire plant, not a coal fire plant.

For Virginia Power I've been to the Chesterfield, Portsmouth, Possum Point, and Yorktown Power Stations. I've been to the W.A. Parish Plant for Utility Fuels. That's part of Houston Lighting & Power in Texas.

(Ms. Wooten entered the videoconference.)

A. I've been to Bethlehem Steel's Sparrows Point Plant. That's a steel mill, not a power plant in Maryland there. I've been to the Big Bend Station of Tampa Electric. That's in Florida.

For Ohio Edison I've been to the Bruce Mansfield Station in Pennsylvania. Oops. This jumped here. I'm sorry.

And that covers from what I have available to look at. I think that's pretty complete.

BY MS. ROHN:

Q. Mr. Mahr, have you ever had any discussions with any of the defendants' attorneys?

A. Only about being deposed.

Q. And when did you first start having discussions with the defendants' attorneys about being deposed?

Veritext Legal Solutions

800-726-7007                                                                    305-376-8800

Page 18

A.    I'm going to say January because it was by e-mail in December when they first received the -- the -- the subpoena.

Q.    Other than establishing a date for your deposition, have you had any other types of discussions with Defense Counsel?

A.    No.

Q.    What was -- when is the last time prior to me hiring you as an expert that you've been hired as an expert?

A.    Let's see.  That was for --

Q.    It's a when question.

A.    It would have been probably -- you engaged through Cahn my services last year.  It would have been a year or so before.

Q.    You were asked -- what is your understanding as to how far away from the site where Ms. Wooten's incident occurred were the air monitors?

A.    They were very far.  I mean, they were a couple of miles away or -- and ones that I could indicate were in the wrong place.  Just not in -- downwind.  You have to be downwind.

Q.    And was the -- was the lack of -- did the lack of air monitoring information affect your ability to have an opinion as to the amount of substance that she

Page 19

was exposed to?

MR. SIMPSON:  Object to the form.

BY MS. ROHN:

Q.    You may answer.

A.    What is important is the amount, yes, and you could -- there was no indication of that.

Q.    And were -- why were you unable to use the Bradford Hill methodology?

A.    It was not in my scope.

Q.    What do you mean by that?

A.    My report, the scope of work was to provide information on the handling of petroleum coke, the design, the operation, and -- and the -- the fire.  I mean, that was the scope: to provide the combustion, not the exposure of Wooten, which I could not do if I -- if the information was available, then I certainly would have stated this was the exposure and level.  It was not available.

Q.    And what methodology did you use in coming to your opinions?

A.    My expertise.

Q.    And what were those expertise?

A.    It's a career in designing, operation, and maintenance of these facilities for combustion.  I'm also a member of ASME.  And I've been a member of the Fact

Page 20

Division Fuels and Combustion Technologies.  And that is a -- an -- the exposure, the information that you gain, and that is important.

MS. ROHN:  Thank you very much, Mr. Mahr.  I have no further questions.

MR. JANVIER:  Nothing further from me.

MR. SIMPSON:  Nothing further from me either.  Thank you.

THE WITNESS:  Okay.  Thank you.

MR. JANVIER:  Thank you, Mr. Mahr.

THE VIDEOGRAPHER:  Are we ready to go off the record?

MR. JANVIER:  Yes, please.

THE VIDEOGRAPHER:  Okay.  Going off the record.  The time is 11:33 a.m.

MR. JANVIER:  Can we go ahead and order a copy of the transcript?

MS. ROHN:  I'll want a copy, please.

MR. SIMPSON:  I would like a copy, too.

THE VIDEOGRAPHER:  Anyone need a copy of the DVD?

MR. JANVIER:  Yes.  I need that as well.

MR. SIMPSON:  And for Port Hamilton I would also like a transcript, PDF and TXT, please.

(The deposition was concluded at 11:34 a.m.)

Page 21

CERTIFICATE OF OATH

STATE OF FLORIDA:
COUNTY OF LAKE:

I, SARAH J. EKERN, Stenograph Shorthand Reporter, Notary Public, State of Florida, do hereby certify that DANIEL MAHR, P.E., remotely appeared before me on the 26th day of February, 2026, and was duly sworn.

WITNESS my hand and official seal this 12th day of March, 2026.

SARAH J. EKERN, FPR
Notary Public - State Of Florida
Commission No: HH 242195
Commission Expires: March 30, 2026

Personally Known _____
OR Produced Identification __X__
Type of Identification Produced New Jersey driver's license

6 (Pages 18 - 21)

Page 22

CERTIFICATE OF REPORTER

STATE OF FLORIDA:

COUNTY OF LAKE:

I, SARAH J. EKERN, Stenograph Shorthand Reporter, and Notary Public, DO HEREBY CERTIFY that I was authorized to and did stenographically report the foregoing deposition of DANIEL MAHR, P.E.; that the review of the transcript was requested; and that the foregoing Pages 4 through 20, inclusive, are a true and complete record of my stenographic notes.

I FURTHER CERTIFY that I am not a relative or employee of any of the parties, nor am I a relative or counsel connected with the parties' attorneys or counsel connected with the action, nor am I financially interested in the outcome of the action.

DATED this 12th day of March, 2026.

SARAH J. EKERN, FPR
Certified Court Reporter

---

Page 24

March 13, 2026

DANIEL MAHR, P.E.
danmahr@energy-pc.com

In Re: February 26, 2026, deposition of
DANIEL MAHR, P.E.
Nicole Wooten vs. Limetree Bay Terminals, et al.

Dear Mr. Mahr:

The above-referenced transcript is available for review.
You should read the testimony to verify its accuracy. If there are any changes, you should note those with the reason on the attached Errata Sheet.
You should, please, date and sign the Errata Sheet and e-mail to the deposing attorney as well as to Veritext at Transcripts-fl@veritext.com and copies will be e-mailed to all ordering parties.
It is suggested that the completed errata be returned 30 days from receipt of testimony, as considered reasonable under Federal rules*, however, there is no Florida statute to this regard.
If you fail to do so, the transcript may be used as if signed.

Sincerely,

Sarah J. Ekern
Veritext Legal Solutions

*Federal Civil Procedure Rule 30(e)/Florida Civil Procedure Rule 1.310(e)

---

Page 23

ERRATA SHEET

IN RE:     Nicole Wooten vs. Limetree Bay Terminals, et al.
CASE NO.:     1:23-cv-00012
DATE:     February 26, 2026
DEPONENT:     DANIEL MAHR, P.E.
PAGE #   LINE #   CORRECTION     REASON
-----------------------------------------------------

Under penalties of perjury, I declare that I have read the foregoing document and that the facts stated are true.

Dated:_____Signed:_____

---

7 (Pages 22 - 24)