DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

NICOLE WOOTEN,

        Plaintiff,

    v.

LIMETREE BAY TERMINALS d/b/a
OCEAN POINT TERMINALS, PORT
HAMILTON REFINING & TRANSPOR-
TATION, WEST INDIES PETROLEUM
LTD., and LIMETREE BAY REFINERY,
LLC, as a nominal Defendant,

        Defendants.

Case No. 1:23-CV-00012

**ACTION FOR DAMAGES**

<u>JURY TRIAL DEMANDED</u>

## <u>OCEAN POINT TERMINALS' REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE THE EXPERT TESTIMONY OF DR. MARC WILKENFELD, M.D.</u>

## <u>PRELIMINARY STATEMENT</u>

As addressed below, none of the arguments raised in Plaintiff's Opposition to Ocean Point's Motion to Exclude the Expert Testimony of Dr. Marc Wilkenfeld (the "Opposition") save his causation opinion from exclusion. That opinion fails for three independent reasons, each established by Dr. Wilkenfeld's own sworn testimony. It rests on no identifiable, testable, or reliably applied methodology. It rests on no dose or exposure analysis. And it rests on no differential diagnosis. The Opposition cures none of the three. This is not a close dispute among qualified experts. It is an expert who did not apply the principles his own discipline requires, and Rule 702 does not permit the opinion to reach the jury.

First, the Opposition does not, and cannot, deny what Dr. Wilkenfeld actually said at his deposition. He testified that he followed no scientific methodology, that he could not identify any guidelines he applied, that he could not point to any publication recognizing his approach as accepted, that he could not calculate a dose, that he could not identify the regulatory thresholds for

1

the chemical he emphasized most, that odor thresholds do not establish toxic exposure levels, that he performed no differential diagnosis, that he did not consider the August 10 landfill fire, that he did not consider anxiety, deconditioning, or obesity as alternative causes, and that there are no objective test results supporting permanent injury. Those admissions are the record. *Compare* Opposition (offering explanations for why the Court should look past the testimony) *with* Motion at 6–13 (establishing each deficiency through the expert's own words). The Opposition does not contest the admissions. It asks the Court to disregard them.

Those admissions matter because Dr. Wilkenfeld also conceded the principles that govern his field. He agreed that general causation addresses what an exposure can cause and specific causation addresses what it did cause in a particular patient, that this case required him to establish both, and that he teaches toxicology, including dose-response relationships. *See* Wilkenfeld Depo. 8:22–9:16; 9:17–10:3. The failure here is thus not a disagreement among experts. It is that Plaintiff's own expert did not apply the principles he admits govern occupational-medicine causation.

Second, the Opposition repeatedly retreats to the proposition that Ocean Point's criticisms go to weight rather than admissibility. That argument should be rejected because the 2023 amendments to Rule 702 were enacted precisely to correct it. The Advisory Committee Note states that the amendment "specifically was made necessary by the courts that have failed to apply correctly the reliability requirements of that rule." Fed. R. Evid. 702 advisory committee's note to 2023 amendments. Plaintiff cites that note but treats it as ornamental. The proponent bears the burden of demonstrating each element by a preponderance of the evidence, and the Court must find that burden satisfied before the testimony reaches the jury.

Third, much of what the Opposition presents as Dr. Wilkenfeld's methodology appears nowhere in his report,  including the "mixture of chemicals" theory of odor-threshold inference, the rejection of deconditioning by reference to the January 16, 2023 psychotherapy note, the rule-out of anxiety through the response to intravenous steroids, and the explanation that an August 9 symptom resolution is consistent with permanent injury because steroids "do not remain in the body for long." They are advocacy crafted to fill gaps the report leaves open. The report contains no explanation of how Dr. Wilkenfeld moved from the facts he recites to the conclusion he reached, and the Opposition supplies that explanation for the first time. Rule 26 requires that the report contain a complete statement of all opinions and the basis and reasons for them, and reasoning omitted from the report cannot be supplied after the fact in opposition briefing. *See* Fed. R. Civ. P. 26(a)(2)(B)(i). Rule 702 in turn requires a methodology reliably applied. Post-deposition reconstruction of steps the expert did not take satisfies neither rule.

## I.    The First Failure: The Opinion Rests On No Identifiable, Testable, or Reliably Applied Methodology.

Plaintiff's lead argument should be rejected because it does not survive the transcript. Plaintiff argues that Dr. Wilkenfeld's "no methodology" testimony answered only a narrow question about a "named, codified protocol," and that what he did, namely review history, test results, and substances exposed to, is itself the methodology of occupational medicine. Opposition at 11.

The transcript records three sequential questions, and a categorical denial to each. Dr. Wilkenfeld was asked whether he followed *any specific scientific methodology*. He said no. He was asked whether he followed *any established guidelines*. He said no. He was asked to *describe the methodology he did follow*. He said, "I just said no….I said no." Wilkenfeld Depo. 25:13–25. That is not the answer to a narrow question about codified protocols. It is a denial across three

3

framings. Asked whether he could point to any publication, peer-reviewed or otherwise, recognizing his approach as an accepted method for determining causation in an occupational exposure case, he conceded he could not. *Id.* at 27:13–29:20.

Ocean Point does not contend that Dr. Wilkenfeld did nothing. The report reflects a review of records and literature and a clinical narrative of Ms. Wooten's history and symptoms. But those are inputs, not a method. A reasoning process that cannot be named, that rests on no stated criteria, and that the expert cannot show has ever been tested or accepted is not made reliable by the volume of material he read before reaching his conclusion. Whatever Dr. Wilkenfeld did, it is not a method a court can evaluate for reliability, which is what Rule 702 requires.

Plaintiff's reliance on *Heller v. Shaw Industries, Inc.*, 167 F.3d 146 (3d Cir. 1999), is misplaced. *Heller* holds that a physician may rely on clinical experience instead of published studies to support a differential diagnosis. It does not hold that a physician may dispense with differential diagnosis altogether and still satisfy Rule 702. The passage Plaintiff quotes (Opposition at 4 n.4) lists what *Heller* calls "the tools of the trade," and then states that those tools "should suffice for the making of *a differential diagnosis*." 167 F.3d at 155 (emphasis added). *Heller* thus presupposes that a differential diagnosis was performed. Here, Dr. Wilkenfeld testified he performed none. (Wilkenfeld Depo. 111:5–12, 112:2–7.) Therefore, *Heller* does not support Plaintiff's assertion that a differential diagnosis was not required.

Plaintiff's contention that the approach is the methodology "taught in every occupational medicine residency" (Opposition at 11) should likewise be rejected, because it is the precise *ipse dixit* the Supreme Court condemned in *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997). Asked to point to any text, treatise, guideline, or peer-reviewed article establishing that his approach is generally accepted, Dr. Wilkenfeld could not. Wilkenfeld Depo. 27:13–29:20. His

4

answer, that the approach is "done thousands and thousands of times every year so, you know, if that means it's accepted, then there it is" (*id.* at 28:7–15), is the proponent's say-so dressed up as field acceptance. General acceptance cannot be established by the expert's own assertion that his method is generally accepted. *Joiner*, 522 U.S. at 146.

Finally, Plaintiff's argument that comparing Dr. Wilkenfeld's clinical report to his peer-reviewed publications is "inapt" because clinical case reports are not peer reviewed concedes the point rather than answering it. Opposition at 12. Ocean Point did not argue that the report should resemble a peer-reviewed epidemiology study. Ocean Point argued, and the testimony established, that the same physician who applies methodological discipline (subject selection, statistical analysis, and the distinction between association and causation) when his work will be tested by peers abandoned all of it when his work was prepared for litigation. Wilkenfeld Depo. 105:6–107:10. That his litigation report would not undergo peer review is a reason to scrutinize it more closely under Rule 702, not less.

Plaintiff cannot meet her Rule 702 burden by asking the Court to accept the expert's characterization of his clinical judgment as the methodology that judgment lacked.

Nor can Plaintiff meet that burden by invoking Rule 702(b). The Opposition argues that the "sufficient facts and data" requirement is "plainly satisfied" because Dr. Wilkenfeld reviewed Ms. Wooten's history, test results, and the substances to which she was exposed. Opposition at 10–11. That argument should be rejected because it answers the wrong question. Rule 702 imposes four independent requirements, and the proponent must satisfy each. *See* Fed. R. Evid. 702(a)–(d). That an expert reviewed sufficient inputs under Rule 702(b) says nothing about whether he applied a reliable method to them under Rule 702(c) or reliably applied that method to the facts of the case under Rule 702(d). An expert who is handed every relevant record and then reasons from it

unreliably has satisfied Rule 702(b) and failed Rule 702 all the same. Dr. Wilkenfeld's deficiency is not a paucity of inputs. It is the absence of any methodology applied to them. Establishing that he had "sufficient facts and data" therefore does not advance Plaintiff's burden on the requirements that matter.

**II.     The Second Failure: The Opinion Rests On No Dose or Exposure Analysis, and the "mixture of chemicals" Theory Does Not Cure it.**

Courts in this Circuit have repeatedly excluded toxic-tort causation opinions that lack a reliable basis to infer the dose to which the plaintiff was exposed, because without that basis the opinion cannot bridge the gap between exposure and injury. *See In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 750, 759 (3d Cir. 1994). That is the gap here. Dr. Wilkenfeld offered no quantitative dose analysis, identified no regulatory threshold for the chemical he emphasized most, conceded that odor does not establish toxic exposure levels, and pointed to no air sample showing any chemical above any regulatory limit. There is no reliable bridge between the fact that Ms. Wooten smelled something and the conclusion that she suffered a toxic injury.

Ocean Point's Motion established that Dr. Wilkenfeld performed no quantitative dose analysis, could not identify any regulatory threshold for the chemical he emphasized most, conceded that odor thresholds do not establish toxic exposure levels, and acknowledged that not one air sample in the record showed sulfur dioxide above any regulatory limit. *See* Motion at 6–8. Plaintiff's answer is a new theory, that Dr. Wilkenfeld relied not on the sulfur dioxide odor threshold alone but on odor as a qualitative indicator of a "mixture of chemicals," each with a different odor-to-toxicity ratio. Opposition at 14–15. That theory should be rejected for three reasons.

First, the theory appears nowhere in the August 5, 2025 report. The report lists five chemicals and their odor thresholds (trimethylamine, formaldehyde, toluene, acetone, methylene

6

chloride). It does not address odor-to-toxicity ratios. It does not explain how the presence of multiple chemicals with varying ratios permits an inference that any of them, alone or combined, exceeded a toxic threshold. It states only that Ms. Wooten "was exposed to levels many times higher than those that are toxic to the respiratory system", an assertion Dr. Wilkenfeld conceded he could not support with any quantitative analysis. Report at NW003813; Wilkenfeld Depo. 38:24–39:17. The report contains no mixture or odor-to-toxicity analysis, and therefore, it is not a methodology *reliably applied to the facts of this case*.

Second, the reframing does not engage the testimony Ocean Point cited. Dr. Wilkenfeld was asked whether "whether levels were above the odor threshold tells us whether the levels were toxic," and he answered "Yes, you're correct," meaning it does not. Wilkenfeld Depo. 43:11–18. That concession is not limited to sulfur dioxide. It is the foundational answer to whether odor can substitute for measured dose. The Opposition does not address it.

Third, the reframing ignores the expert's inability to identify the regulatory thresholds for sulfur dioxide, the chemical he emphasized most. He could not identify the OSHA permissible exposure limit, the NIOSH recommended exposure limit, or the IDLH level. Wilkenfeld Depo. 40:21–41:6. Asked whether he had determined that Ms. Wooten was exposed to a level exceeding any applicable regulatory limit, he answered, "No, I did not." *Id.* at 41:7–17. Repackaging the analysis as a "mixture" theory does not cure those failures. It confirms that the expert lacked the foundational knowledge a competent dose assessment requires. Expert opinion must rest on "methods and procedures of science," not "subjective belief or unsupported speculation." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 (3d Cir. 1994). An expert who cannot identify the safe exposure level for the chemical he emphasizes most is offering subjective belief.

Plaintiff's heavy reliance on *Westberry v. Gislaved Gummi AB*, 178 F.3d 257 (4th Cir. 1999), is misplaced. Opposition at 13. *Westberry* is Fourth Circuit authority, and Third Circuit law governs this Court. In any event, *Westberry* holds only that an expert may proceed without quantitative dose where a reliable qualitative analysis substitutes. It does not hold that *no* dose analysis is required. Dr. Wilkenfeld performed no reliable qualitative dose assessment. He inferred dose from symptoms and then used the inferred dose to explain the symptoms, the circular reasoning the Third Circuit has specifically condemned. *Paoli*, 35 F.3d at 759.

Plaintiff's defense of Dr. Wilkenfeld's reliance on the Byrwa-Hill, Morphew, and Johnson studies is even less responsive. Plaintiff does not contest that those studies involve weeks-to-months of community exposure rather than a sub-minute event, that Dr. Wilkenfeld acknowledged the gap and agreed that bridging it would require a dose-response analysis, or that he performed no such analysis. Wilkenfeld Depo. 103:23–104:10. Plaintiff's only response, that the literature need not address the precise factual scenario misstates the issue. The point is not that the literature must match the facts exactly. It is that when it does not match at all, in either exposure duration or type, the expert must explain how he bridged the gap. Dr. Wilkenfeld testified he did not. The studies therefore do not support his opinion.

Nor does the Opposition fill the gap with its argument that a brief exposure "could" result in significant harm. Opposition at 6. Whether a brief exposure *could*, in the abstract, cause significant harm is not the question Rule 702 asks. The question is whether *this* exposure, at *this* concentration, for *this* duration, caused *this* injury, and answering it requires the very dose assessment Dr. Wilkenfeld did not perform. A showing that brief exposures are capable of causing harm establishes general causation at most. It does not establish that Ms. Wooten was exposed to a harmful dose, and Dr. Wilkenfeld conceded he could not quantify the dose she received.

8

Wilkenfeld Depo. 38:24–39:17. Possibility is not specific causation. An opinion that a brief exposure could cause injury, untethered to any measured or estimated dose, is precisely the "subjective belief or unsupported speculation" that *Paoli* excludes. *Paoli*, 35 F.3d at 742.

### III.    The Third Failure: This is a Causation Opinion Without a Differential Diagnosis, and *Heller* Cannot Supply One.

Ocean Point's Motion identified the differential-diagnosis problem with precision. Dr. Wilkenfeld acknowledged the concept, acknowledged that he teaches it, and acknowledged that he did not do it here. Wilkenfeld Depo. 111:5–12, 112:2–7; 114:10–15. Asked to show where in his report he ruled out alternative causes, he said he could not. Asked whether he addressed the August 10 landfill fire, he said no. He testified that the only alternative cause he considered was cardiac disease. *Id.* at 112:11–13. Plaintiff responds by reconstructing the differential the report does not contain. Each reconstruction confirms the deficiency rather than curing it.

This failure collapses Plaintiff's entire defense. Plaintiff defends the opinion as an exercise of clinical judgment, and relies on *Heller* for the proposition that clinical judgment is enough. But under *Heller*, clinical judgment is reliable because it operates through a differential diagnosis, the disciplined process of identifying possible causes and ruling them out one by one. 167 F.3d at 155. Clinical judgment is the vehicle; the differential diagnosis is the method that makes the vehicle reliable. Dr. Wilkenfeld did not perform a differential diagnosis. Plaintiff therefore invokes the authority of clinical judgment while omitting the one step that, under the very case she cites, makes clinical judgment admissible.

Plaintiff's reconstructions all fail the same way: a conclusion is not a differential diagnosis. A differential diagnosis is the disciplined process of identifying each alternative cause, analyzing it, and explaining the basis for ruling it out. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 733 (3d Cir. 1994) (affirming exclusion where the expert did not employ "standard techniques of

9

differential diagnosis" and failed "to provide any explanation as to why he concluded that [the exposure] rather than alternative possibilities" caused the illness); *see also Smith v. Katz*, 2013 WL 1182074, at *6 (D.V.I. Mar. 22, 2013), aff'd, 696 F. App'x 582 (3d Cir. 2017). Dr. Wilkenfeld did not perform that process. He conceded he did not "list all the possible alternative causations . . . and rule them out one by one." Wilkenfeld Depo. 112:2–7. Plaintiff's argument that his stated conclusion, that the August 8 exposure was the cause "to a reasonable degree of medical certainty," itself rules out the alternatives proves the deficiency rather than answering it. If a bare conclusion of causation discharged the obligation, then every expert who announced a conclusion would satisfy Rule 702, and the differential-diagnosis requirement would mean nothing. An opinion connected to the underlying data only by the expert's own say-so is inadmissible, because a court may find that there is too great an analytical gap between the data and the opinion offered. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). That gap is this opinion. It rests on no analysis the Court can review because, by his own admission, none was performed.

A.     The landfill fire.

Plaintiff's contention that Dr. Wilkenfeld "directly addressed" the August 10 landfill fire by testifying that the August 8 exposure was, "to a reasonable degree of medical certainty," the cause should be rejected because a conclusion is not a differential diagnosis. *See* Opposition at 9. Dr. Wilkenfeld did none of the things a differential diagnosis requires. He did not analyze the chemical composition of landfill smoke, did not search the literature on landfill-fire smoke components, and made no effort to determine what substances Ms. Wooten was exposed to on August 10. Wilkenfeld Depo. 65:11–15. He testified that he could not rule out the August 10 event as a contributing factor, and could not say it was not a cause. *Id*. at 61:1–20. An opinion that cannot

10

exclude the unaddressed alternative does not rule it out. It concedes the two cannot be separated on the analysis performed.

Plaintiff's fallback, that Dr. Wilkenfeld had "no information" about the landfill fire, is not a defense but the deficiency itself. Opposition at 9–10. An expert who lacks information about a documented alternative cause does not discharge his Rule 702 obligation by declining to investigate it and then concluding that the favored cause prevails. That inverts the burden.

  B.  <u>Anxiety, PTSD, and major depressive disorder.</u>

Plaintiff concedes that Dr. Wilkenfeld performed no written differential ruling out anxiety and the other psychiatric diagnoses documented in the record. *See* Opposition at 17–18. The defense offered, that he applied "reliable medical reasoning" in his head because a patient who responds to intravenous steroids cannot have a purely psychological response, should be rejected because that reasoning appears nowhere in the report. It was constructed during the deposition under questioning and is now offered as the methodology the report omitted.

The reasoning fails on its own terms in any event. Steroid-responsive bronchospasm is a feature of asthma exacerbation regardless of trigger. That Ms. Wooten received intravenous steroids and improved tells the Court she had bronchospasm. It does not tell the Court what caused that bronchospasm. Among the alternatives Dr. Wilkenfeld never excluded, her preexisting asthma documented worsening twenty-four days earlier, the August 10 landfill fire, and anxiety acting on a preexisting asthmatic, any one or a combination could produce the same steroid response. The differential diagnosis exists to perform exactly that disentanglement, and Dr. Wilkenfeld did not perform it. In his own published research he analyzed carefully whether respiratory symptoms were associated with psychological factors. Wilkenfeld Depo. 105:6–107:10. He did not analyze

11

it here. *Heller* does not authorize an expert to skip a category of alternative causes because addressing it would complicate the result.

C.      Deconditioning, obesity, and the psychotherapy note.

Plaintiff's argument that deconditioning and obesity are "foreclosed" as causes of Ms. Wooten's exercise intolerance because she described a robust pre-incident activity level during a January 16, 2023 psychotherapy session should be rejected for two reasons.

First, the inference runs in the wrong direction. A self-report of pre-incident activity, made months after the incident, to a different provider, in a psychotherapy session, says nothing about whether deconditioning and obesity were contributing to Ms. Wooten's exercise intolerance at the time of Dr. Wilkenfeld's evaluation. Deconditioning is a function of current physical state, and the expert asked to assess it must evaluate the current state. Dr. Wilkenfeld did not examine Ms. Wooten, did not address deconditioning, and did not address obesity. Wilkenfeld Depo. 113:12– 14. A psychotherapy note from a different provider, deployed by counsel in briefing, is no substitute for an analysis the expert never performed.

Second, the use of the note illustrates the broader pattern. Where the report omitted an analytical step, counsel reaches into the record to construct it. That is the inverse of how Rule 702 operates. The expert must perform the analysis, and counsel may explain it. Counsel may not perform it on the expert's behalf in briefing.

D.      The natural progression of preexisting asthma.

On the most important alternative cause, the natural progression of asthma that was already worsening on a documented trajectory in the months before August 8, 2022, Plaintiff invokes the eggshell-plaintiff doctrine, arguing that Ms. Wooten's preexisting asthma made her more

12

susceptible to injury. *See* Opposition at 6. That argument should be rejected because the eggshell-plaintiff doctrine is a damages principle, not a standard of admissibility under Rule 702.

The eggshell-plaintiff doctrine governs the scope of recovery once causation is established. It does not relieve an expert of the obligation to perform a differential diagnosis distinguishing injury caused by the alleged exposure from the natural progression of a preexisting disease already worsening on the same trajectory. The Third Circuit has been clear on this point. *Paoli*, 35 F.3d at 767. Dr. Wilkenfeld testified that he performed no analysis to distinguish progression from new injury, and that he could not say how much of Ms. Wooten's current condition is attributable to natural progression versus the alleged exposure. A causation opinion that cannot separate the proposed cause from a preexisting condition already worsening is not specific causation, and the eggshell-plaintiff doctrine does not convert that failure into compliance with Rule 702.

E.    The RADS diagnosis.

Plaintiff's defense of the Reactive Airway Dysfunction Syndrome diagnosis, that the label is "a matter of semantics, either it's RADS or it's an exacerbation of preexisting asthma due to an occupational exposure" is the most candid concession in the brief, and it should be rejected because it is not semantics. RADS is a defined clinical entity with specific diagnostic criteria, including a high-concentration threshold exposure and objective evidence of persistent airway obstruction. Brooks S.M. et al., *Reactive Airways Dysfunction Syndrome (RADS)*, 88 Chest 376 (1985). Neither criterion can be met here. The high-concentration threshold cannot be established because Dr. Wilkenfeld never calculated or estimated any concentration. The objective evidence requirement cannot be satisfied because, as he conceded, "[t]here are no objective test results." Wilkenfeld Depo. 127:5–17. An expert who invokes a label carrying defined criteria without establishing them

13

is not making a diagnosis. He is applying a label. Calling the failure a matter of "semantics" does not cure it. It admits it.

## IV.    The Circular-reasoning Problem Survives Every Reframing in the Opposition.

Plaintiff's response to the circularity argument, that circular reasoning is simply what clinical medicine looks like because physicians "routinely infer clinically significant exposure from temporal proximity, symptom presentation, and physiological response", conflates two different inquiries. In the treatment context, a physician may reasonably infer significant exposure from the clinical presentation and treat accordingly. The inference is provisional, the consequence is therapeutic, and the patient's response tests the inference. That is not the inquiry here. Here the question is whether a documented exposure of unknown concentration caused a specific permanent injury, and the inference from symptoms to exposure level cannot then be used to explain the symptoms, because there is no independent anchor for either. That is the reasoning the Third Circuit condemned in *Paoli*, 35 F.3d at 759, and it does not soften because the expert is a clinician.

Plaintiff also fails to engage Ocean Point's Bradford Hill analysis. The Motion walked through each criterion Dr. Wilkenfeld endorsed and showed how each failed against the record. *See* Motion at 13. On strength of association, he did not quantify it. On consistency, his opinion is undermined by the absence of other reported injury claims, which Dr. Wilkenfeld conceded "would be important to know." Wilkenfeld Depo. 115:23–117:4. On dose-response, he established nothing. On coherence, he testified that "If there were truly no other reports, then no," his opinion is not coherent. *Id.* at 121:2–5. On analogy, he could point to no studies, peer-reviewed reports, or reliable journals describing analogous situations in which brief exposures caused similar permanent injury. *Id.* at 121:16–25.

Plaintiff's answer, that Bradford Hill is flexible and that an expert need not satisfy every criterion, misses the point, which Ocean Point does not dispute. The deficiency is not that Dr.

14

Wilkenfeld failed every criterion in the abstract. It is that he endorsed Bradford Hill as reliable and generally accepted, then could not produce affirmative support for a single criterion when tested against the record. A methodology the expert endorses but cannot apply is not one reliably applied to the facts of this case.

Finally, on objective evidence of permanent injury, the Opposition is silent. Dr. Wilkenfeld conceded that all objective testing, including bronchoscopy, CT scans, chest X-rays, and CPET, was normal. Wilkenfeld Depo. 22:15–23:6. Asked what objective evidence supports permanent injury, he cited her symptoms and the conclusion of her employer's examining physician, whose basis he did not independently verify. *Id.* at 127:18–128:1. Plaintiff's only response is that pulmonary function testing showed obstruction. But obstruction in a patient with documented preexisting asthma, worsening on a documented trajectory before the index exposure, is not objective evidence of a new permanent injury caused by that exposure. It is the manifestation of the condition she had already been diagnosed with.

## V.    A Daubert Hearing is not Required and Would not Aid the Court.

Plaintiff's request for a *Daubert* hearing should the Court be inclined to exclude (Opposition at n.15, citing *Padillas v. Stork-Gamco, Inc.*, 186 F.3d 412, 418 (3d Cir. 1999)) should be rejected because *Padillas* requires a hearing only where the admissibility determination turns on disputed factual issues the record does not resolve. That is not this case. The record on which Ocean Point's Motion rests is Dr. Wilkenfeld's own sworn testimony and the four corners of his report. Plaintiff does not contest that testimony; she explains it. Where the expert's own admissions establish the deficiencies, no hearing is needed to develop the record further. *See Oddi v. Ford Motor Co.*, 234 F.3d 136, 154 (3d Cir. 2000) (no hearing required where the record is sufficient to resolve the admissibility question).

15

**CONCLUSION**

To admit this opinion, the Court would have to find that it rests on reliable principles and methods reliably applied to the facts of this case. The record will not support that finding. There is no identifiable method, no dose analysis, and no differential diagnosis, each established by Dr. Wilkenfeld's own testimony and each independently fatal. The defect is not imperfect science but the absence of the discipline the expert's own field requires, and on this record Plaintiff cannot carry her burden.

For these reasons and those in its Motion, Ocean Point respectfully requests that the Court grant its Motion to Exclude the Expert Testimony of Dr. Marc Wilkenfeld, M.D.

Date:  June 25, 2026

**AKERMAN LLP**
201 East Las Olas Boulevard,
Suite 1800
Fort Lauderdale, Florida 33301
Telephone: (954) 463-2700
Facsimile: (954) 463-2224


By: /s/Donnie M. King_____
**Donnie M. King**
Virgin Islands No. 1237
donnie.king@akerman.com
tyresa.thompson@akerman.com
**Eric D. Coleman** (admitted *pro hac vice*)
eric.coleman@akerman.com
lauren.chang-williams@akerman.com
**Reginald E. Janvier** (admitted *pro hac vice*)
reginald.janvier@akerman.com
sharon.luesang@akerman.com
*Counsel for Defendant Limetree Bay Terminals,*
*LLC d/b/a Ocean Point Terminals*

16

## <u>CERTIFICATE OF SERVICE</u>

I certify that the foregoing document was filed with the Court's electronic filing system on

June 25, 2026 which will send a notice of electronic filing to all counsel of record.

*/s/Donnie M. King*
Donnie M. King
