DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

NICOLE WOOTEN,

Plaintiff,

v.

LIMETREE BAY TERMINALS d/b/a
OCEAN POINT TERMINALS, PORT
HAMILTON REFINING &
TRANSPORTATION, WEST INDIES
PETROLEUM LTD., and LIMETREE
BAY REFINERY, LLC, as a nominal
Defendant,

Defendants.

Case No. 1:23-CV-00012

**ACTION FOR DAMAGES**

JURY TRIAL DEMANDED

**DEFENDANT LIMETREE BAY TERMINALS d/b/a OCEAN POINT TERMINALS'
REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56, Defendant Limetree Bay Terminals, LLC

d/b/a Ocean Point Terminals ("Ocean Point") submits this reply in support of its Motion for

Summary Judgment. *See* ECF No. 274.

**PRELIMINARY STATEMENT**

As addressed below, none of the arguments raised in Plaintiff's Opposition to Ocean

Point's Motion for Summary Judgment (the "Opposition") save her claims from judgment as a

matter of law. The Motion identified the fact that the record contains no incident-specific proof of

what Plaintiff was exposed to on August 8, 2022, at what concentration, or at what dose, and no

differential diagnosis ruling out the two documented alternative causes in her own medical records

as dispositive deficiencies. The Opposition does not supply that proof, and it cannot, because it

does not exist. Instead, the Opposition changes the subject. It recasts a specific-causation failure

as a numbers game by counting treating physicians who never measured a dose, and invokes an

1

"acute exposure" exception that Third Circuit law does not recognize. None of that creates a genuine dispute on the element that decides this case.

First, the Opposition's headline argument, that Plaintiff has "seven independent causation opinions" and so does not need Dr. Wilkenfeld, misunderstands the Motion. Ocean Point did not move on the theory that Plaintiff has too few witnesses. It moved on the theory that no witness, expert or treating, performed the analysis specific causation requires. Adding witnesses who each skipped the same step does not cure the defect; it repeats it.

Second, the Opposition concedes the facts that decide the Motion. It does not dispute that no air sampling was performed at Plaintiff's location, that no dose was calculated or reconstructed, that no dispersion modeling was done, and that no expert quantified Plaintiff's exposure to any chemical. It does not dispute that Dr. Wilkenfeld's report never mentions the August 10 landfill exposure or the worsening asthma documented three weeks before the incident. Those admissions are the case.

Third, the Opposition's legal theory, that dose and differential diagnosis are dispensable in an "acute exposure" case, rests on out-of-circuit district court decisions and a misreading of the Third Circuit authority that governs here. Under *Paoli*, *Heller*, and *Henry*, a specific-causation opinion in a toxic tort case must identify the substance, estimate the dose, and rule out alternative causes. Plaintiff's experts did none of the three. Rule 56 does not permit her claims to reach a jury on that record.

## I. The Number of Causation Witnesses Does Not Matter Because Not One of Them Performed a Specific-Causation Analysis.

Plaintiff's argument that she has "seven independent causation opinions" should be rejected because it answers a question the Motion did not ask. The Motion does not contend that Plaintiff has too few causation witnesses. It contends that none of her witnesses, expert or treating,

identified the substance at her location, estimated the dose, compared it to a toxicological threshold, or ruled out the documented alternative causes. *Henry v. St. Croix Alumina, LLC*, 572 F. App'x 114, 116–17 (3d Cir. 2014). Seven opinions that each omit the same indispensable analysis are not seven roads to the jury. They are the same evidentiary gap, repeated seven times.

Plaintiff's reliance on her six treating physicians is misplaced. The Opposition argues that treating physicians "may testify about what caused her injuries" and that their causation opinions are "admissible and independently sufficient." *See* Opp. at 2–3. But admissibility is not the issue on this Motion, and competence to opine is not the same as having performed the analysis the law requires. *Compare* Opp. at 2–4 (treating physicians are competent causation witnesses) *with* Mot. at 5–9 (no witness, treating or retained, calculated a dose or conducted a differential diagnosis ruling out the August 10 exposure). A treating physician who diagnoses a patient and attributes her symptoms to the plaintiff's self-reported exposure has not, by that act, identified the substance, quantified the dose, or excluded the alternative causes documented in the same chart. Each of Plaintiff's treating physicians accepted Plaintiff's account of a refinery exposure and reasoned from her symptoms to that exposure. That is the same circular inference the Motion identified in Dr. Wilkenfeld's opinion, not an independent cure for it.

Plaintiff's reliance on the Department of Labor's ("DOL") acceptance of her claim is likewise misplaced. A federal workers' compensation determination applies a statutory standard designed to compensate workers without the proof of specific causation that a tort plaintiff must carry. The DOL did not identify the substance at Plaintiff's location, calculate her dose, or rule out the August 10 landfill exposure, and the Opposition does not contend otherwise. An administrative acceptance under a different standard is not record evidence that Plaintiff can prove specific causation under Virgin Islands tort law.

**II.     Plaintiff's "Acute Exposure" Theory Does Not Excuse the Absence of Any Dose Analysis.**

Plaintiff's argument that dose-response analysis is "not relevant in an acute-exposure case" should be rejected because it rests on authority that does not bind this Court and contradicts the authority that does. *See* Opp. at 7–9. The principle that "the dose makes the poison" is not a chronic-exposure rule. It is the analytical core of specific causation in every toxic tort case, because without some estimate of how much of a substance reached the plaintiff, there is no way to know whether the exposure was capable of causing the claimed injury. *Smith v. Katz*, 2013 WL 1182074, at *9 (D.V.I. Mar. 22, 2013) (expert's failure to provide any quantitative estimate of exposure rendered the opinion unreliable).

Plaintiff's reliance on *Cavallo* and *Bonner* is misplaced. Those out-of-circuit decisions do not displace the Third Circuit framework that governs this case, and even on their own terms they do not help Plaintiff. *Cavallo v. Star Enterprise*, on which Plaintiff leans for the proposition that a temporal connection can "dispense with the need for reliance on standard methods of toxicology," actually affirmed the exclusion of the plaintiff's causation expert. 892 F. Supp. 756, 773–74 (E.D. Va. 1995), *aff'd in part,* 100 F.3d 1150 (4th Cir. 1996). The court's temporal-connection observation was a narrow exception for cases where the link is "so compelling" that toxicology adds nothing, and it declined to apply the exception in that case. Plaintiff cites the language and ignores the holding. In *Cavallo,* the court stated:

> Thus, it is clear that Dr. Bellanti did not follow the accepted toxicology methodology in formulating his opinion of causation in this case. At bottom, his opinion is founded primarily on the temporal connection between the spill and the development of Ms. Cavallo's symptoms, as well as on his subjective, unverified, belief that AvJet can cause the types of injuries from which Ms. Cavallo suffers. This is not the method of science. See Schmaltz, 878 F.Supp. at 1122 (stating that "[i]t is well settled that a causation opinion based solely on a temporal relationship is not derived from the scientific method and is therefore insufficient to satisfy the requirements of [Rule] 702"). Because, like Dr. Monroe, Dr. Bellanti significantly

4

departed from the appropriate methodology, his opinion is not based on the scientific method and is inadmissible under Rule 702.

Thus, Plaintiff's reliance on *Cavallo,* for the proposition that its temporal connection is sufficient to survive summary judgment should be rejected.

Plaintiff's reliance on *Westberry*, *Heller*, and *Kannankeril* fails for a different reason. Those cases hold that an expert may sometimes offer a causation opinion without a precise numerical dose, but only where the expert has performed a reliable differential diagnosis that rules out alternative causes. *See Heller v. Shaw Industries, Inc.*, 167 F.3d 146, 154–57 (3d Cir. 1999). That is the very step Plaintiff's experts skipped. The Motion does not fault Plaintiff for lacking parts-per-million data alone; it faults her experts for having neither a dose estimate nor a differential diagnosis. The cases Plaintiff cites excuse the first deficiency only when the second is satisfied. Here, neither is.

Plaintiff's argument that the absence of air-sampling data is "a consequence of Defendants' own failures" does not change the analysis. *See* Opp. at 8. Whatever the reason no measurements exist, the burden to prove specific causation remains Plaintiff's, and an expert may estimate or reconstruct a dose through dispersion modeling, source characterization, or other accepted methods even where direct monitoring is unavailable. Plaintiff's experts did none of that. The Opposition's burden-shifting argument is a reason to excuse the missing analysis, not evidence supplying it.

### III.    Plaintiff's Defense of Dr. Wilkenfeld's Reasoning Confirms, Rather Than Cures, the Circularity.

Plaintiff's response to the circular-reasoning argument should be rejected because it restates the circularity in different words. The Opposition argues that the "severity and immediacy" of Plaintiff's clinical response is "clinical evidence of the magnitude of the toxic insult." *See* Opp. at 6–7. That is the inference the Motion identified: it reasons from the injury back to the exposure

that supposedly caused it. *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 759 (3d Cir. 1994). Inferring a toxic dose from the symptoms it is offered to explain assumes the very fact in dispute. Calling that inference "clinical medicine" does not give it an analytical anchor it lacks.

Plaintiff's argument that Dr. Wilkenfeld performed a "qualitative exposure assessment" does not rescue the opinion. *See* Opp. at 9. A list of substances that coke emissions "typically" contain, combined with the observation that Plaintiff smelled an odor and then felt ill, is not an exposure assessment. It identifies no concentration at Plaintiff's location and ties the opinion to no data from August 8. An opinion that "typical" emissions caused this injury, untethered to any incident-specific measurement, reflects "too great an analytical gap between the data and the opinion proffered" to support a finding of causation as a matter of law. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

## IV.    Plaintiff's Experts Still Did Not Rule Out the Two Documented Alternative Causes.

Plaintiff's argument that Dr. Wilkenfeld "addressed and ruled out" the alternative causes should be rejected because the testimony she cites is not a differential diagnosis. *See* Opp. at 9. Dismissing the August 10 landfill exposure as "so so so so unlikely" to be the sole cause, and recasting it as a "cumulative effect," is an assertion, not an analysis. Even under a cumulative-effect theory, Plaintiff still bears the same burden of identifying the substances involved, estimating the respective doses, and ruling out other contributing causes. No expert has done any of these. A differential diagnosis requires the expert to consider each potential cause and give a reasoned, record-based explanation for ruling it in or out. *Paoli*, 35 F.3d at 758–59. Characterizing an uninvestigated alternative as unlikely, without ever determining what substances the landfill fire released or what dose it delivered, is the opposite of ruling it out.

Plaintiff's argument that her treating physicians "effectively performed differential diagnoses" fails for the same reason. *See* Opp. at 9. A negative allergy panel and a diagnosis of

6

"airway disease due to other specific organic dusts" do not address either of the two alternative causes the Motion identified. Neither ruling speaks to the Saharan dust that Plaintiff's own treating physician documented as worsening her asthma three weeks before August 8, and neither speaks to the August 10 landfill exposure that produced the same symptoms and the same treatment two days later. *Compare* Opp. at 9 (allergy panel and ICD-10 coding) *with* Mot. at 9–10 (no expert analyzed the Saharan dust attribution or the August 10 exposure). An alternative cause is not ruled out by tests that never examined it.

Plaintiff's argument that the alternative causes are "jury questions" inverts the burden. *See* Opp. at 9–10. Alternative causes become jury questions only after the plaintiff produces a reliable causation opinion that accounts for them. Plaintiff's failure to rule them out is a failure of proof that the court resolves on summary judgment. *Joiner*, 522 U.S. at 146. Since there is no competing causation evidence for a jury to weigh, summary judgment must be granted.

## V.    The RADS Argument Does Not Supply the Objective Findings or the Dose the Diagnosis Requires.

Plaintiff's defense of the RADS diagnosis should be rejected because it confirms the two concessions that defeat it. *See* Opp. at 10. RADS requires documentation of a single, high-concentration toxic inhalation event followed by persistent, objectively measurable airway obstruction. The Opposition does not establish the high-concentration event, because no one calculated the concentration, and it concedes that Dr. Wilkenfeld testified there are "no objective test results." Explaining that objective findings are "usually not" present does not convert their absence into support for the diagnosis; it removes the objective anchor RADS demands.

Plaintiff's reliance on later pulmonary function testing does not fill that gap. *See* Opp. at 10. Declining FEV1 values and a reduced six-minute walk distance, recorded months after the incident, measure impairment; they do not identify its cause, date a single high-concentration

7

event, or distinguish the August 8 exposure from Plaintiff's worsening asthma and the August 10 exposure. The Opposition's concession that the label "does not change the causation analysis" is correct, and it is fatal: whether the condition is called RADS, severe persistent asthma, or aggravation, Plaintiff still must prove that the August 8 exposure caused it, and on this record she cannot.

**VI.     Plaintiff's Response to the Statement of Undisputed Material Facts Does Not Controvert Ocean Point's Key Facts, Which Should Be Deemed Admitted.**

Plaintiff's Response to Ocean Point's Statement of Undisputed Material Facts (ECF No. 287) should not be permitted to manufacture disputes because it does not comply with LRCi 56.1(b)(1)(i). The rule requires the respondent to address each numbered fact and answer with "undisputed," "undisputed for the purpose of ruling on the motion for summary judgment only," or "disputed," or, where appropriate, to state "objection, inadmissible" and cite the supporting rule or decision "without argument." LRCi 56.1(b)(1)(i). Where a fact is "disputed," the respondent "shall affix to the response copies of, and cite to, the precise portions of the record relied upon as evidence of each disputed material fact." *Id.* And the rule keeps argument out of the statement: any explanation of why the cited record is disputed and how it bears on summary judgment "shall appear in the Respondent's response to the motion and not in the response to the movant's statement of material facts." *Id.* "Failure to comply with this rule may result in having the fact at issue found to be undisputed for summary judgment purposes." *Id.*; *see also* LRCi 56.1(d). Measured against that standard, Plaintiff's response leaves Ocean Point's key facts admitted. As to the facts that decide this Motion, she does not deny them. She admits them and argues what they mean.

> **A.     *The Post-Incident Medical Facts Are Admitted and Should Be Deemed Undisputed.***

The facts that decide this Motion are admitted. Plaintiff expressly marked "Undisputed" the paragraph establishing that on August 9, 2022, the day after the exposure, her physical examination showed clear lungs bilaterally and no acute respiratory distress (SUMF ¶9), and the paragraph establishing that her window was down for "probably just seconds" (SUMF ¶6). *See* ECF No. 287 at 3, 5. She likewise admits that Dr. Chacko documented her worsening asthma and attributed it to Saharan dust three weeks before the incident (SUMF ¶1) and that she sought care after the August 10 landfill exposure (SUMF ¶¶ 11, 12). *Id.* at 1, 5. Those admitted facts, standing alone, establish the two documented alternative causes and the absence of objective post-incident findings on which the Motion turns.

Plaintiff's remaining responses to the dispositive paragraphs do not controvert them. To the paragraphs establishing that no dose was calculated and no dispersion modeling was performed (SUMF ¶¶7–8), she responds not that the analysis was done, but that its absence is "a consequence of Defendants' own failures" and that dose-response evidence "is not required" in an acute-exposure case. ECF No. 287 at 4–5. To the paragraphs cataloguing Dr. Wilkenfeld's admissions that he applied no methodology, quantified no dose, and ruled out no alternative cause (SUMF ¶¶15–20), she responds with the same acute-exposure theory and the same seven-source argument addressed in Parts I through V above. *Id.* at 11–15. Every one of those responses is an argument about the inference to be drawn from the fact. None denies that the fact is true.

The rule does not allow a respondent to convert an admitted fact into a disputed one by arguing its significance. A "disputed" response must be supported by record evidence "of each disputed material fact," LRCi 56.1(b)(1)(i), meaning evidence that the fact did not occur as stated, and Plaintiff offers none. The evidence she cites goes to a different question, which is what the undisputed facts mean. That is precisely the "explanation" the rule directs to the opposition brief

9

"and not" to the response to the statement of facts. *Id.* Because Plaintiff admits Ocean Point's key facts and contests only the conclusions to be drawn from them, SUMF ¶¶6–9, 11, and 15–20 should be deemed admitted.

### B.    In the Alternative, the Court Should Decline To Consider the Argument Embedded in the Response.

If the Court does not deem the facts admitted, it should decline to consider the argument Plaintiff embedded in her Rule 56.1 response. The rule confines such argument to the opposition brief, LRCi 56.1(b)(1)(i), and supplies an orderly mechanism for genuine partial disputes: where a numbered statement contains more than one fact, the respondent "may break the statement into subparts (*e.g.* 5(a) and 5(b))" and respond to each. LRCi 56.1(b)(1)(ii). Plaintiff used neither device properly. Her responses to SUMF ¶¶2, 3, 4, 5, 12, 14, and 21 adopt an "Undisputed in part; disputed in part" formulation the rule does not authorize, rather than break the statements into subparts, and append paragraphs of advocacy; and her responses to ¶¶7, 8, 10, 13, and 15 through 20 are argument from beginning to end. The Rule 56.1 statement is meant to isolate the facts genuinely in dispute, not to serve as a second opposition brief.

The appropriate course is for the Court to decline to consider the improperly placed material and to resolve the Motion on the parties' conforming submissions. Courts in this District decline to consider matter a party presents in contravention of the rules governing motion practice, rather than allow the party to evade the limits those rules impose. *Live Oak Banking Co. v. Princess Mill Props., LLC*, No. CV 2016-0070, 2021 WL 3889412, at *12 (D.V.I. Aug. 30, 2021); *see also In re BlackRock Mut. Funds Advisory Fee Litig.*, 327 F. Supp. 3d 690, 736 n.42 (D.N.J. 2018) (courts "ordinarily decline to consider" improperly presented matter because doing so would prejudice the non-moving party). Declining to consider Plaintiff's embedded argument leaves the

facts she failed to controvert, including the admitted post-incident medical facts, undisputed for purposes of the Motion.

**VII.        Plaintiff's Counter-Statement of Material Facts Confirms the Causation Gap Rather Than Filling It.**

Volume is not materiality. The Plaintiff's Counter-Statement of Material Facts (ECF No. 290) devotes sixty-six paragraphs to Plaintiff's background, the origins of the smoldering, the parties' conduct during the emergency, her course of treatment, and her damages. Nearly all of it addresses elements the Motion does not contest or assumes in Plaintiff's favor. What the Counter-Statement never supplies, in any paragraph, is the proof this Motion identifies as missing: the substance Plaintiff inhaled, the concentration and dose she received, or a differential diagnosis ruling out the other documented causes of her condition. The handful of paragraphs that even address causation simply recite that her treating physicians and Dr. Wilkenfeld reached conclusions, and conclusions built on temporal proximity are insufficient as a matter of law for the reasons stated above. A counter-statement that recites duty, breach, injury, and hardship in exhaustive detail while leaving the causation gap untouched has confirmed the gap, not filled it.

**VIII.   Plaintiff's Claim-Specific Arguments Do Not Save Counts That Each Require the Causation Proof She Lacks.**

Each of Plaintiff's five claims independently fails, and the Opposition's claim-specific arguments do not rescue them.

***A.        Gross Negligence (Count I).***

Plaintiff's gross-negligence argument fails on causation and on the merits. Gross negligence is not a separate cause of action under Virgin Islands law; it is negligence with a higher culpability threshold, and it rises and falls with Count II. *Brathwaite v. Xavier*, 71 V.I. 1089, 1110–11 (2019). Because Plaintiff cannot prove the causation element of negligence, the gross-negligence count fails with it. Even if Plaintiff's account of a smoldering dome and a delayed fire

11

response were assumed true for purposes of this Motion, those facts go only to breach. They do not establish what Plaintiff was exposed to, at what concentration, or in what dose, which is the specific-causation proof the law requires and that Plaintiff cannot supply.

### B.    Negligence (Count II).

Plaintiff concedes that her negligence claim turns on causation. *See* Opp. at 15. For the reasons stated in the Motion and in Sections I through V above, Plaintiff cannot establish specific causation, and Count II fails as a matter of law.

### C.    Failure to Warn (Count III).

Plaintiff's failure-to-warn argument fails for the reasons stated in the Motion, and the Opposition's premises-liability authorities do not change the result. For purposes of this Motion, Ocean Point has assumed that it controlled facility access, that it knew of the smoldering, and that no warning was given to CBP or to Plaintiff. Those assumptions do not save Count III, because a failure-to-warn claim is not a shortcut around causation. Whatever a warning would or would not have prevented, Plaintiff still must prove that the exposure she describes caused the injury she claims. That is a medical question, and it is the question Plaintiff cannot answer. No expert identified the substance she inhaled, measured or estimated her dose, or ruled out the other documented causes of her condition. If Plaintiff cannot prove the exposure injured her, then the absence of a warning about that exposure cannot have injured her either. The warning theory changes the breach story; it does not change the causation burden, and it supplies none of the missing proof.

The Opposition's remaining argument, that a warning "could have" led CBP to send an officer with respiratory protection or to choose a different route, fails for the independent reason that it is speculation, not record evidence. No witness testified that CBP would have acted

12

differently, and "could have" is not proof that a warning would have altered the outcome. Speculation about hypothetical precautions does not create a triable issue.

### D.    *Strict Liability (Count IV).*

Plaintiff's effort to distinguish *Commissioner of DPNR v. Century Aluminum Co.* is unpersuasive, and her strict-liability claim fails on causation in any event. The District Court, applying the Restatement to this very refinery, held that petroleum refining and coke storage are not abnormally dangerous activities. 2014 WL 184445, at *10–11 (D.V.I. Jan. 16, 2014). Plaintiff's attempt to limit that holding to groundwater contamination reads the decision too narrowly; the court's analysis addressed the activity, not a single pathway of harm. More fundamentally, strict liability relieves a plaintiff of proving negligence, not of proving causation. *Gerald v. R.J. Reynolds Tobacco Co.*, 68 V.I. 3, 15 (V.I. Super. 2017) (holding that causation is an essential element of strict products liability claims). Even if the theory applied, Plaintiff would still have to prove that the activity caused her injury, and for the reasons stated above she cannot.

### E.    *Private Nuisance (Count V).*

Plaintiff's attempt to recast her private-nuisance claim as a public-nuisance claim should be rejected, and the claim fails on causation regardless. The Second Amended Complaint pleads private nuisance, and Plaintiff held no possessory interest in the refinery premises that a private-nuisance claim requires. 28 V.I.C. § 331 (only those whose "property is affected by a private nuisance, or whose personal enjoyment of that property is likewise affected" may maintain a nuisance action); *Cifre v. Daas Enters., Inc.*, 62 V.I. 338, 360–61 (V.I. Super. 2015) (private nuisance is a "substantial and unreasonable nontrespassory interference with another's interest in the private use and enjoyment of land"). Plaintiff cannot amend her pleading through an opposition brief by relabeling the claim as public nuisance. *James v. Mosler*, 2021 VI SUPER 53U (Super. Ct. May 24, 2021) ("new theories require new complaints and a plaintiff may not amend his

13

complaint via arguments made in opposition to a summary judgment motion."). In any event, a public-nuisance claim by a private plaintiff requires proof of special injury caused by the interference, which returns Plaintiff to the same causation proof she lacks. The nuisance count fails on the threshold element and on causation alike.

## CONCLUSION

The Opposition confirms what the Motion established. After three years of litigation, there is no air sampling, no dose calculation, no dispersion modeling, and no differential diagnosis that rules out the worsening asthma documented weeks before the incident or the uncharacterized landfill exposure two days after it. Plaintiff answers a specific-causation failure by counting witnesses, invoking an acute-exposure exception that Third Circuit law does not recognize, and defending an inference that reasons from the injury to its cause. Her response to the Statement of Undisputed Material Facts does not controvert Ocean Point's key facts; it admits them and argues their meaning. None of that is the incident-specific proof the law requires, and none of it creates a genuine dispute on the element that decides every one of Plaintiff's claims. Ocean Point respectfully requests that the Court grant its Motion for Summary Judgment in its entirety and enter judgment in its favor on all five counts of the Second Amended Complaint.

14

Date:  July 13, 2026

**AKERMAN LLP**
201 East Las Olas Boulevard,
Suite 1800
Fort Lauderdale, Florida 33301
Telephone: (954) 463-2700
Facsimile: (954) 463-2224


By: /*s/Donnie M. King*
**Donnie M. King**
Virgin Islands No. 1237
donnie.king@akerman.com
tyresa.thompson@akerman.com
**Eric D. Coleman** (admitted *pro hac vice*)
eric.coleman@akerman.com
lauren.chang-williams@akerman.com
**Reginald E. Janvier** (admitted *pro hac vice*)
reginald.janvier@akerman.com
sharon.luesang@akerman.com
*Counsel for Defendant Limetree Bay Terminals,
LLC d/b/a Ocean Point Terminals*

15

## <u>CERTIFICATE OF SERVICE</u>

I certify that the foregoing document was filed with the Court's electronic filing system on

July 13, 2026 which will send a notice of electronic filing to all counsel of record.


*/s/Donnie M. King*
Donnie M. King

16