**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**

**DIVISION OF ST. CROIX**

NICOLE WOOTEN,

        PLAINTIFF,

    VS.

LIMETREE BAY TERMINALS, LLC, ET AL.

        DEFENDANTS.

CASE NO. 1:23-CV-00012

**PORT HAMILTON'S REPLY TO WOOTEN'S OPPOSITION
TO MOTION FOR SUMMARY JUDGMENT**

Wooten's opposition confirms rather than cures the defect at the heart of her case. Wooten lacks admissible evidence that a sub-minute exposure to smoke from smoldering petroleum coke caused the permanent, disabling lung disease she claims. Wooten answers not by identifying a reliable causation opinion, but by throwing seven opinions against the wall and hoping at least one will stick.

Quantity does not substitute for quality. Six of Wooten's seven sources never address general causation at all. They offer diagnoses paired with Wooten's inaccurate self-reports of her symptoms immediately following the exposure. A diagnosis coupled with a temporal attribution is not the reliable differential etiology that causation requires, and stacking six of them does not change that. On this record, no reasonable jury could find cause in fact without resorting to speculation.

The balance of Wooten's opposition consists of fallbacks that fare no better: an untimely and inadequately disclosed workers' compensation examiner; a USDOL decision to accept her worker's compensation claim that is inadmissible as proof of tort causation; and a common-knowledge theory that, by Wooten's own concession, cannot establish the permanent injuries that drive her damages. Because Wooten's opposition identifies no admissible evidence creating a genuine dispute on causation, Port Hamilton is entitled to judgment as a matter of law.

## I.    WOOTEN IDENTIFIES NO ADMISSIBLE EVIDENCE OF GENERAL CAUSATION

Wooten's opposition insists that "the record is replete with admissible evidence of causation," pointing to "six independent treating physicians," the second-opinion examination of Muraina, "the formal acceptance of the claim by the United States Department of Labor," and Wilkenfeld. Doc. 288 at 1. But the number of witnesses who attribute Wooten's condition to the August 8, 2022 exposure is beside the point, because a toxic tort plaintiff must prove two distinct things, and Wooten's sources speak (at most) to only one. She must prove both that petroleum coke smoke is

1

capable of causing the injuries she claims—severe persistent asthma, reactive airways dysfunction syndrome, and chronic respiratory failure with hypoxia—at the exposure she sustained, and that it did cause them. Wooten has no admissible evidence of the first. That gap is independently fatal, and no quantity of specific causation witnesses can fill it.

### A. GENERAL AND SPECIFIC CAUSATION ARE DISTINCT REQUIREMENTS, AND A DIFFERENTIAL ETIOLOGY PRESUPPOSES RATHER THAN ESTABLISHES GENERAL CAUSATION

To sustain a traditional toxic tort claim, a plaintiff "must show that they were exposed to the chemicals released by the defendants, that these chemicals can cause the types of harm they suffered, and that the chemicals in fact did cause them harm." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 752 (3d Cir. 1994) (emphasis added). This Court has applied that rule directly. *See Smith v. Katz*, 2013 WL 1182074, at *10 (D.V.I. Mar. 22, 2013) (holding that a plaintiff must prove both general and specific causation).

The two requirements are proved by different means. General causation is established through epidemiology, dose-response data, and the like; specific causation is established through a differential etiology—a process of elimination among causes already shown capable of producing the injury. *Hendrix ex rel. G.P. v. Evenflo Co.*, 609 F.3d 1183, 1195 (11th Cir. 2010). And that methodology "is built upon a reliable general causation finding—it does not establish general causation." *Leake v. United States*, 843 F. Supp. 2d 554, 564 (E.D. Pa. 2011).

That simple distinction dismantles the architecture of Wooten's opposition. Her theory is that a stack of physicians who "concluded" the exposure caused her condition creates a triable issue. But a conclusion that this exposure caused this patient's condition is a specific causation opinion; it assumes general causation. Stacking attributions cannot manufacture the predicate that each of them presupposes.

2

### B. WILKENFELD IS THE ONLY ONE OF WOOTEN'S SOURCES WHO PURPORTED TO ADDRESS GENERAL CAUSATION, AND HIS OWN CONCESSIONS SHOW HE CANNOT SUPPLY IT

Of all the sources Wooten marshals, only Wilkenfeld even attempted to show that a brief exposure to petroleum coke smoke is capable of causing permanent respiratory injury; her treating physicians and Muraina offered diagnoses and attributions, not capacity opinions (Part II, infra). Port Hamilton's motion to exclude Wilkenfeld (Doc. 272) explains why his opinion should be excluded. But even if his opinion is admitted, it fails to create a question of fact from which a jury could conclude that exposure to petroleum coke smoke for less than a minute is capable of causing Wooten's claimed injuries. For purposes of summary judgment, a single, dispositive point suffices: Wilkenfeld's general causation opinion rests entirely on studies of fundamentally different exposures. He conceded that the literature he relied upon measured exposures lasting weeks or months, Doc. 272-4 at 31:19–32:15; but that he did not know whether Wooten's sub-minute exposure could be compared to those long-term studies, *id.* at 33:8–11; and that he did not know the dose required to cause Wooten's injury. *Id.* at 33:11–13.

### C. WOOTEN'S REMAINING SOURCES DO NOT ADDRESS GENERAL CAUSATION AT ALL

Wooten's opposition treats general causation as established because the smoldering coke released "sulfur dioxide and particulate matter, substances that are universally recognized respiratory irritants," and because her physicians diagnosed "conditions known to result from toxic inhalation." Doc. 288 at 10. That conflates two different propositions. That an agent is a recognized general irritant says nothing about whether a sub-minute exposure to it is capable of causing Wooten's claimed disabling injuries. General causation is both exposure-specific and injury-specific; naming a "recognized irritant" is not a substitute for evidence of the harmful level of exposure necessary to cause this injury. *McClain*, 401 F.3d at 1241; *Smith*, 2013 WL 1182074, at *11. None of the six

3

treating physicians, and neither the Muraina examination nor the USDOL acceptance, offered any dose-response analysis, any exposure threshold, or any other basis for concluding that Wooten's brief exposure was capable of producing permanent injury. They diagnosed her conditions and attributed them to the event; they did not establish capacity to injure.

### D. IN THE ABSENCE OF ADMISSIBLE EVIDENCE OF GENERAL CAUSATION, PORT HAMILTON IS ENTITLED TO SUMMARY JUDGMENT

The consequence is settled. Once the testimony linking exposure to injury is excluded or found wanting, "the remaining evidence of record" is insufficient to create a triable issue and summary judgment is proper. *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 165 (3d Cir. 1999). That is true even where the plaintiff offers credentialed physicians, because "conclusory opinions of medical causation, even by qualified experts, are insufficient" to carry the burden. *McMunn v. Babcock & Wilcox Power Generation Grp., Inc.*, 869 F.3d 246, 272 (3d Cir. 2017). A toxic tort plaintiff who lacks reliable expert proof of causation cannot reach a jury; the claim fails as a matter of law. *Henry v. St. Croix Alumina, LLC*, 572 F. App'x 114, 120 (3d Cir. 2014); *Wade-Greaux v. Whitehall Labs., Inc.*, 874 F. Supp. 1441 (D.V.I. 1994) (excluding causation experts and granting summary judgment for failure to establish both general and specific causation), *aff'd*, 46 F.3d 1120 (3d Cir. 1994). Because Wooten cannot establish general causation, Port Hamilton is entitled to judgment as a matter of law.

### II. DIAGNOSIS IS NOT ETIOLOGY: WOOTEN'S TREATING PHYSICIANS DIAGNOSED HER CONDITIONS BUT DID NOT ESTABLISH THEIR CAUSE

Even setting general causation aside, Wooten's fallback fails on its own terms. She contends that her treating physicians "effectively performed differential diagnoses" that ruled in the exposure and ruled out the alternatives, and that their conclusions therefore create a triable issue on specific causation. Doc. 288 at 11. They did not. What the treaters performed was a differential diagnosis

4

(identifying which condition Wooten had) not a differential etiology (identifying what caused the condition). That distinction is not semantic. It is the line between the admissible treatment testimony Port Hamilton does not contest and the reliable causation methodology Rule 702 requires. On this record, no treating physician crossed it.

**A. A DIFFERENTIAL DIAGNOSIS IDENTIFIES THE CONDITION; ONLY A DIFFERENTIAL ETIOLOGY IDENTIFIES ITS CAUSE**

A differential diagnosis answers one question and a differential etiology a different one. Claiming to use the "'differential diagnosis' method is not some incantation that opens the *Daubert* gate"; the label merely "prompts three more" reliability questions: whether the expert accurately diagnosed the condition; reliably ruled the alleged cause in; and reliably ruled the alternatives out. *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 674 (6th Cir. 2010). Differential diagnosis "leads to the diagnosis of the patient's condition, not necessarily the cause of that condition"; "[t]he more precise but rarely used term is differential etiology." *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1252 (11th Cir. 2005).

Courts distinguish the medical diagnosis of a condition from "the type of causal diagnosis which the legal community calls 'differential,'" and they exclude a physician's causation opinion that does not "systematically rule out all other possible causes" and "was clearly more concerned with identifying and treating [the] condition than . . . identifying the specific substance that caused [it]." *Anderson v. Hess Corp.*, 592 F. Supp. 2d 1174, 1179 (D. N.D. 2009). As the Ninth Circuit explained, "[a]n assumption made for purposes of treatment doesn't establish causation." *Golden v. CH2M Hill Hanford Grp., Inc.*, 528 F.3d 681, 683 (9th Cir. 2008). The clinician's "low threshold," suited to treating a patient, "serves well in the clinic but not in the courtroom, where decision requires . . . at least a preponderance of the evidence." *Tamraz*, 620 F.3d at 673.

Port Hamilton does not dispute that Wooten's physicians competently diagnosed her *condition*. But a diagnosis coupled with a temporal attribution—the condition "stemmed from," was "triggered by," or was "caused by" the exposure—is not a differential etiology, and it does not establish that petroleum coke smoke caused the condition.

### B. NONE OF WOOTEN'S TREATING PHYSICIANS PERFORMED THE RULE-IN/RULE-OUT ETIOLOGY THAT CAUSATION REQUIRES

A reliable differential etiology requires the expert both to rule the alleged exposure in on a reliable basis and to rule the plausible alternatives out; and "where a defendant points to a plausible alternative cause and the doctor offers no explanation for why he or she has concluded that was not the sole cause, that doctor's methodology is unreliable." *Paoli*, 35 F.3d at 759 & n.27 (3d Cir. 1994); *accord Heller*, 167 F.3d at 156. The analysis must actually be performed: "[a] meaningful diagnosis of specific causation must specifically negate other possible causes." *Diaz v. Johnson Matthey, Inc.*, 893 F. Supp. 358, 376 (D.N.J. 1995).

Wooten's treating physicians did none of this. The record contains documented, plausible alternative causes that bracket the August 8 event on both sides. Weeks before the August 8 incident, Wooten sought a pulmonary function test because she believed her asthma was already worsening "because of the air quality" on St. Croix. Doc. 277-1 at 29:10–15. Two days after, on August 10, she suffered what she described as an "extreme breathing crisis" that she attributed to an unrelated landfill fire. Doc. 277-1 at 237:15–239:10. And her records document a history of anxiety with hyperventilation. No treating physician offered any reasoned basis for excluding these alternatives in favor of the sub-minute coke exposure. Their causation statements are bare attributions appended to a diagnosis—exactly the conclusory attribution the Third Circuit held insufficient in *McMunn* and *Heller* and the reasoned rule-in/rule-out analysis reliability requires.. *See McMunn*, 869 F.3d at 272.

6

### C. WOOTEN'S ONE METHODOLOGICAL EXAMPLE—GARFIELD'S ALLERGY PANEL—IS DIAGNOSIS DRESSED AS ETIOLOGY

Recognizing the gap, Wooten offers a single example of what she calls an actual differential: Garfield's allergy panel, which she says was "essentially all negative except for dust mite sensitization," thereby "ruling out allergic causes and confirming that the August 8 chemical exposure was the causative event." Doc. 288 at 11. The example illustrates the very error it is offered to cure. Excluding allergy as the diagnosis says nothing about which of the competing external causes (the brief coke exposure, the August 10 landfill fire, the pre-existing worsening asthma, or anxiety) actually produced her condition. "A meaningful diagnosis of specific causation must specifically negate other possible causes," *Diaz*, 893 F. Supp. at 376, and a negative allergy panel negates none of the competing external causes. Where a plaintiff presents multiple documented potential causes, the expert must apply the same methodology to each; selectively excluding one diagnostic category while never addressing the competing external causes is "not based on any reliable method." *Magistrini v. One Hour Martinizing Dry Cleaning*, 180 F. Supp. 2d 584, 610 (D.N.J. 2002). Garfield's panel is sound diagnostic medicine. It is not a differential etiology, and it does not establish causation.

Because Wooten's treating physicians diagnosed her conditions without performing the differential etiology that causation requires, their opinions do not create a genuine dispute of material fact on cause in fact.

### III.  MURAINA'S OPINION IS INADMISSIBLE AND, IN ANY EVENT, INSUFFICIENT

Wooten counts Muraina among her "six treating physicians." Doc. 288 at 4–5. He is nothing of the kind. By Wooten's own account, Muraina was "retained not by Plaintiff but by Plaintiff's employer and insurer" and "examined Ms. Wooten on April 19, 2024," a single time, in "a

comprehensive independent medical examination for workers' compensation purposes." Doc. 288 at 5, 8. He saw Wooten once, to render an opinion for the federal workers' compensation claim—not to treat her. That distinction is dispositive twice over: it strips his opinion of the Rule 26 disclosure exception Wooten invokes, and it leaves an opinion that is, in any event, no more reliable than the treater opinions addressed above.

### A. MURAINA NEVER TREATED WOOTEN; HIS CAUSATION OPINION IS RULE 702 EXPERT TESTIMONY THAT WAS NOT ADEQUATELY DISCLOSED, AND THE TIME TO CURE HAS PASSED

The exception that spares a treating physician from serving a written report under Rule 26(a)(2)(B) rests entirely on the premise that the physician formed his opinion in the course of treatment. The "relevant inquiry is whether the treating physician acquired his opinion as to the cause of the plaintiff's injuries directly through his treatment of the plaintiff." *Larson v. United States*, 2025 WL 1017516, at \*4 (D.V.I. Apr. 4, 2025) (quotation omitted). Where the opinion instead "extends beyond the facts disclosed during care and treatment of the patient" and "the doctor is specifically retained to develop opinion testimony, he or she is subject to the provisions of Rule 26(a)(2)(B)." *Lauria v. Nat'l R.R. Passenger Corp.*, 1997 WL 138906, at \*2 (E.D. Pa. Mar. 24, 1997); *accord Brenner v. Consolidated Rail Corp.*, 806 F. Supp. 2d 786, 790 (E.D. Pa. 2011).

Wooten may respond that Muraina was not a retained expert such that the lighter Rule 26(a)(2)(C) summary suffices. (Wooten's Rule 26(a)(2)(C) disclosure is attached as Port Hamilton Exhibit 4.) The argument does not rescue the opinion. A physician's opinion on the cause of a toxic exposure is expert testimony under Rule 702, not lay opinion: once a physician is "crossing the line into causation testimony, he will be providing expert testimony pursuant to" Rule 702, and may offer a lay causation opinion only where "the connection is a kind which would be obvious to laymen, such as a broken leg from being struck by an automobile." *Larson*, 2025 WL 1017516, at \*3–4. The

8

cause of severe persistent asthma and chronic respiratory failure is not obvious to laymen. A Rule 26(a)(2)(C) disclosure must contain "a summary of the facts and opinions to which the witness is expected to testify," and "the rule explicitly requires a summary—not simply the production of relevant records and notes." *Castillo v. KMart Corp.*, 2014 WL 585314, at \*1 (D.V.I. Feb. 14, 2014). A bare causal conclusion that names no supporting facts or methodology is "woefully deficient." *Larson*, 2025 WL 1017516, at \*5.

Rule 37(c)(1) bars a party from using an inadequately disclosed witness "to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless," and "[t]he burden is on the non-producing party to prove substantial justification or that its failure to produce was harmless." *United States v. Brace*, 334 F.R.D. 472, 476 (W.D. Pa. 2020). A non-disclosure is harmless where it "involves an honest mistake, coupled with sufficient knowledge by the other party of the material that has not been produced." *Id.* at 478. Wooten cannot make that showing. And where the excluded opinion is necessary to an essential element, exclusion is properly followed by summary judgment. *Cabrera v. Ross Stores of Pa., LP*, 646 F. App'x 209, 210 (3d Cir. 2016).

### B. IN ANY EVENT, MURAINA'S OPINION IS INSUFFICIENT: IT PERFORMS NO DIFFERENTIAL ETIOLOGY AND CONCEDES AN UNEXPLAINED COMPONENT IT CANNOT TIE TO THE EXPOSURE

Even if Muraina's opinion were admissible, it could not carry Wooten's burden for one additional reason particular to his report. His causal statement is a bare conclusion: "There is direct causal relationship between the diagnoses above and the work-related injury of exposure to Petroleum 'coke' burn smoke necessitating prolonged debility with aggravation of the pre-existing asthma and respiratory failure with hypoxia." Doc. 292-3. Like the treaters, Muraina quantified no exposure, identified no dose required to cause Wooten's injuries, conducted no general causation

analysis, and ruled out none of the documented alternatives. His report is a set of diagnoses followed by an attribution. That is the diagnosis-not-etiology defect addressed in Part II, not a reliable differential etiology.

Worse, Muraina's own report affirmatively undercuts the attribution. Addressing the most serious objective finding in his examination—Wooten's oxygen desaturation to 82% on a brief walk—he concluded that "[t]he hypoxemia cannot be explained solely by obstructive airway disease due to bronchial asthma, there must be an underlying pulmonary parenchymal or vascular component responsible for this," and he "recommend[ed] further workup" to identify it. Doc. 292-3. He cannot attribute the central abnormality in his report to any cause, let alone to a sub-minute exposure to coke smoke. An opinion that declares a "direct causal relationship" to the exposure in one breath and concedes in the next that the key objective finding "cannot be explained" and "must" have some other, still-unidentified cause is the very "analytical gap between the data and the opinion proffered" that Rule 702 forbids. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).[1]

At most, Muraina diagnosed Wooten's current condition and assumed its cause; he did not establish it. The Muraina examination is neither admissible nor sufficient to create a genuine dispute on cause in fact.

## IV. THE TREATING PHYSICIANS' RULE 26(A)(2)(C) DISCLOSURES CANNOT BEAR THE WEIGHT WOOTEN PLACES ON THEM

That leaves the five treating physicians Wooten identified under Rule 26(a)(2)(C)—Campbell, Morton-Acker, Otusanya, Garfield, and Graham. Their opinions do not create a triable issue for the reasons already given: they say nothing about general causation (Part I), and they are diagnoses

---

[1] Wooten invokes this same sentence to argue that Muraina "rul[ed] out pre-existing asthma," Doc. 288 at 11–12; but the sentence does the opposite—it identifies an unexplained component, not the petroleum coke exposure, as the missing piece.

accompanied by temporal attributions, not the differential etiology causation requires (Part II). They fail for two further, independent reasons. Their causation opinions are expert testimony that Wooten never adequately disclosed, and the 2023 amendment to Rule 702 forecloses the answer on which her opposition rests—that Port Hamilton's objections go to weight rather than admissibility.

### A. TREATING PHYSICIAN CAUSATION IS RULE 702 EXPERT TESTIMONY, AND THE 2023 AMENDMENT TO THE RULE FORECLOSES WOOTEN'S "WEIGHT, NOT ADMISSIBILITY" REFRAIN

As established, a treating physician's opinion on the cause of a toxic exposure is expert testimony governed by Rule 702, not lay opinion. *See* Part III.A. The December 2023 amendment to Rule 702 was adopted precisely because "many courts" had wrongly treated "the sufficiency of an expert's basis and the application of the expert's methodology [as] questions of weight and not admissibility." FED. R. EVID. 702 advisory committee's note to 2023 amendment. The amendment forecloses the refrain running through Wooten's opposition—that Port Hamilton's criticisms of her physicians create factual disputes for the jury, and that the admissibility and weight of opinion evidence is a question for the jury.

### B. THE RULE 26(A)(2)(C) SUMMARIES ARE CONCLUSORY

Independently, the disclosures do not satisfy Rule 26(a)(2)(C). As explained in Part III.A, a Rule 26(a)(2)(C) disclosure must contain "a summary of the facts and opinions to which the witness is expected to testify," and the rule "requires a summary—not simply the production of relevant records and notes." *Castillo*, 2014 WL 585314, at *1. Wooten's July 11, 2025 disclosures are the opposite of a summary. Each treater is identified in a sentence or two that states a diagnosis and appends a bare attribution: *e.g.,* Garfield "will testify as to Plaintiff's severe persistent asthma triggered by exposure to the petroleum coke smoke." *See* Port Hamilton Exh. 4 (Wooten's Rule 26(a)(2)(C) disclosure). There is no (1) summary of the facts on which each causal opinion rests; (2)

identification of the methodology employed; or (3) statement as to the basis for ruling out other causes. These are the bare "caused by" and "triggered by" conclusions that *Castillo* and *Larson* hold insufficient. The remedy is exclusion of such opinions. FED. R. CIV. P. 37(c)(1).

C. **SEVERAL OF THE DISCLOSED PHYSICIANS ARE NOT QUALIFIED TO GIVE THE CAUSATION OPINIONS ATTRIBUTED TO THEM, AND OTHERS STATE NO CAUSATION OPINION AT ALL**

Two of the treaters present an additional problem of qualification. Rule 702 requires that the witness be qualified to give the specific opinion offered, and a physician who "has no other qualifications other than his medical education and his years practicing as a pulmonologist," who "is neither an epidemiologist nor a toxicologist" and "does not specialize in occupational medicine," is not qualified to opine that a chemical exposure caused a plaintiff's respiratory disease. *Diaz v. Johnson Matthey, Inc.*, 893 F. Supp. 358, 372–73 (D.N.J. 1995). Morton-Acker is Wooten's primary-care physician, yet is offered to opine that the exposure caused RADS and severe persistent asthma. Otusanya practices at Atlanta Heart Associates, yet is offered on the cause of a pulmonary condition. Port Hamilton Exh. 4 at 3, 6. The same mismatch pervades Wooten's broader list, which offers a nurse practitioner (Lewis) and a nephrologist (Ovadje) to attribute Wooten's conditions to the smoke. (*Id.* at 5–6.)

D. *BRATHWAITE V. XAVIER* **DOES NOT SAVE THE DISCLOSURES**

Wooten's answer to all of this is *Brathwaite v. Xavier*, 71 V.I. 1089, 1098–99 (V.I. 2019), which she cites for the proposition that "[t]he admissibility and weight of this evidence are questions for the jury." Doc. 289 at 10. *Brathwaite* does not support that claim. First, it addressed a fundamentally different issue. There, the Superior Court had already found the expert qualified and his methodology reliable and compliant with V.I. R. EVID. 702's reliability and fit requirements; the only question was whether the court could nonetheless exclude the opinion under Rule 403. 71 V.I.

¶¶9-10. Second, *Brathwaite* is a pre-2023-amendment Superior Court case and excluding an unreliable expert opinion is "an evidentiary ruling, separate and distinct from any substantive question regarding causation," and is "governed by federal law"—the Federal Rules of Evidence. *Pritchard v. Dow Agro Scis.*, 430 F. App'x 102, 104 (3d Cir. 2011).

## V. THE DEPARTMENT OF LABOR'S ACCEPTANCE OF WOOTEN'S WORKERS' COMPENSATION CLAIM IS NOT PROOF OF TORT CAUSATION

Wooten's last source is the Department of Labor's "acceptance" of her FECA workers' compensation claim "adopt[ing] Muraina's opinion" that the exposure caused her injuries. Doc. 288 at 8–9; Doc. 289 at 9–10 (¶¶21, 23). The acceptance is neither competent nor admissible for that purpose. It applies a lesser standard than the judicial standard for cause in fact; it reaches conditions Wooten does not claim in this suit; and it is not admissible evidence of causation—whether offered as an expert opinion or as an official agency finding.

### A. THE FECA ACCEPTANCE APPLIES A DIFFERENT STANDARD AND DOES NOT REACH THE INJURIES WOOTEN CLAIMS

FECA compensates a federal employee for injury "sustained while in the performance of . . . duty." 5 U.S.C. § 8102(a). That work-relatedness standard is not the tort cause in fact standard. A FECA determination that a condition is compensable is not a determination that a particular exposure caused any particular injury. Moreover, by Wooten's own account, the OWCP accepted only "anxiety disorder, major depressive disorder, and unspecified asthma with acute exacerbation." Doc. 288 at 8–9. It did not accept—and so made no causal finding as to—the severe persistent asthma, reactive airways dysfunction syndrome, chronic respiratory failure with hypoxia, or permanent functional disability that are the injuries Wooten actually claims here.

### B. THE ACCEPTANCE IS NOT ADMISSIBLE EVIDENCE THAT THE EXPOSURE CAUSED WOOTEN'S INJURIES

13

Wooten offers the acceptance as affirmative proof of causation, but it is not admissible for that purpose. It is not expert testimony: the USDOL is not a physician or a Rule 702 expert, and an administrative determination that a claim is compensable is not a medical opinion that satisfies Rule 702's reliability requirements. To the extent it is simply Muraina's opinion repackaged (Wooten says the DOL "adopted Muraina's opinion," Doc. 289 at 9) that opinion must independently satisfy Rule 702. It does not, for the reasons stated in Part III. An agency's adoption of an inadmissible expert opinion does not make the opinion admissible.

Further, to the extent the acceptance is offered as an official agency finding, its causal conclusion is excludable. An investigative report that states a conclusion may be admitted under Rule 803(8) only if it "satisfies [the rule's] trustworthiness requirement." *Morro v. DGMB Casino, LLC*, 112 F. Supp. 3d 260, 273 (D.N.J. 2015). The acceptance is untrustworthy as a measure of tort causation because the OWCP proceeding was non-adversarial. *See Nat'l Ass'n of Letter Carriers v. USPS*, 272 F.3d 182, 188 (3d Cir. 2001) (holding OWCP's factual findings awarding FECA benefits did not bind a later adjudicator, given the "non-adversarial" nature of FECA compensation proceedings). *See also Orber v. Jain*, 2012 WL 1565299, at *2–3 (D.N.J. May 2, 2012) (excluding a Social Security disability determination offered as proof of causation because the agency proceeding was not adversarial in nature; the agency did not have an institutional interest in determining the cause of the claimant's condition; and the claimant had a strong interest to build a causation foundation for related litigation). Here, the agency had no institutional interest in the cause of Wooten's condition; there was no party opposing her claim; and Wooten—already litigating this case—had every incentive to build a one-sided causation record before the agency. The acceptance is inadmissible.

**VI. NEITHER COMMON KNOWLEDGE NOR TEMPORAL PROXIMITY CAN SUPPLY THE MISSING**

**CAUSATION PROOF**

Wooten's final fallback is that, even without expert testimony, "the immediate onset of Ms. Wooten's symptoms is within the common knowledge of a jury." Doc. 288 at 14. Common knowledge does not support her claim of permanent, disabling injuries.

### A. COMMON KNOWLEDGE REACHES, AT MOST, AN IMMEDIATE TRANSIENT REACTION

Whether a seconds-long exposure to petroleum coke smoke caused Wooten's claimed disabling injuries is not a matter of ordinary experience. Such a question "involves medical and scientific matters which are beyond the ken of the average juror." *Young v. Burton*, 567 F. Supp. 2d 121, 127 (D.D.C. 2008) (excluding plaintiffs' toxic mold-exposure causation expert), *aff'd*, 354 F. App'x 432 (D.C. Cir. 2009). The Third Circuit has rejected the very argument Wooten makes—that such injuries are obvious or common in everyday life and so provable without an expert. *Henry*, 572 F. App'x at 120. Wooten acknowledges that "the permanence and severity of Ms. Wooten's injuries require expert testimony." Doc. 288 at 15–16. As already shown, she does not have any evidence of general causation. The common-knowledge theory therefore cannot rescue the permanent injury claims that drive her damages; at most it bears on a transient asthma flare—which Port Hamilton's motion does not concede. *See* Part VIII.

### B. WOOTEN'S OWN AUTHORITIES CONFIRM THAT A LAY INFERENCE REACHES ONLY THE IMMEDIATE REACTION, NOT PERMANENT DISEASE

Every case Wooten cites either permitted a lay or temporal inference solely for immediate, transient symptoms from an obvious exposure or required the expert proof she lacks. None supports a lay inference that a sub-minute exposure caused permanent, severe lung disease:

- *Wade v. Plantation Pipe Line Co.*, 2007 WL 1668815, at *3 (M.D. Ala. 2007): the court allowed lay proof of causation for immediate reaction (dizziness, nausea, breathing difficulty,

irritated eyes, and diarrhea) to strong noxious fumes—while warning that "[a]t some point, the causation between exposure to diesel fuel and a medical condition would be beyond the knowledge of an untrained person to deduce."

- *G.C. ex rel. Johnson v. Wyndham Hotels & Resorts, LLC*, 829 F. Supp. 2d 609, 613 (M.D. Tenn. 2011): allowing lay proof "to show that the symptoms occurring immediately after G.C.'s ingestion were caused by the pesticide."

- *Gass v. Marriott Hotel Servs., Inc.*, 558 F.3d 419, 430, 433 (6th Cir. 2009) held that expert testimony is not needed to establish negligence or causation for the immediate, obvious symptoms suffered when hotel room was filled "with airborne poison." *Gass* recognized that a complex causation question is "beyond the capacity of twelve lay people, absent some assistance from an expert."

- *Arias v. DynCorp*, 928 F. Supp. 2d 1, 6–7 (D.D.C. 2013): dismissed claims that lacked expert proof of general causation and allowed a lay temporal inference only as to "acute injuries."

- *Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 930–31 (8th Cir. 2001) is not a common-knowledge case: the plaintiff there prevailed on the testimony of a qualified expert and the immediacy of her symptoms went to reliability rather than to any lay inference.

Most tellingly, Wooten's lead temporal-proximity case cuts squarely against her. *Cavallo v. Star Enter.*, 892 F. Supp. 756, 773 (E.D. Va. 1995), *aff'd in part*, 100 F.3d 1150 (4th Cir. 1996) involved the very injuries she claims—RADS and chronic respiratory problems—and held that a causation opinion "founded primarily on the temporal connection between the [exposure] and the development of [the plaintiff's] symptoms" was inadmissible. The "chemical X. . . immediately thereafter. . . symptom Y" passage Wooten quotes is a narrow exception the *Cavallo* court expressly found did not apply; it held that "[a]bsent reliable expert testimony," a jury "could only speculate,

16

based on [a] loose temporal relationship and not scientific fact." *Id.* at 773–74. That is Wooten's case exactly. The permanent lung disease she claims did not present "immediately thereafter"—her more serious (but still moderate) symptoms developed only after she drove herself back to the airport—and no reliable expert testimony connects the sub-minute exposure to permanent injury.

Finally, the complexity of this case makes Wooten's temporal argument expert-dependent—and deficient. Her explanations that the August 9 emergency room "recovery" was steroid masking, and that the August 10 landfill fire was not an independent cause, rest entirely on Wilkenfeld's speculative conclusion based, at least in part, upon his erroneous belief that Wooten was administered intravenous steroids.[2] Exclude him—as the pending motion (Doc. 272) asks—and the inferences Wooten needs to make her temporal story "compelling" disappear along with him.

## VII. WOOTEN'S RESPONSE TO THE STATEMENT OF UNDISPUTED MATERIAL FACTS DOES NOT CONTROVERT PORT HAMILTON'S KEY FACTS, WHICH SHOULD BE DEEMED ADMITTED

Under LRCi 56.1(b)(1), a response to a Statement of Undisputed Material Facts must answer each numbered fact with one of three specific phrases (or a citation-supported "objection, inadmissible") and do so without argument. "Any explanation as to why the cited portion of the record is disputed. . . shall appear in the Respondent's response to the motion and not in the response to the movant's statement of material facts." LRCi 56.1(b)(1)(i). Wooten's response (Doc. 289) disregards each requirement. It answers ¶¶1, 2, 8, 10, and 13 with an "Undisputed in part; Disputed in part" formulation the rule does not authorize (rather than breaking those statements into subparts, see LRCi 56.1(b)(1)(ii)), and Wooten's responses to ¶¶14–17 and ¶¶20–23 are argument. The Rule 56.1 statement is meant to isolate the facts genuinely in dispute, not to serve as a means to evade the length limitations of LRCi 7.1(b).

---

[2] This error is explained in detail in Port Hamilton's reply to Wooten's opposition to Port Hamilton's motion to exclude Wilkenfeld. *See* Doc. 293 at 8.

Wooten's "disputes" do not challenge Port Hamilton's facts. Her responses to the August 9 emergency room facts—that she presented for a headache and a hand tremor (¶14); reported that her shortness of breath had resolved and she was no longer nauseous (¶15); was examined and found negative for respiratory distress with clear lungs (¶16); and was given a clinical impression of "Headache" and released home (¶17)—deny none of those facts. She marks each "Disputed," then argues only the significance of the facts (that the August 9 presentation reflects steroid "masking" and that clear lungs "do not negate permanent injury"). Doc. 289 at 6–7. Such argument belongs in the opposition brief. In her opposition memorandum, Wooten accepts the August 9 findings and argues only that "[t]emporary symptom suppression while heavily medicated is not recovery." Doc. 288 at 13. Because Wooten admits the August 9 facts and disputes only the inference to be drawn from them, SUMF ¶¶14–17 should be deemed admitted, along with 7 and 18, which she expressly admits.

LRCi 56.1(b)(1) requires that a dispute be supported by "the precise portions of the record relied upon as evidence of each disputed material fact." Wooten's response to SUMF ¶20 fails that test. SUMF ¶20 states that on August 10, 2022, Wooten experienced an "extreme breathing crisis" that she attributed to fumes from a nearby landfill fire. Wooten answers "Disputed," asserting that page 53 of her deposition contains no mention of a landfill fire and that Campbell "confirmed that she was having a continued exacerbation of her asthma because of the smoke inhalation on August 8, 2022," citing his August 10 treatment note. Doc. 289 at 8 (citing Doc. 292-17). The SUMF ¶20 landfill-fire attribution was not confined to page 53; Port Hamilton cited Wooten's account at 237:15–239:10, where she described smelling the landfill fumes through her vehicle's air-conditioning and attributed the August 10 crisis to them. And Campbell's note "confirm[s]" nothing related to causation. The only reference in that note to the August 8 event is Wooten's own

18

reported history—that she "was exposed to chemical fire/smoke" on August 8—recorded in the history rather than the physician's finding. Campbell diagnosed asthma and reactive airway disease with no causation attribution. A physician's transcription of the patient's own history is not a causal opinion, and a diagnosis is not an etiology. Wooten's characterization of the note is unsupported by the very pages she cites.

That Wooten's SUMF response is intended as argument is evident by the fact that her opposition brief incorporates it "as if fully set forth herein." Doc. 288 at 1 n.1. The Court should deem SUMF ¶¶7, 14-18, 20, and 21-23 undisputed for purposes of the motion. At a minimum, it should decline to consider the argument Wooten embedded in her Rule 56.1 response and resolve the motion on the parties' conforming submissions. Either way, the August 9-10 facts stand undisputed.

As for Port Hamilton's SUMF ¶19, Wooten objects that a webpage is not part of the summary-judgment record. Doc. 289 at 8. The objection changes nothing, because Wooten's own expert testified that he considers desaturation under 90% significant, Doc. 272-4 at 83:21–22, and acknowledged Wooten's "numerous other medical visits with normal O2 saturations," with Muraina's results being the only outlier. *Id.* at 85:10–24.

## VIII.    PORT HAMILTON CONCEDES NO INJURY

Wooten frames the motion as though Port Hamilton had conceded her injuries, asserting that "Port Hamilton concedes duty, breach, and damages; only causation is at issue." Doc. 288 at 3. It has not done so. Nor did it concede that Wooten had even a transient injury. Port Hamilton's memorandum described the *most* a sub-minute exposure could possibly produce: a transient irritation or temporary asthma flare. That is a ceiling on what such an exposure is capable of causing; it is not an admission that the exposure caused Wooten any injury, transient or otherwise.

19

The distinction matters because Port Hamilton seeks dismissal of all of Wooten's claims, not merely her claim for permanent injury. The absence of proof of general causation entitles it to judgment on every claim that depends on that element, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Cause in fact is an essential element of each of Wooten's claims. There is no admissible evidence that the petroleum coke exposure caused Wooten any injury—including the transient, acute symptoms she reported. And even if a lay jury could infer that the exposure caused an immediate, transient reaction (Part VI), Wooten still could not survive summary judgment: Port Hamilton does not concede that any compensable reaction occurred. To avoid judgment Wooten "must provide competent evidence from which a rational trier of fact can find in his or her favor," not speculation. *Roberts v. Kmart Corp*., 2011 WL 2975886, at *1 (D.V.I. July 21, 2011).

Wooten's remaining rejoinder—that her preexisting asthma made her "more susceptible to injury," Doc. 288 at 6—does not lower her burden. The eggshell-plaintiff principle is not a substitute for proof that the exposure caused the injury. *See McGregor for Estate of Yawer v. City of Chicago*, 2020 WL 10110999, at *3 (N.D. Ill. July 8, 2020) ("The eggshell-skull principle does not affect causation.").

## CONCLUSION

Wooten's opposition identifies no admissible evidence that a brief exposure to petroleum coke smoke caused the injuries she claims. Her specific causation witnesses and the USDOL's acceptance supply no admissible proof of general causation; and neither common knowledge nor temporal proximity can bridge the gap. Because there is no genuine dispute of material fact on cause in fact, Port Hamilton is entitled to summary judgment.

Respectfully submitted,

**ANDREW C. SIMPSON, P.C.,**

20

Counsel for Port Hamilton Refining and Transportation, LLLP

Dated: July 13, 2026

    /s/ Andrew C. Simpson
By:  Andrew C. Simpson, Esq.
VI Bar No. 451
ANDREW C. SIMPSON, P.C.
2191 Church Street, Suite 5
Christiansted, VI 00820
Tel: 340.719.3900
asimpson@coralbrief.com

21