IN THE DISTRICT COURT OF THE VIRGIN ISLANDS

DIVISION OF ST. CROIX

NICOLE WOOTEN,

        PLAINTIFF,

    VS.

LIMETREE BAY TERMINALS, LLC, ET AL.

        DEFENDANTS.

CASE NO. 1:23-CV-00012

**PORT HAMILTON REFINING AND TRANSPORTATION, LLLP'S REPLY TO PLAINTIFF'S CONSOLIDATED COUNTER-STATEMENT OF MATERIAL FACTS**

Pursuant to LRCi 56.1(c), Port Hamilton Refining and Transportation, LLLP replies to the numbered facts in Plaintiff's Consolidated Counter-Statement of Material Facts (Doc. No. 290) as set forth below, restating each statement followed by Port Hamilton's response. Because Plaintiff's counter-statement is consolidated across Port Hamilton's and Ocean Point Terminals' separate motions for summary judgment, many of its paragraphs concern matters immaterial to Port Hamilton's motion, which is limited to cause in fact; Port Hamilton responds to those paragraphs "undisputed for the purpose of ruling on the motion for summary judgment only" without conceding their materiality or substance. Where a single numbered statement combines more than one fact, Port Hamilton has broken it into subparts and responded to each. Consistent with LRCi 56.1(c), argument is reserved for Port Hamilton's reply memorandum and does not appear here.

1

**1.**  Nicole Wooten is a 40-year-old woman who holds a Bachelor of Science in Psychology, a Master of Arts in Secondary Education, and a cybersecurity certification. (Pl. Exh. 27.)

> **Response:**  Undisputed for purposes of summary judgment.

**2.**  Before the August 8, 2022 exposure, Ms. Wooten had a varied professional career, including positions in dental offices, as an educator, and ultimately as a U.S. Customs and Border Protection Officer, a federal law-enforcement position she began in October 2020. (Pl. Exhs. 27, 4.)

> **Response:**  Undisputed for purposes of summary judgment.

**3(a).**  Ms. Wooten was diagnosed with asthma at approximately five years of age. (Pl. Exhs. 4, 15.)

> **Response:**  Undisputed.

**3(b).**  Before the August 8, 2022 exposure, Ms. Wooten's asthma was "well-controlled"; she "rarely" required her albuterol inhaler, prescribed on an as-needed basis only, and, as she wrote in her August 31, 2022 hardship request, "my condition, even as an adult, has yet to require a medication adjustment." (Pl. Exhs. 4, 15.)

> **Response:**  Disputed. (Exh. 1 (Doc. 277-1), Wooten Depo. at 29:1-14. Doc. 291-12, ECF p.2 (NW001522) (top paragraph, starting with "While visiting Georgia, . . .").

**4.**  On September 14, 2018, as part of her pre-employment screening for CBP, Ms. Wooten underwent a pulmonary-function test showing "normal flow volumes as well as normal diffusing capacity," and she was cleared to perform all required job tasks. (Pl. Exhs. 35, 29.)

> **Response:**  Undisputed for purposes of summary judgment.

**5.**  On July 15, 2022, twenty-four days before the exposure, Dr. Thomas Chacko noted worsening asthma symptoms since Ms. Wooten moved to the Virgin Islands, found her PFT normal, and prescribed daily Symbicort for asthma maintenance; Plaintiff underwent the test because she was concerned about the air quality on St. Croix and testified the results were "over 90 percent." (Pl. Exhs. 35, 1.)

> **Response:**  Undisputed.

2

**6.** Before the exposure, Ms. Wooten was physically active, playing basketball and exercising (cardio and weight training) three to five times per week. (Pl. Exhs. 4, 15.)

    **Response:** Undisputed for purposes of summary judgment.

**7.** Port Hamilton operates refining assets at the former Limetree Bay Refinery on St. Croix, which it purchased through a bankruptcy sale on December 21, 2021; the refinery included coke storage domes containing petroleum coke. (Pl. Exhs. 6, 7.)

    **Response:** Undisputed for purposes of summary judgment.

**7a.** George Williams affirmed that from July 2018 to November 2023 he was maintenance engineering manager for Ocean Point Terminals, reporting to COO Jeff Charles, and that around 2020 he was transferred to support Limetree Bay Refining. (Pl. Exh. 28.)

    **Response:** Undisputed for purposes of summary judgment.

**7b.** Mr. Williams attested that his duties included traveling around the facility to check on work and contractors, spending one to two hours in the field each day. (Pl. Exh. 28.)

    **Response:** Undisputed for purposes of summary judgment.

**7c.** Mr. Williams attested that in August 2022 he noticed discoloration and blistering paint on a coke dome and, driving by with his windows down, smelled a sulfur-like odor, experienced stinging in his nose and throat, watery eyes, and coughing, but immediately left the area, was able to recover, and did not report the incident. (Pl. Exh. 28.)

    **Response:** Undisputed for purposes of summary judgment.

**7d.** Mr. Williams attested that over the next few days he observed little activity near the domes, saw no vehicles, people, fire truck, or barricades, and could see a hot spot on the north coke dome. (Pl. Exh. 28.)

    **Response:** Undisputed for purposes of summary judgment.

**7e.** Mr. Williams attested that at Ocean Point's daily morning meetings led by Jeff Charles the smoldering of the north dome was noted, yet he did not observe Ocean Point take remedial action. (Pl. Exh. 28.)

**Response:**  Undisputed for purposes of summary judgment.

**7f.**  Mr. Williams attested that days or weeks later, when dark smoke was coming from the dome, he saw contractors, refinery personnel, heavy equipment, a fire truck, and barricades. (Pl. Exh. 28.)

    **Response:**  Undisputed for purposes of summary judgment.

**7g.**  Mr. Williams attested that neither Jeff Charles nor anyone from Ocean Point asked him to provide additional maintenance personnel to help contain the smoldering. (Pl. Exh. 28.)

    **Response:**  Undisputed for purposes of summary judgment.

**8.**  On August 4, 2022, a carbon-monoxide alarm activated at Coke Dome #1; by 6:15 a.m. a safety supervisor observed smoke inside the dome, and Incident Command was activated by 10:00 a.m. (Pl. Exh. 11.)

    **Response:**  Undisputed for purposes of summary judgment.

**9.**  Port Hamilton lacked adequate fire-suppression equipment; on August 5, 2022, VP Fermin Rodriguez emailed Ocean Point's Jeffrey Charles requesting fire equipment. (Pl. Exh. 11.)

    **Response:**  Undisputed for purposes of summary judgment.

**10.**  Ocean Point conditioned assistance on payment, citing that Port Hamilton was $7.9 million in arrears and had no shared-service arrangement including emergency response, and the OPT Fire Chief was told not to respond on August 4, 2022. (Pl. Exh. 11.)

    **Response:**  Undisputed for purposes of summary judgment.

**11.**  On August 8, 2022, David Bornn offered Virgin Islands Fire Services assistance, which Rodriguez declined, stating Port Hamilton had "on hand the equipment that is needed"; a rescue van later had a dead battery and empty fuel tank on August 12. (Pl. Exh. 11.)

    **Response:**  Undisputed for purposes of summary judgment.

**12.**  Port Hamilton's August 12, 2022 press release confirmed the petroleum coke was "found smoldering" on August 4, 2022 and that water had been "applied 24 hours a day" since; the smoldering continued approximately twenty-three days. (Pl. Exhs. 11, 7.)

**Response:**  Undisputed for purposes of summary judgment.

**13.**  On August 8, 2022, Ms. Wooten, performing her CBP duties, entered the refinery property and drove toward the tugboat area to conduct a control inspection; there were no warnings, no signs, and she was allowed to enter. (Pl. Exhs. 1, 4.)

   **Response:**  Undisputed for purposes of summary judgment.

**14.**  When Ms. Wooten arrived between the docks and the coke domes, she noticed thick black smoke, approached two workers, and rolled down her window to ask whether it was safe to proceed; toxic smoke and gases entered her vehicle, and when she rolled the window back up she immediately began coughing and experiencing shortness of breath. (Pl. Exh. 1.)

   **Response:**  Objection, fails to provide a specific citation to the record. LRCi 56.1.

**15.**  Ms. Wooten's albuterol inhaler failed to relieve her symptoms; she experienced shaking, vomiting, chest pain, hives, and labored breathing; Officer Michael Henry evaluated her and recommended outside care, and a coworker drove her to urgent care. (Pl. Exhs. 1, 4.)

   **Response:**  Objection, fails to provide a specific citation to the record. LRCi 56.1.

**16.**  At Acute Alternative Medical Group on August 8, 2022, Dr. Lyn Campbell examined Ms. Wooten (who presented "in tears" with "chest tightness" beginning "after inhaling smoke at work"), administered two nebulizer treatments and a Kenalog steroid injection, diagnosed reactive airway disease, and prescribed a Medrol Dose Pack. (Pl. Exh. 17.)

   **Response:**  Undisputed for the purpose of ruling on the motion for summary judgment. Objection, to the extent offered as an opinion on the cause of Plaintiff's injuries (Fed. R. Evid. 702; Fed. R. Civ. P. 26(a)(2), 37(c)(1)).

**17.**  On August 9, 2022, Ms. Wooten went to the emergency room at Juan F. Luis Hospital with continued shortness of breath, headache, and tremors, and was evaluated by Dr. Lacey Menkinsmith, who noted that Ms. Wooten's exposure to smoke caused an asthma exacerbation. (Pl. Exh. 24.)

   **Response:**  Disputed. Exh. 3 (Doc. 277-3) at 1–2; Pl. Exh. 24 (Doc. 291-1) at NW004272–NW004274; SUMF ¶¶14–17.

5

**18.** On August 10, 2022, Ms. Wooten returned to Dr. Campbell with a chief complaint of "Difficulty Breathing" ("SOB that she has had x2 days"); the record notes she "was exposed to chemical fire/smoke on monday 8/8/22," and Dr. Campbell assessed an "extreme breathing crisis" and administered a second steroid injection and additional prescriptions. (Pl. Exh. 17.)

> **Response:** Undisputed for the purpose of ruling on the motion for summary judgment.

**19.** The notation "SOB that she has had x2 days" demonstrates that Ms. Wooten's shortness of breath was continuous from August 8 through August 10 and was not a new or intervening event, but a continuation of the respiratory distress that began with the petroleum coke exposure. (Pl. Exh. 17.)

> **Response:** Disputed. Exh. 3 (Doc. 277-3) at 1; Exh. 1 (Doc. 277-1), Wooten Depo. at 237:2–5.

**20.** Dr. Wilkenfeld testified that the suggestion that a landfill fire on August 10 was the sole cause of Ms. Wooten's symptoms is "so so so so unlikely," that steroids remain active for 24–48 hours and symptoms would be expected to recur when they wore off, and Dr. Muraina noted the symptoms "returned" when she went back to urgent care on August 10. (Pl. Exhs. 5, 3.)

> **Response:** Objection, inadmissible (Fed. R. Evid. 702). Undisputed that Dr. Wilkenfeld so testified.

**21.** Dr. Garfield's records state that "the fire was burning this entire time" and that Ms. Wooten "breathed chemicals intermittently throughout the week," and the Incident Report confirms the smoldering continued twenty-three days. (Pl. Exhs. 15, 7.)

> **Response:** Undisputed for purposes of summary judgment.

**22.** On August 14, 2022, Ms. Wooten returned to the Juan F. Luis Hospital emergency room with continued shortness of breath, chest pain, and anxiety, and Dr. Menkinsmith ordered a chest x-ray and labs. (Pl. Exh. 24.)

> **Response:** Undisputed for purposes of summary judgment.

6

**23.** On August 15, 2022, Ms. Wooten returned to Dr. Campbell, who attempted a pulmonary-function test that Ms. Wooten could not complete due to shortness of breath and chest tightness. (Pl. Exh. 4.)

> **Response:** Undisputed for purposes of summary judgment.

**24.** There are no pulmonologists on St. Croix; on August 16, 2022, Ms. Wooten purchased a last-minute plane ticket and returned to Georgia for treatment from pulmonary specialists. (Pl. Exhs. 4, 35.)

> **Response:** Undisputed for purposes of summary judgment.

**25.** On August 18, 2022, primary-care physician Dr. Terrie Morton-Acker documented Ms. Wooten's exposure and shaking hands, diagnosed moderate persistent asthma with acute exacerbation, contact with hazardous chemicals, and restlessness/agitation, referred her to pulmonologists, and prescribed medications. (Pl. Exh. 18.)

> **Response:** **O**bjection, inadmissible to the extent offered as an opinion on causation (Fed. R. Evid. 702; Fed. R. Civ. P. 26(a)(2), 37(c)(1)). Undisputed for the purpose of ruling on the motion for summary judgment.

**26.** On August 24, 2022, pulmonologist Dr. Carlette Graham documented "chest pain and tightness after exposure to smoke," a history of asthma controlled until Ms. Wooten "was exposed to petroleum," an attempted spirometry, hyperinflation on chest x-ray, and diagnoses of cough, shortness of breath, wheezing, and asthma. (Pl. Exh. 19.)

> **Response:** Undisputed for the purpose of ruling on the motion for summary judgment; objection, inadmissible to the extent offered as an opinion on causation (Fed. R. Evid. 702; Fed. R. Civ. P. 26(a)(2), 37(c)(1)).

**27.** On August 24, 2022, neurologist Dr. David Olson evaluated Ms. Wooten for tremors and daily headaches beginning after the exposure, documented a high-frequency tremor, and prescribed medications. (Pl. Exh. 20.)

> **Response:** Undisputed for purposes of summary judgment.

7

**28.** On October 18, 2022, Dr. Morton-Acker opined: "It is of my opinion that Ms. Wooten's exacerbation of her asthma stemmed from the exposure of the chemicals found burning at the oil refinery on the Virgin Island which occurred in August 2022," and diagnosed major depressive disorder. (Pl. Exh. 18.)

> **Response:** Objection, inadmissible (Fed. R. Evid. 702; Fed. R. Civ. P. 26(a)(2)(C), 37(c)(1)). Undisputed for the purpose of ruling on the motion for summary judgment only that Dr. Morton-Acker made the statement attributed to her.

**29.** A December 15, 2022 pulmonary-function test revealed FEV1 at 65% of predicted, FEV1/FVC of 50%, and other values demonstrating moderate obstruction, hyperinflation, and air trapping—a decline from Ms. Wooten's normal July 2022 PFT. (Pl. Exhs. 15, 35.)

> **Response:** Undisputed for purposes of summary judgment.

**30.** On December 22, 2022, cardiac evaluation at Atlanta Heart Associates showed a normal echocardiogram (ejection fraction 55%), mild concentric left-ventricular hypertrophy, and a normal treadmill stress test showing "poor exercise tolerance"; Ms. Wooten stopped after four minutes due to wheezing and coughing. (Pl. Exh. 22.)

> **Response:** Undisputed for purposes of summary judgment.

**31.** On January 12, 2023, Ms. Wooten was unable to complete a six-minute walk test due to tachycardia and dyspnea. (Pl. Exh. 15.)

> **Response:** Undisputed for purposes of summary judgment.

**32.** On February 9, 2023, pulmonologist Dr. Olufisayo Otusanya reviewed Ms. Wooten's PFT and opined that her "symptomatology and PFT [are] suggestive of reactive airway dysfunction syndrome" and that her "history of exposure to sulfur dioxide could be contributing to/aggravating her airflow limitation." (Pl. Exh. 21.)

> **Response:** Objection, inadmissible (Fed. R. Evid. 702; Fed. R. Civ. P. 26(a)(2)(C), 37(c)(1)). Undisputed for the purpose of ruling on the motion for summary judgment only that Dr. Otusanya made the statements attributed to him.

**33.** On February 20, 2023, psychologist Dr. Bertrina Olivia West diagnosed post-traumatic stress disorder, generalized anxiety disorder, and recurrent major depressive disorder, and Ms. Wooten began weekly psychotherapy. (Pl. Exh. 31.)

> **Response:** Undisputed for purposes of summary judgment.

**34.** On February 27, 2023, nephrologist Dr. Leo Ovadje diagnosed hypertensive chronic kidney disease, noted the condition was "possible toxin-induced nephrotoxicity," and in a May 7, 2024 letter stated Ms. Wooten "developed hypertension and acute kidney injury which was temporally related to toxin exposure in August 2022." (Pl. Exh. 30.)

> **Response:** Objection, inadmissible (Fed. R. Evid. 702; Fed. R. Civ. P. 26(a)(2)(C), 37(c)(1)). Undisputed for the purpose of ruling on the motion for summary judgment only that Dr. Ovadje made the statements attributed to him.

**35.** On April 26, 2023, pulmonologist Dr. Jamie Garfield concluded that Ms. Wooten has "severe persistent asthma triggered by exposure to biomass fuel (carbon monoxide, carbon dioxide, sulfur dioxide, and particulate matter)," and prescribed a regimen of nebulized medications and prednisone. (Pl. Exh. 15.)

> **Response:** Objection, inadmissible to the extent offered as an opinion on causation (Fed. R. Evid. 702; Fed. R. Civ. P. 26(a)(2)(C), 37(c)(1)). Undisputed for the purpose of ruling on the motion for summary judgment only that Garfield made the statements and the treatment was prescribed.

**36(a).** Dr. Garfield's records documented Ms. Wooten's allergy-panel results, which were essentially all negative except for dust-mite sensitization. (Pl. Exh. 15.)

> **Response:** Undisputed for purposes of summary judgment.

**36(b).** The allergy-panel results "rul[e] out an allergic cause for her severe persistent asthma" and "confirm[] that the August 8, 2022 chemical exposure is the causative event." (Pl. Exh. 15.)

> **Response:** Disputed; objection, inadmissible (Fed. R. Evid. 702).

**37.** On August 18, 2023, a cardiopulmonary exercise test revealed peak VO2 at 59% of predicted and pre-exercise FEV1/FVC of 40%, with the interpretation "cannot exclude pulmonary mechanical limits to exercise" and normal cardiovascular response. (Pl. Exh. 25.)

> **Response:** Undisputed for purposes of summary judgment.

**38.** On September 20, 2023, Dr. Graham opined in a narrative letter: "It is my medical opinion that the work injury she suffered on August 8, 2022, caused a permanent aggravation to the patient's pre-existing Asthma," and that Ms. Wooten is "unable to return to work in a Law Enforcement Capacity." (Pl. Exh. 19.)

> **Response:** Objection, inadmissible (Fed. R. Evid. 702; Fed. R. Civ. P. 26(a)(2)(C), 37(c)(1)). Undisputed for the purpose of ruling on the motion for summary judgment only that Dr. Graham made the statement attributed to her.

**39.** The U.S. Department of Labor, OWCP, investigated Ms. Wooten's FECA claim and formally accepted the following conditions as caused by the August 8, 2022 work-related exposure: Anxiety Disorder, Unspecified; Major Depressive Disorder, Single Episode, Unspecified; and Unspecified Asthma with (Acute) Exacerbation. (Pl. Exhs. 16, 29.)

> **Response:** Undisputed that the OWCP accepted those three conditions; objection, inadmissible to the extent the acceptance is offered as proof of tort causation (Fed. R. Evid. 803(8), 403).

**40.** In connection with that acceptance, OWCP commissioned a Second Opinion Pulmonary Examination by Dr. Oyekunle Ismail Muraina, a board-certified pulmonologist, who examined Ms. Wooten on April 19, 2024. (Pl. Exh. 3.)

> **Response:** Undisputed.

**41.** Dr. Muraina's examination found Ms. Wooten's oxygen saturation at 89% on room air at rest and dropping to 82% within two minutes of a six-minute walk test (which was discontinued), uninterpretable spirometry, and lung volumes showing a mixed obstructive and restrictive defect with air trapping. (Pl. Exh. 3.)

> **Response:** Undisputed for purposes of summary judgment.

**42.** Dr. Muraina diagnosed five conditions causally connected to the work injury and opined: "There is direct causal relationship between the diagnoses above and the work-related injury of exposure to Petroleum 'coke' burn smoke necessitating prolonged debility with aggravation of the pre-existing asthma and respiratory failure with hypoxia." (Pl. Exh. 3.)

> **Response:** Objection, inadmissible (Fed. R. Evid. 702; Fed. R. Civ. P. 26(a)(2)(B), 37(c)(1)). Undisputed for the purpose of ruling on the motion for summary judgment only that Dr. Muraina made the statements attributed to him.

**43.** Dr. Muraina opined that Ms. Wooten's condition "has not resolved," that she has reached maximum medical improvement, and that her "prognosis appears to be poor"; he further stated: "The hypoxemia cannot be explained solely by obstructive airway disease due to bronchial asthma, there must be an underlying pulmonary parenchymal or vascular component responsible for this." (Pl. Exh. 3.)

> **Response:** Undisputed that Dr. Muraina's report contains the quoted statements.

**44.** On the OWCP-5C Work Capacity Evaluation form, Dr. Muraina documented that the work injury caused anatomical and functional changes in the cardiovascular and respiratory systems and limited Ms. Wooten to sedentary work only. (Pl. Exh. 16.)

> **Response:** Undisputed for the purpose of ruling on the motion for summary judgment only that the form contains the entries described; objection, inadmissible to the extent offered as an opinion on causation (Fed. R. Evid. 702; Fed. R. Civ. P. 26(a)(2), 37(c)(1)).

**45.** In a letter dated July 22, 2024, Dr. Graham wrote that she agrees with Dr. Muraina's second-opinion consult and that Ms. Wooten would benefit from a sedentary, work-from-home job. (Pl. Exh. 34.)

> **Response:** Objection, inadmissible (Fed. R. Evid. 702; Fed. R. Civ. P. 26(a)(2)(C), 37(c)(1)). Undisputed for the purpose of ruling on the motion for summary judgment only that Dr. Graham wrote the quoted letter.

11

**46.** Successive pulmonary-function tests document persistent impairment: a December 6, 2023 spirometry showed a "moderate obstructive ventilatory defect," and an April 18, 2024 PFT showed a "nonspecific ventilatory defect." (Pl. Exhs. 19, 26.)

> **Response:** Undisputed for purposes of summary judgment.

**47.** On June 27, 2024, Ms. Wooten walked only 900 feet on a six-minute walk test (47.5% of predicted), requiring 11 pauses. (Pl. Exh. 19.)

> **Response:** Undisputed for purposes of summary judgment.

**48.** A September 1, 2022 chest CT revealed no acute pulmonary process, and a December 22, 2022 echocardiogram showed normal cardiac function with no pulmonary hypertension. (Pl. Exhs. 15, 22.)

> **Response:** Undisputed.

**49.** Plaintiff's expert Dr. Wilkenfeld reviewed Ms. Wooten's medical records, the Incident Report, and the EPA Inspection Report, and opined to a reasonable degree of medical certainty that the August 8, 2022 exposure caused her injuries, based on her history, test results, the substances involved, and the temporal relationship between exposure and onset. (Pl. Exhs. 2, 5.)

> **Response:** Objection, inadmissible (Fed. R. Evid. 702). Undisputed for the purpose of ruling on the motion for summary judgment only that Dr. Wilkenfeld so opined.

**50.** Dr. Wilkenfeld's opinion is grounded in medical literature on irritant-induced asthma and RADS recognizing that a single high-level exposure can cause persistent airway dysfunction in individuals with pre-existing mild asthma, and he identified the petroleum-coke combustion products as well-documented respiratory irritants. (Pl. Exh. 2.)

> **Response:** Objection, inadmissible (Fed. R. Evid. 702). Undisputed for the purpose of ruling on the motion for summary judgment only that Dr. Wilkenfeld so testified.

**51.** Six independent treating physicians causally linked Ms. Wooten's respiratory injuries to the August 8, 2022 exposure: Dr. Campbell, Dr. Morton-Acker, Dr. Otusanya, Dr. Garfield, Dr. Graham, and Dr. Muraina. (Pl. Exhs. 17, 18, 21, 15, 19, 3.)

12

**Response:** Objection, inadmissible (Fed. R. Evid. 702; Fed. R. Civ. P. 26(a)(2), 37(c)(1)). Undisputed for the purpose of ruling on the motion for summary judgment only that the physicians made the statements attributed to them.

52. In addition, Dr. Wilkenfeld independently reached the same causation conclusion, and the U.S. Department of Labor formally accepted Ms. Wooten's claim, determining that the August 8, 2022 exposure caused her accepted conditions. (Pl. Exhs. 2, 29.)

**Response:** Objection, inadmissible (Fed. R. Evid. 702; Fed. R. Evid. 803(8), 403). Undisputed for the purpose of ruling on the motion for summary judgment only that Dr. Wilkenfeld so opined and that the OWCP accepted the conditions identified in ¶39.

53. Ms. Wooten did not return to her CBP duties after August 9, 2022; CBP granted her a hardship transfer from St. Croix to the Port of Atlanta based on the severity of her condition and the lack of pulmonary specialists on St. Croix. (Pl. Exh. 35.)

**Response:** Undisputed for purposes of summary judgment.

54. On September 18, 2024, CBP confirmed Ms. Wooten's disability retirement, effective July 27, 2024; her salary at the time of injury was $34,916 and had risen to $72,553 by retirement. (Pl. Exhs. 33, 27.)

**Response:** Undisputed for purposes of summary judgment.

55. Following her retirement, Ms. Wooten obtained part-time work-from-home employment earning $25.00 per hour, but was terminated on or about October 26, 2025 for inability to meet case-hour quotas; the Georgia Department of Labor found she did not deliberately fail to perform and allowed benefits. (Pl. Exhs. 27, 32.)

**Response:** Undisputed for purposes of summary judgment.

56. Ms. Wooten currently takes multiple daily breathing medications plus cyclobenzaprine and continues weekly psychotherapy—a dramatic escalation from the single as-needed albuterol inhaler she used before the exposure. (Pl. Exhs. 27, 31.)

**Response:** Undisputed for purposes of summary judgment.

**57.**  Ms. Wooten's self-reported functional limitations are that on a bad day she cannot sit, stand, or walk at all, and on a good day she can sit two hours, stand thirty minutes, and walk fifteen minutes; her current diagnoses include RADS, asthma, anxiety, and depression. (Pl. Exh. 27.)

> **Response:**  Undisputed for purposes of summary judgment.

**58.**  In a September 15, 2025 email, Ms. Wooten reported she was diagnosed with high blood pressure, left-ventricular hypertrophy, and Stage 2 kidney disease in 2022, all attributed to "chemical induced toxins"; her kidney disease has resolved but she cannot obtain additional life-insurance policies. (Pl. Exh. 27.)

> **Response:**  Undisputed for the purpose of ruling on the motion for summary judgment only that Plaintiff so reported; objection, inadmissible to the extent offered as an opinion on causation (Fed. R. Evid. 701, 702).

**59.**  In its Answer, Port Hamilton admitted that it "owned and operated the petroleum refinery on the date of the incident alleged." (Pl. Exh. 14.)

> **Response:**  Undisputed.

**60(a).**  Port Hamilton's Incident Report identifies the combustion products released, including sulfur dioxide and particulate matter. (Pl. Exh. 7.)

> **Response:**  Undisputed for purposes of summary judgment.

**60(b).**  Sulfur dioxide and particulate matter are "the very substances . . . identified by Ms. Wooten's treating physicians as the cause of her injuries." (Pl. Exh. 7.)

> **Response:**  Disputed; objection, inadmissible (Fed. R. Evid. 702) and fails to provide a specific citation to the record regarding substances identified by the treating physicians. LRCi 56.1.

**61.**  The EPA conducted an inspection of the facility on August 9, 2022 and documented the ongoing emissions from the smoldering petroleum coke. (Pl. Exh. 8.)

> **Response:**  Undisputed for purposes of summary judgment.

62. Ocean Point controlled security and access to the entire facility, including the areas where Port Hamilton operated, and its COO testified that Ocean Point was responsible for "health safety and environmental" and "emergency response." (Pl. Exh. 12.)

    **Response:** Undisputed for purposes of summary judgment.

63. Despite its control and knowledge of the smoldering emergency, Ocean Point did not warn CBP of the hazardous conditions and allowed Ms. Wooten to enter without warning. (Pl. Exhs. 12, 1.)

    **Response:** Undisputed for purposes of summary judgment.

64. Ocean Point placed air monitors between the coker and the tugboats that showed "nil" readings throughout August 2022, but the monitors were not on Ms. Wooten's route or at her location, and Plaintiff's engineering expert Daniel Mahr testified they were "very far" from her location and not downwind of the dome. (Pl. Exhs. 12, 23.)

    **Response:** Undisputed for purposes of summary judgment.

65. Ocean Point obstructed Port Hamilton's fire response, refusing to release fire equipment without payment, demanding $7.9 million in arrears, refusing to refill air bottles, and not opening the firehouse; the Mutual Aid Agreement was not executed until August 21, 2022. (Pl. Exhs. 11, 13.)

    **Response:** Undisputed for purposes of summary judgment.

66. Ocean Point's crossclaims allege it knew Port Hamilton was "inept and ill-equipped" and that carbon-monoxide alarms had been "repeatedly silenced by Port Hamilton employees," yet it continued to allow individuals, including Ms. Wooten, to enter without warning. (Pl. Exh. 12.)

    **Response:** Undisputed for purposes of summary judgment.

        Respectfully submitted,

July 13, 2026                  **ANDREW C. SIMPSON, P.C.,**
                                Counsel for Port Hamilton Refining
                                and Transportation, LLLP

                                /s/ Andrew C. Simpson

15

Andrew C. Simpson (VI Bar # 451)
2191 Church Street, Ste. 5,
Christiansted, VI 00820
Telephone: (340) 719-3900
asimpson@coralbrief.com